HELANE L. MORRISON (Cal. Bar No. 127752)
MARK P. FICKES (Cal. Bar No. 178570)
  (fickesm@sec.gov)
ERIN E. SCHNEIDER (Cal. Bar No. 216114)
  (schneidere@sec.gov)

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2600
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. C 07 4975 |
| Plaintiff, | |
| vs. | COMPLAINT    JCS |
| ALEXANDER JAMES TRABULSE, | |
| Defendant, | |
| and | |
| FAHEY FUND, L.P., FAHEY FINANCIAL GROUP, INC., INTERNATIONAL TRADE & DATA, and ITD TRADING, | |
| Relief Defendants. | |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

### SUMMARY OF THE ACTION

1.  From at least 1998 through the present, defendant Alexander James Trabulse defrauded investors by falsifying investor account statements to make his hedge fund look more profitable than it actually was. He used the materially false and misleading account statements to

COMPLAINT

solicit new investments and convince existing investors to put additional money into his fund. Moreover, while Trabulse described his fund to investors as a hedge fund that invested in financial instruments like stocks, derivatives, and foreign currency, he in fact diverted a significant portion of investor money to purchase real estate (in southern California, France, and Panama), jewelry and rugs. He hid these purchases from investors.

2. Trabulse also treated fund assets as if they were his own, using the fund as a slush fund for himself and his family. He took fund assets and paid for a myriad of improper, unauthorized personal expenses including cars, a home theater system, and his now ex-wife's overseas shopping allowance. He even gave one relative free reign to use the fund's bank accounts for personal use.

3. Trabulse violated numerous provisions of the federal securities laws, including the antifraud statutes, by misappropriating investor assets and making materially false and misleading statements in connection with the purchase or sale of securities. The Commission seeks to enjoin Trabulse from further conduct that violates the securities laws, disgorgement from him of ill-gotten gains with prejudgment interest, and payment of civil money penalties. The Commission further seeks disgorgement with prejudgment interest of all investor funds disbursed to relief defendants Fahey Fund, L.P., Fahey Financial Group, Inc., International Trade and Data, and ITD Trading.

**JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

4. The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)], Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(e)], and Sections 209 and 214 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-9 and 80b-14]. This Court has jurisdiction over this action pursuant to Sections 20(d)(1) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d)(1) and 77v(a)], Sections 21(d)(3), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(e), and 78aa], and Sections 209 and 214 of the Advisers Act [15 U.S.C. §§ 80b-9 and 80b-14].

5. Venue in this district is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 214 of the

///

Advisers Act [15 U.S.C. § 80b-14] because defendant Trabulse resides in, and a substantial portion of the conduct alleged in this complaint occurred within, the Northern District of California.

6. Assignment to the San Francisco Division of this Court is proper because a substantial part of the events or omissions that give rise to claims alleged in this Complaint occurred in San Mateo County. In addition, defendant Trabulse resides in San Mateo County, some relief defendants are based in San Francisco and Alameda Counties, and some of the bank accounts through which assets were misused and misappropriated are located in San Francisco.

## DEFENDANT

7. Defendant Alexander James Trabulse ("Trabulse"), age 60, resides in Daly City, California. He founded and controlled Fahey Fund, L.P., Fahey Financial Group, Inc., International Trade & Data, and ITD Trading. During the Commission's investigation, Trabulse asserted his Fifth Amendment right against self-incrimination and refused to answer the Commission staff's questions.

## RELIEF DEFENDANTS

8. Fahey Fund, L.P. (formerly known as Fahey Hedge Fund, L.P.) is a California limited partnership based in San Francisco. Trabulse formed Fahey Fund, L.P. in 1997 for the purpose of investing in securities and other financial instruments. Trabulse is the fund's General Partner and is responsible for making all investment decisions. Trabulse represented that Fahey Fund, L.P. was located at 268 Bush Street, Suite 4232, San Francisco, CA, which actually is a mailbox located at MailBoxes Etc.

9. Fahey Financial Group, Inc. (formerly known as Delta Consulting, Ltd.) is a Nevada corporation formed by Trabulse in approximately 1999. Trabulse represented that he is the President and Chief Executive Officer of Fahey Financial Group, Inc. ("Fahey Financial"). Trabulse operated Fahey Fund, L.P. and Fahey Financial as a single hedge fund and made substantially all the investment decisions. He collected investor money through bank accounts belonging to Fahey Financial and routinely transferred money between Fahey Financial, Fahey Fund, L.P., International Trade & Data, and ITD Trading.

///
///

10. International Trade & Data is a California partnership originally formed in March 1985 between Trabulse and another individual for the purpose of conducting a general securities business. During the period alleged in this Complaint, Trabulse served as the sole partner. Trabulse directed investor money deposited into bank accounts in the name of Fahey Fund, L.P and Fahey Financial to bank or brokerage accounts held by International Trade & Data. Trabulse represented that International Trade & Data was located at 747 Lewelling Blvd., Suite 40, San Leandro, CA, which actually is a mobile home in a mobile home park.

11. ITD Trading is a California general partnership formed in approximately 2002 between Trabulse and another individual for the purpose of trading commodities. Trabulse directed investor money deposited into Fahey Fund, L.P's and Fahey Financial's bank accounts to bank or brokerage accounts held by ITD Trading. Trabulse represented that ITD Trading was located at 747 Lewelling Blvd., Suite 40, San Leandro, CA, which actually is a mobile home in a mobile home park.

## FACTUAL ALLEGATIONS

### A. Trabulse Misrepresented Fahey Fund's Profitability

12. Trabulse operated Fahey Fund, L.P. and Fahey Financial Group, Inc. as a single hedge fund (collectively, "Fahey Fund"). In 1998, Fahey Fund had approximately 11 investors. By the end of 2006, the fund had grown to more than 100 investors. Trabulse described the fund to investors in oral conversations and written materials as a conservative fund that invested in financial instruments like stocks, options, derivatives, futures, indexes, and foreign currency. Since its inception, Fahey Fund has collected at least $10 million from investors.

13. At the end of each calendar quarter, Trabulse prepared and sent to investors an account statement that purported to account for the changes in an investor's account balance from one quarter to the next. The statements purported to identify each investor's beginning balance, gains and/or losses earned during the period, and ending balance. Typically, the account statements were accompanied by a newsletter prepared and signed by Trabulse that summarized the fund's performance during the quarter and described current market conditions and what he expected markets to do in upcoming quarters.

///

14. The quarterly account statements Trabulse sent to investors were materially false and misleading. They bore no relation to the fund's actual performance during the quarter. For example, in the second quarter of 2005, Trabulse reported to investors collective gains of approximately $2.5 million. In reality, the fund realized a net loss in its brokerage accounts of more than $200,000. Moreover, Trabulse fraudulently reported to investors during the period from 1998 through 2006 that they collectively earned gains totaling approximately $30 million, based on investments in stocks, derivatives, and foreign currency. However, the fund's brokerage account records show the fund's profits during this time were less than $10 million.

15. Similarly, Trabulse also overstated the funds' assets in the quarterly statements he sent to investors. As of December 31, 2006, Trabulse reported to investors that their collective assets, which were composed of investor contributions and gains purportedly earned on investments in stocks, derivatives, and foreign currency, totaled more than $45 million. In reality, the fund's brokerage account records and bank statements show the fund's value was less than $13 million.

16. Trabulse used the false and misleading account statements to encourage existing investors to recruit new investors and increase their own investments in Fahey Fund. Indeed, many investors decided to invest in Fahey Fund because they heard from friends or colleagues already invested in the fund that the fund achieved spectacular returns. Trabulse also touted the fund's positive performance when soliciting new investors.

17. Trabulse gave certain prospective investors a list of existing investors who would act as references. The investors identified as references had received materially false and misleading account statements with grossly overstated profits and account balances. One investor, who with his wife invested more than $2 million in 2006, called several of the individuals on the list before investing and based his investment, in part, on material misstatements about the fund's performance. In addition, certain investors made multiple contributions into the fund based on the false and misleading representations about the fund's performance in the account statements they received from Trabulse.

///

///

COMPLAINT                                -5-

18. Trabulse knew or was reckless in not knowing that the account statements provided to investors were false and misleading.

### B. Trabulse Made Other False And Misleading Representations To Solicit Investments

19. Trabulse prepared and disseminated to investors other materials containing materially false and misleading claims about the fund's performance, all designed to increase the money he managed or to solicit investments from the general public.

20. For example, he prepared and sent to some prospective investors documents containing charts which depicted the fund's value as steadily increasing, or holding steady, each quarter beginning in the fourth quarter of 1997 and continuing through the second quarter of 2002. Similarly, from approximately April 1999 until 2007, Fahey Fund maintained a website at "www.faheyfund.com" that contained materially false and misleading information. The website purported to describe Trabulse's investment strategy and contained various charts which depicted the fund's profits as consistently positive (or flat) each quarter beginning in the fourth quarter of 1997 and continuing through the second quarter of 2004. These charts sent to prospective investors and on the fund's website were materially false and misleading. In reality, the fund's brokerage account records show the fund realized losses in 1998, 2000 and 2003.

21. Trabulse knew or was reckless in not knowing that the materials he disseminated to investors were false and misleading.

### C. Trabulse Misused Fahey Fund's Assets

22. Trabulse used Fahey Fund bank accounts to pay for a wide variety of personal, and unauthorized, expenses. As of the years ended December 31, 2004, December 31, 2005, December 31, 2006, and the three months ended March 31, 2007, Trabulse misappropriated fund assets by spending more than he was entitled to under the terms of the fund's limited partnership agreement.

23. For example, he transferred over $650,000 to his now ex-wife's bank accounts that she spent on living expenses, a shopping allowance in Paris, France, and to pay her home mortgage after they separated. He also used the fund's bank accounts to buy her a home theater system costing in

excess of $25,000. Moreover, he used the fund's bank accounts to purchase for her several rugs that she currently uses in her home.

24. In addition, Trabulse transferred more than $500,000 to an overseas bank account maintained in his personal name (not the fund's name) in Paris, France. He described certain of these transfers in the fund's books and records as for "Paris Business Expenses." Yet, after he transferred the money, Trabulse used his Paris bank account to pay for personal expenses here in the United States, including groceries, meals and clothes. Trabulse also transferred from the fund's bank accounts over $400,000 to third parties not related to the business of the fund.

25. Trabulse also allowed his daughter to use a debit card linked to one of Fahey Fund's bank accounts to buy furniture, airline tickets, and to pay for her 2007 honeymoon in Panama. In addition, Trabulse used the fund's bank accounts to purchase for his daughter several pieces of jewelry that she currently keeps in her home.

26. Trabulse routinely transferred money between Fahey Fund, L.P., Fahey Financial Group, Inc., International Trade & Data, and ITD Trading, and authorized the withdrawal of money from all entities for improper purposes. Trabulse failed to segregate his own assets from those of the fund and failed to maintain accurate accounting records, thus violating his fiduciary duties to the fund.

27. Trabulse knew, or was reckless in not knowing, that he was misappropriating funds by spending more than he was entitled to.

D. **Trabulse Failed To Disclose How He Used Investor Money**

28. Trabulse told investors, in both verbal and written communications, that Fahey Fund invested financial instruments like stocks, options, derivatives, futures and foreign currency. In reality, Trabulse used a significant portion of investor money to purchase items that he and his family used, including gems and other jewelry, real property, and rugs. Trabulse even used investor money to fund a start-up golf company and purchase a BMW for the golf company's owner.

29. Trabulse failed to tell investors before they invested money that Fahey Fund invested, or planned to invest in, such illiquid items, some of which were used for personal consumption,

///

including real estate, jewelry, and rugs. He also concealed these purchases from investors by failing to identify them in account statements or elsewhere in materials provided to investors.

30. Trabulse also gave several of the items purchased with the fund's money to members of his family, telling them the items were theirs to keep. Trabulse did not inform investors that he used investor funds to purchase jewelry and rugs for his family.

31. Tabulse knew, or was reckless in not knowing, that he failed to accurately disclose how he used investor money.

### E. Trabulse Sold Securities In An Unregistered Offering

32. Since its inception, Fahey Fund has collected approximately $10 million from investors.

33. Fahey Fund investors had no role in managing the fund. The limited partnership agreement for Fahey Fund, L.P. gave Trabulse complete and exclusive control of the fund in all respects.

34. Trabulse solicited investments from the general public through the fund's website at "www.faheyfund.com." The website was accessible to and used by U.S. investors. The website directed prospective investors to contact Trabulse for more information about investing in Fahey Fund. It also contained a one-page subscription agreement for investors to complete; investors were required to list their name, address, telephone number, e-mail address, and amount of investment. In many cases, this was the only document investors completed before investing in the fund.

35. Trabulse offered and sold Fahey Fund securities to investors in Arizona, California, Connecticut, Florida, Illinois, and Texas. He did not take steps to determine whether prospective investors were financially qualified or had the requisite investment experience to invest in a hedge fund. Indeed, many investors did not have sufficient assets or income to take on the risk of investing in a hedge fund.

36. No registration statement was filed with the Commission in connection with the offer or sale of Fahey Fund securities.

///

///

F.   **Relief Defendants Received Funds From Trabulse**

37.   Relief Defendants Fahey Fund, L.P., Fahey Financial Group, Inc., International Trade and Data and ITD Trading received and possess money or other assets through defendant Trabulse's material misrepresentations and omissions and have no legitimate claim to them.

## FIRST CLAIM FOR RELIEF

**(Violations of Section 17(a) of the Securities Act)**

38.   The Commission realleges and incorporates by reference paragraphs 1 through 37.

39.   By engaging in the acts and conduct alleged above, Trabulse, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails: (a) with scienter employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

40.   By reason of the foregoing, Trabulse has violated and, unless restrained and enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)**

41.   The Commission realleges and incorporates by reference Paragraphs 1 through 37.

42.   By engaging in the acts and conduct alleged above, Trabulse, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

43. By reason of the foregoing, Trabulse has violated and, unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder.

### THIRD CLAIM FOR RELIEF

### (Violations of Section 206(1) and 206(2) of the Advisers Act)

44. The Commission realleges and incorporates by reference Paragraphs 1 through 37.

45. By engaging in the acts and conduct alleged above, Trabulse, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or of the mails, and while engaged in the business of advising others for compensation as to the advisability of investing in, purchasing, or selling securities: (a) with scienter employed devices, schemes, and artifices to defraud; and (b) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon clients or prospective clients.

46. By reason of the foregoing, Trabulse has violated and, unless restrained and enjoined, will continue to violate Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)].

### FOURTH CLAIM FOR RELIEF

### (Violations of Section 5(a) and 5(c) of the Securities Act)

47. The Commission realleges and incorporates by reference Paragraphs 1 through 38.

48. By engaging in the acts and conduct alleged above, Trabulse, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer and to sell securities through the use or medium of a prospectus or otherwise when no registration statement had been filed or was in effect as to such securities and no exemption from registration was available.

49. By reason of the foregoing, Trabulse has violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

///

///

///

COMPLAINT                                    -10-

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

I.

Enjoin defendant Trabulse from directly or indirectly violating Sections 5(a), 5(c) and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)], Section 10(b) of the Exchange Act [15U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)].

II.

Order defendant Trabulse to provide an accounting and disgorge his ill-gotten gains with prejudgment interest in an amount according to proof, plus prejudgment interest thereon.

III.

Order defendant Trabulse to pay civil money penalties pursuant to Section 20(d)(1) of the Securities Act [15 U.S.C. § 77t(d)(1)], Section 21A of the Exchange Act [15 U.S.C. § 78u-1], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

IV.

Order relief defendants Fahey Fund, L.P., Fahey Financial Group, Inc., International Trade & Data, and ITD Trading to disgorge their ill-gotten gains with prejudgment interest in an amount according to proof, plus prejudgment interest thereon.

V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

///
///
///
///
///

VI.

Grant such other and further relief as this Court may deem just, equitable, and necessary.

Dated: September 26, 2007

Respectfully submitted:

By: *Mark P. Fickes*
Helane L. Morrison
Mark P. Fickes
Erin E. Schneider

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

COMPLAINT                                    -12-