HELANE L. MORRISON (Cal. Bar No. 127752)
MARK P. FICKES (Cal. Bar No. 178570)
  (fickesm@sec.gov)
ERIN E. SCHNEIDER (Cal. Bar No. 216114)
  (schneidere@sec.gov)

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2600
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>  vs.<br><br>ALEXANDER JAMES TRABULSE,<br><br>  Defendant,<br><br>  and<br><br>FAHEY FUND, L.P., FAHEY FINANCIAL GROUP, INC., INTERNATIONAL TRADE & DATA, and ITD TRADING,<br><br>  Relief Defendants. | Case No. C-07-4975 (WHA)<br><br>DECLARATION OF H. GIFFORD FONG IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

I, H. GIFFORD FONG, DECLARE:

1.     I am the President of Gifford Fong Associates, a firm specializing in fixed income, derivative product and asset allocation analysis. Gifford Fong Associates' areas of emphasis include independent valuation, model validation and portfolio strategy analysis. I have an M.B.A. and J.D. degree from the University of California at Berkeley. I have been qualified as an expert once in federal court and twice in NASD arbitration hearings regarding portfolio strategy and management,

and regarding the valuation of derivatives. Attached as Exhibit 1 to this Declaration is my Curriculum Vitae.

2. Proper management of an investment fund depends on accurate record-keeping and reporting to investors. Accurate records are necessary to determine the proportionate ownership of each investor and to properly account for the contribution and distribution of cash flows or other assets. Inaccurate record-keeping and accounting results in investor accounts being valued incorrectly and, accordingly, any distributions (whether to an investor or to the fund's manager) based on that value will be incorrect.

3. Investors need accurate information about the fund's performance and value to make decisions about their investment in the fund including whether they want to stay in the fund, contribute additional assets to the fund, or withdraw part of their assets from the fund.

4. It is standard industry practice to "mark to market" the investment portfolio any time cash or assets are contributed to or distributed from an investment fund; this allows the fund to accurately determine its value and the proportionate ownership of each investor. ("Mark to market" is the act of assigning a value to a position held in a financial instrument based on the current market price for that instrument or similar instruments). If the investment portfolio is not "marked to market" or if the records are inaccurate or insufficient to facilitate the "mark to market" calculation, the investment fund will be unable to determine the value of each investor's investment. Additionally, if the investment portfolio is not "marked to market" each time someone contributes cash or assets, or each time the fund distributes cash or assets, investors' account balances will be inaccurate. Moreover, in the event the fund makes distributions to investors, those investors will receive either more or less than that to which they were entitled.

5. It also is standard industry practice to report performance by using a time-weighted return calculation. A time-weighted return calculation is important because it takes into account the timing of external cash flows in and out of the fund. (If a fund fails to take the timing of cash flows into account, its performance will be distorted.) The time weighted rate of return is a measure of the compound rate of growth of the initial portfolio market value during the evaluation period, assuming that all cash distributions are reinvested in the portfolio. It is computed by taking the geometric

average of the portfolio subperiod returns. Like "marking to market," a time weighted rate of return is the appropriate measure to use when calculating an investment fund's performance, as it depends only on the length of the investment period, so called "time weighted," and not on the cash inflows and outflows. The time-weighted return eliminates the effect of the timing of contributions and withdrawals, (which usually are beyond the manager's control), on the rate of return of the fund. It considers the time value of the money and looks at what $1.00 invested in the fund will be at the end of the period reviewed regardless of intermediate cash inflows and outflows.

6.  It also is standard industry practice to record contributions to an investment fund on the date the fund received the money, rather than some earlier, or later, time. This is important because to do otherwise will result in the incorrect distribution of gains and/or losses to investors.

7.  It also is standard industry practice that, when reporting an investment fund's performance to investors, that the fund report include asset classes invested, portfolio composition, distributions made, and mangers' fees, all of which promote investment transparency.

8.  It also is standard industry practice to keep assets in the fund's name and segregate the assets of the fund from personal assets.

9.  I have reviewed the following records: Fahey Hedge Fund Partnership Agreement, Rev. Jan 2003 (FF-JMW 42-50); investor account statements for Joseph Barron, Rose Marie Button (IRA), Martin Button (IRA), Misti Covitz (IRA), Suzanne Gregg (IRA), Jacobus Hey (IRA), James Hirst (ROTH IRA), Thurman Hunt (IRA), Sandra Kasky (ROTH), Sonya Kasky Educational Trust Fund, Sandra Kasky-Button (IRA), Anna Marie Ketelsen, Tadashi and Hatsuki Koga Living Trust, Per Madsen, Carol Merlo (IRA), Catherine O'Riley (IRA), Catherine O'Riley (ROTH IRA), Kathy Ranz (IRA), Kathy Ranz, Lawrence Sanders, Thomas Walsh, and Yancey Wade; Bank of America bank statements and records for Fahey Financial Group, Inc.; Bank of the West bank statements and records for Fahey Hedge Fund; A.G. Edwards & Sons, Inc. brokerage account statements for International Trade and Data; Iowa Grain Company brokerage account statements for ITD Trading; Canaccord Capital Corporation brokerage account statements for A James Trabulse and Fahey Fund; Sterling Trust account statements for Catherine O'Riley; Performance Presentation Standards For Collective Investment Schemes: Best Practice Standards, Report of the Technical Committee of the

International Organization of Securities Commissions, May 2004; and Global Investment Performance Standards (GIPS), Revised by the Investment Performance Council, Adopted by the CFA Institute Board of Governors, February 2005.

10. Based on my review, I determined that the Fahey Fund in several instances improperly accounted for its trading activities and misrepresented its performance to several investors. This was caused by the fund's failure to accurately report its trading activities, by failing to "mark to market" its investment portfolio (either at the end of a reporting period or at the time of a contribution or withdrawal of cash or assets), the failure to accurately calculate a time-weighted return, the failure to accurately disclose and describe the types of investments being made, the failure to record in investor account statements all contributions and withdrawals, and the failure to record in the proper period investor contributions and withdrawals. Moreover, several of the investor account statements contain inconsistencies for the same investors (over different time periods) and for different investors (over the same time periods). As a result, the fund's reported performance and value is inaccurate, thus rendering any distributions from the fund (whether to an investor or the fund's manager) based on that performance and value, inaccurate.

11. For example, Fahey Fund misrepresented its performance to Catherine O'Riley, Lawrence Sanders, and Kathy Ranz for the three months ended March 31, 2007. According to those investors' statements for that period, the fund reported no gain or loss activity. Attached as Exhibit 2 to this Declaration are copies of the March 31, 2007 statements and newsletters for Catherine O'Riley, Lawrence Sanders, and Kathy Ranz that were provided to me by the Securities and Exchange Commission. (O'Riley 1169-70, SANDERS-SEC-00008-9, FF-KR-638-641.) In the newsletter accompanying Kathy Ranz's statement, the fund manager claimed, "While there was a great deal of movement in the market, our particular positions just sat there! So there is nothing to report. Please note that your statements will be unchanged from the Dec 31, 2006 final." (FF-KR-638.) In fact, several brokerage accounts related to the Fahey Fund show there was substantial trading activity by the fund during that period. According to my calculation, the return in the Fahey Fund's A.G. Edwards and Iowa Grain Company brokerage accounts was -2.6%, not zero. Attached as Exhibit 3 to this Declaration summarizes the data, assumptions, and methods of my return calculation for the

fund's brokerage accounts. Accordingly, any distributions that were made after March 31, 2007 were incorrect because the fund misreported its value for that period.

12.   The fund's claim that there were no gains or losses because its positions "just sat there," is inaccurate and misleading because: (1) it realized losses in its A.G. Edwards and Iowa Grain brokerage accounts of $5,267,219; (2) it had unrealized losses in those brokerage accounts of $45,438,83; and (3) those brokerage accounts had a time-weighted return of -2.6%.

13.   Additionally, the following transfers were made from the fund's bank accounts during the three months ended March 31, 2007:

- January 2, 2007. $10,000 to Rene Dieu for "Paris Artistic Investment."
- January 9, 2007. $25,000 to Pascale Doynel De Quincey for "Property Investment."
- January 22, 2007. $20,000 to SA Prestige Automobiles for "Real Estate Investment Auto Expenses."
- February 2, 2007. $50,000 to Alexander Trabulse at BNP Paribas for "Paris Real Estate Expenses."

Attached as Exhibit 4 to this Declaration are copies of the above transfers that were provided to me by the Securities and Exchange Commission. (FAHEY-SEC-15874, 15483, 15870, 15486.) These appear to be questionable withdrawals or investments which are not recorded as such in any of the other documents I reviewed.

14.   Moreover, even though the fund purportedly made an "artistic investment," a "property investment," and an "auto" investment, these investments are not described in the March 31, 2007 account statements distributed to Catherine O'Riley, Lawrence Sanders, and Kathy Ranz. (See paragraph 11, supra.) This is improper because of lack of disclosure.

15.   Additionally, according to the fund's investor account statements, the fund did not calculate investor returns by using a time-weighted return (that is, by taking into account the timing of any contributions or distributions of cash or assets). As a result, the fund overstated investors' returns when investors made a contribution on a day other than the last day in the reporting period. Moreover, the fund understated investors' returns when investors withdrew money on a day other than the last day in the reporting period. For example, the fund reported to Kathy Ranz a 62.18%

return in 2002. Attached as Exhibit 5 to this Declaration is a copy of Kathy Ranz's 2002 statement that was provided to me by the Securities and Exchange Commission. (FAHEY-SEC-3491). Assuming the beginning balance and reported gains are accurate, a time-weighted return would have resulted in a 46.41% (not 62.18%) return. Additionally, the fund reported to Suzanne Gregg a 39.84% return in 2004. Attached as Exhibit 6 to this Declaration is a copy of Suzanne Gregg's 2004 statement that was provided to me by the Securities and Exchange Commission. (FAHEY-SEC-002798). Assuming the beginning balance and reported gains are accurate, a time-weighted return would have resulted in a 41.61% (not 39.84%) return.

16. Additionally, the fund incorrectly accounted for certain investor contributions in an earlier period than that in which the contribution was made, and may result in an overstatement of those investors' account balances (and an understatement of all other investors' balances). For example, Kathy Ranz contributed $50,000 to the fund on August 22, 2002, but her investor account statement shows the contribution was made July 1, 2002. Attached as Exhibit 7 to this Declaration is a copy of Ranz's 2002 statement and a purchase transmittal from Sterling Trust Company dated August 22, 2002 that was provided to me by the Securities and Exchange Commission. (FAHEY-SEC-3491-92.) Similarly, Tadashi Koga contributed $100,000 on December 21, 2004, but his investor account statement shows the contribution was made in the third quarter of 2004. Attached as Exhibit 8 to this Declaration is a copy of Koga's 2004 statement and a check dated December 21, 2004 that was provided to me by the Securities and Exchange Commission. (FAHEY-SEC-3102, 3111.)

17. Additionally, several of the investor account statements show that a contribution was made, but the fund failed to account for the contribution. For example, investor account statements show the following contributions were made: James Hirst (2Q06/ $3,141.33); James Hirst (2Q05/ $3,500); Thurman Hunt (3Q04/$40,000); Per Madsen (2Q06/$128,682.59); and Per Madsen (2Q05/ $4,500). Attached as Exhibit 9 to this Declaration are the relevant statements for these investors that were provided to me by the Securities and Exchange Commission. (FAHEY-SEC-2994-95, 3026, 3115-116.) The fund failed, however, to include these contributions in the ending balances, resulting in incorrect performance calculations and profit and/or loss distributions.

18. Conversely, the fund also failed to account for certain instances where investors withdrew money from their accounts. For example, the fund's bank statements show the following withdrawals were made: Jacobus Hey (2Q06/ $8,000); Misti Covitz (1/2/06/ $7,500); Misti Covitz (3/30/06/ $7,500); and Misti Covitz (9/27/06/ $7,500). The fund failed, however, to include these withdrawals in these investors' ending balances, resulting in incorrect performance calculations and profit and/or loss contributions. Attached as Exhibit 10 to this Declaration are copies of the relevant investor account statements and bank statements which were provided to me by the Securities and Exchange Commission. (FAHEY-SEC-2328, 2844; BOA 627, 683, 705, 778.)

19. Several of the fund's investor account statements are inconsistent with each other, demonstrating that the fund's record-keeping and reporting was inaccurate. For example, the fund's descriptions of the investments in which it reported gains are not consistent between investors. While the fund reported gains in "Dollar Hedge v. Euro" for the three months ended March 31, 2006 to Sandra Kasky-Button, Thurman Hunt, and Anna Marie Ketelsen, it reported a gain in "EURO FX + Gold" during the same period to Kathy Ranz. Attached as Exhibit 11 to this Declaration are copies of the 2006 investor account statements for Sandra Kasky-Button, Thurman Hunt, Anna Marie Ketelsen, and Kathy Ranz that were provided to me by the Securities and Exchange Commission. (FAHEY-SEC-1683, 3070, 3024, 3061.)

20. Additionally, several of the investor account statements contained inconsistencies between reporting periods, further demonstrating that the fund's record-keeping and reporting was inaccurate. For example:

- Rose Button's 2006 beginning balance ($213,502.87) is inconsistent with her 2005 ending balance ($141,165.59), and no deposit is shown on either her 2005 or 2006 account statement;
- Jacobus Hey's 2005 beginning balance ($50,217.95) is inconsistent with his 2004 ending balance ($77,217.95), and no withdrawal is shown between 4Q04 and 1Q05 on his 2004 or and 2005 account statements;
- James Hirst's 2006 beginning balance ($38,250.54) is inconsistent with his 2005 ending balance ($34,152.26), and no deposit is shown between 4Q05 and 1Q06 on his 2005 and 2006 account statements;

1  • James Hirst's 2005 rate of return (30.25%) is inaccurate based on the change in his account
2    balance from $26,040.64 to $34,152.26; and
3  • Catherine O'Riley's 2006 beginning balance ($97,347.16) is inconsistent with her 2005
4    ending balance ($144,320.35), and no withdrawal is shown on either her 2005 or 2006
5    account statement.

Attached as Exhibit 12 to this Declaration are copies of the relevant account statements that were provided to me by the Securities and Exchange Commission. (FAHEY-SEC-2150-51, 2845-46, 2994-95, O'Riley 01177, O'Riley 01187.)

21. Additionally, information included on some investor statements did not pertain to that particular investor, further demonstrating the inaccuracy of the fund's record keeping and reporting. For example, the statement for Thurman Hunt shows that he purchased 13.87 units of the fund on March 31, 2003 for $138,700. Attached as Exhibit 13 to this Declaration is a copy of Thurman Hunt's 2005 investor account statement that was provided to me by the Securities and Exchange Commission. (FAHEY-SEC-3025.) The 2005 statements for Sandra Kasky-Button and Sonya Button for 2005 similarly show they purchased 13.87 units on March 31, 2003, but those purchases are inconsistent with the activities and balances for their accounts. Attached as Exhibit 14 to this Declaration is a copy of the 2005 statements for Sandra Kasky-Button and Sonya Button that were provided to me by the Securities and Exchange Commission. (FAHEY-SEC-3062, 3066.)

22. Additionally, while the fund included tax identification numbers for some investors on their account statements, it did not include it for all investors. For example, the fund did not include tax identification numbers for the following individuals: Lawrence Sanders, Joseph Barron, Yancey Wade, Thomas Walsh, Jacobus Hey, Sandra Kasky-Button, Tadashi Koga Revocable Living Trust, and Carol Merlo. Attached as Exhibit 15 to this Declaration are copies of investor account statements for the above-identified individuals which were provided to me by the Securities and Exchange Commission. (SANDERS-SEC-8, FAHEY-SEC-808, 1928, 1950, 2844, 3061, 3102, 3255.) Also, for the same account number, the fund showed different tax identification numbers on statements for different periods. For example, the last four digits of the tax identification number on Rose Marie Button's 2006 statement for her IRA account is 2747, while the last four digits on her 2005 statement

for the same account is 5756. (FAHEY-SEC-2510-51.) This is improper because the inaccurate record-keeping may lead to mistakes on tax statements and incorrect profit and/or loss distributions.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 17, 2007 at Lafayette, California.

*H. Gifford Fong*

H. Gifford Fong