1 | HELANE L. MORRISON (Cal. Bar No. 127752)
MARK P. FICKES (Cal. Bar No. 178570)
2 |   (fickesm@sec.gov)
ERIN E. SCHNEIDER (Cal. Bar No. 216114)
3 |   (schneidere@sec.gov)

4 | Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
5 | 44 Montgomery Street, Suite 2600
San Francisco, California 94104
6 | Telephone: (415) 705-2500
Facsimile: (415) 705-2501

7

8

9

10 | UNITED STATES DISTRICT COURT

11 | NORTHERN DISTRICT OF CALIFORNIA

12 | SAN FRANCISCO DIVISION

13

14 | SECURITIES AND EXCHANGE COMMISSION,    Case No. C-07-4975 (WHA)

15 |          Plaintiff,

16 |     vs.                                DECLARATION OF ERIN E. SCHNEIDER
IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION AND
17 | ALEXANDER JAMES TRABULSE,            OTHER ANCILLARY RELIEF

18 |          Defendant,

19 |     and

20 | FAHEY FUND, L.P., FAHEY FINANCIAL
GROUP, INC., INTERNATIONAL TRADE &
21 | DATA, and ITD TRADING,

22 |          Relief Defendants.

23

24 |     I, ERIN E. SCHNEIDER, DECLARE:

25 |     I am an attorney duly admitted to practice in the State of California. If called as a witness, I

26 | could and would competently testify as follows:

27 |     1.    I am a staff attorney in the San Francisco Regional Office of the Securities and Exchange

28 | Commission ("Commission"). I am one of the attorneys with primary responsibility for the

1  Commission's investigation in the above-entitled matter before the Commission filed its complaint.  I

2  have custody of the Commission's investigation file concerning this matter, including the documents

3  described below.

4      2.      According to the California Secretary of State Business Portal webpage at

5  http://kepler.sos.ca.gov/corpdata/ShowLpllcAllList?QueryLpllcNumber=199721900021, Fahey

6  Fund, L.P. ("Fahey Fund") is a limited partnership that has been registered in the State of California

7  since August 6, 1997.  Attached as Exhibit 1 to this Declaration is a true and correct copy of that

8  webpage.

9      3.      On or about August 6, 2007, pursuant to a request by the Commission's staff, the

10  Nevada Secretary of State produced the articles of incorporation and other documents for Fahey

11  Financial Group, Inc.  Attached as Exhibit 2 to this Declaration is a true and correct copy of those

12  documents.  (NEV 000001-17.)  Those documents reflect that Fahey Financial Group, Inc. (formerly

13  known as Delta Consulting Ltd.), was established as a Nevada corporation on or about April 5, 1999.

14  (NEV 000004, NEV 000007.)

15      4.      On or about June 20, 2007, pursuant to a subpoena issued by the Commission's staff,

16  Bank of America produced a signature card for a bank account in the name of Fahey Financial

17  Group, Inc.  Attached as Exhibit 3 to this Declaration is a true and correct copy of that signature card.

18  (BOA 1002.)  According to that signature card, Alexander J. Trabulse ("Trabulse") is the President

19  and Chief Executive Officer of Fahey Financial Group, Inc.

20      5.      On or about December 15, 2006, pursuant to a request by the Commission's staff,

21  A.G. Edwards & Sons, Inc. ("AG Edwards") produced a partnership agreement and one amendment

22  to the partnership agreement for International Trade & Data.  Attached as Exhibit 4 to this

23  Declaration is a true and correct copy of those documents.  (AGE ITD 000025 – 32.)  According to

24  the partnership agreement, International Trade & Data originally was formed as a partnership in or

25  about March 1985 between Trabulse and another individual for the purpose of conducting a general

26  commodities and securities business.  (AGE ITD 000025.)  Trabulse was the Second General Partner.

27  (AGE ITD 000027.)  According to the amendment to the partnership agreement, Trabulse in or about

28  April 1987 became the sole owner of International Trade & Data.  (AGE ITD 000032.)

1      6.     On or about December 22, 2006, pursuant to a subpoena issued by the Commission's

2    staff, Iowa Grain Company produced a partnership agreement for ITD Trading. Attached as Exhibit

3    5 to this Declaration is a true and correct copy of that partnership agreement. (Partnership Agreement

4    for ITD D.O. Connor and J. Trabulse, pp. 1-4.) According to the partnership agreement, ITD Trading

5    was formed as a general partnership between Trabulse and Douglas O'Connor ("O'Connor") on or

6    about July 13, 1999. (Id., p. 1.) The purpose of the partnership was to conduct a general commodity

7    business. (Id., p.1) Trabulse was the First General Partner and was responsible for managing the

8    partnership. (Id., pp. 1-2.)

9      7.     On or about June 1, 2007, the staff of the Commission took the sworn testimony of

10   O'Connor pursuant to an investigative subpoena. Attached as Exhibit 6 is a true and correct copy of

11   excerpts of the transcript of that testimony. According to O'Connor, he signed a partnership

12   agreement for ITD Trading sometime in October 2002. (O'Connor Tr. at 64:1-5.) According to

13   O'Connor, he and Trabulse were not partners until 2002. (O'Connor Tr. at 66:17-67:1.)

14      8.     On or about January 29, 2007, the Commission's staff issued subpoenas to Trabulse,

15   Fahey Fund, L.P., Fahey Hedge Fund. L.P., Fahey Financial Group, Inc., and International Trade &

16   Data which required, among other things, the production of statements for all bank and brokerage

17   accounts (both domestic and overseas) from November 1, 2005 through the date of the subpoena. On

18   or about February 14, 2007, Trabulse produced bank statements from: Bank of the West (for two

19   accounts in the name of A James Trabulse, one account in the name of Fahey Hedge Fund/Fahey

20   Fund, one account in the name of International Trade & Data, and one account in the name of ITD

21   Trading); and Bank of America (for two accounts in the name of Fahey Financial Group, Inc.).

22   Attached as Exhibit 7 to this Declaration are true and correct copies of the December 2006 statements

23   produced by Trabulse.    (FAHEY-SEC-343, 480, 554, 624, 741, 4119, 4063-64.)

24      9.     On or about March 9, 2007, Trabulse's counsel represented to the Commission's staff

25   that Fahey Fund had three foreign bank accounts: one at BNP Paribas (France) in the name of

26   Monsieur Alexander Trabulse, one at Banco Internacional do Funchal (Portugal) in the name of

27   Stockport Trading International, SA, and one at Bank of Hawaii (Saipan) in the name of AMI Group.

28

1  As of the date of this Declaration, Trabulse has not produced documents relating to these bank
2  accounts.

3      10.    The Commission's staff issued subpoenas to Bank of the West which required, among
4  other things, the production of bank statements and copies of deposits and withdrawals for bank
5  accounts maintained by or on behalf of Fahey Hedge Fund, L.P., International Trade & Data, ITD
6  Trading, and Alexander James Trabulse. On or about February 20, 2007, Bank of the West produced
7  December 2006 bank statements for accounts not previously identified by Trabulse including
8  accounts in the name of Lawrence Sanders/James Trabulse; James Trabulse, DBA Second Page
9  Books; and Magdelain Preservation Foundation. Attached as Exhibit 8 to this Declaration are true
10  and correct copies of these December 2006 statements. (BOW 2388, BOW 2669, and BOW 2783.)

11      11.    The Commission's staff issued subpoenas to Bank of America which required, among
12  other things, the production of bank statements and copies of deposits and withdrawals for bank
13  accounts maintained by or on behalf of Fahey Financial Group, Inc. On or about February 22, 2007,
14  Bank of America produced statements relating to the same two accounts for which Trabulse
15  previously produced documents.

16      12.    In or about July 2007, pursuant to a request by the Commission's staff, BNP Paribas
17  produced the December 2006 statement for the account in the name of Monsieur Alexander Trabulse
18  previously identified by Trabulse's counsel. Attached as Exhibit 9 to this Declaration is a true and
19  correct copy of that statement. (French Version/ 00122 – 00124.)

20      13.    On or about September 17, 2007, LIS-Translations, Inc. provided to the Commission's
21  staff a translation of Trabulse's BNP Paribas December 2006 bank statement. Attached as Exhibit 10
22  to this Declaration is a true and correct copy of the translated statement. (English Version/ 00122 –
23  00124.) According to this statement, Trabulse had a negative balance as of December 31, 2006 of €
24  (9,753.95.)

25      14.    According to Bloomberg, the exchange rate for Euros to U.S. dollars at 12/29/2006
26  (the last trading day of 2006) was 1.3199. Attached as Exhibit 11 to this Declaration is a print-out
27  from Bloomberg. Accordingly, as of December 31, 2006, € (9,753.95) was $(12,874.24).

28

15.    The following chart summarizes the December 2006 bank statements produced by Trabulse, Bank of the West, and BNP Paribas:

| Bank | Account Name | Balance as of 12/31/2006 |
|------|-------------|--------------------------|
| Bank of the West | Fahey Hedge Fund, L.P. | $2,090,429.32 |
| Bank of the West | International Trade & Data | $11,478.50 |
| Bank of the West | ITD Trading | $44,447.53 |
| Bank of the West | Lawrence Sanders/James Trabulse | $541.88 (as of 1/9/2007) |
| Bank of the West | James Trabulse DBA Second Page Books | $232.53 |
| Bank of the West | Magdelain Preservation Foundation | $486.20 |
| Bank of the West | A James Trabulse | $1,764.84 (as of 1/9/2007) |
| Bank of the West | A James Trabulse | $1,674.68 (as of 1/9/2007) |
| Bank of America | Fahey Financial Group, Inc. | $845,929.84 |
| Bank of America | Fahey Financial Group, Inc. | $64,715.95 |
| BNP Paribas | Alexander Trabulse | $(12,874.24) / € (9,753.95) |
| **Total** | | **$3,048,927.03** |

16.    On or about February 21, 2007, Trabulse produced brokerage statements from: A.G. Edwards, Iowa Grain Company, and Canaccord Capital Corporation. The brokerage statements from A.G. Edwards and Iowa Grain Company were comprised both of daily statements and monthly statements which showed the profit and/or loss for each period.

17.    The Commission's staff requested from A.G. Edwards, among other things, the production of brokerage statements for any accounts maintained by or on behalf of Fahey Hedge Fund, L.P., Fahey Fund, L.P., Fahey Financial Group, Inc., International Trade & Data, and Alexander James Trabulse. A.G. Edwards found no accounts in the name of Fahey Fund, Fahey Hedge Fund, Fahey Financial Group, Inc., or Alexander James Trabulse. On or about March 9, 2007, A.G. Edwards produced a December 2006 statement for an account in the name of International Trade & Data which detailed stock trading activity. Attached as Exhibit 12 to this Declaration is a true and correct copy of that statement. (AGE ITD 001717-19.) According to that statement, the

1    total account value as of December 31, 2006 was $612,969.91. Also according to that statement,

2    International Trade & Data's address was 747 Lewelling Blvd., Suite 40, San Leandro, California.

3         18.    On or about September 19, 2007, A.G. Edwards produced a December 2006 statement

4    for the same account in the name of International Trade & Data which detailed futures trading

5    activity. Attached as Exhibit 13 to this Declaration is a true and correct copy of that statement.

6    (AGE-00003-11.) According to that statement, the net liquidating value of the account as of

7    December 31, 2006 was $6,224,122.68. (AGE-00010.)

8         19.    The Commission's staff issued subpoenas to Iowa Grain Company which required,

9    among other things, the production of brokerage statements for any accounts maintained by or on

10   behalf of Fahey Hedge Fund, L.P., Fahey Fund, L.P., Fahey Financial Group, Inc., International

11   Trade & Data, ITD Trading, or Alexander James Trabulse. On or about December 22, 2006, Iowa

12   Grain Company produced documents relating to accounts in the name of ITD Trading. On or about

13   January 9, 2007, Iowa Grain Company produced documents relating to an account in the name of

14   Douglas O'Connor/James Trabulse. On or about March 12, 2007, Iowa Grain Company produced

15   December 2006 statements for accounts in the name of ITD Trading and Douglas O'Connor/James

16   Trabulse. Attached as Exhibit 14 is a true and correct copy of these statements. (IWG 00414 – 416,

17   424, 426, 428, 430, 432.) According to these statements, as of December 31, 2006, ITD Trading had

18   one account with a market value of $45,732.22. (IWG 000416.) Also according to these statements,

19   ITD Trading's address was 747 Lewelling Blvd., Suite 40, San Leandro, California. (IWG 414-415.)

20   Iowa Grain could find no data for the other accounts in the name of ITD Trading or Douglas

21   O'Connor/James Trabulse. (IWG 000424, 426, 428, 430, 432.)

22        20.    The Commission's staff requested from Canaccord Capital Corporation, among other

23   things, the production of brokerage statements for any accounts maintained by or on behalf of Fahey

24   Hedge Fund, L.P., Fahey Fund, L.P., Fahey Financial Group, Inc., International Trade & Data, ITD

25   Trading, or Alexander James Trabulse. On or about December 7, 2006, Canaccord Capital

26   Corporation produced a March 2006 statement for an account in the name of Fahey Fund. Attached

27   as Exhibit 15 to this Declaration is a true and correct copy of that statement (CNC 000024.) That

28   statement reflects that Fahey Fund, L.P. owns 75,000 shares in Century Mng Corp. (CMNZF.) (Id.)

1    On October 11, 2007, I spoke with Bruce Maranda, the Chief Compliance Officer of Canaccord

2    Capital Corporation.  He informed me that Canaccord Capital Corporation at this time could not

3    produce the December 2006 statement for this account due to technical difficulties.  However, Mr.

4    Maranda informed me that as of December 31, 2006, the only securities in the account were the same

5    75,000 shares in Century Mng Corp.  According to

6    http://www.bloomberg.com/apps/cbuilder?ticker1=cmnzf, the price of Century Mng Corp stock as of

7    December 29, 2006 was $.595.  Accordingly, the value of this account at December 31, 2006 was

8    approximately $44,625.

9        21.  On or about March 8, 2007, Canaccord Capital Corporation produced the December

10   2006 statement for an account in the name of A James Trabulse.  Attached as Exhibit 16 to this

11   Declaration is a true and correct copy of that statement.  (CNC 000053-56.)  That statement reflects

12   an account total of $29,175.40 as of December 29, 2006.  (CNC 000053.)

13       22.  The following chart summarizes the December 2006 statements produced by A.G.

14   Edwards, Iowa Grain Company and Canaccord Capital Corporation, as well as the value of 75,000

15   shares of Century Mng Corp as of December 31, 2006:

| Brokerage | Entity | 12/31/2006 |
|---|---|---|
| A.G. Edwards (Futures) | International Trade & Data | $6,224,122.68 (Net Liquidating Value) |
| A.G. Edwards/ (Stock) | International Trade & Data | $612,969.93 |
| Iowa Grain Company | ITD Trading | $45,732.22 (Account Value at Market) |
| Iowa Grain Company | ITD Trading | No data found for this request |
| Iowa Grain Company | ITD Trading | No data found for this request |
| Iowa Grain Company | Douglas O'Connor/James Trabulse | No data found for this request |
| Iowa Grain Company | ITD Trading | No data found for this request |
| Iowa Grain Company | ITD Trading | No data found for this request |
| Canaccord Capital | A James Trabulse | $29,175.40 (Account Total) |
| Canaccord Capital | Fahey Fund, L.P. | 75,000 shares of Century Mining Corp at $.595 is $44,625 |
| **Total** | | **$6,956,625.23** |

SCHNEIDER DECLARATION IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION,
C-07-4975 (WHA)

23.    On or about February 14, 2007, pursuant to subpoenas issued by the Commission's staff to Trabulse, Fahey Hedge Fund, L.P., Fahey Fund, L.P., Fahey Financial Group, Inc., and International Trade & Data, Trabulse produced investor account statements for the period covering 1998 through December 31, 2006.  Attached as Exhibit 17 to this Declaration is a true and correct copy of 2006 statements for two investors that were produced by Trabulse.  (FAHEY-SEC-1168, 1594.)  I reviewed the investor account statements produced by Trabulse.  Those statements consisted of a spreadsheet that typically contained columns titled:  "Trade(s)", "Trade Description," or "Investment," "Gain/Loss," "Deposits Withdrawals," "Net Gain/Loss," and "Cumul. Acct Bal."  The "Trade(s)," "Trade Description" or "Investment" columns typically contained descriptions of stocks, options, futures, derivatives, or foreign currency.  None of the "Trade(s)," "Trade Description" or "Investment" columns described investments in real estate, jewelry, or rugs.

24.    The following chart was prepared by totaling the "Cumul. Acct Bal" as of December 31, 2006 for each of the investor account statements produced by Trabulse:

| Investor | Cumul. Acct Bal | Bates Sequence | Bates Number |
|---|---|---|---|
| R.A. | $209,254.58 | FAHEY-SEC | 750 |
| J.P.B. | $498,510.66 | FAHEY-SEC | 752 |
| J.E.B. | $1,236,073.45 | FAHEY-SEC | 805 |
| C.S.B.-B. Living Trust | $754,601.73 | FAHEY-SEC | 833 |
| S.C. | $4,204.96 | FAHEY-SEC | 835 |
| C.C. | $228,205.00 | FAHEY-SEC | 843 |
| M.I.C., DPM | $269,044.75 | FAHEY-SEC | 848 |
| M.C. | $253,497.98 | FAHEY-SEC | 873 |
| D.D. | $125,542.41 | FAHEY-SEC | 880 |
| D.-S. Revocable Inter Vivos Trust | $885,729.88 | FAHEY-SEC | 886 |
| B.R.D. | $301,362.03 | FAHEY-SEC | 909 |
| D.J.E. | $162,739.50 | FAHEY-SEC | 915 |
| M.J.E. | $28,138.28 | FAHEY-SEC | 918 |
| K.H. | $602,873.27 | FAHEY-SEC | 932 |
| G.S.F. | $144,983.18 | FAHEY-SEC | 935 |
| E.F. | $90,732.91 | FAHEY-SEC | 971 |
| A.J.F. | $271,203.07 | FAHEY-SEC | 981 |
| C.G. | $745,310.77 | FAHEY-SEC | 993 |
| G.G. | $79,220.36 | FAHEY-SEC | 994 |
| K.G. | $834,635.34 | FAHEY-SEC | 1012 |
| S.G.G. | $214,925.21 | FAHEY-SEC | 1033 |

| Investor | Cumul. Acct Bal | Bates Sequence | Bates Number |
|---|---|---|---|
| S.C.G. | $206,883.42 | FAHEY-SEC | 1039 |
| H.H. | $623,507.63 | FAHEY-SEC | 1046 |
| J.W.H., Jr. | $57,183.78 | FAHEY-SEC | 1083 |
| S.H. | $337,958.44 | FAHEY-SEC | 1096 |
| D.J.H. | $481,620.52 | FAHEY-SEC | 1128 |
| K.H. | $1,794,839.75 | FAHEY-SEC | 1168 |
| I.R.C. | $172,558.99 | FAHEY-SEC | 1173 |
| P.J. and E.J. | $844,403.07 | FAHEY-SEC | 1178 |
| P.J. and E.J. | $176,019.98 | FAHEY-SEC | 1217 |
| M.E.B. and S.K.-B. | $832,121.17 | FAHEY-SEC | 1218 |
| L.H.K. | $49,985.82 | FAHEY-SEC | 1223 |
| E.K. | $76,049.39 | FAHEY-SEC | 1231 |
| J.K. and/or R.A. | $113,890.91 | FAHEY-SEC | 1239 |
| J.K. and M.K. | $71,324.82 | FAHEY-SEC | 1245 |
| B.L. | $91,637.35 | FAHEY-SEC | 1279 |
| K.M.L. | $23,029.17 | FAHEY-SEC | 1281 |
| J.P.L. | $137,794.90 | FAHEY-SEC | 1304 |
| E.C.L. | $79,220.36 | FAHEY-SEC | 1311 |
| W.M.L. | $487,114.93 | FAHEY-SEC | 1317 |
| P.M. | $1,701,810.46 | FAHEY-SEC | 1346 |
| A.M. | $92,032.21 | FAHEY-SEC | 1382 |
| A.G.M. | $15,352.78 | FAHEY-SEC | 1401 |
| S.M. | $58,903.43 | FAHEY-SEC | 1407 |
| U.M. | $88,769.86 | FAHEY-SEC | 1418 |
| V.M. | $50,946.47 | FAHEY-SEC | 1435 |
| J.A.M. | $66,443.15 | FAHEY-SEC | 1447 |
| K.P.M. | $239,778.87 | FAHEY-SEC | 1453 |
| M.C.M. | $426,808.18 | FAHEY-SEC | 1476 |
| S.A.M. | $50,946.47 | FAHEY-SEC | 1481 |
| P.J.M. | $1,978,415.41 | FAHEY-SEC | 1493 |
| M.I.I. Profit Sharing Plan H.C., Trustee | $212,884.84 | FAHEY-SEC | 1514 |
| M.I.I. Profit Sharing Plan C.H., Trustee | $213,789.05 | FAHEY-SEC | 1515 |
| M.I.I. Profit Sharing Plan H.C., Trustee | $4,321.62 | FAHEY-SEC | 1516 |
| M.I.I. Profit Sharing Plan H.C., Trustee | $3,692.20 | FAHEY-SEC | 1517 |
| M.I.I. Profit Sharing Plan H.C., Trustee | $3,335.10 | FAHEY-SEC | 1518 |
| R.D.M. | $174,772.68 | FAHEY-SEC | 1549 |
| R.A.N., TIC | $492,016.84 | FAHEY-SEC | 1559 |
| H.P.N. and C.D. | $38,381.96 | FAHEY-SEC | 1574 |
| C.N. | $94,823.45 | FAHEY-SEC | 1579 |
| J.F.N. | $158,876.78 | FAHEY-SEC | 1594 |

SCHNEIDER DECLARATION IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION,
C-07-4975 (WHA)

| Investor | Cumul. Acct Bal | Bates Sequence | Bates Number |
|---|---|---|---|
| E.A.O. | $56,711.14 | FAHEY-SEC | 1603 |
| J.C. or C.O. | $153,527.83 | FAHEY-SEC | 1628 |
| J.O. | $2,350,669.00 | FAHEY-SEC | 1630 |
| D.C.P. | $80,151.88 | FAHEY-SEC | 1673 |
| J.P. and K.P. | $79,220.36 | FAHEY-SEC | 1677 |
| K.R. | $91,408.48 | FAHEY-SEC | 1683 |
| N.R. | $371,782.28 | FAHEY-SEC | 1705 |
| L.R., MD | $223,827.03 | FAHEY-SEC | 1719 |
| M.R. and S.R. | $333,216.80 | FAHEY-SEC | 1724 |
| K.R. | $145,420.47 | FAHEY-SEC | 1737 |
| L.S. | $35,006.26 | FAHEY-SEC | 1742 |
| St. P.C. Society | $132,283.53 | FAHEY-SEC | 1752 |
| D.G.S., TIC | $298,476.78 | FAHEY-SEC | 1760 |
| M.J.S. | $325,854.90 | FAHEY-SEC | 1783 |
| S.P.S. and M.R.S. | $186,593.59 | FAHEY-SEC | 1797 |
| S.I.E.S.I. | $1,014,680.90/ € 768,755.89 | FAHEY-SEC | 1801 |
| D.S. | $30,498.02 | FAHEY-SEC | 1803 |
| D.-S. Revocable Inter Vivos Trust | $285,793.71 | FAHEY-SEC | 1826 |
| E.S. | $33,637.68 | FAHEY-SEC | 1833 |
| R.J.S. | $1,078,089.81 | FAHEY-SEC | 1846 |
| R.J.S. and J.M.S. | $430,112.23 | FAHEY-SEC | 1878 |
| A.S. and C.S. | $69,032.30 | FAHEY-SEC | 1897 |
| S.V. | $208,940.74 | FAHEY-SEC | 1904 |
| T. Family Trust, Dec. 12, 1984 | $2,302,917.46 | FAHEY-SEC | 1915 |
| B.S.V. | $103,391.61 | FAHEY-SEC | 1923 |
| Y.O.W. | $60,430.90 | FAHEY-SEC | 1928 |
| H.J.W. and E.A.W. | $868,339.14 | FAHEY-SEC | 1931 |
| T.P.W. | $291,440.44 | FAHEY-SEC | 1950 |
| R.A.W. | $48,179.11 | FAHEY-SEC | 1995 |
| H.W. | $446,214.40 | FAHEY-SEC | 2004 |
| D.W. | $25,177.23 | FAHEY-SEC | 2013 |
| F.W. | $158,440.72 | FAHEY-SEC | 2014 |
| M.P. Foundation | $1,013,763.53 | FAHEY-SEC | 2020 |
| D.A.A. | $26,779.25 | FAHEY-SEC | 2034 |
| L.B. | $51,585.35 | FAHEY-SEC | 2076 |
| C.B., Educational Trust | $120,047.76 | FAHEY-SEC | 2103 |
| J.B., Educational Trust | $302,727.23 | FAHEY-SEC | 2108 |
| M.E.B. | $294,771.87 | FAHEY-SEC | 2145 |
| R.M.B. | $294,771.87 | FAHEY-SEC | 2150 |
| The C. Family Trust, July 19, 2002 | $127,165.45 | FAHEY-SEC | 2207 |
| D.A.C., Educational Trust | $41,525.92 | FAHEY-SEC | 2228 |
| D.A.C., Educational Trust | $32,412.53 | FAHEY-SEC | 2230 |
| B.M.C. | $167,628.03 | FAHEY-SEC | 2242 |
| H.M.C. | $310,558.05 | FAHEY-SEC | 2253 |

SCHNEIDER DECLARATION IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION,
C-07-4975 (WHA)

| Investor | Cumul. Acct Bal | Bates Sequence | Bates Number |
|---|---|---|---|
| The C. Family Trust, Nov. 19, 1991 | $598,548.85 | FAHEY-SEC | 2286 |
| M.C. | $1,263,590.64 | FAHEY-SEC | 2328 |
| D.D. | $293,306.84 | FAHEY-SEC | 2367 |
| D.D. | $34,399.85 | FAHEY-SEC | 2446 |
| B.R.D. | $799,752.35 | FAHEY-SEC | 2474 |
| J.D. | $112,212.49 | FAHEY-SEC | 2540 |
| R.V.D. Revocable Living Trust | $75,254.66 | FAHEY-SEC | 2638 |
| G.S.F. | $53,661.88 | FAHEY-SEC | 2678 |
| G.S.F. | $284,533.03 | FAHEY-SEC | 2681 |
| K.A.F. | $223,382.99 | FAHEY-SEC | 2716 |
| J.G. | $208,940.74 | FAHEY-SEC | 2751 |
| M.D.G. | $252,562.63 | FAHEY-SEC | 2770 |
| M.D.G. and P.C.G. Trust, March 02, 1987 | $178,909.96 | FAHEY-SEC | 2790 |
| K.T.H. | $19,271.64 | FAHEY-SEC | 2830 |
| C.Y.H. | $19,271.64 | FAHEY-SEC | 2833 |
| S.H.H. | $19,271.64 | FAHEY-SEC | 2836 |
| J.P.H. | $79,985.94 | FAHEY-SEC | 2844 |
| K.H. | $221,301.96 | FAHEY-SEC | 2857 |
| R.H. | $39,368.67 | FAHEY-SEC | 2869 |
| E.H. | $169,184.52 | FAHEY-SEC | 2879 |
| J.H.H. | $353,572.19 | FAHEY-SEC | 2927 |
| J.H.H. | $52,810.45 | FAHEY-SEC | 2994 |
| T.E.H. | $702,692.67 | FAHEY-SEC | 3024 |
| S.K.-B. | $24,750.08 | FAHEY-SEC | 3061 |
| S.K. | $20,187.67 | FAHEY-SEC | 3063 |
| S.K. Educational Trust Fund | $4,976.59 | FAHEY-SEC | 3065 |
| A.M.K. | $207,133.45 | FAHEY-SEC | 3070 |
| T.K.K. and H.K. Revocable Living Trust 1995 | $398,518.97 | FAHEY-SEC | 3100 |
| P.M. | $44,041.17 | FAHEY-SEC | 3115 |
| P.J.M. | $617,405.05 | FAHEY-SEC | 3211 |
| C.M.M. | $7,365.75 | FAHEY-SEC | 3255 |
| W.L.M. | $12,626.01 | FAHEY-SEC | 3256 |
| R.D.M. | $176,521.49 | FAHEY-SEC | 3268 |
| D.T.O. | $78,457.63 | FAHEY-SEC | 3296 |
| E.A.O. | $72,055.60 | FAHEY-SEC | 3325 |
| C.M.O. | $134,401.97 | FAHEY-SEC | 3342 |
| C.M.O. | $487,929.79 | FAHEY-SEC | 3365 |
| F.P. | $50,648.90 | FAHEY-SEC | 3400 |
| D.C.P. | $535,271.36 | FAHEY-SEC | 3420 |
| D.C.P. | $82,915.18 | FAHEY-SEC | 3425 |
| E.A.P. Educational Trust, Aug. 1, 2002 | $42,049.61 | FAHEY-SEC | 3470 |

| Investor | Cumul. Acct Bal | Bates Sequence | Bates Number |
|---|---|---|---|
| R.P. Educational Trust, Aug. 1, 2006 | $6,903.23 | FAHEY-SEC | 3478 |
| R. Living Trust | $167,522.39 | FAHEY-SEC | 3479 |
| K.R. | $490,779.28 | FAHEY-SEC | 3487 |
| L.R., MD Pension Plan | $302,356.81 | FAHEY-SEC | 3519 |
| O.R.R., MD - A Sole Proprietorship 401(k) Profit Sharing Plan | $314,018.83 | FAHEY-SEC | 3538 |
| C.R. | $4,429.54 | FAHEY-SEC | 3563 |
| S.L.R. | $125,782.28 | FAHEY-SEC | 3570 |
| K.R. | $54,895.47 | FAHEY-SEC | 3586 |
| K.R. | $38,518.56 | FAHEY-SEC | 3590 |
| D.G.S. | $262,603.01 | FAHEY-SEC | 3637 |
| M.J.S. | $96,645.22 | FAHEY-SEC | 3656 |
| M.R.S. | $863,670.93 | FAHEY-SEC | 3671 |
| S.P.S. | $279,242.40 | FAHEY-SEC | 3728 |
| S.P.S. | $6,289.11 | FAHEY-SEC | 3737 |
| M.R.S. | $12,502.02 | FAHEY-SEC | 3739 |
| P.J.S., Trustee | $126,748.99 | FAHEY-SEC | 3762 |
| S.B.S. | $52,959.27 | FAHEY-SEC | 3769 |
| V.S. | $45,556.36 | FAHEY-SEC | 3786 |
| R.J.S. Defined Benefit Pension PL8 Trust | $978,088.00 | FAHEY-SEC | 3797 |
| S. Family Revocable Trust - 13, Nov. 2001 | $400,173.43 | FAHEY-SEC | 3836 |
| W.W. and C.W. Living Trust | $44,922.24 | FAHEY-SEC | 3856 |
| Y.O.W. | $68,665.00 | FAHEY-SEC | 3862 |
| M.M.W. | $363,413.76 | FAHEY-SEC | 3881 |
| J.M.W. | $562,409.23 | FAHEY-SEC | 3913 |
| Y. Family Trust | $359,060.71 | FAHEY-SEC | 3938 |
| Total | $50,949,593.42 | | |

25.    On or about April 26, 2007, the staff of the Commission took the sworn testimony of Trabulse pursuant to an investigative subpoena. Attached as Exhibit 18 is a true and correct copy of the transcript of that testimony. (Trabulse Tr. at 4:1-164:21.) Trabulse refused to answer the staff's questions about where the fund maintained bank and brokerage accounts. (Trabulse Tr. at 68:19-69:11, 75:12-76:4.) Trabulse also refused to answer the Commission staff's questions about how the fund calculated its profits, gains, and losses. (Trabulse Tr. at 29:24-30:13, 36:24-37:13, 42:8-22, 49:22-50:11.) Trabulse also refused to answer the Commission staff's questions about how he calculated his compensation. (Trabulse Tr. at 52:24-57:22.) Trabulse also refused to answer the staff's questions about how the fund's valued its assets. (Trabulse Tr. at 30:19-23, 37:19-23, 43:3-7.)

1    26.    On or about July 13, 2007, Trabulse, Fahey Fund, L.P., and Fahey Financial Group,

2    Inc. through their counsel submitted a paper to the Commission's staff offering reasons why the staff

3    should decline to bring suit against them ("Wells Submission".)  Attached as Exhibit 19 to this

4    Declaration is a true and correct copy of their Wells Submission. The Wells Submission states that

5    Fahey Fund formerly was known as the Fahey Hedge Fund. (Wells Submission, p. 2.)  The Wells

6    Submission also states that Trabulse used a brokerage account in the name of International Trade &

7    Data to make trades for the Fahey Fund.  (Wells submission, p. 3.)  The Wells Submission also states

8    that ITD Trading was set up as a subsidiary of the fund. (Wells Submission, p. 4.)  The Wells

9    Submission also states that Trabulse runs the Fahey Fund almost entirely by himself.  (Wells

10   Submission, p. 4.)  The Wells Submission also states that although the fund's initial investments were

11   in stocks, commodities, and related financial products, the fund in recent years has invested in real

12   estate, jewelry, and rugs. (Wells Submission, p. 3-4.)  The Wells Submission also states that

13   Trabulse was not paid a regular salary, but instead drew expenses from the fund's accounts as

14   needed.  (Wells Submission, p. 9.)

15   27.    On or about April 20, 2007, the staff of the Commission took the sworn testimony of

16   David Hingston ("Hingston") pursuant to an investigative subpoena.  Attached as Exhibit 20 are true

17   and correct copies of excerpts of the transcript of that testimony.  Hingston testified that he invested

18   $20,000 sometime in 1998. (Hingston Tr. at 31:9-18.)

19   28.    On or about April 6, 2007, pursuant to a subpoena issued by the Commission's staff,

20   Hingston produced a letter dated November 20, 2000 which purports to be from James Trabulse,

21   Fund Manager and General Partner.  Attached as Exhibit 21 to this Declaration is a true and correct

22   copy of that letter. (FF-DJH 0089-90.)  Hingston testified that he received this document in the mail

23   from Trabulse. (Hingston Tr. at 58:1-59:4.)  The letter states that any investor who invested non-

24   IRA/401(k) or trust money had been journaled over to the Fahey Financial Group, Inc. (FF0DJH

25   0089.)  The letter further states that one of the reasons for this was that it would allow investors who

26   used their own private (non-IRA) funds to invest to defer taxes until their money was disbursed

27   (rather than paying taxes in the current year.) (Id.)  The letter further states that investors would

28

1  "have no real change in access to [their] money, safety, etc." and that the statements from Fahey

2  Financial Group, Inc. would "look nearly identical" to the ones investors had been receiving. (Id.)

3      29.    Hingston also produced an e-mail dated November 24, 2006 from Fund Manager

4  [bigcheese@faheyfund.com] to David Hingston. Attached as Exhibit 22 to this Declaration is a true

5  and correct copy of that e-mail. (FF-DJH 16-17.) Hingston testified that he received this e-mail from

6  Trabulse. (Hingston Tr. at 137:1-138:12, 141:23-142:10.) This e-mail reflects that Hingston asked

7  Trabulse for a "write-up about the fund, explaining how it works." (FF-DJH 16.) Trabulse

8  responded: "Well! I NEVER could get ANYONE in the 'Wall Street' crowd to see the sense of

9  what I was doing. . . . I won't comply with their requests, because they don't know how to evaluate a

10  hedge fund. You have had 10 years with me so there you go. If they doubt my honesty, then you

11  may cash out. Sorry if that stings, but I am not taking shit from financial planners." (Id.)

12      30.    On or about April 13, 2007, the staff of the Commission took the sworn testimony of

13  James Wojack ("Wojack") pursuant to an investigative subpoena. Attached as Exhibit 23 are true

14  and correct copies of excerpts of the transcript of that testimony. Wojack testified he initially

15  invested $25,000 in or about 2003. (Wojack Tr. at 21:10-22:2.) He testified he in or about March

16  2004 invested an additional $150,000. (Wojack Tr. at 41:6-18.) He further testified that he invested

17  the additional $150,000 in part because he had earned gains on his previous investment. (Wojack Tr.

18  at 61:16-62:13.)

19      31.    On or about April 12, 2007, pursuant to a subpoena issued by the Commission's staff,

20  Wojack produced a partnership agreement for Fahey Hedge Fund, L.P. Attached as Exhibit 24 to this

21  Declaration is a true and correct copy of that partnership agreement. (FF-JMW 42-50.) Wojack

22  testified he received the partnership agreement through the mail from the Fahey Fund. (Wojack Tr.

23  at 80:22-82:15.) The cover page of the partnership agreement states: "Rev Jan 2003." (FF-JMW

24  42.) The partnership agreement states the fund's principal place of business is 268 Bush Street, Suite,

25  San Francisco, CA, 94104. (FF-JMW-43.) The partnership agreement also states that the purpose of

26  the partnership was to use listed stock, futures, options, and index opportunities to gain consistent

27  compound rates of return. (FF-JMW 0043.) The partnership agreement also states that the Fahey

28  Hedge Fund would trade stocks, indexes, warrants, stock options, futures, forwards, commodities,

1  and similar financial instruments. (FF-JMW 0043.) The partnership agreement also states that

2  Trabulse is the General Partner of Fahey Fund (268 Bush Street, Suite 4232, San Francisco, CA

3  94104). (FF-JMW 44.) It also states that Trabulse has full and exclusive charge and control of the

4  management, conduct, and operation of the fund in all respects and in all matters. (FF-JMW 46.)

5  The partnership agreement further states that, for investors with more than $50,000, Trabulse was

6  entitled to twenty-five percent of the net profits of each investor. (FF-JMW 45.) It further states that

7  no partner was entitled to a salary. (FF-JMW 47.) The partnership agreement also states that net

8  profits and net losses would be determined by generally accepted accounting principles for each

9  accounting period. (FF-JMW 0046.) The partnership agreement also states that all funds not

10  otherwise invested shall be deposited in accounts in the name of the fund. (FF-JMW-0046.)

11      32.    Wojack also produced account statements and quarterly newsletters relating to his

12  investment. Attached as Exhibit 25 to this Declaration are true and correct copies of those account

13  statements and newsletters. (FF-JMW 1–35.) Wojack testified that these documents were statements

14  he received through the mail from the Fahey Fund regarding his investment. (Wojack Tr. at 15:23-

15  18:3.) Wojack further testified that he understood his statements showed his original investment, his

16  earnings for each quarter, and the ending amount he could withdraw. (Wojack Tr. at 21:8-14, 37:5-

17  38:8.) His newsletter for the quarter ended December 31, 2005 states: "Thank [sic] to all of you one

18  more time. If you wish to add money to your present account, you may do so in any amount. There

19  are no restrictions to our little flock." (FF-JMW 0027.) None of Wojack's statements reflect

20  investments or gains (or losses) in rugs, real estate, or jewelry. (FF-JMW 1-35.)

21      33.    On or about April 17, 2007, the staff of the Commission took the sworn testimony of

22  Urbano Maffei ("Maffei") pursuant to an investigative subpoena. Attached as Exhibit 26 to this

23  Declaration are true and correct copies of excerpts of the transcript of that testimony. Maffei invested

24  $10,000 on or about April 7, 2000. (Maffei Tr. at 26:1-6.) Maffei testified that Trabulse told him he

25  was "fairly conservative." (Maffei Tr. at 59:4-9.) Maffei testified that Trabulse never told him the

26  fund was going to invest in rugs, jewelry, or golf companies (Maffei Tr. at 109:1-23, 112:10-115:13).

27      34.    On or about February 8, 2007, pursuant to a subpoena issued by the Commission's

28  staff, Maffei produced a document titled "Fahey Hedge Fund[,] Profiting from Fundamental and

1   Technical Imbalances in a Broad Range of Markets." Attached as Exhibit 27 to this Declaration is a

2   true and correct copy of that document. (UJM #2.) Maffei testified that Trabulse provided him with

3   this document before he invested money. (Maffei Tr. at 92:24-93:24.) This document states that the

4   Fahey Fund has a "conservative approach." (UJM #2, p.3.)

5       35.    Maffei also produced a document titled "The Fahey Hedge Fund Track Record since

6   its first trade, Q4 1997 from the Quarterly Reports." Attached as Exhibit 28 to this Declaration is a

7   true and correct copy of that document. (UJM #1.) Maffei testified that Trabulse provided him with

8   this document sometime before he invested. (Maffei Tr. at 76:9-77:15.) The excerpt from the Fahey

9   Hedge Fund Report on Second Quarter, 1999 states: "At the risk of sounding like a salesman, this is

10  a time for you to all round up your IRA investments, your friends and buddies and get them a piece of

11  the Fund in the coming two years." (UJM #1, p. 8)

12      36.    Maffei also produced a letter dated January 13, 2002 which purports to be from Jim

13  Trabulse, Fund Manager. Attached as Exhibit 29 to this Declaration is a true and correct copy of that

14  letter. (UJM #26.) That letter includes the following "Gripe By Your Beloved Fund Manager"

15  which states: "[M]any of you have been very good in word and deed in both increasing your

16  investment and referring your friends. But my gripe is this: we are approaching our FIFTH

17  Anniversary and I would like very much if you would take aside a friend and suggest that he look

18  into investing a portion of his IRA/401(k), personal funds, with Fahey! He wins, you win, and we

19  grow even stronger by our numbers. . . . Recommend a friend, please. Gripe ended . . . ."

20      37.    On or about April 10, 2007, the staff of the Commission took the sworn testimony of

21  Karl Hillemann ("Hillemann") pursuant to an investigative subpoena. Attached as Exhibit 30 are true

22  and correct copies of excerpts of the transcript of that testimony. Hillemann testified he initially

23  invested $1.3 million on or about June 16, 2006 and an additional $194,310 on or about July 13,

24  2006. (Hillemann Tr. at 31:16-21, 47:17-48:13.) He further testified that although he initially

25  invested $1.3 million on or about June 16, 2006, Trabulse offered to allocate to him profits on his

26  money as of January 2006. (Hillemann Tr. at 31:22-32:19). Hillemann further testified that he

27  invested an additional $500,000 in a purportedly different fund, the Fahey Guarantee Reserve Fund,

28  on or about June 16, 2006. (Hillemann Tr. at 43:11-19, 46:15-47:1.) Hillemman testified that

1  Trabulse told him the fund had made money every quarter except for the third quarter of 2001.

2  (Hillemann Tr. at 64:14-24.) Hillemann testified that Trabulse never told him the fund planned to

3  invest in rugs, real estate, or jewelry. (Hillemman Tr. at 109:7-110:1, 110:9-15.)

4      38.    On or about February 7, 2007, pursuant to a subpoena issued by the Commission's

5  staff, Hillemann produced a one-page document titled "References-Fahey Hedge Fund, LP," which

6  lists investors who purportedly were willing to receive phone calls from prospective investors.

7  Attached as Exhibit 31 to this Declaration is a true and correct copy of that document. (KH2-A.)

8  Hillemann testified that Trabulse sent this document to him in response to his request that Trabulse

9  provide him with references for the fund. (Hillemann Tr. at 69:5-16.)

10     39.    Hillemann also produced a one-page document listing the same investors and

11  providing their phone numbers. Attached as Exhibit 32 to this Declaration is a true and correct copy

12  of that document. (KH4-A.) Hillemann testified Trabulse provided him with this document so that

13  Hillemann could contact existing investors to inquire about Fahey Fund. (Hillemann Tr. at 70:18-

14  71:2.) Hillemann further testified that he called several of the investors identified on this document

15  and invested in part based on the positive recommendations he received relating to the performance

16  of the fund. (Hillemann Tr. at 61:24-62:4; 70:18-77:3.)

17     40.    Hillemann also produced a four-page document which purports to describe how the

18  fund's approach works, and provide a track record and references from the fund's "seasoned"

19  investors. Attached as Exhibit 33 to this Declaration is a true and correct copy of that document.

20  (KH5-A – KH8-A.) Hillemann testified that the Fahey Fund provided him with this document in

21  response to his request to Trabulse for information about the hedge fund. (Hillemann Tr. at 40:1-24,

22  62:5-63:2.) This document describes how the fund makes trades with "minimum risk rarely

23  exceeding 5-8%." (KH5-A.) It also references the "stability" of the fund's results. (KH5-A.) This

24  document does not describe the fund's purported investments in real estate, rugs, or jewelry.

25     41.    On or about April 25, 2007, the staff of the Commission took the sworn testimony of

26  Suzanne Gregg pursuant to an investigative subpoena. Attached as Exhibit 34 to this Declaration is a

27  true and correct copy of excerpts of the transcript of her testimony. Gregg testified she invested

28  approximately $50,934 in or about October 2001. (Gregg Tr. at 23:2-24:2.) She testified she

1    invested an additional $12,000 in or about August 2002 and additional $20,000 in or about October

2    2002. (Gregg Tr. at 24:3-25:18.) Gregg further testified she invested the additional $12,000 and

3    $20,000 because she was happy with her returns. (Gregg Tr. at 76:2-77:7.) Gregg further testified

4    she ultimately liquidated her investment in or about February 2007. (Gregg Tr. at 27:23-28:6; 108:1-

5    20.) Gregg testified that Trabulse never told her the fund planned to invest in rugs, real estate, or

6    jewelry. (Gregg Tr. at 79:8-84:15.) She further testified that it was not her intent to invest in things

7    like rugs, real estate, or jewelry. (Id.) She further testified that she thought an investment in a rug

8    was "unusual" and "bizarre." (Gregg Tr. at 79:16-24). She further testified that she thought an

9    investment in a pearl necklace was "not in good faith" and "odd." (Gregg Tr. at 83:9-84:15.)

10          42.    On or about April 23, 2007, the staff of the Commission took the sworn testimony of

11    James Banister ("Banister") pursuant to an investigative subpoena. Attached as Exhibit 35 are true

12    and correct copies of excerpts of the transcript of his testimony. Banister initially invested $40,000 in

13    or about April 2005. (Banister Tr. at 29:13-30:23.) Banister later invested an additional $110,000

14    and an additional $120,000 in 2005. (Banister Tr. at 34:19-35:5.) He later invested an additional

15    $40,000 in 2006 (Banister Tr. at 50:24-51:10.) Banister testified his colleague told him his

16    investment in the Fahey Fund had increased an average of thirty percent. (Banister Tr. at 59:13-19.)

17    Banister also testified that he made additional contributions to the Fahey Fund in 2005 and 2006

18    because he believed, based on the statements sent to him by Trabulse, that his initial investment was

19    gaining value. (Banister Tr. at 77:19-80:1.)

20          43.    Banister testified that Trabulse told him the fund invested in gold, euros, commodities,

21    futures, interest rate plays, options, and stocks. (Banister Tr. at 62:4-63:5, 99:15-19.) He testified

22    Trabulse never told him before he invested that the fund planned to invest in rugs, real estate, or

23    jewelry. (See ¶ 42, Exh. 35, supra, Banister Tr. at 113:5-116:16.)

24          44.    On or about June 13, 2007, the staff of the Commission took the sworn testimony of

25    Catherine O'Riley, an investor and Trabulse's ex-wife, pursuant to an investigative subpoena.

26    Attached as Exhibit 36 is a true and correct copy of excerpts of the transcript of that testimony.

27    O'Riley testified that she initially made three investments with Trabulse. (O'Riley Tr. at 18:16-19:4.)

28    O'Riley further testified that, with the exception of one investment made in the name of Magdelain

Preservation Foundation, which she closed within about one year of investing, she never took any distributions from her investments with Trabulse. (O'Riley Tr. at 19:5-20:20, 60:23-61:7.) O'Riley further testified that she has approximately twenty-three (23) rugs in her house that Trabulse paid for. (O'Riley Tr. at 67:21-71:12.) She testified she understood that the rugs were hers to keep until her death, at which point they first would revert to Trabulse, and next to his daughter, Easter Trabulse. (O'Riley Tr. at 67:21-68:6.) No one told her she could not use the rugs or that she had to store them. (O'Riley Tr. at 71:7-12.) No one told her that she was holding the rugs for the benefit of investors in the Fahey Fund or that the rugs were investments. (O'Riley Tr. at 74:3-12.)

45.    On or about June 4, 2007, pursuant to a subpoena issued by the Commission's staff, Lawrence Sanders produced an account statement and a newsletter for the quarter ended March 31, 2007. Attached as Exhibit 37 to this Declaration is a true and correct copy of that statement and newsletter. (SANDERS-SEC-8-9.) That statement reported no profits or losses for the quarter. (SANDERS-SEC-8.) The newsletter, which purports to be from Jim Trabulse, the Fund Manager, states: "While there was a great deal of movement in the market, our particular positions just sat there! So, there is nothing to report. Please not [sic] that your statements will be unchanged from the Dec. 31, 2006 final." (SANDERS-SEC-9) (underlining in original).

46.    On or about May 21, 2007, pursuant to a subpoena issued by the Commission's staff, Kathy Ranz produced account statements and newsletters for the quarter ended March 31, 2007. Attached as Exhibit 38 to this Declaration are true and correct copies of those statements and newsletters. (FF-KR 0638-641.) Those statements reported no profits or losses for the quarter. (FF-KR 639, 641.) The newsletters, which purport to be from Jim Trabulse, the Fund Manager, state: "While there was a great deal of movement in the market, our particular positions just sat there! So, there is nothing to report. Please not [sic] that your statements will be unchanged from the Dec. 31, 2006 final." (FF-KR 638, 640) (underlining in original).

47.    On or about June 8, 2007, the staff of the Commission took the sworn testimony of Cortney Robinson ("Robinson") pursuant to an investigative subpoena. Attached as Exhibit 39 is a true and correct copy of an excerpt of the transcript of that testimony. Robinson testified that before

1    he invested money, a colleague told him his investment in the Fahey Fund had increased in value by

2    twenty (20) percent. (Robinson Tr. at 15:16-16:25, 18:4-16.)

3        48.    On or about July 19, 2007, pursuant to a subpoena issued by the Commission's staff,

4    Bank of America produced a copy of a check made out to Suzanne Gregg for $206,885, dated March

5    1, 2007, and drawn on Fahey Financial Group, Inc.'s bank account.  Attached as Exhibit 40 to this

6    Declaration is a true and correct copy of that check. (BOA 000887.)  In the "For" line of the check, it

7    says "Distribution."  (Id.)  Gregg testified that she liquidated her investment in or about February

8    2007. (See ¶ 41, Exh. 34, supra, Gregg Tr. at 27:23-28:6.)  According to the investor account

9    statement produced by Trabulse for Suzanne Gregg, her balance as of December 31, 2006 was

10   $206,883.42. (See ¶ 24, supra.)

11       49.    Bank of America also produced a copy of a check made out to James Wojack for

12   $25,000, dated March 27, 2007, and drawn on Fahey Financial Group, Inc.'s bank account.  Attached

13   as Exhibit 41 to this Declaration is a true and correct copy of that check.  (BOA 000870.)  In the

14   "For" line of the check it says: "Dist Gold Fund." (Id.)  Wojack testified that he withdrew $25,000

15   from his investment on April 1, 2007. (See ¶ 30, Exh. 23, supra, Wojack Tr. at 35:3-9.)

16       50.    Bank of America also produced a copy of a Fahey Financial Group, Inc. deposit slip

17   dated April 16, 2007 for a $30,000 deposit, and a copy of a check from Anna M. Stratton for $30,000,

18   dated March 21, 2007, and made out to Fahey Financial Group, Inc.  Attached as Exhibit 42 to this

19   Declaration is a true and correct copy of that deposit slip and check.  (BOA 000937-38.)  In the

20   "Memo" line of the check it says: "30 shares/$1,000 each." (BOA 000938.)  According to the

21   investor account statements produced by Trabulse, Anna Stratton is an investor.  (See ¶ 24, supra,

22   (FAHEY-SEC-1897.)

23       51.    On or about May 25, 2007, the staff of the Commission took the sworn testimony of

24   Easter Trabulse, Trabulse's daughter, pursuant to an investigative subpoena.  Attached as Exhibit 43

25   is a true and correct copy of an excerpt of the transcript of her testimony.  Ms. Trabulse testified that

26   the fund's bank accounts were used to purchase jewelry for her. (E. Trabulse Tr. at 116:9-117:4.)

27   She further testified that Trabulse gave her two of the fund's purported investment rugs to use in her

28   home. (E. Trabulse Tr. at 37:14-38:3, 40:7-23.)  She further testified that she wrote a check from one

1   of the fund's bank accounts to pay for rugs that went to O'Riley's house. (E. Trabulse Tr. at 109:9-

2   111:24, 113:5-21.)  She further testified that Trabulse authorized her to use a debit card linked to one

3   of the fund's bank accounts which she used to pay for furniture, airlines tickets, and her 2007

4   honeymoon in Panama. (E. Trabulse Tr. at 43:16-47:21, 118:24-119:15.)

5       52.     On or about November 27, 2006, pursuant to a subpoena issued by the Commission's

6   staff, Bank of the West produced copies of wire transfer records for the account in the name of Fahey

7   Hedge Fund/Fahey Fund for the period January 1, 2006 through August 31, 2006 and October 2006.

8   On or about December 4, 2006, pursuant to a subpoena issued by the Commission's staff, Bank of the

9   West produced copies of wire transfers records for the same account for 2005 and September 2006.

10  On or about January 2, 2007, pursuant to a subpoena issued by the Commission's staff, Bank of the

11  West produced copies of wire transfer records for the same account for the period 2002 through 2004.

12  I reviewed those wire transfer records and noted the following wire transfers made from Fahey Hedge

13  Fund/Fahey Fund's bank account at Bank of the West to the account at BNP Paribas in the name of

14  Monsieur Alexander Trabulse which previously was identified by Trabulse's counsel:

| Date | Amount | Transferee | Description |
|------|--------|-----------|-------------|
| January 7, 2003 | $5,000 (2,763.19 €) | Alexander Trabulse | |
| March 5, 2003 | $8,000 (7,023.71 €) | Alexander Trabulse | |
| July 9, 2003 | $49,999.99 (43,572.98 €) | Alexander Trabulse | |
| October 14, 2003 | $10,000 (8,354.22 €) | Alexander Trabulse | |
| January 20, 2004 | $12,499.99 (9,827.04 €) | Alexander Trabulse | |
| March 25, 2004 | $50,000 (40,485.83 €) | Alexander Trabulse | |
| September 1, 2004 | $20,000 (16,142.05 €) | Alexander Trabulse | |
| September 24, 2004 | $25,000 | Alexander Trabulse | |
| November 2, 2004 | $15,000.01 (11,650.49 €) | Alexander Trabulse | |
| November 24, 2004 | $20,000.01 (14,998.13 €) | Alexander Trabulse | |
| March 1, 2005 | $14,994.39 (11,231.75 €) | Alexander Trabulse | |

| Date | Amount | Transferee | Description |
|---|---|---|---|
| April 27, 2005 | $65,000.01 (49,637.27 €) | Alexander Trabulse | |
| July 15, 2005 | $20,000 (16,380.02 €) | Alexander Trabulse | |
| August 15, 2005 | $50,000 (40,000 €) | Alexander Trabulse | Paris Business Expenses |
| April 17, 2006 | $24,999 (20,145.04 €) | Alexander Trabulse | Paris Business Expenses |
| May 9, 2006 | $50,000 (38,789.76 €) | Alexander Trabulse | |
| August 15, 2006 | $50,000 (38,610.04 €) | Alexander Trabulse | |
| August 22, 2006 | $25,000 (19,260.40 €) | Alexander Trabulse | Paris Business Expenses |
| October 25, 2006 | $50,000 (39,323.63 €) | Alexander Trabulse | Paris Business Expenses |

53.     In or about July 2007, pursuant to a request by the Commission's staff, BNP Paribas produced the October 31, 2006 statement for Monsieur Alexander Trabulse's bank account. Attached as Exhibit 44 to this Declaration is a true and correct copy of that statement. (French Version/ 115 – 118.)

54.     On or about September 17, 2007, LIS-Translations, Inc. provided to the Commission's staff a translation of Trabulse's BNP Paribas October 2006 bank statement. Attached as Exhibit 45 to this Declaration is a true and correct copy of the translated statement. (English Version/ 115-118.) This statement shows that € 39,309.09 was transferred into Trabulse's BNP Paribas bank account from Fahey Hedge Fund/Fahey Fund's bank account on or about October 27, 2006. (Id. at 116.) This statement also shows that the transfer contains the words: "Paris Business Expenses." (Id.) This statement furthers shows that, after this transfer, the BNP Paribas account was used to pay for purchases at Trader Joe's, Your Basic Bird, Monterey Market, The Cheese Board, Berkeley Bowl, Prather Ranch, and Any Mountain Berkeley. (Id. at 116-17.)

55.     During my review of Fahey Hedge Fund, L.P.'s wire transfer records for 2004 and 2005, I noted that on or about October 4, 2004, a wire transfer in the amount of $10,000 (€ 8,019.25) was made to a bank account in the name of Catherine Mary O'Riley at BNP Paribas. I also noted that on or about August 15, 2005, a wire transfer in the amount of $12,000 (€ 9,600) was made to the same bank account in the name of Catherine Mary O'Riley at BNP Paribas. Attached as Exhibit 46

1  to this Declaration is a true and correct copy of those wire transfers.  (BOW 00579, 674.)  The wire

2  transfer record for the August 15, 2005 transfer states:  "Paris Business Expenses."  O'Riley testified

3  that Trabulse funded that account for her and that she used it to go shopping while she was in France.

4  (See ¶ 44, Exh. 36, supra, O'Riley Tr. at 112:25-115:3.)

5       56.    During my review of Fahey Hedge Fund/Fahey Fund L.P.'s wire transfer records for

6  2006, I noted that on or about April 17, 2006, a wire transfer in the amount of $65,000 was made to a

7  bank account in the name of Catherine O'Riley at Bank of America.  Attached as Exhibit 47 to this

8  Declaration is a true and correct copy of that wire transfer.  O'Riley testified that Trabulse transferred

9  $65,000 to her Bank of America account so that she could pay off the mortgage on her home.  (See ¶

10  44, Exh. 36, supra, O'Riley Tr. at 62:19-63:13, 127:18-129:4.)

11       57.    During my review of Fahey Hedge Fund/Fahey Fund's wire transfer records for 2006,

12  I noted that on or about June 14, 2006, a wire transfer in the amount of $12,500 was made to an

13  account in the name of At Home Theater.  I also noted that on or about July 28, 2006, another wire

14  transfer in the amount of $14,145.78 was made to an account in the name of At Home Theater.

15  Attached as Exhibit 48 to this Declaration are true and correct copies of those wire transfers.  (BOW

16  479-80, 501-02.)  O'Riley testified that Trabulse purchased for her a home theater system from At

17  Home Theater.  (See ¶ 44, Exh. 36, supra, O'Riley Tr. at 143:14-144:21.)

18       58.    On or about November 20, 2006, pursuant to a subpoena issued by the Commission's

19  staff, Bank of the West produced a copy of a Fahey Fund deposit slip dated June 19, 2006 in the

20  amount of $1.3 million and a copy of a check drawn on an account in the name of Karl Hillemann

21  dated June 16, 2006 for $1.3 million made out to Fahey Fund, L.P.  Attached as Exhibit 49 to this

22  Declaration is a true and correct copy of this deposit slip and check.  (BOW 380.)  Hillemann

23  testified that he invested $1.3 million on or about June 16, 2006.  (See ¶ 37, Exh. 30, supra,

24  Hillemann Tr. at 31:16-21.)

25       59.    On or about March 6, 2007, pursuant to a subpoena issued by the Commission's staff,

26  Bank of America produced a copy of a Fahey Financial Group, Inc. deposit slip dated February 15,

27  2006 for $50,000 and a copy of a check drawn on an account in the name of John F. Novak and

28  Elizabeth A. Novak dated February 8, 2006 for $50,000 made out to Fahey Financial Group.

1    Attached as Exhibit 50 to this Declaration is a true and correct copy of that deposit slip and check.

2    (BOA 273-274.)  The investor account statement for John F. Novak produced by Trabulse indicates

3    that a $50,000 deposit was made in the first quarter of 2006.  (See ¶ 23, supra, FAHEY-SEC-1594.)

4         60.     On or about November 20, 2006, pursuant to a subpoena issued by the Commission's

5    staff, Bank of the West produced copies of deposits and withdrawals in 2006 for Fahey Hedge

6    Fund/Fahey Fund's bank account.  On or about February 20, 2007, pursuant to a subpoena issued by

7    the Commission's staff, Bank of the West produced copies of deposits and withdrawals in 2006 for

8    bank accounts in the name of International Trade & Data and ITD Trading.  On or about March 6,

9    2007, pursuant to a subpoena issued by the Commission's staff, Bank of America produced copies of

10   deposits and withdrawals in 2006 for one of the bank accounts in the name of Fahey Financial Group,

11   Inc.  I reviewed these deposits and withdrawals.  The following chart summarizes the deposits and

12   withdrawals made between accounts in the name of Fahey Hedge Fund/Fahey Fund, International

13   Trade & Data, ITD Trading, and Fahey Financial Group, Inc. in 2006:

| Date | Amount | From | To |
|------|--------|------|-----|
| February 4, 2006 | $100,000 | International Trade & Data | Fahey Hedge Fund |
| March 1, 2006 | $5,000 | Fahey Financial Group, Inc. | ITD Trading |
| June 27, 2006 | $140,000 | Fahey Hedge Fund | Fahey Financial Group, Inc. |
| June 29, 2006 | $50,000 | Fahey Hedge Fund | ITD Trading |
| July 8, 2006 | $6,600 | Fahey Financial Group, Inc. | International Trade & Data |
| August 1, 2006 | $20,000 | Fahey Financial Group, Inc. | ITD Trading |
| August 1, 2006 | $50,000 | Fahey Hedge Fund | ITD Trading |
| August 8, 2006 | $100,000 | Fahey Hedge Fund | Fahey Financial Group, Inc. |
| August 9, 2006 | $26,580 | Fahey Hedge Fund | ITD Trading |
| September 5, 2006 | $100,000 | Fahey Hedge Fund | ITD Trading |
| September 12, 2006 | $10,000 | Fahey Hedge Fund | International Trade & Data |
| October 16, 2006 | $10,000 | Fahey Financial Group, Inc. | International Trade & Data |
| December 9, 2006 | $490,000 | International Trade & Data | Fahey Hedge Fund |

SCHNEIDER DECLARATION IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION,
C-07-4975 (WHA)

1    61.    On or about February 8, 2007, pursuant to a subpoena issued by the Commission's staff,

2    Anne Fisher produced an e-mail dated May 21, 2006 purportedly from Jim Trabulse, Fahey Fund.

3    Attached as Exhibit 51 to this Declaration is a true and correct copy of that e-mail.  (AF 000003.)

4    That e-mail reflects that Anne Fisher was a referral from Michael Schroeder, an existing investor.

5    (Id.) The e-mail states: "Michael is very pleased, as are all my investors, with our 10 years of

6    consistent profits in all kinds of markets, up down, sideways, you name it, if it moves, I can make it

7    pay." (Id.)

8    62.    On or about February 14, 2007, pursuant to a subpoena issued by the Commission's staff,

9    Trabulse produced a Preliminary Agreement between Count Yogi Golf, llc/Count Yogi Management

10   Trust and Fahey Hedge Fund and/or Fahey Financial Group, Inc. dated September 1, 2005.  Attached

11   as Exhibit 52 to this Declaration is a true and correct copy of that agreement.  (FAHEY-SEC-000853-

12   857.)  That agreement reflects that the Fahey Fund purchased a 2001 BMW X5 for Tim Nicholls, the

13   Trustee of Count Yogi Management Trust.  (FAHEY-SEC-000856.)

14   63.    On or about July 18, 2007, pursuant to a subpoena issued by the Commission's staff, Bank

15   of America produced a February 2007 statement for one of Fahey Financial Group, Inc.'s bank

16   accounts.  Attached as Exhibit 53 to this Declaration is a true and correct copy of that statement.

17   (BOA 972-975).  That statement reflects that on or about February 20, 2007, Fahey Financial Group,

18   Inc. wired $808,350 to Howard and Eleanor Walsh.  (BOA 973).  According to the investor account

19   statements produced by Trabulse, Howard Walsh had a balance of $868,339.14 as of December 31,

20   2006.  (See ¶ 24, supra, (FAHEY-SEC-1931).)

21   64.    On or about September 19, 2007, pursuant to a request by the Commission's staff, A.G.

22   Edwards produced an August 2007 statement for International Trade and Data's commodity trading

23   activity.  Attached as Exhibit 54 to this Declaration is a true and correct copy of that statement.

24   (AGE-134-65.)  That statement reflects that the net liquidating value of that account as of August 31,

25   ///

26   ///

27   ///

28   ///

1   2007 was $1,416,728.24.  (AGE-164.)

2

3   I declare under penalty of perjury that the foregoing is true and correct.  Executed on October *18*,

4   2007 at San Francisco, California.

5

6

7                                                    _____

8                                                          Erin E. Schneider

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28