# EXHIBIT 18
## PART B

1           THE WITNESS:  I will.

2           MS. SCHNEIDER:  If I ask you any more questions

3   about this account, will you assert your right against

4   self-incrimination under the Fifth Amendment?

5           MR. CELIO:  Mr. Trabulse, I'm going to instruct you

6   not to answer that question on the grounds that under the

7   United States Constitution, the Government may not compel you

8   to give testimony against yourself.  Will you follow my

9   instruction?

10          THE WITNESS:  I will.

11          MS. SCHNEIDER:  Mr. Trabulse, you opened a bank

12  account at the Banco International de Punchow (phonetic).  I

13  apologize if I mispronounce that in Portugal in the name of

14  Stockport Trading International, SA, isn't that right?

15          MR. CELIO:  The same instruction.  Will you follow

16  it?

17          THE WITNESS:  I will.

18          MS. SCHNEIDER:  The MediCal number is ██████-0248,

19  right?

20          MS. SCHNEIDER:  The same instruction.  Will you

21  follow it?

22          THE WITNESS:  I will.

23          MS. SCHNEIDER:  Is that bank account for the

24  benefit of investors in Fahey Hedge Fund, Fahey Fund, Fahey

25  Financial Group, or International Trade and Data?



1              MR. CELIO:  The same instruction.  Will you follow

2     it?

3              THE WITNESS:  I will.

4              MS. SCHNEIDER:  And if I ask you any more questions

5     about this account, will you assert your right against

6     self-incrimination under the Fifth Amendment?

7              MR. CELIO:  Mr. Trabulse, I instruct you not to

8     answer the question on the grounds that under the United

9     States Constitution, the Government may not compel you to be

10    a witness against yourself.  Will you follow my instruction?

11             THE WITNESS:  I will.

12             MS. SCHNEIDER:  Okay.  And, Mr. Trabulse, you also

13    opened a bank account at Bank of Hawaii in the name of AMI

14    Group, Inc.  And -- with the number of ████████1750; isn't

15    that right?

16             MR. CELIO:  The same instruction.  Will you follow

17    it?

18             THE WITNESS:  I will.

19             MS. SCHNEIDER:  Is that account for the benefit of

20    investors in Fahey Hedge Fund, Fahey Fund, Fahey Financial

21    Group, or International Trade and Data?

22             MR. CELIO:  The same instruction.  Will you follow

23    it?

24             THE WITNESS:  I will.

25             MS. SCHNEIDER:  Why is it in the name of AMI Group,

REDACTED

1    Inc.?

2             MR. CELIO:   The same instruction.   Will you follow

3    it?

4             THE WITNESS:   I will.

5             MS. SCHNEIDER:   And you have the authority to

6    transfer funds in that account, isn't that right?

7             MR. CELIO:   The same instruction.   Will you follow

8    it?

9             THE WITNESS:   I will.

10            MS. SCHNEIDER:   If I ask you any more questions

11   about this account, Mr. Trabulse, will you assert your right

12   against self-incrimination under the Fifth Amendment?

13            MR. CELIO:   I instruct you not to answer that

14   question.   Take the questions one at a time.   The grounds for

15   my instruction is that the Government may not compel you to

16   give testimony against yourself.   Will you follow my

17   instruction?

18            THE WITNESS:   I will.

19            MS. SCHNEIDER:   Mr. Trabulse, I'm handing you

20   what's been marked as Exhibit 41 in this matter.   I'm just

21   going to describe it for the record.   Exhibit 41 is a

22   collection of documents that have handwritten numbers in the

23   upper right-hand corner, with a banister of D-1.   And the

24   last page is Doc 8-B.   And the top of the first page of

25   Exhibit 1 says, "Fahey Financial Group, Inc., a Nevada

1   Corporation, 1117 Dessert Lane, Las Vegas, Nevada, New

2   Account as of January 1st, 2005."

3           I'm going to ask you some questions about Exhibit

4   41, so just take the time you need to look at Exhibit 41 to

5   be prepared to answer the questions.  And let me know when

6   you're ready.

7       A   I'm ready.

8       Q   Okay.  Mr. Trabulse, do you recognize Exhibit 41?

9           MR. CELIO:  I instruct you not to answer the

10  question on the grounds that the Government may not compel

11  you to give testimony against yourself.  Will you follow my

12  instruction?

13          THE WITNESS:  I will.

14          MS. SCHNEIDER:  You prepared the documents that are

15  contained in Exhibit 41, didn't you?

16          MR. CELIO:  The same instruction.  Will you follow

17  it?

18          THE WITNESS:  I will.

19          MS. SCHNEIDER:  Mr. Trabulse, are you refusing to

20  answer my question based on your Fifth Amendment privilege

21  against self-incrimination?

22          MR. CELIO:  I instruct you not to answer the

23  question on the grounds that the Government may not compel

24  you to give testimony against yourself.  Will you follow my

25  instruction?

1          THE WITNESS:  I will.

2          MS. SCHNEIDER:  Mr. Trabulse, you provided the

3    documents that are in Exhibit 41 to James Bannister, didn't

4    you?

5          MR. CELIO:  The same instruction.  Will you follow

6    it?

7          THE WITNESS:  I will.

8          MS. SCHNEIDER:  Mr. Trabulse, you directed the

9    documents contained within Exhibit 41 to be provided to Mr.

10   Bannister, didn't you?

11         MR. CELIO:  The same instruction.  Will you follow

12   it?

13         THE WITNESS:  I will.

14         MS. SCHNEIDER:  The gains reported in Exhibit 41

15   are false, aren't they?

16         MR. CELIO:  The same instruction.  Will you follow

17   it?

18         THE WITNESS:  I will.

19         MS. SCHNEIDER:  You knew the gains reported in

20   Exhibit 41 were false when you provided them to Mr.

21   Bannister, didn't you?

22         MR. CELIO:  The same instruction.  Will you follow

23   it?

24         THE WITNESS:  I will.

25         MS. SCHNEIDER:  The cumulative account

1    balance -- the cumulative account balances reported in

2    Exhibit 41 are false, aren't they?

3              MR. CELIO:  The same instruction.  Will you follow

4    it?

5              THE WITNESS:  I will.

6              MS. SCHNEIDER:  You knew the cumulative account

7    balances reported in the statements contained in Exhibit 41

8    were false when you provided them to Mr. Bannister, didn't

9    you?

10             MR. CELIO:  The same instruction.  Will you follow

11   it?

12             THE WITNESS:  I will.

13             MS. SCHNEIDER:  Mr. Trabulse, I'm handing you

14   what's been marked as Exhibit 4 in this matter and I'm just

15   going to describe it for the record.  Exhibit 4 is a

16   collection of documents and they have handwritten numbers in

17   the upper right-hand corner that say, "KH17-C through D."

18   And it ends with KH28-C through D.  And the top of the first

19   page of Exhibit 4 says, "The Fahey Financial Group, Inc., a

20   Nevada Corporation, 1117 Dessert Lane, Las Vegas, Nevada,

21   Statements as of March 31st, 2005."  And they appear to be

22   statements for Karl Hillerman.  And I'm going to ask you

23   questions about Exhibit 4, Mr. Trabulse, so let me know when

24   you're ready.

25        A    I'm ready.

1      Q    Okay.  Mr. Trabulse, you prepared these statements

2    contained in Exhibit 4, didn't you?

3             MR. CELIO:  The same instruction.  Will you follow

4    it?

5             THE WITNESS:  I will.

6             MS. SCHNEIDER:  And the gains reported in the

7    statements that are contained in Exhibit 4 are false, aren't

8    they?

9             MR. CELIO:  The same instruction.  Will you follow

10   it?

11            THE WITNESS:  I will.

12            MS. SCHNEIDER:  And you knew the gains reported in

13   the statements included in Exhibit 4 were false when you

14   provided them to Mr. Hillerman, didn't you?

15            MR. CELIO:  The same instruction.  Will you follow

16   it?

17            THE WITNESS:  I will.

18            MS. SCHNEIDER:  The cumulative account balances

19   reported in the statements contained in Exhibit 4 are false,

20   aren't they?

21            MR. CELIO:  The same instruction.  Will you follow

22   it?

23            THE WITNESS:  I will.

24            MS. SCHNEIDER:  You knew the cumulative account

25   balances reported in the statements contained in Exhibit 4

1  were false when you provided them to Mr. Hillerman, didn't

2  you?

3          MR. CELIO:  The same instruction.  Will you follow

4  it?

5          THE WITNESS:  I will.

6          BY MS. SCHNEIDER:

7  Q    I want to look at a specific page in Exhibit 4.  It

8  has a handwritten number up in the right-hand corner of

9  KH22-C, D.  Go ahead and let me know when you get there.

10  A    All right.

11  Q    Are you there?

12  A    I'm there.

13  Q    Okay.  Do you recognize page KH22-C, D?

14          MR. CELIO:  The same instruction.  Will you follow

15  it?

16          THE WITNESS:  I will.

17          MS. SCHNEIDER:  If you look down at the bottom

18  right-hand corner, in the bottom of the cumulative account

19  balance column there's a number that says, "$1,794,839.75."

20  Do you see that number?

21          MR. CELIO:  The same instruction.  Will you follow

22  it?

23          THE WITNESS:  I will.

24          MS. SCHNEIDER:  You're not going to let him answer

25  the question of whether he sees the number that I'm talking

1    about?

2           MR. CELIO:  I'm instructing him not to answer the

3    question, yes.

4           MS. SCHNEIDER:  Okay.

5           MS. SCHNEIDER:  So, Mr. Trabulse, the statement on

6    KH22-C, D reflects an cumulative account balance of

7    $1,794,800 -- I'm sorry, I can't speak -- the cumulative

8    account balance reflected on page KH22-C, D is $1,794,839.75

9    at the end of December 31st, 2006; isn't that right?

10          MR. CELIO:  The same instruction.  Will you follow

11   my instruction?

12          THE WITNESS:  I will.

13          MS. SCHNEIDER:  Okay.  Based on KH22-C, D, if Mr.

14   Hillerman had decided to withdraw his investment at the end

15   of December 31st, 2006, how much would he be entitled to?

16          MR. CELIO:  The same instruction.  Will you follow

17   it?

18          THE WITNESS:  I will.

19          MS. SCHNEIDER:  A portion of the $1,794,839.75 is

20   comprised of gains attributable to Mr. Hillerman's investment

21   in the first quarter, the second quarter, and fourth quarter

22   of 2006; isn't that right?

23          MR. CELIO:  The same instruction.  Will you follow

24   it?

25          THE WITNESS:  I will.

1          MS. SCHNEIDER:  And this statement reflects that

2    Mr. Hillerman earned profits -- or this statement reflects

3    that Mr. Hillerman earned gains in the first quarter and

4    second quarter of 2006, isn't that right?

5          MR. CELIO:  The same instruction.  Will you follow

6    it?

7          THE WITNESS:  I will.

8          MS. SCHNEIDER:  Mr. Hillerman didn't provide

9    investment money to the Fahey Financial Group or the Fahey

10   Fund, LP, until June 2006, isn't that right?

11         MR. CELIO:  The same instruction.  Will you follow

12   it?

13         THE WITNESS:  I will.

14         MS. SCHNEIDER:  Mr. Hillerman didn't provide Fahey

15   Fund, LP, or Fahey Financial Group with his $1.3 million

16   investment until June 2006, isn't that right?

17         MR. CELIO:  The same instruction.  Will you follow

18   it?

19         THE WITNESS:  I will.

20         MS. SCHNEIDER:  And you knew at the time that you

21   provided Mr. Hillerman with this statement, that the

22   statement reflected gains on Mr. Hillerman's investment

23   before the date he actually invested money in Fahey Fund, LP,

24   or Fahey Financial Group, isn't that right?

25         MR. CELIO:  The same instruction.  Will you follow

1   it?

2                THE WITNESS:  I will.

3                MS. SCHNEIDER:  Mr. Trabulse, you provided

4   statements to other investors that reflected gains and net

5   gains in periods before those investors actually had invested

6   money in Fahey Fund or Fahey Financial Group, isn't that

7   right?

8                MR. CELIO:  The same instruction.  Will you follow

9   it?

10               THE WITNESS:  I will.

11               BY MS. SCHNEIDER:

12       Q    Okay.  I want to look at another page in Exhibit 4,

13   and it's the one that's numbered in the upper right-hand

14   KH21-B, and let me know when you get there.

15       A    Okay, I'm here.

16       Q    Okay.  And I'm looking at the -- there's a box in

17   the top third of this statement, and the first line of that

18   box is in bold and it says, "Enclosed is your financial

19   position for Q-3, 2006," that is, July 1 through September

20   30th, 2006.  Do you see that?

21       A    I do.

22       Q    Okay.  And then underneath that, it says:  "No

23   changes, there have been no new activity.  However, there are

24   still open profits in gold.  Open profits mean paper profits

25   or unrealized gains."

1        Do you see the sentence where it says, "Open

2   profits mean paper profits or unrealized gains"?

3            MR. CELIO:  You can answer that.

4            THE WITNESS:  Yes.

5            MS. SCHNEIDER:  Okay.  Did you write that sentence?

6            MR. CELIO:  I instruct you not to answer the

7   question on the grounds that the Government may not compel

8   you to give testimony against yourself.  Will you follow my

9   instruction?

10           THE WITNESS:  I will.

11           MS. SCHNEIDER:  Okay.  What does that

12   sentence -- and I'm referring to the "open profits mean paper

13   profits or unrealized gains" -- what does that sentence mean?

14           MR. CELIO:  The same instruction.  Will you follow

15   it?

16           THE WITNESS:  I will.

17           MS. SCHNEIDER:  Okay.  And then the sentence after

18   that says, "It is always wise to wait until the trade is

19   completed successfully before reporting profits."  Do you see

20   that sentence?

21           MR. CELIO:  The same instruction.  Will you follow

22   it?

23           THE WITNESS:  I will.

24           MS. SCHNEIDER:  Did you write that sentence?

25           MR. CELIO:  The same instruction.  Will you follow

1    it?

2                 THE WITNESS:   I will.

3                 MS. SCHNEIDER:   What does that sentence mean?

4                 MR. CELIO:   The same instruction.   Will you follow

5    it?

6                 THE WITNESS:   I will.

7                 MS. SCHNEIDER:   Does that sentence describe how you

8    reported gains in investors' statements?

9                 MR. CELIO:   The same instruction.   Will you follow

10   it?

11                THE WITNESS:   I will.

12                MS. SCHNEIDER:   Mr. Trabulse, I'm handing you

13   what's been marked as Exhibit 11, and I'm just going to

14   describe it for the record.   Exhibit 11 is a multi-page

15   document and it has Bates numbers in the bottom right-hand

16   corner of FF-JMW-0001 through 0034.   On the first page it

17   says, "The Fahey Hedge Fund, LP, Special Gold Fund, 268 Bush

18   Street, Suite 4232, San Francisco, California, New Account

19   Statement as of January 1st, 2003."

20                Do you recognize Exhibit 11, Mr. Trabulse?

21                MR. CELIO:   The same instruction.   Will you follow

22   it?

23                THE WITNESS:   I will.

24                MS. SCHNEIDER:   You prepared the statements that

25   are in Exhibit 11, didn't you?

1            MR. CELIO:  The same instruction.  Will you follow

2       it?

3            THE WITNESS:  I will.

4            MS. SCHNEIDER:  You provided these statements to

5       James Wojack, didn't you?

6            MR. CELIO:  The same instruction.  Will you follow

7       it?

8            THE WITNESS:  I will.

9            MS. SCHNEIDER:  The gains reported in the

10      statements in Exhibit 11 are false, aren't they?

11           MR. CELIO:  The same instruction.  Will you follow

12      it?

13           THE WITNESS:  I will.

14           MS. SCHNEIDER:  You knew the gains reported in the

15      statements contained in Exhibit 11 were false when you

16      provided them to Mr. Wojack, didn't you?

17           MR. CELIO:  The same instruction.  Will you follow

18      it?

19           THE WITNESS:  I will.

20           MS. SCHNEIDER:  The cumulative account balances

21      reported in the statements contained in Exhibit 11 are false,

22      aren't they?

23           MR. CELIO:  The same instruction.  Will you follow

24      it?

25           THE WITNESS:  I will.

1          MS. SCHNEIDER:  And you knew the cumulative account

2    balances reported in the statements contained in Exhibit 11

3    were false when you provided them to Mr. Wojack, didn't you?

4          MR. CELIO:  The same instruction.  Will you follow

5    it?

6          THE WITNESS:  I will.

7          BY MS. SCHNEIDER:

8      Q    Mr. Trabulse, I'm handing you what's been marked as

9    Exhibit 51, and I'm just going to describe it for the record.

10   Exhibit 51 appears to be a collection of statements from the

11   Fahey Fund/Fahey Financial Group.  It has Bates numbers in

12   the bottom right-hand corner of FF-SCG-0001 through 0016.

13         Let me know when you're ready, Mr. Trabulse.

14     A    I'm ready.

15     Q    Okay.  Do you recognize Exhibit 51?

16         MR. CELIO:  The same instruction.  Will you follow

17   it?

18         THE WITNESS:  I will.

19         MS. SCHNEIDER:  Okay.  You prepared the statements

20   in Exhibit 51, didn't you?

21         MR. CELIO:  The same instruction.  Will you follow

22   it?

23         THE WITNESS:  I will.

24         MS. SCHNEIDER:  You provided these statements that

25   are contained in Exhibit 51 to Susan Greg, didn't you?

1          MR. CELIO:  The same instruction.  Will you follow

2     it?

3          THE WITNESS:  I will.

4          MS. SCHNEIDER:  The gains reported in the

5     statements in Exhibit 51 are false, aren't they?

6          MR. CELIO:  The same instruction.  Will you follow

7     it?

8          THE WITNESS:  I will.

9          MS. SCHNEIDER:  You knew the gains reported in the

10    statements in Exhibit 51 were false when you provided them to

11    Ms. Greg, didn't you?

12         MR. CELIO:  The same instruction.  Will you follow

13    it?

14         THE WITNESS:  I will.

15         MS. SCHNEIDER:  And the cumulative account balances

16    reported in the statements contained in Exhibit 51 are false,

17    aren't they?

18         MR. CELIO:  The same instruction.  Will you follow

19    it?

20         THE WITNESS:  I will.

21         MS. SCHNEIDER:  You knew the cumulative account

22    balances reported in the statements contained in Exhibit 51

23    were false when you provided them to Ms. Greg, didn't you?

24         MR. CELIO:  The same instruction.  Will you follow

25    it?

1          THE WITNESS:  I will.

2          MS. SCHNEIDER:  Ms. Greg withdrew her investment in

3    the Fahey Fund this year, didn't she?

4          MR. CELIO:  The same instruction.  Will you follow

5    it?

6          THE WITNESS:  I will.

7          MS. SCHNEIDER:  And you paid her her cumulative

8    account balances that were listed in her statement, didn't

9    you?

10          MR. CELIO:  The same instruction.  Will you follow

11    it?

12          THE WITNESS:  I will.

13          MS. SCHNEIDER:  And that balance was overstated,

14    wasn't it?

15          MR. CELIO:  The same instruction.  Will you follow

16    it?

17          THE WITNESS:  I will.

18          MS. SCHNEIDER:  And you knew at the time that you

19    paid her that the balance was overstated, didn't you?

20          MR. CELIO:  The same instruction.  Will you follow

21    it?

22          THE WITNESS:  I will.

23          MS. SCHNEIDER:  Mr. Trabulse, one reason you

24    provided false account statements to the investors that we

25    have been discussing is that so that they would invest

1   additional funds, isn't that right?

2           MR. CELIO:   The same instruction.   Will you follow

3   it?

4           THE WITNESS:   I will.

5           MS. SCHNEIDER:   Another reason you provided false

6   statements to the investors I mentioned above is that so they

7   would keep their money invested in either the Fahey Hedge

8   Fund, Fahey Fund, or Fahey Financial Group, isn't that right?

9           MR. CELIO:   The same instruction.   Will you follow

10  it?

11          THE WITNESS:   I will.

12          MS. SCHNEIDER:   And another reason you provided

13  false statements to the investors I mentioned above is so

14  that they would refer other people to invest in the Fahey

15  Hedge Fund, Fahey Fund, or Fahey Financial Group, isn't that

16  right?

17          MR. CELIO:   The same instruction.   Will you follow

18  it?

19          THE WITNESS:   I will.

20          MS. SCHNEIDER:   If I ask you any more questions

21  about the account statements provided to the investors that

22  we've been discussing, will you assert your right from

23  self-incrimination under the Fifth Amendment?

24          MR. CELIO:   I instruct you not to answer that

25  question -- we have to take these one at a time -- on the

1    grounds that the Government may not compel you to give

2    testimony against yourself.  And on that basis, I instruct

3    you not to answer.  Will you follow my instruction?

4                  THE WITNESS:  I will.

5                  MS. SCHNEIDER:  Now, Mr. Trabulse, you also

6    provided account statements to Martin Button, didn't you?

7                  MR. CELIO:  The same instruction.  Will you follow

8    it?

9                  THE WITNESS:  I will.

10                 MS. SCHNEIDER:  You also provided account

11   statements to Misti Covitz, right?

12                 MR. CELIO:  The same instruction.  Will you follow

13   it?

14                 THE WITNESS:  I will.

15                 MS. SCHNEIDER:  You also provided accounts to Ms.

16   Kathy Goss, right?

17                 MR. CELIO:  The same instruction.  Will you follow

18   it?

19                 THE WITNESS:  I will.

20                 MS. SCHNEIDER:  You also provided account

21   statements to Harold Haerten, isn't that right?

22                 MR. CELIO:  The same instruction.  Will you follow

23   it?

24                 THE WITNESS:  I will.

25                 MS. SCHNEIDER:  You also provided accounts to Mrs.

1    David Hingston, didn't you?

2             MR. CELIO:  The same instruction.  Will you follow

3    it?

4             THE WITNESS:  I will.

5             MS. SCHNEIDER:  You also provide account statements

6    to Mr. James Hirst, right?

7             MR. CELIO:  The same instruction.  Will you follow

8    it?

9             THE WITNESS:  I will.

10             MS. SCHNEIDER:  You also provided account

11    statements to Mr. Per Madson?

12             MR. CELIO:  The same instruction.  Will you follow

13    it?

14             THE WITNESS:  I will.

15             MS. SCHNEIDER:  Okay.  And you also provided

16    account statements to Mr. Jim Ostella?

17             MR. CELIO:  The same instruction.  Will you follow

18    it?

19             THE WITNESS:  I will.

20             MS. SCHNEIDER:  You also provided account

21    statements to Ms. Kathy Goss?

22             MR. CELIO:  The same instruction.  Will you follow

23    it?

24             THE WITNESS:  I will.

25             MS. SCHNEIDER:  And you also provided account

1    statements to Don Sather?

2            MR. CELIO:  The same instruction.  Will you follow

3    my instruction?

4            THE WITNESS:  I will.

5            MS. SCHNEIDER:  You also provided account

6    statements to Mr. Eric Steeg, is that right?

7            MR. CELIO:  The same instruction.  Will you follow

8    it?

9            THE WITNESS:  I will.

10           MS. SCHNEIDER:  And you also provided account

11   statements to Tom Walsh, isn't that right?

12           MR. CELIO:  The same instruction.  Will you follow

13   it?

14           THE WITNESS:  I will.

15           MS. SCHNEIDER:  Okay.  And, Mr. Trabulse, you

16   prepared the account statements that you provided to the

17   investors I just mentioned, isn't that right?

18           MR. CELIO:  I instruct you not to answer the

19   question on the grounds previously stated.  Will you follow

20   my instruction?

21           THE WITNESS:  I will.

22           MS. SCHNEIDER:  And the gains reported in those

23   account statements were false, weren't they?

24           MR. CELIO:  I instruct you not to answer the

25   question on the grounds previously stated.  Will you follow

1    my instruction?

2                THE WITNESS:   I will.

3                MS. SCHNEIDER:   You knew the gains reported in

4    those account statements were false, didn't you, at the time

5    that you provided them?

6                MR. CELIO:   The same instruction.   Will you follow

7    my instruction?

8                THE WITNESS:   I will.

9                MS. SCHNEIDER:   The cumulative account balances

10   reported in those account statements are false, aren't they?

11               MR. CELIO:   The same instruction.   Will you follow

12   it?

13               THE WITNESS:   I will.

14               MS. SCHNEIDER:   And you knew the cumulative account

15   balances reported in those account statements were false at

16   the time you provided them, didn't you?

17               MR. CELIO:   The same instruction.   Will you follow

18   my instruction?

19               THE WITNESS:   I will.

20               MS. SCHNEIDER:   You encourage prospective investors

21   to call Mr. Button, Ms. Covitz, Ms. Goss, Mr. Haerter, Mr.

22   Hingston, Mr. Hirst, Mr. Madson, Mr. Osella, Ms. Ranz, Mr.

23   Sather, Mr. Steed, or Mr. Walsh as references for the Fahey

24   Hedge Fund, Fahey Fund, or the Fahey Financial Group, isn't

25   that right?

1          MR. CELIO:  The same instruction.  Will you follow

2    my instruction?

3          THE WITNESS:  I will.

4          BY MS. SCHNEIDER:

5     Q    Mr. Trabulse, I'm handing you what's been marked as

6    Exhibit 6, and let me know when you've had a chance to look

7    at Exhibit 6.

8     A    I've looked at Exhibit 6.

9     Q    All right.  And I'm just going to describe it for

10   the record.  Exhibit 6 is a one-page document.  It's -- at

11   the top it references Fahey Hedge Fund, LP, and has a

12   handwritten number in the upper right-hand corner of KH2-A.

13         You prepared this document, didn't you, Mr.

14   Trabulse?

15         MR. CELIO:  The same instruction I gave you

16   previously.  Will you follow my instruction?

17         THE WITNESS:  I will.

18         MS. SCHNEIDER:  Okay.  And you provided this

19   document to Karl Hillerman, didn't you?

20         MR. CELIO:  The same instruction.  Will you follow

21   that instruction?

22         THE WITNESS:  I will.

23         MS. SCHNEIDER:  And you provided a document similar

24   to Exhibit 6 to other investors, didn't you?

25         MR. CELIO:  I instruct you not to answer the

1    question on the grounds previously stated.  Will you follow

2    my instruction?

3                    THE WITNESS:  I will.

4                    BY MS. SCHNEIDER:

5        Q    In the left-hand column of Exhibit 6, there's a

6    list of investors underneath the heading, "Partial list of

7    original and current investors willing to receive your calls

8    who have been with the Fahey Fund at least three to five

9    years."  Do you see that section where there are investors

10   listed under that?

11       A    Yes.

12       Q    Okay.  You provided false account statements to

13   those investors that are listed in Exhibit 6 so that they

14   would provide the Fahey Hedge Fund, the Fahey Fund, or the

15   Fahey Financial Group, with a positive reference, isn't that

16   right?

17                   MR. CELIO:  I instruct you not to answer the

18   question on the grounds previously stated.  Will you follow

19   my instruction?

20                   THE WITNESS:  I will.

21                   MS. SCHNEIDER:  If I ask you any more questions

22   about the account statements provided to the investors we've

23   been speaking about, will you assert your right against

24   self-incrimination under the Fifth Amendment?

25                   MR. CELIO:  I instruct you not to answer the

1    question -- we have to take them one at a time -- the

2    Government may not compel you to give testimony against

3    yourself.  Will you follow my instruction?

4              THE WITNESS:  I will.

5              MS. SCHNEIDER:  Mr. Trabulse, you allowed some

6    investors to take loans from either the Fahey Hedge Fund, the

7    Fahey Fund, or the Fahey Financial, isn't that right?

8              MR. CELIO:  The same instruction.  Will you follow

9    it?

10             THE WITNESS:  I will.

11             MS. SCHNEIDER:  And you didn't decrease those

12   investors' investment account balances by the amount of the

13   loans, did you?

14             MR. CELIO:  The same instruction.  Will you follow

15   it?

16             THE WITNESS:  I will.

17             MS. SCHNEIDER:  Accordingly, you continued to

18   allocate to them gains from trading activities on funds that

19   had been loaned out, isn't that right?

20             MR. CELIO:  The same instruction.  Will you follow

21   it?

22             THE WITNESS:  I will.

23             MS. SCHNEIDER:  How did -- how did the Fahey Fund

24   or the Fahey Hedge Fund or Fahey Financial Group generate

25   profits from trading activities on funds that were loaned

1    out?

2              MR. CELIO:   The same instruction.   Will you follow

3    it?

4              THE WITNESS:   I will.

5              MS. SCHNEIDER:   If I ask you any more questions

6    about loans made to investors, will you assert your right

7    against self-incrimination under the Fifth Amendment?

8              MR. CELIO:   I instruct you not to answer the

9    question -- we have to take them one at a time -- the

10   Government may not compel you to give testimony against

11   yourself.   Will you follow my instruction?

12             THE WITNESS:   I will.

13             BY MS. SCHNEIDER:

14   Q    Mr. Trabulse, I'm handing you what's been marked as

15   Exhibit 21 -- previously been marked as Exhibit 21 -- and I'm

16   just going to describe it for the record.   Exhibit 21 appears

17   to be a four-page pamphlet.   It's double-sided and the first

18   page is titled, "The Fahey Hedge Fund Track Record since its

19   first trade of 2/4/1987, from the quarterly reports."   And it

20   has a handwritten number in the upper right-hand corner of

21   UJM No. 1.

22             And let me know when you've had a chance to look at

23   that, Mr. Trabulse.

24   A    Okay, I've looked at it.

25   Q    Do you recognize Exhibit 21?

1          MR. CELIO:  The same instruction I've given you

2     previously.  Will you follow my instruction?

3          THE WITNESS:  I will.

4          MS. SCHNEIDER:  You prepared Exhibit 21, didn't

5     you, Mr. Trabulse?

6          MR. CELIO:  The same instruction.  Will you follow

7     it?

8          THE WITNESS:  I will.

9          MS. SCHNEIDER:  Mr. Trabulse, are you refusing to

10    answer my question based on your Fifth Amendment privilege

11    against self-incrimination?

12         MR. CELIO:  Mr. Trabulse, I instruct you not to

13    answer the question on the grounds that the Government may

14    not compel you to give testimony against yourself.  Will you

15    follow my instruction?

16         THE WITNESS:  I will.

17         MS. SCHNEIDER:  You provided Exhibit 21 to Urbano

18    McFey (phonetic), didn't you?

19         MR. CELIO:  The same instruction.  Will you follow

20    it?

21         THE WITNESS:  I will.

22         MS. SCHNEIDER:  And you provided a document similar

23    to Exhibit 21 to other investors, didn't you?

24         MR. CELIO:  The same instruction.  Will you follow

25    it?

1          THE WITNESS:  I will.

2          MS. SCHNEIDER:  Exhibit 21 reports the Fahey Hedge

3    Fund's performance in each of the quarters in 1998, doesn't

4    it?

5          MR. CELIO:  I instruct you not to answer the

6    question on the grounds previously stated.  Will you follow

7    my instruction?

8          THE WITNESS:  I will.

9          MS. SCHNEIDER:  Okay.  And Exhibit 21 indicates

10   that the Fahey Hedge Fund gained money in 1998, doesn't it?

11         MR. CELIO:  The same instruction as I've given you

12   previously.  Will you follow it?

13         THE WITNESS:  I will.

14         MS. SCHNEIDER:  The quarterly performance figures

15   for 1998 that are contained in Exhibit 21 are false, aren't

16   they?

17         MR. CELIO:  The same instruction.  Will you follow

18   it?

19         THE WITNESS:  I will.

20         MS. SCHNEIDER:  The Fahey Hedge Fund actually lost

21   money in 1998, didn't it?

22         MR. CELIO:  The same instruction.  Will you follow

23   it?

24         THE WITNESS:  I will.

25         MS. SCHNEIDER:  And you knew that the quarterly

1  return figures for 1998 that are included in Exhibit 21 were

2  false when you provided this to Mr. McFey, didn't you?

3          MR. CELIO:  The same instruction.  Will you follow

4  it?

5          THE WITNESS:  I will.

6          MS. SCHNEIDER:  Mr. Trabulse, I'm now handing you

7  what's been marked as Exhibit -- previously been marked as

8  Exhibit 22 in this matter.  And I'll describe it for the

9  record.  Exhibit 22 appears to be a pamphlet which is

10  double-sided on both pages.  The last page number of Exhibit

11  22 is 15.  It has a handwritten number on the first page of

12  Exhibit 22 in the upper right-hand corner.  It says UJN,

13  Upgraded (phonetic).  And it appears to be a Fahey Hedge Fund

14  partnership agreement.

15          Go ahead.

16          Mr. Trabulse, do you recognize Exhibit 22?

17          MR. CELIO:  The same instruction.  Will you follow

18  it?

19          THE WITNESS:  I will.

20          MS. SCHNEIDER:  You prepared Exhibit 22, didn't

21  you?

22          MR. CELIO:  The same instruction.  Will you follow

23  it?

24          THE WITNESS:  I will.

25          MS. SCHNEIDER:  You provided Exhibit 22 to Urbano

1    McFey before he invested in the Fahey Hedge Fund, didn't you?

2             MR. CELIO:  The same instruction.  Will you follow

3    it?

4             THE WITNESS:  I will.

5             MS. SCHNEIDER:  And you provided a partnership

6    agreement to other investors before they invested money in

7    either Fahey Hedge Fund, Fahey Fund, or Fahey Financial

8    Group, didn't you?

9             MR. CELIO:  The same instruction.  Will you follow

10   it?

11            THE WITNESS:  I will.

12            BY MS. SCHNEIDER:

13   Q    I want to look at a specific section of Exhibit 22.

14   It's Section 2.01.  And Section 2.01 is on page 3.  Let me

15   know when you get there.

16   A    I'm there.

17   Q    All right.  Now, do you see in Section -- let's

18   see, 2.01, the last sentence of Section 2.01 starts with,

19   "The trading vehicles will be chosen from a loan," do you see

20   that?

21            MR. CELIO:  You can answer if you see that.

22            THE WITNESS:  I do.

23            MS. SCHNEIDER:  Okay.  So --

24            THE WITNESS:  See that.

25            MS. SCHNEIDER:  Okay.  So that sentence says, "The

1    trading vehicles will be chosen from a loan, but not limited

2    to the following stocks," and then in parenthesis, it says,

3    "NYSE, NASDQ, AMEX, et cetera," end parenthesis.   "Indexes,

4    warrants, stock options, futures, and their options, COLA

5    contracts, cash market," and then in parenthesis, "physical

6    commodities, transactions, and similar financial

7    instruments."   Do you see that sentence?

8           MR. CELIO:   Okay.   You can answer if you see the

9    sentence.

10          THE WITNESS:   I see the sentence.

11          MS. SCHNEIDER:   You see the sentence on the page,

12    okay.

13          Now, Mr. Trabulse, you used investors' funds to

14    purchase items not listed in Section 2.01, didn't you?

15          MR. CELIO:   The same instruction.   Will you follow

16    it?

17          THE WITNESS:   I will.

18          MS. SCHNEIDER:   You used investor funds to purchase

19    items that you didn't disclose to investors before they

20    invested money, isn't that right?

21          MR. CELIO:   The same instruction.   Will you follow

22    it?

23          THE WITNESS:   I will.

24          MS. SCHNEIDER:   Mr. Trabulse, did you fail to

25    invest investors' money as you told them you would?

1           MR. CELIO:  The same instruction.  Will you follow

2    it?

3           THE WITNESS:  I will.

4           MS. SCHNEIDER:  Mr. Trabulse, did you

5    misappropriate investor funds?

6           MR. CELIO:  The same instruction.  Will you follow

7    it?

8           THE WITNESS:  I will.

9           MS. SCHNEIDER:  Did you use new investor funds to

10   make distributions to older investors?

11          MR. CELIO:  The same instruction.  Will you follow

12   it?

13          THE WITNESS:  I will.

14          MS. SCHNEIDER:  Mr. Trabulse, if I ask you any more

15   questions about how you used investor funds, will you assert

16   your right against self-incrimination under the Fifth

17   Amendment?

18          MR. CELIO:  I am going to you not to answer that

19   question -- we have to take these questions one at a time.

20   In addition, the Government may not compel you to give

21   testimony against yourself.  Will you follow my instruction?

22          THE WITNESS:  I will.

23          BY MS. SCHNEIDER:

24   Q    Still on Exhibit 22, I want to go through a couple

25   of more sections.  The next one is Section 5.14 and it's on

1    page 6, entitled, "Division and distribution of profit."   Let

2    me know when you get there.

3         A    I'm there.

4         Q    Okay.  So the second sentence of Section 5.14 says,

5    "These profits shall be allocated according to the ratio of

6    each partner's capital account to the fund's total capital."

7    Do you see that sentence?

8         A    I do.

9         Q    Okay.  You didn't allocate profits to the partners

10   in accordance with Section 5.14, did you?

11             MR. CELIO:  I instruct you not to answer the

12   question on the grounds previously stated.  Will you follow

13   my instruction?

14             THE WITNESS:  I will.

15             MS. SCHNEIDER:  In fact, you allocated to certain

16   partners -- or, in fact, you allocated to certain investors

17   more profits than they were entitled to under Section 5.14,

18   didn't you?

19             MR. CELIO:  I instruct you not to answer the

20   question on the grounds previously stated.  Will you follow

21   my instruction?

22             THE WITNESS:  I will.

23             MS. SCHNEIDER:  And you allocated to certain

24   investors less profits than they were entitled to under this

25   section, didn't you?

1          MR. CELIO:  The same instruction.  Will you follow

2     my instruction?

3          THE WITNESS:  I will.

4          BY MS. SCHNEIDER:

5     Q     Okay.  And then the next sentence -- it will be the

6     first, second -- third sentence that starts, "Thereafter, 25

7     percent," do you see that sentence?

8     A     I see that sentence.

9     Q     Okay.  It says:  "Thereafter, 25 percent of the net

10    profit attributable to each limited partner shall be payable

11    and distributable to the general partner or partners with

12    under $50,000 at a rate of 40 percent distribution.  Losses

13    will be charged against the general partner up to his share

14    of the profits from the beginning of the fiscal year, when

15    the partners are calculated."

16         Do you see that sentence?

17    A     I see that sentence.

18    Q     Okay.  You didn't pay or distribute profits to

19    yourself in accordance with Section 5.14, did you?

20         MR. CELIO:  I instruct you not to answer the

21    question on the grounds previously stated.  Will you follow

22    my instruction?

23         THE WITNESS:  I will.

24         MS. SCHNEIDER:  In fact, you paid or distributed to

25    yourself more profits than you were entitled to under Section

1    5.14, isn't that right?

2            MR. CELIO:  The same instruction.  Will you follow

3    it?

4            THE WITNESS:  I will.

5            BY MS. SCHNEIDER:

6        Q    All right.  And I just want to focus on the second

7    to last sentence -- it looks like the second to last sentence

8    in Section 5.14 where it says, "Losses shall be charged

9    against the general partner up to his share of the profits

10   from the beginning of the fiscal year, when the partners'

11   losses are calculated," do you see that?

12       A    I see that.

13       Q    Okay.  You're the general partner, isn't that

14   right, Mr. Trabulse, of Fahey Hedge Fund?

15           MR. CELIO:  The same instruction.  Will you follow

16   it?

17           THE WITNESS:  I will.

18           MS. SCHNEIDER:  You didn't account for losses in

19   accordance with Section 5.14, did you?

20           MR. CELIO:  The same instruction.  Will you follow

21   it?

22           THE WITNESS:  I will.

23           MS. SCHNEIDER:  And you didn't reduce your share of

24   the profit in accordance with Section 5.14, did you?

25           MR. CELIO:  The same instruction.  Will you follow

1    it?

2              THE WITNESS:  I will.

3              MS. SCHNEIDER:  If I ask you any more questions

4    about Section 5.14, will you assert your privilege against

5    self-incrimination under the Fifth Amendment?

6              MR. CELIO:  I instruct you not to answer that

7    question -- we have to take these one at a time.  Moreover,

8    the Government has no right to compel you to give testimony

9    against yourself.  Will you follow my instruction?

10             THE WITNESS:  I will.

11             BY MS. SCHNEIDER:

12        Q    Let's turn to Section 5.16.  Section 5.16 is at the

13   top of page 7.  It's titled, "Definition of profits and

14   losses."  Do you see that section?

15        A    I see that section.

16        Q    Okay.  And that section says:  "The terms 'net

17   profits' and 'net losses' used in these articles mean the net

18   profits and net losses of the fund as determined by

19   generally-accepted accounting principles for each accounting

20   period provided for in these articles."

21             Do you see that?

22        A    I see that.

23        Q    Okay.  The net profits and net losses weren't

24   determined in accordance with generally accepted accounting

25   principles, were they?

1          MR. CELIO:  I instruct you not to answer the

2    question on the grounds previously stated.  Will you follow

3    my instruction?

4          THE WITNESS:  I will.

5          MS. SCHNEIDER:  Mr. Trabulse, did you ever tell any

6    prospective investors that you weren't the best bookkeeper?

7          MR. CELIO:  I instruct you not to answer the

8    question on the grounds previously stated.  Will you follow

9    my instruction?

10          THE WITNESS:  I will.

11          MS. SCHNEIDER:  And, Mr. Trabulse, if I ask you any

12    more questions about how profits or losses were determined,

13    will you assert your Fifth Amendment privilege against

14    self-incrimination?

15          MR. CELIO:  I instruct you not to answer that

16    question.  We have to answer each question as it comes.

17    Moreover, the Government has no right to compel you to give

18    testimony against yourself.  Will you follow my instruction?

19          THE WITNESS:  I will.

20          MS. SCHNEIDER:  Now, I'd like to look at Section

21    6.06.  And just for the record we're still on Exhibit 22.

22    And 6.05 is entitled, "Salaries."  It's in the middle of the

23    page on page 8, do you see that?

24          MR. CELIO:  You can answer that.

25          THE WITNESS:  Yes, I see that.

1          BY MS. SCHNEIDER:

2     Q    Okay.  And Section 6.06 says:  "No partner shall be

3    entitled to any salary, but the general partner shall receive

4    the right to draw expenses consistent with prudent and sound

5    management trading activities, such expenses being charged

6    against his share of the profit."

7          Do you see that sentence?

8     A    I see that sentence.

9     Q    Okay.  Mr. Trabulse, you used investor funds or

10   profits to pay for personal expenses not related to the

11   business of Fahey Hedge Fund, Fahey Fund, Fahey Financial

12   Group, or International Trade and Data, didn't you?

13         MR. CELIO:  The same instruction I gave you

14   previously.  Will you follow my instruction?

15         THE WITNESS:  I will.

16         MS. SCHNEIDER:  And, in fact, Mr. Trabulse, you

17   used investor funds or profits to pay for expenses in ways

18   not authorized by Section 6.06, didn't you?

19         MR. CELIO:  The same instruction.  Will you follow

20   it?

21         THE WITNESS:  I will.

22         MS. SCHNEIDER:  And, in fact, you didn't charge any

23   expenses against your share of the profits, did you?

24         MR. CELIO:  The same instruction.  Will you follow

25   it?

1              THE WITNESS:  I will.

2              MS. SCHNEIDER:  Mr. Trabulse, you co-mingled your

3    personal funds with investor funds as profits in the bank

4    accounts of Fahey Hedge Fund, Fahey Fund, or Fahey Financial,

5    didn't you?

6              MR. CELIO:  The same instruction.  Will you follow

7    my instruction?

8              THE WITNESS:  I will.

9              MS. SCHNEIDER:  Okay.  And if I ask you any more

10   questions about your use of investor funds or profits to pay

11   for personal expenses not related to the business of Fahey

12   Fund, Fahey Hedge Fund, or Fahey Financial, will you assert

13   your right against self-incrimination under the Fifth

14   Amendment?

15             MR. CELIO:  I instruct you not to answer the

16   question -- we have to take them one at a time -- the

17   Government may not compel you to give testimony against

18   yourself.  Will you follow my instruction?

19             THE WITNESS:  I will.

20             BY MS. SCHNEIDER:

21        Q    So, Mr. Trabulse, I'm now handing you what's

22   previously been marked as Exhibit 23 in this matter.  I'm

23   just going to describe it for the record.  Exhibit 23 is a

24   double-sided booklet and it is marked pages 1 through 7.  It

25   has a handwritten number on the first page in the upper

1    right-hand corner that says, "UJN No. 2."  And the heading on

2    the first page says, "Fahey Hedge Fund, profit, fundamental

3    and technical imbalances, in broad markets (phonetic)."  Let

4    me know when you've had a chance to review Exhibit 23, Mr.

5    Trabulse.

6         A    Yes, that's fine.  I've reviewed it.

7         Q    Okay.  Do you recognize Exhibit 23?

8              MR. CELIO:  The same instruction.  Will you follow

9    it?

10             THE WITNESS:  I will.

11             MS. SCHNEIDER:  You prepared Exhibit 23, didn't

12   you?

13             MR. CELIO:  The same instruction.  Will you follow

14   it?

15             THE WITNESS:  I will.

16             MS. SCHNEIDER:  And you provided Exhibit 23 to

17   Urbano McFey before he invested, isn't that right?

18             MR. CELIO:  The same instruction.  Will you follow

19   it?

20             THE WITNESS:  I will.

21             MS. SCHNEIDER:  And you provided documents similar

22   to Exhibit 23 to other investors before they invested, is

23   that right?

24             MR. CELIO:  The same instruction.  Will you follow

25   it?

1          THE WITNESS:  I will.

2          MS. SCHNEIDER:  One of the reasons you provided

3    this to Urbano McFey was to explain how a hedge fund worked,

4    isn't that right?

5          MR. CELIO:  The same instruction.  Will you follow

6    it?

7          THE WITNESS:  I will.

8          BY MS. SCHNEIDER:

9      Q    I want to look at -- on page 4 of Exhibit 23.  All

10   the way down on the bottom there's a section entitled,

11   "Performance."  Do you see that?

12     A    I see that.

13     Q    Okay.  And the first sentence under the performance

14   section it says, "Last year we returned over 39 percent to

15   our investors."  Do you see that?

16     A    I see that.

17     Q    Okay.  Mr. Trabulse, that phrase, "last year we

18   returned over 39 percent to our investors," is false, isn't

19   it?

20         MR. CELIO:  The same instruction as I've given you

21   previously.  Will you follow my instruction?

22         THE WITNESS:  I will.

23         MS. SCHNEIDER:  In fact, the Fahey Hedge Fund

24   actually lost money in 1998, didn't it?

25         MR. CELIO:  The same instruction.  Will you follow

1    it?

2              THE WITNESS:  I will.

3              MS. SCHNEIDER:  And you knew that the 39 percent

4    figure was false when you provided Exhibit 23 to Mr. McFey,

5    didn't you?

6              MR. CELIO:  The same instruction.  Will you follow

7    it?

8              THE WITNESS:  I will.

9              BY MS. SCHNEIDER:

10      Q    Okay.  And looking over to page 5, at the very

11   bottom there's a sentence that says:  "If you would like to

12   benefit from the high returns and low risk approach offered

13   by the Fahey Fund, look below at the different types of funds

14   with structures to suit the individual investors."

15             Do you see that sentence?

16      A    I see that sentence.

17      Q    Okay.  Describe Fahey Hedge Fund's low risk

18   approach for me.

19             MR. CELIO:  I instruct you not to answer the

20   question on the grounds previously stated.  Will you follow

21   my instruction?

22             THE WITNESS:  I will.

23             MS. SCHNEIDER:  And Fahey Hedge Fund's trading

24   strategy wasn't low risk, was it?

25             MR. CELIO:  The same instruction as I've given you

1    previously.  Will you follow my instruction?

2           THE WITNESS:  I will.

3           BY MS. SCHNEIDER:

4      Q    And turning to page 6 of Exhibit 23, the very top

5    it says, "Fahey Fund Types," and then there's a listing of

6    various funds, the original Fahey Hedge Fund, new, the Fahey

7    Broker/Dealer Fund, new, the Fahey Super Conservative Fund,

8    new, Specialty Funds."  Do you see that?

9      A    I see that.

10     Q    Okay.  Page 6 describes multiple funds, doesn't it?

11          MR. CELIO:  I instruct you not to answer the

12   question on the grounds previously stated.  Will you follow

13   my instruction?

14          THE WITNESS:  I will.

15          MS. SCHNEIDER:  Okay.  The Fahey Fund didn't have

16   separate funds, did it?

17          MR. CELIO:  The same instruction as I've given you

18   previously.  Will you follow my instruction?

19          THE WITNESS:  I will.

20          MS. SCHNEIDER:  I want to go off the record for

21   five minutes.  So we're off the record at 4:00 p.m.

22          (Off the record.)

23          MS. SCHNEIDER:  We're back on the record at 4:10

24   p.m.

25          BY MS. SCHNEIDER:

1        Q    Mr. Trabulse, I'm handing you what's previously

2    been marked as Exhibit 5 in this matter.  And I'm just going

3    to describe it for the record.  Exhibit 5 appears to contain

4    information about the Fahey Hedge Fund, and it has

5    handwritten numbers in the upper right-hand corner.  And it

6    says, "KH5-A through KH8-A."  Let me know when you've had a

7    chance to look at it.

8        A    I have had a chance.

9        Q    Okay.  Do you recognize Exhibit 5, Mr. Trabulse?

10            MR. CELIO:  The same instruction.  Will you follow

11   it?

12            THE WITNESS:  I will.

13            MS. SCHNEIDER:  Okay.  And you prepared Exhibit 5,

14   isn't that right?

15            MR. CELIO:  The same instruction.  Will you follow

16   it?

17            THE WITNESS:  I will.

18            MS. SCHNEIDER:  You provided Exhibit 5 to Karl

19   Hillerman, isn't that right?

20            MR. CELIO:  The same instruction.  Will you follow

21   it?

22            THE WITNESS:  I will.

23            MS. SCHNEIDER:  And you provided documents similar

24   to Exhibit 5 to other investors, didn't you?

25            MR. CELIO:  The same instruction.  Will you follow

124

1    it?

2                 THE WITNESS:  I will.

3                 BY MS. SCHNEIDER:

4        Q    Okay.  I'd like to turn to -- there's a chart on

5    typewritten page 2 and in the upper right-hand corner it has

6    handwritten numbers of KH6-A.

7        A    I'm there.

8        Q    Okay.  And do you see the chart that's on the page

9    with the handwritten numbers in the upper right-hand corner

10   that says, "KH6-A"?

11       A    I do.

12       Q    Okay.  You prepared this chart, didn't you?

13                MR. CELIO:  The same instruction.  Will you follow

14   it?

15                THE WITNESS:  I will.

16                MS. SCHNEIDER:  Okay.  And this chart purports to

17   reflect Fahey Hedge Fund's performance, doesn't it?

18                MR. CELIO:  The same instruction.  Will you follow

19   it?

20                THE WITNESS:  I will.

21                MS. SCHNEIDER:  And it doesn't accurately reflect

22   Fahey Hedge Fund's performance, does it?

23                MR. CELIO:  The same instruction.  Will you follow

24   it?

25                THE WITNESS:  I will.

1              MS. SCHNEIDER:  The Fahey Hedge Fund did not earn

2    profits every quarter, did it?

3              MR. CELIO:  The same instruction.  Will you follow

4    it?

5              THE WITNESS:  I will.

6              MS. SCHNEIDER:  And you knew when you provided page

7    KH6-A to Karl Hillerman that the chart was false, didn't you?

8              MR. CELIO:  The same instruction.  Will you follow

9    it?

10             THE WITNESS:  I will.

11             MS. SCHNEIDER:  One of the reasons you

12   prepared -- one of the reasons you provided the chart on page

13   KH6-A to investors was to make investors think that Fahey

14   Hedge Fund delivered consistent results, isn't that right?

15             MR. CELIO:  The same instruction.  Will you follow

16   it?

17             THE WITNESS:  I will.

18             BY MS. SCHNEIDER:

19       Q    Okay.  And there's another chart on the next page

20   of Exhibit 5, and it has handwritten numbers of KH7-A in the

21   upper right-hand corner.  Do you see that chart?

22       A    I see that chart.

23       Q    Okay.  You prepared this chart, didn't you?

24             MR. CELIO:  The same instruction.  Will you follow

25   it?

1              THE WITNESS:  I will.

2              MS. SCHNEIDER:  This chart purports to reflect

3    Fahey Hedge Fund's performance, doesn't it?

4              MR. CELIO:  The same instruction.  Will you follow

5    it?

6              THE WITNESS:  I will.

7              MS. SCHNEIDER:  It doesn't accurately reflect the

8    Fahey Hedge Fund's performance, does it?

9              MR. CELIO:  The same instruction.  Will you follow

10   my instruction?

11             THE WITNESS:  I will.

12             MS. SCHNEIDER:  You knew at the time you provided

13   the page that's marked KH7-A that the chart did not

14   accurately reflect the Fahey Hedge Fund's performance, didn't

15   you?

16             MR. CELIO:  The same instruction.  Will you follow

17   it?

18             THE WITNESS:  I will.

19             BY MS. SCHNEIDER:

20        Q    Okay.  And turning to the last page of Exhibit 5,

21   it has handwritten numbers of KH8-A in the upper right-hand

22   corner, and there's a column on the left-hand side that says,

23   "Frequently asked questions."  Are you on that page?

24        A    I am on that page.

25        Q    Okay.  Now, there's a series of questions and

1    answers.  And the second to the last question says, "Are you

2    actually saying that losses are absorbed by the fund?"  Do

3    you see that question?

4         A    I see that question.

5         Q    Okay.  Let's see.  Okay.  So underneath that

6    question there's an answer and the second sentence says:

7    "Since the fund has been around nearly six years and has a

8    very solid run, the traders have large profits and the fund

9    puts aside large reserves against draw-down and initial

10   position losses."

11             Do you see that sentence?

12        A    I see that sentence.

13        Q    Okay.  The fund didn't actually put aside reserves

14   against draw-down and initial position losses, did it?

15             MR. CELIO:  The same instruction I've given you

16   previously.  Will you follow it?

17             THE WITNESS:  I will.

18             MS. SCHNEIDER:  Okay.  And you knew at the time you

19   provided page KH8-A to Karl Hillerman that the fund did not

20   put aside reserves against draw-down and initial position

21   losses, didn't you?

22             MR. CELIO:  The same instruction.  Will you follow

23   my instruction?

24             THE WITNESS:  I will.

25             BY MS. SCHNEIDER:

1      Q    And then the paragraph right underneath where I was

2    reading, the third sentence says, "We decided to go all the

3    way and put our entire share on the line for the prior three

4    years subject to certain limitations."  Do you see that?

5      A    I see that.

6      Q    Okay.  Did you put your entire share on the line

7    for the prior three years?

8           MR. CELIO:  The same instruction I've given you

9    previously.  Will you follow it?

10          THE WITNESS:  I will.

11          MS. SCHNEIDER:  You didn't, in fact, put your

12   entire share on the line for the prior three years, did you?

13          MR. CELIO:  The same instruction.  Will you follow

14   it?

15          THE WITNESS:  I will.

16          MS. SCHNEIDER:  One of the reasons you included

17   information of the fund absorbing losses was to make

18   investors believe their investment would be secure, isn't

19   that right?

20          MR. CELIO:  The same instruction as I've given you

21   previously.  Will you follow it?

22          THE WITNESS:  I will.

23          BY MS. SCHNEIDER:

24     Q    Okay.  And still on the same page over on the

25   right-hand side, in the middle of the page there's a

1    question.  It says, "Is the Fahey Fund offering any new

2    investment vehicles?"  Do you see that?

3         A    I see that.

4         Q    Okay.  And it says -- the answer underneath it

5    says, "The fund is offering a new reserved fund with a fixed

6    rate of return and a guarantee of no original capital loss."

7    Do you see that sentence?

8         A    I see that sentence.

9         Q    Okay.  There was no separate reserve fund, was

10   there?

11             MR. CELIO:  The same instruction.  Will you follow

12   it?

13             THE WITNESS:  I will.

14             MS. SCHNEIDER:  Okay.  And the reserve fund had the

15   same strategy as the Fahey Fund, isn't that right?

16             MR. CELIO:  The same instruction.  Will you follow

17   it?

18             THE WITNESS:  I will.

19             MS. SCHNEIDER:  And investor monies that were put

20   into the reserve fund, in fact, were co-mingled with monies

21   in the Fahey Fund, weren't they?

22             MR. CELIO:  The same instruction.  Will you follow

23   it?

24             THE WITNESS:  I will.

25             BY MS. SCHNEIDER:

1      Q    Okay.  And I'm still on that same answer.  Looking

2    at the first, second, third -- fourth sentence.  And the

3    sentence starts, "In order to insulate your initial capital,"

4    do you see that sentence?

5      A    I see that sentence.

6      Q    Okay.  So that -- "In order to insulate your

7    initial capital, we put aside an special reserve fund equal

8    to at least 15 percent of your investment."  Do you see that?

9      A    I see that.

10     Q    Okay.  You didn't actually put aside that reserve,

11   did you?

12          MR. CELIO:  The same instruction as I've given you

13   previously.  Will you follow my instruction?

14          THE WITNESS:  I will.

15          MS. SCHNEIDER:  Okay.  And at the time you provided

16   page KH8-A to Karl Hillerman, you knew that you hadn't put

17   aside a special reserve fund, isn't that right?

18          MR. CELIO:  The same instruction as I've given you

19   previously.  Will you follow it?

20          THE WITNESS:  I will.

21          MS. SCHNEIDER:  If I ask you any more questions,

22   Mr. Trabulse, about the statements that are in Exhibit 5,

23   will you assert your right against self-incrimination under

24   the Fifth Amendment?

25          MR. CELIO:  I instruct you not to answer that

131

1    question.  Take each question as it comes.  Moreover, the

2    Government has no right to compel you to give testimony

3    against yourself.  Will you follow my instructions?

4             THE WITNESS:  I will.

5             BY MS. SCHNEIDER:

6        Q    Mr. Trabulse, I'm handing you what has been

7    previously marked as Exhibit 46 in this matter, and I'm just

8    going to describe it for the record.  Exhibit 46 -- it's a

9    three-page document and it has handwritten numbers in the

10   upper right-hand corner that says, "Bannister, doc 11-A

11   through doc 11-C."  And the first page of Exhibit 46 has the

12   title on top of a chart, which says, "Fahey Hedge Fund, eight

13   year quarterly track record."

14            Do you recognize Exhibit 46, Mr. Trabulse?

15       A    I do.

16       Q    What is it?

17            MR. CELIO:  I instruct you not to answer the

18   question on the grounds previously stated.

19            Just to clarify, you see the exhibit in front of

20   you, right?  That was the question you answered.

21            THE WITNESS:  I answered that question, that's

22   right.

23            MR. CELIO:  Okay.

24            MS. SCHNEIDER:  I asked you if you recognized the

25   exhibit, Mr. Trabulse.

132

1          MR. CELIO:  Okay.  The question -- okay.  There was

2    a confusion.

3          MS. SCHNEIDER:  I'll ask it again.

4          MR. CELIO:  Okay.

5          MS. SCHNEIDER:  I'll ask it again.

6          MR. CELIO:  Yeah, just so that there's some

7    clarification.

8          MS. SCHNEIDER:  Do you recognize Exhibit 46, Mr.

9    Trabulse?

10         MR. CELIO:  That question, I instruct you not to

11   answer.  Will you follow my instruction?

12         THE WITNESS:  I will.

13         MS. SCHNEIDER:  Mr. Trabulse, you prepared Exhibit

14   46, isn't that right?

15         MR. CELIO:  I instruct you not to answer that

16   question as previously -- as I've previously described.  Will

17   you follow my instruction?

18         THE WITNESS:  I will.

19         MS. SCHNEIDER:  And you provided Exhibit 46 to

20   James Bannister, didn't you?

21         MR. CELIO:  The same instruction.  Will you follow

22   it?

23         THE WITNESS:  I will.

24         MS. SCHNEIDER:  Okay.  And I'd like to turn to a

25   page in Exhibit 46.  It's a page that's not -- in the upper

133

1    right-hand corner, it says, "Doc 11-B."  Do you see that

2    page?

3                MR. CELIO:  Just to be clear, so that we don't have

4    another misunderstanding.

5                MS. SCHNEIDER:  Do you see that page?

6                MR. CELIO:  Do you see the page in front of you?

7    That's the question.

8                THE WITNESS:  I see the page in front of me.

9                MS. SCHNEIDER:  Okay.  Now, this chart purports to

10   reflect the Fahey Hedge Fund's performance, doesn't it?

11               MR. CELIO:  The same instruction.  Will you follow

12   it?

13               THE WITNESS:  I will.

14               MS. SCHNEIDER:  And this chart doesn't accurately

15   reflect the Fahey Hedge Fund's performance, does it?

16               MR. CELIO:  The same instruction.  Will you follow

17   it?

18               THE WITNESS:  I will.

19               MS. SCHNEIDER:  The Fahey Hedge Fund actually lost

20   money in 1998, didn't it?

21               MR. CELIO:  The same instruction.  Will you follow

22   it?

23               THE WITNESS:  I will.

24               BY MS. SCHNEIDER:

25        Q    I'm sorry, I didn't hear you.

134

1      A     I will.

2      Q     Okay.   Thank you.

3            And the Fahey Hedge Fund actually lost money in

4    2000, didn't it?

5            MR. CELIO:   The same instruction.   Will you follow

6    my instruction?

7            THE WITNESS:   I will.

8            MS. SCHNEIDER:   You knew the chart on doc 11-B was

9    false when you provided it to Mr. Bannister, didn't you?

10           MR. CELIO:   The same instruction.   Will you follow

11   it?

12           THE WITNESS:   I will.

13           MS. SCHNEIDER:   If I ask you any more questions

14   about Exhibit 46, Mr. Trabulse, will you assert your right to

15   self-incrimination under the Fifth Amendment?

16           MR. CELIO:   I instruct you not to answer that

17   question -- we're going to take each question as it's asked.

18   Moreover, the Government has no right to compel you to give

19   testimony against yourself in any respect.   Will you follow

20   my instruction?

21           THE WITNESS:   I will.

22           MS. SCHNEIDER:   Mr. Trabulse, how did you find

23   investors for the Fahey Hedge Fund?

24           MR. CELIO:   I instruct you not to answer the

25   question on the grounds previously stated.   Will you follow

1    my instruction?

2                THE WITNESS:  I will.

3                MS. SCHNEIDER:  Mr. Trabulse, are you refusing to

4    answer my question based on your Fifth Amendment privilege

5    against self-incrimination?

6                MR. CELIO:  Just to be clear, I'm instructing you

7    not to answer that question on the grounds that the United

8    States Constitution forbids the United States Government from

9    compelling you to give testimony against yourself.  Will you

10   follow my instruction not to answer the question?

11               THE WITNESS:  I will.

12               BY MS. SCHNEIDER:

13   Q    And I'd like to go back to Exhibit 6, which I

14   believe I've already provided to both you and your counsel.

15               Just let me know when you get there.

16   A    Okay, we're there.

17   Q    Okay.  And on Exhibit 6 there's a box on the

18   right-hand column that's titled, "Original references,

19   pre-1997."  Do you see that?

20               MR. CELIO:  I think the question is do you see it

21   in front of you there?

22               THE WITNESS:  I see it.

23               MS. SCHNEIDER:  Okay.  Let's see there.  And I want

24   to look at the first, second, third, fourth -- it's the fifth

25   sentence.  And the sentence starts, "The Fahey Fund began in

1    the mid-'90s."  Do you see that sentence?

2             MR. CELIO:  Are you on the top paragraph?

3    Which -- where are you on the page?

4             MS. SCHNEIDER:  There's a box on the right-hand

5    column and it's entitled, "Original references, pre-1997."

6    And there's an, "A. James -- Jim Trabulse."

7             MR. CELIO:  Okay.  What sentence?

8             MS. SCHNEIDER:  The text underneath that box, the

9    fifth sentence.  It starts, "The Fahey Fund began in the

10   mid-'90s."

11            MR. CELIO:  Okay.  I'm with you.

12            BY MS. SCHNEIDER:

13   Q    Mr. Trabulse, are you with me?

14   A    Yes, I see the sentence.

15   Q    Okay.  So that says:  "The Fahey Fund began in the

16   mid-'90s in response to requests from friends and colleagues

17   who wanted to benefit from the explosion of financial and

18   futures products."

19            Do you see that sentence?

20   A    I see that sentence.

21   Q    Okay.  That sentence is not true, is it?

22            MR. CELIO:  The same instruction I've given you

23   previously.  Will you follow my instruction?

24            THE WITNESS:  I will.

25            MS. SCHNEIDER:  Okay.  In fact, you solicited

1  prospective investors with whom you didn't already have a

2  relationship, didn't you?

3        MR. CELIO:  The same instruction.  Will you follow

4  my instruction?

5        THE WITNESS:  I will.

6        MS. SCHNEIDER:  Mr. Trabulse, you never filed a

7  registration statement for the offer of securities by Fahey

8  Hedge Fund, Fahey Fund, or Fahey Financial Group with the

9  Securities and Exchange Commission, did you?

10        MR. CELIO:  The same instruction.  Will you follow

11  my instruction?

12        THE WITNESS:  I will.

13        MS. SCHNEIDER:  You didn't meet any exemptions from

14  registration, did you?

15        MR. CELIO:  Not only does that call for a legal

16  conclusion, and he wouldn't be qualified to answer it.  In

17  any event, I'm going to tell you not to answer the question

18  on the same grounds previously stated.  Will you follow my

19  instruction?

20        THE WITNESS:  I will.

21        MS. SCHNEIDER:  Mr. Trabulse, did you take any

22  steps to determine whether you met any -- let me start over.

23        Did you take any steps to ensure that the Fahey

24  Hedge Fund or the Fahey Fund or the Fahey Financial Group met

25  exemptions from registration under the Securities Act of

1   1933?

2                  MR. CELIO:  I instruct you not to answer the

3   question.  Will you follow my instruction?

4                  THE WITNESS:  I will.

5                  MS. SCHNEIDER:  Mr. Trabulse, you didn't do

6   anything to determine whether or not investors were

7   accredited, as that term is defined by the Securities Act of

8   1933, did you?

9                  MR. CELIO:  The same instruction.  Don't answer the

10  question.  Will you follow my instruction?

11                 THE WITNESS:  I will.

12                 MS. SCHNEIDER:  Mr. Trabulse, you didn't provide

13  Courtney Robinson with financial statements for either the

14  Fahey Hedge Fund, the Fahey Fund, or the Fahey Financial

15  Group, for his investment, did you?

16                 MR. CELIO:  The same instruction.  Will you follow

17  my instruction?

18                 THE WITNESS:  I will.

19                 MS. SCHNEIDER:  And you didn't provide Mary Escher

20  with financial statements for the Fahey Hedge Fund, the Fahey

21  Fund, or the Fahey Financial Group, before she invested, did

22  you?

23                 MR. CELIO:  I instruct you not to answer the

24  question.  Will you follow my instruction?

25                 THE WITNESS:  I will.

1          MS. SCHNEIDER:  And you didn't provide James Wojack

2    with financial statements for the Fahey Hedge Fund, the Fahey

3    Financial Group, or the Fahey Financial Group before he

4    invested, did you?

5          MR. CELIO:  The same instruction.  Will you follow

6    it?

7          THE WITNESS:  I will.

8          MS. SCHNEIDER:  If I ask you any more questions

9    about the subject of accredited investors, will you assert

10   your right against self-incrimination under the Fifth

11   Amendment?

12         MR. CELIO:  I instruct you not to answer on several

13   grounds.  One, that you have to listen to each question and

14   listen to my instructions.  The Government, in any event, has

15   no right to compel you to give testimony against yourself.

16   Will you follow my instructions?

17         THE WITNESS:  I will.

18         MS. SCHNEIDER:  Mr. Trabulse, you never registered

19   either the Fahey Hedge Fund, the Fahey Fund, or the Fahey

20   Financial Group, as an investment company under the

21   Investment Company Act with the Securities and Exchange

22   Commission, did you?

23         MR. CELIO:  The same instruction.  Will you follow

24   my instruction?

25         THE WITNESS:  I will.

1          MS. SCHNEIDER:  And did you take any steps to

2    ensure that those entities did not need to register under the

3    Investment Company Act?

4          MR. CELIO:  The same instruction.  Will you follow

5    my instruction?

6          THE WITNESS:  I will.

7          MS. SCHNEIDER:  All right.  Did you take any steps

8    to make sure that investors in either the Fahey Fund, the

9    Fahey Hedge Fund, or the Fahey Financial Group were qualified

10   purchasers, as that term is defined by the Investment Company

11   Act of 1940?

12         MR. CELIO:  I object on the ground that it calls

13   for a legal conclusion, that there's no way a lay witness

14   would be able to answer.

15         In any event, I instruct you not to answer the

16   question on the grounds previously stated.  Will you follow

17   my instruction?

18         THE WITNESS:  I will.

19         MS. SCHNEIDER:  Did investors in either the Fahey

20   Fund or the Fahey Hedge Fund or the Fahey Financial Group

21   have to meet any financial qualifications before you would

22   allow them to invest?

23         MR. CELIO:  I instruct you not to answer the

24   question.  Will you follow my instruction?

25         THE WITNESS:  I will.

1              MS. SCHNEIDER:  Mr. Trabulse, the Fahey Fund had a

2    website, didn't they?

3              MS. SCHNEIDER:  I instruct you not to answer the

4    question.  Will you follow my instruction?

5              THE WITNESS:  I will.

6              MS. SCHNEIDER:  And its web address was

7    www.faheyfund.com, wasn't it?

8              MR. CELIO:  I instruct you not to answer the

9    question.  Will you follow my instruction?

10             THE WITNESS:  I will.

11             MS. SCHNEIDER:  And the purpose of the website was

12   to provide information about the Fahey Fund to prospective

13   investors, wasn't it?

14             MS. SCHNEIDER:  I instruct you not to answer the

15   question.  Will you follow my instruction?

16             THE WITNESS:  I will.

17             MS. SCHNEIDER:  Another purpose was to inform

18   people about the steps they needed to take to invest in

19   either the Fahey Hedge Fund, the Fahey Fund, or the Fahey

20   Financial Group; isn't that right?

21             MR. CELIO:  The same instruction.  Will you follow

22   it?

23             THE WITNESS:  I will.

24             MS. SCHNEIDER:  The website included application

25   forms, didn't it?

1          MR. CELIO:  The same instruction.  Will you follow

2     it?

3          THE WITNESS:  I will.

4          MS. SCHNEIDER:  And the website included

5     information about where to send money if investors wanted to

6     invest in the fund, isn't that right?

7          MR. CELIO:  I instruct you not to answer the

8     question.  Will you follow my instruction?

9          THE WITNESS:  I will.

10          MS. SCHNEIDER:  I'll ask that the court reporter

11    mark the next document as the next exhibit.

12                         (SEC Exhibit No. 61 was marked for

13                              identification.)

14          MS. SCHNEIDER:  Mr. Trabulse, I'm handing you

15    what's been marked as Exhibit 61.  While you're taking a look

16    at it, I'll describe it for the record.  Exhibit 61 is a

17    print-out of a website entitled, "www.faheyfund.com."  That

18    was printed out by the Securities and Exchange Commission.

19          MR. CELIO:  Counsel, are you representing that you

20    personally did this?

21          MS. SCHNEIDER:  I am not representing that I

22    personally did it.  I am representing that one of our staff

23    in the Securities and Exchange Commission printed it out.

24          MR. CELIO:  Okay.  Was it done in your presence?

25          MS. SCHNEIDER:  It was not done in my presence.

1          MR. CELIO:  So you can't give me any assurance as

2    to what this is, other than what you've been told, is that

3    correct?

4          MS. SCHNEIDER:  I do have a declaration from the

5    person who downloaded it.  I don't have that here with me

6    today.

7          MS. SCHNEIDER:  Mr. Trabulse, is Exhibit 61 -- is

8    Exhibit 61 a copy of the Fahey Fund's website?

9          MR. CELIO:  I instruct you not to answer the

10   question.  Will you follow my instruction?

11         THE WITNESS:  I will.

12         MS. SCHNEIDER:  Okay.  The Fahey Fund's website

13   included a chart that purported to reflect the Fahey Fund's

14   installments, isn't that right?

15         MR. CELIO:  I instruct you not to answer the

16   question.  Will you follow my instruction?

17         THE WITNESS:  I will.

18         MS. SCHNEIDER:  Mr. Trabulse, I want to direct you

19   to a page in Exhibit 61. And this does have a couple of

20   pages, so there's -- the first two pages are page 1

21   and -- page 1 of 2 and page 2 of 2.  I want you to go past

22   those two pages.  And there's there's a "next" section that

23   is page 1 of 2 and page 2 of 2, and it's titled, "Cat Scan

24   tour for the schedule."  Do you see that?

25         MR. CELIO:  Do you see that there on the page in

144

 1     front of you?

 2               THE WITNESS:  I see that on the page in front of

 3     me.

 4               MS. SCHNEIDER:  Okay.  And I want you to go past

 5     those two pages.

 6               MR. CELIO:  You want him to go past the music

 7     schedule?

 8               MS. SCHNEIDER:  I want him to go past the music

 9     schedule, yes.

10               MS. SCHNEIDER:  And then you get to a page in the

11     upper right-hand corner it says, "Page 1 of 8."  And the

12     title there says, "Welcome Cat Scan to our fans and

13     everywhere."  And underneath it, there's a picture and it

14     says, "Fund manager with recent painting of Paris."  Do you

15     see that page?

16               MR. CELIO:  Do you see the --

17               THE WITNESS:  I see this page.

18               BY MS. SCHNEIDER:

19        Q    Okay.  Okay.  Now, I want you to turn to page 5 of

20     8 in that section.  On the top, it still says, "Welcome to

21     the Cat Scan tour, 2005, sponsored by the Fahey Hedge Fund."

22     That's on page 5 of 8.  Do you see that?

23        A    I see that.

24        Q    Okay.  Now, this is a chart on the Fahey Fund's

25     website that's purported to reflect the performance of the

1    Fahey Hedge Fund, isn't that right?

2              MR. CELIO:  I instruct you not to answer the

3    question.  Will you follow my instruction?

4              THE WITNESS:  I will.

5              MS. SCHNEIDER:  You prepared this chart, didn't

6    you?

7              MR. CELIO:  The same instruction.  Will you follow

8    it?

9              THE WITNESS:  I will.

10             MS. SCHNEIDER:  And you authorized the chart to be

11   placed on the Fahey Fund's website, didn't you?

12             MR. CELIO:  I instruct you not to answer the

13   question.  Will you follow my instruction?

14             THE WITNESS:  I will.

15             MS. SCHNEIDER:  And this chart does not accurately

16   reflect the Fahey Fund's performance, does it?

17             MR. CELIO:  I instruct you not to answer the

18   question.  Will you follow my instruction?

19             THE WITNESS:  I will.

20             MS. SCHNEIDER:  The chart is false, isn't it?

21             MR. CELIO:  I instruct you not to answer the

22   question.  Will you follow my instruction?

23             THE WITNESS:  I will.

24             MS. SCHNEIDER:  The Fahey Hedge Fund did not earn

25   profits every quarter, did it?

1          MR. CELIO:   I instruct you not to answer the

2     question.   Will you follow my instruction?

3          THE WITNESS:   I will.

4          MS. SCHNEIDER:   And, in fact, it didn't earn

5     profits every year, did it?

6          MR. CELIO:   I instruct you not to answer the

7     question.   Will you follow my instruction?

8          THE WITNESS:   I will.

9          MS. SCHNEIDER:   And you knew this chart on page 5

10    of 8 did not accurately reflect the Fahey Hedge Fund's

11    performance when you placed it on the Fahey Hedge Fund's

12    website, didn't you?

13         MR. CELIO:   The same instruction.   Will you follow

14    my instruction?

15         THE WITNESS:   I will.

16         MS. SCHNEIDER:   Did people have to affirm that they

17    were not US citizens before they could access the Fahey Fund

18    website?

19         MR. CELIO:   I instruct you not to answer the

20    question.   Will you follow my instruction?

21         THE WITNESS:   I will.

22         MS. SCHNEIDER:   Okay.   And you directed current

23    investors who were United States citizens to look at the

24    Fahey Fund's website, didn't you?

25         MR. CELIO:   The same instruction.   Will you follow

1   it?

2            THE WITNESS:  I will.

3            MS. SCHNEIDER:  And you also directed prospective

4   investors who were United States citizens to look at the

5   Fahey Fund's website, didn't you?

6            MR. CELIO:  I instruct you not to answer the

7   question.  Will you follow my instruction?

8            THE WITNESS:  I will.

9            MS. SCHNEIDER:  You since have taken down pieces of

10  the Fahey Fund's website, isn't that right?

11           MR. CELIO:  I instruct you not to answer the

12  question.  Will you follow my instruction?

13           THE WITNESS:  I will.

14           MS. SCHNEIDER:  And, in fact, you removed pieces of

15  the Fahey Fund's website that included that past performance

16  figures for the Fahey Hedge Fund, isn't that right?

17           MR. CELIO:  I instruct you not to answer the

18  question.  Will you follow my instruction?

19           THE WITNESS:  I will.

20           MS. SCHNEIDER:  And you didn't take down those

21  pieces of the Fahey Fund's website until you became aware of

22  our investigation, didn't you?

23           MR. CELIO:  I instruct you not to answer the

24  question.  Will you follow my instruction?

25           THE WITNESS:  I will.

1              MS. SCHNEIDER:  Okay.  Mr. Trabulse, I'm handing

2      you what's previously marked as Exhibit 37 in this matter.

3      I'm just going to describe it for the record.  Exhibit 37 is

4      a two-page document.  It appears to be some sort of letter on

5      Fahey Hedge Fund letterhead.  It's dated April 20th, 1999,

6      and it appears to be addressed to a person named David.

7              And the exhibit has Bates numbers in the lower,

8      right-hand corner of FF-DJH-0109 through 110.

9              Do you recognize Exhibit 37, Mr. Trabulse?

10             MR. CELIO:  Is your question does he see the letter

11     in front of him or does he recognize it?

12             MS. SCHNEIDER:  My question is does he recognize

13     it.

14             MR. CELIO:  Okay.  I instruct you not to answer the

15     question on the grounds previously stated.  Will you follow

16     my instruction?

17             THE WITNESS:  I will.

18             MS. SCHNEIDER:  Okay.  You drafted Exhibit 37,

19     didn't you, Mr. Trabulse?

20             MR. CELIO:  I instruct you not to answer the

21     question.  Will you follow my instruction?

22             THE WITNESS:  I will.

23             MS. SCHNEIDER:  And you signed Exhibit 37, didn't

24     you?

25             MR. CELIO:  I instruct you not to answer the

1    question.  Will you follow my instruction?

2            THE WITNESS:  I will.

3            MS. SCHNEIDER:  And you sent Exhibit 37 to David

4    David Hingston, didn't you?

5            MR. CELIO:  I instruct you not to answer the

6    question.  Will you follow my instruction?

7            THE WITNESS:  I will.

8            MS. SCHNEIDER:  And you sent documents similar to

9    Exhibit 37 to other investors, didn't you?

10            MR. CELIO:  I object to that vague question.

11            I instruct you not to answer on the grounds

12    previously stated.  Will you follow my instruction?

13            THE WITNESS:  I will.

14            MS. SCHNEIDER:  Mr. Trabulse, I just want to direct

15    your attention to a sentence in Exhibit 37.  It says, "Dear

16    David," up at the top and then I want to direct your

17    attention to the third paragraph under that.  The sentence

18    starts, "The fund has a website."  Do you see that sentence?

19            MR. CELIO:  Do you see it there in front of you?

20            THE WITNESS:  I see that sentence.

21            BY MS. SCHNEIDER:

22        Q    Okay.  Let's see, so it says, "The fund has a

23    website, although under construction, at www.faheyfund.com."

24    Do you see that sentence?

25        A    I see that sentence.

1      Q      Okay.  You wrote that sentence, didn't you?

2              MR. CELIO:  I instruct you not to answer the

3      question.  Will you follow my instruction?

4              THE WITNESS:  I will.

5              MS. SCHNEIDER:  Okay.  And as of the time that

6      Exhibit 37 is dated, as of April 20th, 1999, there were

7      performance figures for the Fahey Hedge Fund at the

8      www.faheyfund.com website, isn't that right?

9              MR. CELIO:  I instruct you not to answer the

10     question.  Will you follow my instruction?

11             THE WITNESS:  I will.

12             MS. SCHNEIDER:  Okay.  And I'm going down to the

13     send -- it's the second to last sentence of that same

14     paragraph.  It's -- the sentence starts, "At the moment the

15     website," do you see that sentence?

16             MR. CELIO:  Do you see that sentence?

17             THE WITNESS:  I see that sentence.

18             MS. SCHNEIDER:  Okay.  So it says, "At the moment,

19     the website is primarily a marketing tool for potential

20     investors."  Do you see that sentence?

21             MR. CELIO:  Is that a different question than what

22     you've just asked?

23             MS. SCHNEIDER:  Honestly, I can't remember the last

24     question that I asked him.

25             MR. CELIO:  Do you see the sentence in front of

1    you?

2            THE WITNESS:   I see the sentence.

3            MS. SCHNEIDER:   Okay.   You wrote that sentence,

4    didn't you?

5            MR. CELIO:   I instruct you not to answer the

6    question.   Will you follow my instruction?

7            THE WITNESS:   I will.

8            MS. SCHNEIDER:   Okay.   What did you mean when you

9    wrote, "The website is primarily a marketing tool for

10   potential investors"?

11           MR. CELIO:   The same instruction.   Will you follow

12   it?

13           THE WITNESS:   I will.

14           MS. SCHNEIDER:   Okay.   Mr. Trabulse, if I ask you

15   any more questions about the Fahey Fund's website, will you

16   continue to assert your right against self-incrimination

17   under the Fifth Amendment?

18           MR. CELIO:   I instruct you not to answer the

19   question.   Will you follow my instruction?

20           THE WITNESS:   I will.

21           MS. SCHNEIDER:   Mr. Trabulse, you encouraged

22   current investors to refer their friends to invest in either

23   the Fahey Hedge Fund, the Fahey Fund, or the Fahey Financial

24   Group, isn't that right?

25           MR. CELIO:   I instruct you not to answer the

1    question.  Will you follow my instruction?

2                THE WITNESS:  I will.

3                MS. SCHNEIDER:  And you told current investors that

4    you would not refuse a referral for a new investor, didn't

5    you?

6                MR. CELIO:  I instruct you not to answer the

7    question.  Will you follow my instruction?

8                THE WITNESS:  I will.

9                MS. SCHNEIDER:  And you encouraged current

10   investors to make additional investments in either the Fahey

11   Hedge Fund, the Fahey Fund, or the Fahey Financial Group,

12   didn't you?

13               MR. CELIO:  I instruct you not to answer the

14   question.  Will you follow my instruction?

15               THE WITNESS:  I will.

16               MS. SCHNEIDER:  And if I ask you any more questions

17   about your efforts to get additional investments for either

18   the Fahey Hedge Fund, the Fahey Fund, or the Fahey Financial

19   Group, will you continue to assert your right against

20   self-incrimination under the Fifth Amendment?

21               MR. CELIO:  I instruct you not to answer.  Will you

22   follow my instruction?

23               THE WITNESS:  I will.

24               MS. SCHNEIDER:  I just have a few more questions,

25   Mr. Trabulse.

1          As of December 31st, 2004, the cumulative account

2    balances that you reported to investors were overstated,

3    weren't they?

4          MR. CELIO:  The same instruction.  Do not answer

5    the question.  Will you follow my instruction?

6          THE WITNESS:  I will.

7          MS. SCHNEIDER:  Mr. Trabulse, are you refusing to

8    answer my question based on your Fifth Amendment privilege

9    against self-incrimination?

10          MR. CELIO:  Mr. Trabulse, I instruct you not to

11    answer the question on the grounds that the United States

12    Constitution precludes the United States Government from

13    compelling  you to be a witness against yourself.  Will you

14    follow my instruction?

15          THE WITNESS:  I will.

16          MS. SCHNEIDER:  And, Mr. Trabulse, I'm not

17    authorized to compel you to give evidence or testimony as to

18    which you assert your privilege against self-incrimination,

19    and I don't have any intention of doing so.

20          In addition, I don't have the authority to compel

21    your testimony by granting you immunity from prosecution.

22    Any question that I ask you hereafter will be with the

23    understanding that if you wish to assert your privilege, you

24    need merely state that you refuse to answer on the grounds

25    that your answer might incriminate you.

1           In other words, you're not compelled to answer any

2    further questions if you believe that a truthful answer to

3    the question might show that you've committed a crime and you

4    wish to assert your privilege against self-incrimination.

5           Accordingly, if you answer any questions, you will

6    be doing so voluntarily.  Do you understand that?

7           MR. CELIO:  I object to that on the grounds that it

8    grossly misstates the law, as stated in the Hoffman versus

9    United States.  I instruct you not to answer the question on

10   the grounds that the United States Government cannot compel

11   you to be a witness against yourself.

12          You can answer the question if you understand that

13   that is the SEC's view of the law.

14          THE WITNESS:  Yes, I understand that.

15          MS. SCHNEIDER:  Okay.  Mr. Trabulse, you should be

16   aware that if you refuse to answer a question based on your

17   Fifth Amendment privilege, a judge or a jury might take an

18   adverse inference against you in a civil action that the SEC

19   may determine to bring against you.  That means that the

20   judge or jury would be permitted to infer that your answer to

21   the question might incriminate you.

22          Do you understand that?

23          MR. CELIO:  I object to the question.  I'm sorry, I

24   object to the statement, such as it is, and the question

25   involves, on the grounds that it misstates the law and is

1    intended only to intimidate.  I instruct you not to answer

2    the question.

3             You could answer the question:  Do you understand

4    that that is the SEC's view?

5             THE WITNESS:  I do understand that.

6             MS. SCHNEIDER:  Okay.  And, Mr. Trabulse, when you

7    provided investor account statements to them as of the end of

8    December 31st, 2004, you knew that the cumulative account

9    balances in those statements were false, didn't you?

10            MR. CELIO:  I instruct you not to answer the

11   question.  Will you follow my instruction?

12            THE WITNESS:  I will.

13            MS. SCHNEIDER:  As of December 31st, 2005, the

14   cumulative account balances you reported to investors were

15   overstated, weren't they?

16            MR. CELIO:  I instruct you not to answer the

17   question.  Will you follow my instruction?

18            THE WITNESS:  I will.

19            MS. SCHNEIDER:  And you knew it, didn't you?

20            MR. CELIO:  I instruct you not to answer the

21   question.  Will you follow my instruction?

22            THE WITNESS:  I will.

23            MS. SCHNEIDER:  And as of December 31st, 2006, the

24   cumulative account balances you reported to investors were

25   overstated, weren't they?

1          MR. CELIO:  I instruct you not to answer the

2     question.  Will you follow my instruction?

3          THE WITNESS:  I will.

4          MS. SCHNEIDER:  And you knew the balances were

5     overstated, didn't you?

6          MR. CELIO:  I instruct you not to answer the

7     question.  Will you follow my instruction?

8          THE WITNESS:  I will.

9          MS. SCHNEIDER:  As of December 31st, 1998, the net

10    gains you reported to investors exceeded the amounts earned

11    by Fahey Hedge Fund, Fahey Fund, Fahey Financial Group, and

12    International Trade and Data, didn't they?

13         MR. CELIO:  I'm not sure that I understand the

14    question, but to the extent that you do understand it, I

15    instruct you not to answer it on the grounds the Government

16    cannot compel you to give testimony against yourself.

17         Will you follow my instruction?

18         THE WITNESS:  I will.

19         MS. SCHNEIDER:  Mr. Trabulse, did you understand my

20    question?

21         MR. CELIO:  Don't answer that, either.

22         I instruct you not to answer the question.

23         MS. SCHNEIDER:  As of December 31st, 1999, the net

24    gains that you reported to investors exceeded the amounts

25    earned by Fahey Hedge Fund, Fahey Fund, Fahey Financial

1    Group, and International Trade and Data, didn't they?

2              MR. CELIO:  I instruct you not to answer the

3    question.  Will you follow my instruction?

4              THE WITNESS:  I will.

5              MS. SCHNEIDER:  Okay.  And you knew the gains

6    exceeded the amounts earned by those entities, didn't you?

7              MR. CELIO:  I instruct you not to answer the

8    question.  Will you follow my instruction?

9              THE WITNESS:  I will.

10             MS. SCHNEIDER:  As of December 31st, 2000, the net

11   gains reported to investors exceeded the amounts earned by

12   Fahey Hedge Fund, Fahey Fund, Fahey Financial Group, and

13   International Trade and Data, didn't they?

14             MR. CELIO:  I instruct you not to answer the

15   question.  Will you follow my instruction?

16             THE WITNESS:  I will.

17             MS. SCHNEIDER:  You knew the net gains reported to

18   investors exceeded the amounts earned by those entities,

19   didn't you?

20             MR. CELIO:  I instruct you not to answer the

21   question.  Will you follow my instruction?

22             THE WITNESS:  I will.

23             MS. SCHNEIDER:  As of December 31st, 2001, the net

24   gains reported to investors exceeded the amounts earned by

25   Fahey Hedge Fund, Fahey Fund, Fahey Financial Group, and

1    International Trade and Data, didn't they?

2            MR. CELIO:  I instruct you not to answer the

3    question.  Will you follow my instruction?

4            THE WITNESS:  I will.

5            MS. SCHNEIDER:  And you knew the net gains exceeded

6    the amounts earned by those entities, didn't you?

7            MR. CELIO:  I instruct you not to answer.  Will you

8    follow my instruction?

9            THE WITNESS:  I will.

10           MS. SCHNEIDER:  And as of December 31st, 2002, the

11   net gain reported to investors exceeded the amounts earned by

12   Fahey Hedge Fund, Fahey Financial Group, Fahey Financial, and

13   International Trade and Data, didn't they?

14           MR. CELIO:  I instruct you not to answer the

15   question.  Will you follow my instruction?

16           THE WITNESS:  I will.

17           MS. SCHNEIDER:  And you knew the net gains reported

18   the amounts earned by those entities, didn't you?

19           MR. CELIO:  I instruct you not to answer the

20   question.  Will you follow my instruction?

21           THE WITNESS:  I will.

22           MS. SCHNEIDER:  As of December 31st, 2003, the net

23   gains reported to investors exceeded the amounts earned by

24   Fahey Hedge Fund, Fahey Fund, Fahey Financial, and

25   International Trade and Data, didn't they?

1          MR. CELIO:  I instruct you not to answer.  Will you

2    follow my instruction?

3          THE WITNESS:  I will.

4          MS. SCHNEIDER:  And you knew the net gains reported

5    to investors exceeded the amounts earned by those entities,

6    didn't you?

7          MR. CELIO:  I instruct you not to answer.  Will you

8    follow my instruction?

9          THE WITNESS:  I will.

10          MS. SCHNEIDER:  As of December 31st, 2004, the net

11    gains reported to investors exceeded the amounts earned by

12    Fahey Fund, Fahey Hedge Fund, Fahey Financial, and

13    International Trade and Data, didn't they?

14          MR. CELIO:  I instruct you not to answer.  Will you

15    follow my instruction?

16          THE WITNESS:  I will.

17          MS. SCHNEIDER:  And you knew the amounts reported

18    to investors exceeded the gains earned by those entities,

19    didn't you?

20          MR. CELIO:  I instruct you not to answer.  Will you

21    follow my instruction?

22          THE WITNESS:  I will.

23          MS. SCHNEIDER:  As of December 31st, 2004, the net

24    gains reported to investors exceeded the amounts earned by

25    Fahey Fund, Fahey Hedge Fund, Fahey Financial, and

160

1    International Trade and Data, didn't they?

2            MR. CELIO:  I instruct you not to answer.  Will you

3    follow my instruction?

4            THE WITNESS:  I will.

5            MS. SCHNEIDER:  And you knew the amounts reported

6    to -- you knew the gains reported to investors exceeded the

7    amounts earned by those entitles, didn't you?

8            MR. CELIO:  I instruct you not to answer.  Will you

9    follow my instruction?

10           THE WITNESS:  I will.

11           MS. SCHNEIDER:  As of December 31st, 2005, the net

12   gains reported to investors exceeded the amounts earned by

13   Fahey Fund, Fahey Hedge Fund, Fahey Financial, and

14   International Trade and Data, didn't they?

15           MR. CELIO:  I instruct you not to answer.  Will you

16   follow my instruction?

17           THE WITNESS:  I will.

18           MS. SCHNEIDER:  And you knew the net gains reported

19   to investors exceeded the amounts earned by those entities,

20   didn't you?

21           MR. CELIO:  I instruct you not to answer.  Will you

22   follow my instruction?

23           THE WITNESS:  I will.

24           MS. SCHNEIDER:  All right.  And as of December

25   31st, 2006, the net gains reported to investors exceeded the

1    amounts earned by Fahey Fund, Fahey Hedge Fund, Fahey

2    Financial, and International Trade and Data, didn't you?

3              MR. CELIO:  I instruct you not to answer.  Will you

4    follow my instruction?

5              THE WITNESS:  I will.

6              MS. SCHNEIDER:  I actually misspoke and I apologize

7    and I'm going to repeat my question.

8              And as of December 31st, 2006, the net gains

9    reported to investors exceeded the amounts earned by Fahey

10   Fund, Fahey Hedge Fund, Fahey Financial, and International

11   Trade and Data, didn't they?

12             MR. CELIO:  I instruct you not to answer.  Will you

13   follow my instruction?

14             THE WITNESS:  I will.

15             MS. SCHNEIDER:  And you knew the amounts -- the net

16   gains reported to investors exceeded the amounts earned by

17   those entities, didn't you?

18             MR. CELIO:  I instruct you not to answer.  Will you

19   follow my instruction?

20             THE WITNESS:  I will.

21             MS. SCHNEIDER:  Mr. Trabulse, if I ask you any more

22   questions about the cumulative account balances or the net

23   gains reported to investors during the period January 1st,

24   1998, through December 31st, 2006, will you continue to

25   assert your right against self-incrimination under the Fifth

1   Amendment to the Constitution?

2               MR. CELIO:  I instruct you not to answer that

3   question.  Listen to each question and listen to any

4   instruction that I give you.  Moreover, the Government has,

5   in any event, no right to compel your testimony.  Will you

6   follow my instructions?

7               THE WITNESS:  I will.

8               MS. SCHNEIDER:  Okay.  Mr. Trabulse, do you have

9   any assets that are over $5,000?

10              MR. CELIO:  I instruct you not to answer the

11  question.  Will you follow my instruction?

12              THE WITNESS:  I will.

13              MS. SCHNEIDER:  Okay.  And, Mr. Trabulse, are you

14  refusing to answer my question because you feel your answer

15  might incriminate you?

16              MR. CELIO:  I instruct you not to answer the

17  question on the grounds that the United States Constitution

18  prohibits the United States Government or any agency thereof

19  compelling testimony that might be used against you.  Will

20  you follow my instruction?

21              THE WITNESS:  I will.

22              MS. SCHNEIDER:  And are you refusing to answer my

23  question based on your Fifth Amendment -- based on your

24  privilege against self-incrimination under the Fifth

25  Amendment?

1          MR. CELIO:  I've given my instruction and I'll

2    stand on it.  Will you follow my instruction?

3          THE WITNESS:  I will.

4          MS. SCHNEIDER:  Mr. Trabulse, if I ask you any

5    other questions about your assets, will you continue to

6    assert your Fifth Amendment right against self-incrimination?

7          MR. CELIO:  I continue to object to object to the

8    Government attempting to put a spin on what is very clearly

9    stated objection and instruction.  My instruction is not to

10   answer, as I have many times today, on the grounds that the

11   United States -- that under the United States Constitution,

12   the Government may not compel you to be a witness against

13   yourself.  Will you follow my instruction?

14         THE WITNESS:  I will.

15         MS. SCHNEIDER:  Mr. Trabulse, do you have a

16   passport that's issued by a country other than the United

17   States?

18         MR. CELIO:  I instruct you not to answer the

19   question.  Will you follow my instruction?

20         THE WITNESS:  I will.

21         MS. SCHNEIDER:  Mr. Trabulse, if I ask you any more

22   questions about whether you hold passports that have been

23   issued by other counties other than the United States, will

24   you continue to assert your right against self-incrimination

25   under the Fifth Amendment?

1      MR. CELIO:  I instruct you not to answer on the

2   grounds that under the United States Constitution the

3   Government may not compel you to be a witness against

4   yourself.  Will you follow my instruction?

5      THE WITNESS:  I will.

6      MS. SCHNEIDER:  Mr. Trabulse, I don't have any more

7   questions at this point.  I may call you again to testify in

8   this investigation.  If that becomes necessary, I will let

9   your counsel, Mr. Celio, know.

10      Do you wish to clarify anything about the

11   statements you've made today?

12      MR. CELIO:  We have nothing.

13      MS. SCHNEIDER:  Okay.  I'd rather have the witness

14   answer.

15      MR. CELIO:  He's not going to answer the question.

16      MS. SCHNEIDER:  Okay.  Do you want to instruct him

17   not to answer?

18      MR. CELIO:  I -- okay, if that's necessary.

19      I instruct you not to answer the question.  Will

20   you follow my instruction?

21      THE WITNESS:  I will.

22      MS. SCHNEIDER:  Okay.  Mr. Celio, do you want to

23   ask any questions of Mr. Trabulse?

24      MR. CELIO:  I do not.

25

165

1          MS. SCHNEIDER:  Okay.  We're off the record at 4:50

2     p.m. on April 26th, 2007.

3

4          (Whereupon, at 4:50 p.m., the examination was

5     concluded.)

6

7                         *  *  *  *  *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          PROOFREADER'S CERTIFICATE

2

3    In the Matter of:    FAHEY FUND

4    Witness:            Alexander J. Trabulse

5    File Number:        SF-04311-A

6    Date:               Thursday, April 26, 2007

7    Location:           San Francisco, California

8

9

10        This is to certify that I, Don R. Jennings (the

11   undersigned), do hereby swear and affirm that the attached

12   proceedings before the U.S. Securities and Exchange

13   Commission were held according to the record and that this is

14   the original, complete, true and accurate transcript that has

15   been compared to the reporting or recording accomplished at

16   the hearing.

17

18

19

20   _Don Jennings/LA_          _9/10/07_____

21   (Proofreader's Name)          (Date)

22

23

24

25

175

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

REPORTER'S CERTIFICATE


I, WILLIAM RYHERD, Reporter, hereby certify that the

foregoing transcript of *165* pages is a complete, true, and

accurate transcript of the testimony indicated, held on April

26, 2007, 2:13 p.m, in the matter of Fahey Fund.  I further

certify that this proceeding was recorded by me, and that the

foregoing transcript was prepared under my direction.


Date:  May 2, 2007

Official Reporter:  William Ryherd

Diversified Reporting Services, Inc.


Diversified Reporting Services, Inc.

Phone:  (202) 467-9200  Fax: (202) 296-9220