1  KEKER & VAN NEST, LLP
   MICHAEL D. CELIO - #197998
2  CLEMENT S. ROBERTS - #209203
   JO F. WEINGARTEN - #246224
3  710 Sansome Street
   San Francisco, CA 94111-1704
4  Telephone:    (415) 391-5400
   Facsimile:    (415) 397-7188
5  Email: mcelio@kvn.com
          croberts@kvn.com
6          jweingarten@kvn.com

7  Attorneys for Defendants
   ALEXANDER JAMES TRABULSE,
8  FAHEY FUND, L.P., FAHEY FINANCIAL
   GROUP, INC., INTERNATIONAL TRADE
9  & DATA, and ITD TRADING

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                      SAN FRANCISCO DIVISION

14

15

16 SECURITIES AND EXCHANGE COMMISSION | Case No. C-07-4975 WHA

17                              Plaintiff, | **DEFENDANT ALEXANDER JAMES**
                                           | **TRABULSE'S NOTICE OF MOTION;**
18     v.                                  | **MOTION TO DISMISS THE FIRST,**
                                           | **SECOND, AND THIRD CAUSES OF**
19 ALEXANDER JAMES TRABULSE               | **ACTION OR, IN THE**
                                           | **ALTERNATIVE, FOR MORE**
20                              Defendant, | **DEFINITE STATEMENT; AND**
                                           | **SUPPORTING MEMORANDUM OF**
21     and                                 | **POINTS AND AUTHORITIES**

22 FAHEY FUND, L.P., FAHEY FINANCIAL      | Date:      December 6, 2007
   GROUP, INC., INTERNATIONAL TRADE &     | Time:      8:00 a.m.
23 DATA, and ITD TRADING,                 | Courtroom: 9
                                           | Judge:     Hon. William H. Alsup
24                        Relief Defendants.|
                                           | Date Action Filed:    September 26, 2007
25

26

27

28

404602.07

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .................................................................................1

ISSUE TO BE DECIDED ..................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................1

I.    INTRODUCTION ....................................................................................................1

II.   FACTUAL BACKGROUND ..................................................................................3

III.  ARGUMENT ..........................................................................................................5

    A.  The Court should dismiss the first and second causes of action. ...........................6

        1.  The SEC has not identified the allegedly false statements with particularity. ............................................................................................7

        2.  The SEC has not met its obligation to say *why* and *how* any alleged statements were false or misleading................................................8

        3.  The SEC has failed to meet its obligation to allege specific facts demonstrating the materiality of any allegedly false statements. ..............10

        4.  The SEC has not met its obligation to allege specific facts showing that any allegedly false statement was made "in connection with the purchase or sale of a security."...................................12

    B.  The SEC's Investment Advisers Act claim also lacks the necessary particularity. .........................................................................................................13

    C.  The Court should, at a minimum, require a more definite statement of the charges. ......................................................................................................17

IV.   CONCLUSION......................................................................................................18

404602.07

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988)..................................................................10

*Branch v. Tunnell,*
  14 F.3d 449 (9th Cir. 1994) ......................................................15

*In re GlenFed Sec. Litigation,*
  42 F.3d 1541 (9th Cir. 1994) ....................................................17

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.,*
  100 F. Supp. 2d 1086 (C.D. Cal. 1999) ...............................5, 14

*Goldstein v. SEC,*
  451 F.3d 873 (D.C. Cir. 2006) ..................................................13

*Kaplan v. Rose,*
  49 F.3d 1363 (9th Cir. 1994) ....................................................16

*Livid Holdings LTD. v. Salomon Smith Barney, Inc.,*
  416 F.3d 940 (9th Cir. 2005) ..............................................10, 11

*Neubronner v. Milken,*
  6 F.3d 666 (9th Cir. 1993) .........................................................5

*Parrino v. FHP, Inc.,*
  146 F.3d 699 (9th Cir. 1998) ....................................................14

*SEC v. Baxter,*
  2007 WL. 2013958 (N.D. Cal. Jul. 11, 2007) .......................5, 7, 8

*SEC v. Merrill Scott & Associates, Ltd.,*
  505 F. Supp. 2d 1993 (D. Utah 2007)........................................13

*SEC v. Phan,*
  500 F.3d 895, 2007 WL. 2429365 .............................................6

*SEC v. Rauscher Pierce Refsnes, Inc.,*
  17 F. Supp. 2d 985 (D. Ariz. 1998) ..........................................13

*SEC v. Yuen,*
  221 F.R.D. 631 (C.D. Cal. 2004)................................................5

*SEC v. Zandford,*
  535 U.S. 813 (2002).................................................................12

*Semegar v. Weidner,*
  780 F.2d 727 (9th Cir. 1985) .....................................................5

ii

404602.07

# TABLE OF AUTHORITIES

**Page**

*Simpson v. AOL Time Warner Inc.*,
   452 F.3d 1040 (9th Cir. 2006) ..............................................................4

*Vernazza v. SEC*,
   327 F.3d 851 (9th Cir. 2003) ...............................................................13

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ...........................................................5, 8

*W. Mining Council v. Watt*,
   643 F.2d 618 (9th Cir. 1981) ..............................................................5, 9

*Wenger v. Lumisys*,
   2 F. Supp. 2d 1231 (N.D. Cal. 1998) ....................................................17


## FEDERAL STATUTES

15 U.S.C. § 77q(a) .................................................................................6
15 U.S.C. § 78j(b) ..................................................................................6
15 U.S.C. § 80b-6(1)-(2) .......................................................................13
17 C.F.R. § 240.10b-5 ............................................................................6
Fed. R. Civ. P. 9(b) .......................................................................*passim*
Fed. R. Civ. P. 12(b)(6) ......................................................................2, 6
Fed. R. Civ. P. 12(e) ........................................................................1, 17
Fed. R. Evid. 201 .................................................................................14
Rule 12(b)(6) ...............................................................................*passim*

iii

DEF.'S NTC. OF MTN., MTN. TO DISMISS 1ST, 2ND & 3RD CAUSES OF ACTION OR, IN THE ALT., FOR
MORE DEFINITE STATEMENT; AND SUPPORTING MEMORANDUM OF POINTS AND AUTH.
CASE NO. C-07-4975 WHA

404602.07

1

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that at 8:00 a.m. on December 6, 2007, or at such other date and time ordered by this Court, in Courtroom 9 of the above-referenced court, before Honorable William H. Alsup, Defendant Alexander James Trabulse and Relief Defendants Fahey Fund, L.P., Fahey Financial Group, Inc., International Trade & Data, and ITD Trading (collectively, "Fahey Fund") will, and hereby do, move this Court to grant this motion to dismiss or, in the alternative, grant this motion for more definite statement. This motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(6), and 9(b), to dismiss the Complaint for its failure to state a claim upon which relief may be granted and failure to plead its allegations with sufficient particularity. In the alternative, Defendant moves under Rule 12(e) for a more definite statement of the charges.

This motion seeks entry of an Order Granting Trabulse's Motion to Dismiss and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities that follows, the request for judicial notice and the documents attached thereto submitted herewith, the declaration of Clement S. Roberts submitted herewith, the pleadings on file with the Court, and any oral argument heard by the Court on December 6, 2007.

## ISSUE TO BE DECIDED

Whether the SEC has pleaded its first, second, and third causes of action for securities fraud with the requisite degree of particularity, under Rules 12(b)(6), 9(b), and 12(e) of the Federal Rules of Civil Procedure.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Although you might not know it from the Complaint's hyperbolic language, this is a case in which the parties *agree that no investor lost money.* This case is solely and exclusively a dispute about how much money the Fahey Fund's investors made. If one examines the numbers in the SEC's Complaint closely, it becomes clear that even under the SEC's math—which is flawed—the Fund's investors outperformed the stock market during the period covered by the

1

404602.07

1    Complaint.[1]  To put it another way, the central dispute here is whether the Fahey Fund's

2    investors became *slightly* wealthier or became *much* wealthier.  This case is not a "fraud" case as

3    that term is typically understood; because economic loss is an essential element of any fraud

4    claim, no investor could sue the Fund for fraud under these circumstances.

5        As a result, the SEC is *not* intending to prove fraud, at least not in the traditional sense.

6    Instead, the SEC bases its Complaint on its special power to vindicate the securities laws by

7    bringing complaints *even where no one has been harmed*, in order to recover from defendants

8    who have been unjustly enriched.  But in this case the SEC's Complaint lacks both a coherent

9    theory of unjust enrichment and particular facts that *could* support such a theory.  Instead, the

10   SEC alleges a series of disjointed facts and conclusory allegations, and then incorporates all of

11   those statements, by reference, into each cause of action.  The SEC's hope is that the

12   defendant—and the Court—will pick through the various allegations and piece together a viable

13   theory for each cause of action.  But, leaving aside the fact that this "puzzle-piece" style of

14   pleading has been repeatedly condemned, the SEC's Complaint must be dismissed because the

15   necessary puzzle pieces are either missing or simply do not fit.

16       For example, although the SEC generally alleges that Mr. Trabluse took "too much"

17   money from the Fund, the Complaint says nothing about how much he was entitled to take nor

18   about how much he allegedly took.  The Partnership Agreement at issue in this case[2] permits Mr.

19   Trabluse to take up to 25% of the Fund's profits and *requires* him to pay Fund expenses using

20   that money.  Thus, so long as Mr. Trabluse's personal and business expenses are (together) less

21   than 25% of the Fund's appreciation, Mr. Trabluse did not commit any act of misappropriation.

22

---

23   [1] Indeed, one of the SEC's trial lawyers (whose name appears on the complaint) admitted to the
     press that the SEC's Complaint in this case has "not alleged that [the defendant's investors] lost
24   money."  Kathleen Pender, *Net Worth: Hedge Funds Need a Careful Look*, S.F. Chron., Sept. 27,
     2007, at C1 (quoting SEC staff attorney Erin Schneider), attached hereto as Exhibit 2 to the
25   Declaration of Clement S. Roberts.

26   [2] The Fahey Fund (Limited) Partnership Agreement is attached to the Declaration of Clement S.
     Roberts in Support of the Motion to Dismiss, as Exhibit 1.  Mr. Trabulse seeks judicial notice of
27   the Partnership Agreement in his concurrently filed Request for Judicial Notice, on the ground
     that the Agreement is effectively incorporated into the SEC's Complaint.  *See n.15, infra.*

28

DEF.'S NTC. OF MTN., MTN. TO DISMISS 1ST, 2ND & 3RD CAUSES OF ACTION OR, IN THE ALT., FOR
MORE DEFINITE STATEMENT; AND SUPPORTING MEMORANDUM OF POINTS AND AUTH.
CASE NO. C-07-4975 WHA

404602.07

1    But *nothing* in the Complaint says how much the Fund appreciated *or* how much of that

2    money Mr. Trabluse used for personal and business expenses.  Instead, the Complaint alleges a

3    few specific instances of Mr. Trabluse spending Fund money for personal expenses while

4    recording the expenditures as business expenses.  But, even if those allegations are true, they are

5    irrelevant.  Again, the Fund documents *require* Mr. Trabluse to treat business expenses as a

6    *subset* of his personal expenses and to pay for *both* from the same pool of money.  From the

7    Fund's perspective, it simply does not matter whether a given expense was a personal expense or

8    a business expense, and/or how the expense was characterized—the only relevant questions are

9    what the *total* (business + personal) expenses were, and whether those expenses were less than

10   25% of the Fund's profits.  But the SEC has made no factual allegations on *either* score.

11   As discussed in more detail below, the SEC's other theories are equally flawed.  For

12   example, the SEC claims that investors were misled by false statements about the value of their

13   accounts, but ignores the fact that these statements were allegedly made *after* the investments to

14   which they pertain.  The SEC tries to plug this hole in its theory by alleging that (unidentified)

15   later investors decided to invest based on (unspecified) conversations with (unidentified) existing

16   investors who supposedly passed along (unidentified) allegedly false statements.  But the SEC

17   has utterly failed to identify any specific conversations, investors, or false statements to support

18   this allegation.

19   For these reasons, and as discussed in more detail below, the first, second and third

20   causes of action should be dismissed and the SEC should be required to replead (if it can) with

21   particularity and in a clear, logical order that does not require a puzzle-piece deciphering.

## II.    FACTUAL BACKGROUND

23   Defendant Jim Trabluse is the General Partner of the hedge fund known as the Fahey

24   Fund, L.P.  *See* Plaintiff's Complaint ("Complt.") [Docket No. 1] ¶ 8.  He is also the President

25   and Chief Executive Officer of Fahey Financial Group, Inc., the "sole partner" of International

26   Trade & Data, and a founding general partner of ITD Trading – all of which are relief defendants

27   in this litigation.  *See id.* ¶¶ 9-11.

28

404602.07

1    The SEC's Complaint avers generally that for the past seven years, Mr. Trabulse has

2   systematically "defrauded investors." *Id.* ¶ 1. Yet, as the SEC publicly confirmed to the press,[3]

3   its Complaint nowhere alleges that the investors lost money by investing in the Fund. Indeed,

4   according to the allegations in the Complaint, the Fund made a *lot* of money for its investors.

5   The Complaint alleges that investors put almost $10 million in capital into the Fund since

6   inception and that the current value of the Fund's brokerage accounts is approximately $13

7   million. *Id.* ¶¶ 12, 15. Thus, ignoring money already returned to investors and the value of the

8   assets held by the Fund *outside* its brokerage accounts, and assuming that the SEC's (disputed)

9   valuation is correct, the Fund would have returned just about 5% a year net of costs and fees – a

10   period during which the Dow Jones Industrial Average had a compound average annual return of

11   just 1.2%. Of course, as soon as the more than $7 million in distributions are factored back in

12   (and again using the SEC's disputed current valuation while ignoring the Fund's non-brokerage

13   account assets) the Fund's compound average annual return jumps to over 14%. Thus, even

14   using the SEC's figures—the accuracy of which Mr. Trabulse disputes—the investors were

15   enriched enormously by virtue of their investment in the Fund. There was, as a matter of law,

16   simply no fraud against the investors, notwithstanding the SEC's hyperbolic, press-release-

17   seeking statements to the contrary. *See Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1047

18   (9th Cir. 2006) (economic loss and loss causation are both required elements of an investor's

19   claim for fraud).

20    The Court should not, therefore, be misled by the Complaint's rhetoric into believing that

21   this case concerns some kind of massive theft from the Fund's investors. Indeed, in its

22   previously filed motion for preliminary relief, the SEC effectively asked the Court to *keep* Mr.

23   Trabluse in charge of managing investors' accounts during the pendency of the litigation –

24   something it would not have done if Mr. Trabluse had been stealing from his clients. Although

25   the SEC's Complaint shouts fraud from the rooftops, the alleged foundation is far more modest –

26

27   [3] The SEC has "not alleged that [the defendant's investors] lost money." Kathleen Pender, *Net Worth: Hedge Funds Need a Careful Look*, S.F. Chron., Sept. 27, 2007, at C1 (quoting SEC staff

28   attorney Erin Schneider), attached hereto as Exhibit 2 to the Declaration of Clement S. Roberts.

4

DEF.'S NTC. OF MTN., MTN. TO DISMISS 1ST, 2ND & 3RD CAUSES OF ACTION OR, IN THE ALT., FOR MORE DEFINITE STATEMENT; AND SUPPORTING MEMORANDUM OF POINTS AND AUTH. CASE NO. C-07-4975 WHA

404602.07

1  namely the allegation that the Fund's accounting improperly valued its assets over time and, as a

2  result, somehow unjustly enriched Mr. Trabluse.

### III.    ARGUMENT

4      The Court should dismiss the first, second, and third causes of action because they lack

5  the specificity required by Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Under Rule 9(b),

6  "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be

7  stated with particularity."  This heightened pleading standard applies "to fraud actions brought

8  under the federal securities laws[.]"  *SEC v. Yuen*, 221 F.R.D. 631, 634 (C.D. Cal. 2004)

9  (dismissing SEC complaint for failure to plead fraud with particularity).  Because the first three

10  claims all allege fraud, each must meet the heightened pleading requirements of Rule 9(b).

11      The purpose of this heightened pleading standard is "to give defendants notice of the

12  particular misconduct which is alleged to constitute the fraud charged so that they can defend

13  against the charge and not just deny that they have done anything wrong."  *Neubronner v.*

14  *Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (citing *Semegar v. Weidner*, 780 F.2d 727, 731 (9th Cir.

15  1985)).  To meet the Rule 9(b) standard, a "complaint must specify such facts as the times, dates,

16  places, and benefits received, and other details of the alleged fraudulent activity."  *Glen Holly*

17  *Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999) (*citing Neubronner*,

18  6 F.3d at 672) (internal citations omitted).  Once the SEC has identified a particular statement, its

19  allegations "must be accompanied by 'the who, what, when, where, and how' of the misconduct

20  charged."  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).  *See also SEC v.*

21  *Baxter*, 2007 WL 2013958, at *3 (N.D. Cal. Jul. 11, 2007) ("'[A] plaintiff must set forth more

22  than the neutral facts necessary to identify the transaction. The plaintiff must set forth ***what*** is

23  false or misleading about a statement, and ***why*** it is false.'") (quoting *Vess*, 317 F.3d at 1106)

24  (emphasis added).

25      In evaluating whether the SEC has met this heightened pleading standard, the Court is not

26  required to accept unreasonable inferences, unwarranted deductions of fact, or conclusory legal

27  allegations cast in the form of factual allegations.  *See W. Mining Council v. Watt*, 643 F.2d 618,

28

5

DEF.'S NTC. OF MTN., MTN. TO DISMISS 1ST, 2ND & 3RD CAUSES OF ACTION OR, IN THE ALT., FOR
MORE DEFINITE STATEMENT; AND SUPPORTING MEMORANDUM OF POINTS AND AUTH.
CASE NO. C-07-4975 WHA

404602.07

1    624 (9th Cir. 1981); *Yuen*, 221 F.R.D. at 634. As discussed in more detail below, however, this

2    is all the SEC has offered.

3    **A.    The Court should dismiss the first and second causes of action.**

4          The SEC's first and second claims for relief do not meet the required pleading standards.

5    In particular, the SEC has: (1) failed to identify allegedly false or misleading statements with

6    particularity; (2) failed to specify *how* and *why* it contends those statements were wrong; and (c)

7    failed to allege any specific facts showing that any such misinformation was material.

8          The first and second claims for relief rise and fall together because they require the SEC

9    to plead the same elements. Specifically, each of Section 17(a) of the Securities Act,[4] Section

10    10(b) of the Exchange Act,[5] and Rule 10b-5,[6] require the SEC to allege specific facts showing

11    that a defendant made "'(1) a material misstatement or omission (2) in connection with the offer

12    or sale of a security (3) by means of interstate commerce.'" *SEC v. Phan*, 500 F.3d 895, ___,

13    2007 WL 2429365, at *8 (quoting *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir.

14    2001)).[7] Thus, unless the SEC has pled *each* of these three elements with particularity, the first

15    and second claims for relief must be dismissed. As discussed in more detail below, the SEC has

16    failed to shoulder its burden.

17

---

18    [4] 15 U.S.C. § 77q(a). This section forbids any person in the offer or sale of any securities by
means of interstate commerce "(1) to employ any device, scheme, or artifice to defraud, or (2) to

19    obtain money or property by means of any untrue statement of a material fact or any omission to
state a material fact necessary in order to make the statements made, in the light of the

20    circumstances under which they were made, not misleading; or (3) to engage in any transaction,
practice, or course of business which operates or would operate as a fraud or deceit upon the

21    purchaser." *Id.*

22    [5] 15 U.S.C. § 78j(b). This section makes it unlawful for any person by means of interstate
commerce "[t]o use or employ, in connection with the purchase or sale of any security . . . any

23    manipulative or deceptive device or contrivance in contravention of such rules and regulations as
the Commission may prescribe[.]" *Id.*

24    [6] 17 C.F.R. § 240.10b-5. Rule 10b-5 provides that it shall be unlawful for any person "(a) [t]o
employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a

25    material fact or to omit to state a material fact necessary in order to make the statements made, in
the light of the circumstances under which they were made, not misleading, or (c) [t]o engage in

26    any act, practice, or course of business which operates or would operate as a fraud or deceit upon
any person, in connection with the purchase or sale of any security." *Id.*

27    [7] In addition, violations Section 17(a)(1), Section 10(b), and Rule 10b-5 require scienter, while

28    violations of Sections 17(a)(2) and (3) require a showing of negligence. *See id.*

404602.07

1.     **The SEC has not identified the allegedly false statements with particularity.**

The SEC fails to state with particularity each of the statements that it believes to be materially inaccurate.  While the SEC generally avers that Trabulse made materially misleading statements in his newsletter and quarterly reports, it makes only fleeting attempts to identify what the alleged misstatements were, identifying what it terms a few "examples" of the statements in question.  *See* Complt. ¶¶ 12-18.  Yet, in order to meet the pleading requirements "'the allegations should include the misrepresentations themselves with particularity[.]'" *Baxter*, 2007 WL 2013958, at *6 (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)).  Thus, *only* these purported "examples" can be relied on to resist the present motion to dismiss; everything else is, by force of logic, not a particularized allegation.

But even these so-called "examples" fail to point to specific statements.  For example, in paragraph 14 of the Complaint, the SEC alleges (as an "example") that "in the second quarter of 2005 Trabulse reported to investors collective gains of approximately $2.5 million.  In reality the Fund realized a net loss in its brokerage accounts of more than $200,000."  Complt. ¶ 14.  But the SEC cannot meet the requirement of *specifically identifying* allegedly false statements by pointing to "collective gains" –  because there is no allegation that any investor ever saw any discussion of the Fund's "collective gains."  The SEC is pointing to an entire *set* of quarterly reports—with each report being different for each shareholder—while generally alleging that various unidentified statements in those reports were *cumulatively* misleading.  The SEC must identify what the particular misleading statements were.  It has not done so.

Yet this is the *most specific* allegation of its kind in the Complaint.  For example, in attempting to offer a second "example" of a misleading statement in the latter part of paragraph 14, the SEC writes that "Trabulse fraudulently reported to investors during the period from 1998 though 2006 that they collectively earned gains totaling approximately $30 million."  Complt. ¶ 14.  Yet nothing in the Complaint identifies which of the hundreds or thousands of emails, phone calls, and other communications that took place during the referenced eight-year period are the "reports" to which the SEC is referring – much less what specific statements in those reports are

DEF.'S NTC. OF MTN., MTN. TO DISMISS 1ST, 2ND & 3RD CAUSES OF ACTION OR, IN THE ALT., FOR
MORE DEFINITE STATEMENT; AND SUPPORTING MEMORANDUM OF POINTS AND AUTH.
CASE NO. C-07-4975 WHA

404602.07

1   alleged to be false or misleading.  This kind of vague gesture towards hundreds of different

2   unidentified communications cannot meet the specificity requirements of Rule 9(b).

3          Nor are these problems limited to any one paragraph of the Complaint – they apply to

4   *every* attempt the SEC has made to identify an allegedly false statement.  For ease of reference,

5   those failings are summarized in the chart attached hereto as Exhibit A.   As set forth therein, the

6   SEC nowhere points to a particular statement that is misleading.

7          **2.     The SEC has not met its obligation to say *why* and *how* any alleged
                    statements were false or misleading**

8

9          It is black letter law that, in order to meet the specificity requirement of 9(b) the SEC

10  must not merely specifically *identify* any allegedly false statements, but must specifically say

11  *why* and *how* those statements are alleged to be false and misleading.  *See Baxter*, 2007 WL

12  2013958, at *3 ("'[A] plaintiff must set forth more than the neutral facts necessary to identify the

13  transaction. The plaintiff must set forth *what* is false or misleading about a statement, and *why* it

14  is false.'") (quoting *Vess*, 317 F.3d at 1106) (emphasis added).  The SEC has failed to meet this

15  obligation.

16         First, the SEC repeatedly premises its assertion that Mr. Trabulse's (unidentified)

17  statements to his investors were false on a logical fallacy.  Returning to the previous example, in

18  paragraph 14 the SEC contends that Mr. Trabluse misled investors when "in the second quarter

19  of 2005 [he] reported to investors collective gains of approximately $2.5 million."  According to

20  the SEC, these (unspecified) statements were cumulatively misleading because "In reality the

21  Fund realized a net loss in its brokerage accounts of more than $200,000."  Complt. ¶ 14

22         But this allegation makes absolutely no sense.  As the SEC well knows, and has alleged

23  elsewhere in the Complaint, Mr. Trabulse invested a "significant portion" of the Fund's capital in

24  a wide variety of assets that are not held in brokerage accounts, such as real estate, antique rugs,

25  and a start-up golf company.[8]  Thus, the fact that the brokerage accounts saw a net decrease

26  during a particular period says *nothing* about whether the overall value of the Fund's assets were

27  _____

28  [8] *See, e.g,.* ¶ 28

404602.07

1    up or down.  It is like claiming that a person must be lying when he says that he ate more than

2    usual yesterday and pointing as proof to the fact that he ate a modest breakfast.  Again, even

3    accepting the SEC's allegations as true for the purposes of this motion, the fact that *part* of the

4    Fund declined in value does not logically imply that the *whole* Fund did so.

5         As noted previously, the Court should not accept nonsensical logical inferences in

6    deciding a motion to dismiss.  *See W. Mining Council*, 643 F.2d at 624.  The SEC therefore

7    cannot satisfy its obligation to explain *why* a statement is allegedly false with an obvious logical

8    fallacy.  Yet, if the Court carefully reads the Complaint (or reviews Exhibit A hereto) it will see

9    that the SEC has premised its *entire* case for the falsity of the Fund's account statements on this

10   same illogical and obviously deficient premise.

11        Nor is this the only instance where the SEC's allegations of "falsity" are premised on a

12   demonstrably incorrect basis.  For example, the SEC alleges that Mr. Trabulse misled his

13   investors by telling them, "in both verbal and written communications, that the Fahey Fund

14   invested [in] financial instruments like stocks, options, derivatives, futures and foreign

15   currency[,]" and then actually invested in "gems and other jewelry, real property, and rugs[,]"

16   and using the money "to fund a start-up golf company and purchase a BMW for the golf

17   company's owner."  Complt. ¶ 28.

18        Leaving to one side (for the moment) the fact that nothing in this paragraph identifies a

19   specific statement that is alleged to be false,[9] the allegation of falsity is also demonstrably wrong.

20   In its Complaint, the SEC repeatedly cites to the Fund's Partnership Agreement—effectively

21   incorporating it as a reference and allowing the Court to review it on a motion to dismiss.  Yet

22   the Partnership Agreement clearly states that "capital may be invested in other businesses" and

23   that the Fund's mission will be to invest in "publicly listed opportunities, natural resources, ***and***

24   ***any other investment of a unique long-term character***[.]"  Declaration of Clement S. Roberts

25   ("Roberts Decl."), Ex. 1 (Fahey Fund (Limited) Partnership Agreement ("Partnership

26   Agreement")) § 6.09 and § 2.01 (emphasis added).  Thus, the Fund's investment in the golf

27   _____

28   [9] Because the allegations do not identify what the alleged statements were, when they were

9

404602.07

1  company, and in other appreciating assets like a warehouse full of antique rugs, real-estate and

2  rare gems are all fairly within the set of investments that Mr. Trabulse agreed to with his limited

3  partners. The SEC's allegation that Mr. Trabulse misrepresented the scope of the Fund's

4  investments is, therefore, not merely vague, but also wrong. Those allegations cannot, therefore,

5  satisfy the requirements of Rule 9(b).[10]

6       **3.     The SEC has failed to meet its obligation to allege specific facts**
           **demonstrating the materiality of any allegedly false statements.**

7          Even if the Complaint had identified particular misleading statements—which it does

8  not—and even if the Complaint had explained why those statements are misleading—which it

9  has not—the Complaint would still fail because it does not specifically allege that the

10  (unidentified) statements were material. A misrepresentation "is material if there is a substantial

11  likelihood that a reasonable investor would have acted differently if the misrepresentation had

12  not been made or the truth had been disclosed." *Livid Holdings LTD. v. Salomon Smith Barney,*

13  *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005) (citation omitted). *See also Basic Inc. v. Levinson*, 485

14  U.S. 224, 231-232 (1988) ("'[T]here must be a substantial likelihood that the disclosure of the

15  omitted fact would have been viewed by the reasonable investor as having significantly altered

16  the 'total mix' of information made available.'") (quoting *TSC Industries, Inc. v. Northway, Inc.*,

17  426 U.S. 438, 449 (1976)).

18          But the SEC does not allege *any* specific facts regarding materiality. The vast bulk of the

19  statements to which the SEC vaguely gestures were clearly made *after* people who received the

20  statements invested in the Fund. Thus, in order to adequately allege materiality the SEC would

21  have to allege with particularity that specific investors would have divested from (or not

22  increased their investment in) the Fund had they received the specifically identified information.

23  

---

24  made, or to whom they cannot form a basis for sustaining the first and second causes of action.

25  [10] Indeed, it is somewhat surprising (and disappointing) that the SEC made this mistake because
defense counsel explicitly *pointed out the mistake* before the SEC filed the Complaint.

26  Specifically, after a meeting in which the SEC's trial counsel said it could not find any
authorization in the Fund documents for this kind of investment, the defendant's counsel wrote

27  and pointed the SEC to this authorization in the Fund documents. *See* Roberts Decl., Ex. 3
(Celio letter of July 17, 2007). Apparently the SEC either did not read, or chose to ignore, the

28  letter.

DEF.'S NTC. OF MTN., MTN. TO DISMISS 1ST, 2ND & 3RD CAUSES OF ACTION OR, IN THE ALT., FOR
MORE DEFINITE STATEMENT; AND SUPPORTING MEMORANDUM OF POINTS AND AUTH.
CASE NO. C-07-4975 WHA

404602.07

1      The SEC simply has not made any such allegation.  Indeed, the only place in which the

2  Complaint even *attempts* to make such an allegation are in paragraphs 16, 17 and 20.  But these

3  paragraphs do not contain *any* specific information whatsoever, and therefore fall far short of

4  what is required under 9(b).  Paragraph sixteen, for example, only says that "many [unidentified]

5  investors decided to invest in Fahey Fund because they heard [unidentified statements] from

6  [unidentified] friends or colleagues already invested in the fund[.]"  Complt. ¶ 16.

7      Similarly, the most detailed allegation in paragraph seventeen says that "[o]ne

8  [unidentified] investor, who with his wife invested more than $2 million in 2006, called several

9  [unidentified] individuals on the list before investing and based his investment, in part, on

10  [unidentified] material misstatements about the fund[.]"  *Id.* ¶ 17.[11]

11      And paragraph 20 suffers from the same deficiencies.  In particular it does not

12  specifically identify any allegedly false information, does not even **attempt** to identify any person

13  who purportedly received that information, and does not contain any allegation whatsoever that

14  anyone took any action based on that information or considered that information as important in

15  any way.

16      In other words, the SEC has not identified *any* investor who allegedly would have

17  divested, *any* investor who would not have invested additional amounts or *any* first time investor

18  who would not have put money in "if the misrepresentation had not been made or the truth had

19  been disclosed."  *Livid*, 416 F.3d at 946.  Because the Complaint does not identify any specific

20  investor, nor any specific statement allegedly relied on by that (unidentified) investor, it has not

21  plead materiality with the requisite specificity.

22      Indeed, assuming the SEC's numbers are correct (for the purpose of this motion only)

23  and assuming therefore that the Fund returned an annual average of more than 14% (as compared

24  with an overall market return of about 1.2%[12]) it is hard to take seriously the notion that investors

25  _____

26  [11] Again, the SEC cannot meet the particularity requirement by alleging that one unidentified
    person had a conversation with another unidentified person in which unknown and unidentified

27  things were said and then invested based on unidentified misstatements.  Yet this is *precisely* the
    set of allegations upon which the SEC is attempting to rely.

28  [12] This figure is derived from the Dow Jones Industrial Average annual returns for the years

1    would have gone elsewhere had they had different information.  Indeed, the SEC's failure to

2    allege materiality with specificity is probably a function of the fact that none of the Fund's

3    investors *would have* wanted to give up a return of *at least* 5% per year—more likely 14%—in

4    order to invest elsewhere in an otherwise sluggish market.

5         In considering this proposition, the Court should keep in mind the fact that the SEC

6    already has deposed nearly 30 of the Fund's investors.  If the lack of specificity in the Complaint

7    is any indication, apparently *none* of them were willing to go on record saying that they would

8    have acted differently had they known what the SEC contends to be the Funds "actual" return.

9         **4.    The SEC has not met its obligation to allege specific facts showing that any**
           **allegedly false statement was made "in connection with the purchase or sale**
10          **of a security."**

11        Finally, the SEC has failed to meet its pleading burden under this requirement for the

12   same reason it has failed to meet its burden of pleading materiality with particularity – namely

13   the SEC has totally failed to identify even a single person who made an investment decision in

14   connection with the receipt of any of the (unspecified) statements about which the government

15   complains.  Indeed, given that the allegedly false statements in this case were supposedly

16   (somewhere) within the statements that went to actual investors, the *only* way they could be in

17   connection with the purchase or sale of a security is if someone *put money into the fund* based on

18   such a statement.  But, again, the SEC's simply has not identified a ***single*** specific instance in

19   which this supposedly happened.

20        Indeed, even if the SEC were to identify the people who purportedly invested after

21   talking to existing investors, and specified the contents of the conversations between them, the

22   allegations would still be inadequate because any allegedly false statement in that conversation

23   *was not made by Mr. Trabulse*.  In other words, the SEC's theory here appears to be that Mr.

24   Trabulse can be liable for making a material misstatement in connection with the purchase or

25   sale of a security, even if *he did not make the statement, or exercise control over what was said*.

26   The case law does not support such an expansive reading of the securities law.  As the Supreme

27

28   2000-2006.  *See* Roberts Decl., Ex. 4 (Dow Jones Industrial Average annual returns report).

DEF.'S NTC. OF MTN., MTN. TO DISMISS 1ST, 2ND & 3RD CAUSES OF ACTION OR, IN THE ALT., FOR
MORE DEFINITE STATEMENT; AND SUPPORTING MEMORANDUM OF POINTS AND AUTH.
CASE NO. C-07-4975 WHA

404602.07

1    Court has put it, the statute "must not be construed so broadly as to convert every common-law

2    fraud that happens to involve securities into a violation of § 10(b)." *SEC v. Zandford*, 535 U.S.

3    813, 820 (2002). Thus, even if the SEC *were* to say which investors allegedly invested based on

4    which alleged misstatements, it might very well fail to satisfy the connectivity requirement. But,

5    as pleaded, we cannot know—which is precisely why the Complaint violates Rule 9(b).

6    **B.    The SEC's Investment Advisers Act claim also lacks the necessary particularity.**

7         The SEC's third cause of action – for violating § 206 of the Investment Advisers Act[13] –

8    also fails under Rule 9(b). The "Advisers Act § 206 prohibits advisers from, directly or

9    indirectly, employing a scheme to defraud clients or engaging in practices which operate as a

10   fraud upon clients." *Vernazza v. SEC*, 327 F.3d 851, 858 (9th Cir. 2003) (citing 15 U.S.C. §

11   80b-6(1)-(2)). Specifically, to successfully plead a cause of action under section 206(1), the SEC

12   must allege with particularity that: (1) Mr. Trabulse was an investment adviser; (2) he utilized

13   the mails or instrumentalities of interstate commerce to employ a device, scheme or artifice;

14   (3) the device, scheme or artifice violated Mr. Trabluse's fiduciary duty to his clients; and

15   (4) Mr. Trabluse acted with scienter. *See SEC v. Merrill Scott & Associates, Ltd.*, 505 F. Supp.

16   2d 1993, 2005 (D. Utah 2007) (listing elements of the claim); *SEC v. Rauscher Pierce Refsnes,*

17   *Inc.*, 17 F. Supp. 2d 985, 988-90 (D. Ariz. 1998) (applying Rule 9(b)'s particularity requirements

18   to the claims under Section 206).[14]

19        Importantly, the only allegations that can form a basis for a claim under this section are

20   allegations regarding conduct directed *towards the Fund* and ***not*** conduct or statements directed

21   to the Fund's investors. This is because the SEC must allege a breach of fiduciary duty to state a

22   viable cause of action, and because the ***only*** fiduciary duties a hedge fund general partner has are

23   those he owes to the Fund itself. Indeed, this precise question was addressed in *Goldstein v.*

24   *SEC*, 451 F.3d 873 (D.C. Cir. 2006). In that case, the Court of Appeals invalidated the SEC's

25   "hedge fund rule" and held that hedge fund general partners, under the Advisers Act, owe

26

27   _____
     [13] 15 U.S.C. § 80b-6(1) and (2).

28   [14] The same elements apply for Section 206(2), except that the SEC need not allege scienter. *Id.*

                                                    13
     DEF.'S NTC. OF MTN., MTN. TO DISMISS 1ST, 2ND & 3RD CAUSES OF ACTION OR, IN THE ALT., FOR
     MORE DEFINITE STATEMENT; AND SUPPORTING MEMORANDUM OF POINTS AND AUTH.
                                  CASE NO. C-07-4975 WHA

1  "fiduciary duties *only* to the fund, *not* to the fund's investors." *Id.* at 881 (emphasis added).

2      The SEC has made only *one* set of allegations that could form a basis for its Investment

3  Advisors Act claim – namely the allegations contained in paragraphs 22 through 27 of the

4  Complaint.  Generally speaking, these paragraphs allege that Mr. Trabluse violated his duties to

5  the Fund by failing to maintain accurate accounting records, by failing to segregate his assets and

6  by using Fund assets for personal expenses. *See* Complt. ¶¶ 22-27.  But these allegations are not

7  sufficient.

8      *First*, the allegation that Mr. Trabulse "failed to maintain accurate accounting records"

9  appears only in paragraph 26, and with no more detail than what was just quoted.  Thus, this

10  statement cannot satisfy the particularity requirements of Rule 9(b).  *See Glen Holly*, 100 F.

11  Supp. 2d at 1094 (holding that "a complaint must specify such facts as the times, dates, places,

12  and benefits received, and other details of the alleged fraudulent activity" in order to meet the

13  Rule 9(b) standard).

14      *Second*, the allegation that Mr. Trabulse failed to segregate his personal expenses from

15  those of the Fund cannot form a basis for the Investment Advisors Act claim because Mr.

16  Trabulse had no duty to distinguish between personal expenses and Fund expenses.  As noted at

17  the outset, the Partnership Agreement that governs the operation of the Fund *requires* Trabulse to

18  pay for all Fund expenses from the 25% of the Fund's profits that make up his personal

19  compensation.  *See* Roberts Decl., Ex. 1 (Partnership Agreement) at §§ 5.14, 6.06.[15]  From the

20  perspective of the Fund, it makes no difference at all how or for what purpose Mr. Trabulse

21  withdraws money from the fund, or how he characterizes the expenditure.  At the end of the day,

---

[15] Even on a motion to dismiss, the Court can take judicial notice of a document which, like this agreement, is referenced in the Complaint.  *See* Fed. R. Evid. 201; *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ("documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").  When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) (superseded by statute on other grounds).  The arguments in support of the Court's taking judicial notice of the Partnership Agreement is included in Mr.

14

404602.07

1    Mr. Trabulse's fiduciary obligation to the Fund is to withdraw no more than 25% of the Fund's

2    profits—from which he must both take his own compensation and pay the Fund's expenses.

3        While this is, admittedly, an innovative arrangement, it is designed to and does

4    substantially benefit the Fund's investors.  Under the Fund's governance structure the investors

5    do not need to worry about whether the Fund manager is minimizing expenses or whether there

6    are any hidden fees.  Thus, for example, when Mr. Trabulse rents a car, the investors need not

7    worry or keep track of how much of the time he is using it for business purposes.  Similarly,

8    neither the investors nor the Fund need be concerned about whether, when Mr. Trabulse flies

9    first class to Paris, he is *really* incurring a business expense or taking a vacation.  The Fund's

10    governance structure avoids all of those questions by treating business expenses and personal

11    expenses as the ***same*** with respect to the Fund's capital, and requiring, instead, that ***all*** expenses

12    (business expenses and personal compensation) together be restricted to 25% of the Fund's

13    operating profits.

14        Because of this structure, the allegation that Mr. Trabulse "mislabeled" personal expenses

15    as business expenses cannot constitute a breach of Mr. Trabulse's duties to the Fund.  For

16    example, in paragraph 24, the SEC alleges that Mr. Trabulse wired $500,000 to an account in

17    France and spent the money for personal expenses, while simultaneously recording the wire

18    transfer as being for "business expenses."  *See* Complt. ¶ 24.  But, so what?  From the Fund's

19    perspective ***nothing*** turns on how the transaction was described—the ***only*** thing that matters is

20    whether Mr. Trabulse withdrew more or less than 25% of the Fund's profits.  To put it another

21    way, under the Partnership Agreement, Mr. Trabulse was *required* to pay business expenses out

22    of his *personal* stake in the Fund's profits.  Thus, Mr. Trabulse's alleged failure to clearly

23    delineate what was a personal expense and what was a business expense cannot constitute a

24    breach of his fiduciary duty to the Fund and, therefore, cannot form a basis for a claim under

25    §206 of the Investment Advisors Act.

26        ***Third***, the allegation that Mr. Trabulse misused Fund assets fails for the same reason.  As

27

28    Trabulse's Request for Judicial Notice, filed concurrently with this motion to dismiss.

404602.07

1  noted previously, the only way to determine whether or not Mr. Trabulse misused Fund assets

2  for personal purposes is to look at the *total* profits of the Fund and the *total* amount of money

3  that Mr. Trabulse withdrew for business and personal expenses *combined*.  Looking at individual

4  expenses—or the accounts from which those expenses were paid—tells you nothing because Mr.

5  Trabulse had a right to use up to 25% of the Fund's profits to pay personal expenses.

6         Yet, the SEC seems unwilling or unable to understand this fundamental point.  Thus,

7  instead of alleging ***anything*** about how much the Fund made in profits or how much of those

8  profits Mr. Trabulse used for the *combination* of business expenses and personal compensation,

9  the SEC makes a series of flamboyant and irrelevant allegations about conspicuous personal

10 spending.  For example, the SEC alleges that Mr. Trabulse "used Fahey Fund bank accounts to

11 pay for a wide variety of personal, and unauthorized, expenses."  Complt. at ¶ 22.  This statement

12 is both misleading and irrelevant.  First, the SEC's use of the word "unauthorized" is just

13 grandstanding.  There is no clause in the Partnership Agreement regarding what expenses are

14 authorized or unauthorized.  There is no requirement that Mr. Trabulse record exactly what he

15 did with his 25% of the net profits.  And it is irrelevant to the health of the Fund whether Mr.

16 Trabulse used his share of the profits to pay his ex-wife's mortgage, *see id.* ¶ 23, or whether he

17 allowed his daughter to draw on the account using a debit card, *see id.* ¶ 25.  Mr. Trabulse's

18 fiduciary duty was, instead, ***only*** to run the Fund without spending more than 25% of its profits

19 on the combination of business and personal expenses.

20        The ***only*** time the SEC says *anything* about totals is in paragraph 22, where it nakedly

21 alleges that Mr. Trabulse spent "more than he was entitled to under the terms of the Fund's

22 limited partnership agreement."  *Id.* ¶ 22.  But the SEC fails to provide any particularized

23 allegation regarding what the profits of the Fund were, what 25% of that amount would have

24 been at any moment in time, what amount Mr. Trabulse withdrew from the Fund and over what

25 period, how that amount exceeded his 25% share, or any particularized facts *whatsoever* to guide

26 Mr. Trabulse in responding to the Complaint.  *See Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.

27 1994) ("[A] pleading is sufficient under Rule 9(b) if it identifies the circumstances of the alleged

28

16
DEF.'S NTC. OF MTN., MTN. TO DISMISS 1ST, 2ND & 3RD CAUSES OF ACTION OR, IN THE ALT., FOR
MORE DEFINITE STATEMENT; AND SUPPORTING MEMORANDUM OF POINTS AND AUTH.
CASE NO. C-07-4975 WHA

404602.07

1   fraud so that the defendant can prepare an adequate answer.").

2          Indeed, from (1) the SEC's exclusive reliance on the Fund's brokerage accounts; (2) the

3   fact that the SEC has *ignored* the value of the Fund's numerous other investments; and (3) the

4   fact that the SEC has *ignored* the impact of distributions and new investments in its

5   "calculations" of the Fund's profitability – it appears that the SEC did not conduct an adequate

6   prefiling investigation and therefore *does not know* what the fund was worth over time.  In other

7   words, the *reason* the SEC has not alleged either the Fund's profits nor that the combination of

8   Mr. Trabulse's business and personal expenditures was more than 25% of those profits is

9   ***because the SEC does not know if it is true***.  In a word, the SEC is just guessing – which it

10  plainly is not permitted to do under 9(b).

11  **C.     The Court should, at a minimum, require a more definite statement of the charges.**

12         In the alternative to his motion to dismiss under Rule 12(b)(6), Mr. Trabulse moves under

13  Rule 12(e), for a more definite statement.  *See* Fed. R. Civ. P. 12(e).  All of the defects in the

14  allegations of the Complaint, discussed above, have created a pleading that is "so vague or

15  ambiguous that [Mr. Trabulse] cannot reasonably be required to frame a responsive pleading."

16  *Id.*  Thus, for example, as the Complaint is currently structured, Mr. Trabulse cannot tell which

17  of the various allegations are alleged to constitute a violation of each cause of action.

18         Under Rule 12(e) the defendant may move for an order requiring a more definite

19  statement by pointing out "the defects complained of and the details desired."  *Id.*  Mr. Trabulse

20  hereby incorporates all of the arguments lodged above, in support of his motion to dismiss and

21  requests a more definite statement on all the defects complained of and the details that are

22  missing from the Complaint.

23         As numerous courts in the Ninth Circuit and this District have held, responding to a

24  complaint is not a treasure hunt and defendants are not required to excavate the allegedly false

25  statements from amongst a mass of allegations.  *See In re GlenFed Sec. Litig.*, 42 F.3d 1541,

26  1554 (9th Cir. 1994) (*en banc*) ("A complaint is not a puzzle . . . and we are loathe to allow

27  plaintiffs to tax defendants . . . with the burden of solving puzzles in addition to the burden of

28

DEF.'S NTC. OF MTN., MTN. TO DISMISS 1ST, 2ND & 3RD CAUSES OF ACTION OR, IN THE ALT., FOR
MORE DEFINITE STATEMENT; AND SUPPORTING MEMORANDUM OF POINTS AND AUTH.
CASE NO. C-07-4975 WHA

1    formulating an answer to their complaint"); *see also Wenger v. Lumisys,* 2 F. Supp. 2d 1231,

2    1243-44 (N.D. Cal. 1998) (dismissing complaint where "[p]laintiff merely throws the statements

3    and the alleged 'true facts' together in an undifferentiated clump and apparently expects the

4    reader to sort out and pair each statement with a supposedly relevant 'true fact.' The predictable

5    demands of reviewing such a complaint abuse judicial resources."). Here, the Complaint

6    generally refers to various alleged misrepresentations made over the course of eight years. But

7    the Complaint nowhere explains how these allegations fit together to form a cognizable legal

8    claim.

9        Accordingly, in the event that the Court denies his motion to dismiss, Mr. Trabulse

10   requests that the Court grant his motion for a more definite statement.

## IV.    CONCLUSION

12       The SEC has extraordinary investigative powers. Using those powers in this case it

13   deposed literally dozens of witnesses, and reviewed hundreds if not thousands of documents

14   prior to filing suit. Yet, despite all of that apparent activity, the SEC has failed to plead a

15   cognizable theory of this case. The SEC has utterly failed to allege specific facts about how

16   much money the Fund made, or how much Mr. Trabluse allegedly spent on the combination of

17   business and personal expenses. Instead, it chose to attack Mr. Trabluse personally – accusing

18   him of lavish personal spending without *in any way* indicating how that spending supports a

19   conclusion that he violated a duty to the Fund.

20       Elsewhere, the Complaint gestures broadly towards allegedly false documents without

21   specifying the statements *within* those documents that are alleged to be false, alleges falsity

22   based on inference that are demonstrably incorrect, if not downright silly, and have utterly fails

23   to identify *anyone* who did *anything* based on those unidentified statements. For these reasons,

24   ///

25   ///

26

27

28

18

404602.07

1   and for all the reasons set forth above, the first through third causes of action should be

2   dismissed.

3

4   Dated: November 1, 2007                    KEKER & VAN NEST, LLP

5

6

7                                        By:___s/ Clement S. Roberts_____
                                           CLEMENT S. ROBERTS
8                                          Attorneys for Defendants
                                           ALEXANDER JAMES TRABULSE,
9                                          FAHEY FUND, L.P., FAHEY
                                           FINANCIAL GROUP, INC.,
10                                         INTERNATIONAL TRADE & DATA,
                                           and ITD TRADING

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF.'S NTC. OF MTN., MTN. TO DISMISS 1ST, 2ND & 3RD CAUSES OF ACTION OR, IN THE ALT., FOR
MORE DEFINITE STATEMENT; AND SUPPORTING MEMORANDUM OF POINTS AND AUTH.
CASE NO. C-07-4975 WHA

404602.07

# **EXHIBIT A**

**EXHIBIT A**

| | The SEC has failed to allege materially false and misleading statements with particularity | |
|---|---|---|
| | **Allegations** | **Deficiency** |
| 12. | Trabulse operated Fahey Fund, L.P. and Fahey Financial Group, Inc. as a single hedge fund (collectively, "Fahey Fund"). In 1998, Fahey Fund had approximately 11 investors. By the end of 2006, the fund had grown to more than 100 investors. Trabulse described the fund to investors in oral conversations and written materials as a conservative fund that invested in financial instruments like stocks, options, derivatives, futures, indexes, and foreign currency. Since its inception, Fahey Fund has collected at least $10 million from investors. | This paragraph alleges background facts and does not allege that any of the statements referenced therein are false. |
| 13. | At the end of each calendar quarter, Trabulse prepared and sent to investors an account statement that purported to account for the changes in an investor's account balance from one quarter to the next. The statements purported to identify each investor's beginning balance, gains and/or losses earned during the period, and ending balance. Typically, the account statements were accompanied by a newsletter prepared and signed by Trabulse that summarized the fund's performance during the quarter and described current market conditions and what he expected markets to do in upcoming quarters. | This paragraph describes (in general) a hoast of vergited material including account statements and newsletters. No specific statements are identified or alleged to be false. |
| 14. | The quarterly account statements Trabulse sent to investors were materially false and misleading. They bore no relation to the fund's actual performance during the quarter.<br><br>For example, in the second quarter of 2005, Trabulse reported to investors collective gains of approximately $2.5 million. In reality, the fund realized a net loss in its brokerage accounts of more than $200,000.<br><br>Moreover, Trabulse fraudulently reported to investors during the period from 1998 through 2006 that they collectively earned gains totaling approximately $30 million, based on investments in stocks, derivatives, and foreign | This allegation does not identify any specific statement but points to an undifferentiated mass of materials that spanned many years.<br><br>The value of one component of the Fund does not render false a statement about the Fund's overall value.<br><br>This allegation suffers from *both* of the problems identifed above – no specific statement is identified and the assertion fails as a matter of logical. |

| | | |
|---|---|---|
| | currency. However, the fund's brokerage account records show the fund's profits during this time were less than $10 million. | |
| 15. | Similarly, Trabulse also overstated the funds' assets in the quarterly statements he sent to investors.<br><br>As of December 31, 2006, Trabulse reported to investors that their collective assets, which were composed of investor contributions and gains purportedly earned on investments in stocks, derivatives, and foreign currency, totaled more than $45 million. In reality, the fund's brokerage account records and bank statements show the fund's value was less than $13 million. | This allegation does not identify any specific statement but points to an undifferentiated mass of materials that spanned many years.<br><br>The value of one component of the Fund (the brokerage accounts) does not render false a statement about the Fund's overall value. |
| 16. | Trabulse used the false and misleading account statements to encourage existing investors to recruit new investors and increase their own investments in Fahey Fund. Indeed, many investors decided to invest in Fahey Fund because they heard from friends or colleagues already invested in the fund that the fund achieved spectacular returns. Trabulse also touted the fund's positive performance when soliciting new investors. | This allegation does not identify who the new investors were, what was said to them, who said it to them, or when those conversations took place. |
| 17. | Trabulse gave certain prospective investors a list of existing investors who would act as references.<br><br>The investors identified as references had received materially false and misleading account statements with grossly overstated profits and account balances.<br><br>One investor, who with his wife invested more than $2 million in 2006, called several of the individuals on the list before investing and based his investment, in part, on material misstatements about the fund's performance.<br><br>In addition, certain investors made multiple contributions into the fund based on the false and misleading representations about the fund's | This allegation does not identify who received the alleged list nor who was on it.<br><br>This allegation rests upon the SEC's flawed assertion that the account statements were false as noted above. The value of one component of the fund does not render false a statement about the fund's overall value.<br><br>This allegation does not identify the investor, who he spoke with, what was said or what alleged misstatemens he relied on.<br><br>This allegation does not identify which investors made these contrabutions, when the statements or contrabutions were made, |

| | | |
|---|---|---|
| | performance in the account statements they received from Trabulse. | or which statements they allegedly relied on. In addition this allegation rests upon the SEC's flawed assertion that the account statements were false as noted above. |
| 18. | Trabulse knew or was reckless in not knowing that the account statements provided to investors were false and misleading. | No identification of a materially false and misleading statement. |
| 19. | Trabulse prepared and disseminated to investors other materials containing materially false and misleading claims about the fund's performance, all designed to increase the money he managed or to solicit investments from the general public. | This is simply a conclusory allegation and does not identify any statements. |
| 20. | For example, he prepared and sent to some prospective investors documents containing charts which depicted the fund's value as steadily increasing, or holding steady, each quarter beginning in the fourth quarter of 1997 and continuing through the second quarter of 2002. | This allegation does not identify either the documents or the alleged charts that they supposedly contained. The allegation also does not say which prospective investors received the "charts" and *nothing* in this paragraph or any other says that those unnamed investors relied on the charts. |
| | Similarly, from approximately April 1999 until 2007, Fahey Fund maintained a website at "www.faheyfund.com" that contained materially false and misleading information. The website purported to describe Trabulse's investment strategy and contained various charts which depicted the fund's profits as consistently positive (or flat) each quarter beginning in the fourth quarter of 1997 and continuing through the second quarter of 2004. | The SEC does not specify which "charts" it is referring to on the website. Instead it just refers to unspecified charts that are alleged to have been posted on the Fund's website at some (unspecified) time over an eight year period. |
| | These charts sent to prospective investors and on the fund's website were materially false and misleading. In reality, the fund's brokerage account records show the fund realized losses in 1998, 2000 and 2003. | This allegation rests upon the same logical falicy reflected in the SEC's assertion about the account statements. Again, the value of one component of the fund (i.e. the brokerage accounts) does not render false a statement about the Fund's overall value. |
| 21. | Trabulse knew or was reckless in not knowing that the materials he disseminated to investors were false and misleading. | This is simply a conclusory allegation and does not identify any statements. |

| | | |
|---|---|---|
| 22. | Trabulse used Fahey Fund bank accounts to pay for a wide variety of personal, and unauthorized, expenses. As of the years ended December 31, 2004, December 31, 2005, December 31, 2006, and the three months ended March 31, 2007, Trabulse misappropriated fund assets by spending more than he was entitled to under the terms of the fund's limited partnership agreement. | No identification of what he was entitled to spend under the terms of the fund's limited partnership agreement or what he actually spent.<br><br>No statement or explanation of *how* or *why* the alleged behavior is alleged to violate his duty to the Fund. |
| 23. | For example, he transferred over $650,000 to his now ex-wife's bank accounts that she spent on living expenses, a shopping allowance in Paris, France, and to pay her home mortgage after they separated. He also used the fund's bank accounts to buy her a home theater system costing in excess of $25,000. Moreover, he used the fund's bank accounts to purchase for her several rugs that she currently uses in her home. | No identification of what he was entitled to spend under the terms of the fund's limited partnership agreement or what he actually spent.<br><br>No statement or explanation of *how* or *why* the alleged behavior is alleged to violate his duty to the Fund. |
| 24. | In addition, Trabulse transferred more than $500,000 to an overseas bank account maintained in his personal name (not the fund's name) in Paris, France. He described certain of these transfers in the fund's books and records as for "Paris Business Expenses." Yet, after he transferred the money, Trabulse used his Paris bank account to pay for personal expenses here in the United States, including groceries, meals and clothes. Trabulse also transferred from the fund's bank accounts over $400,000 to third parties not related to the business of the fund. | No identification of what he was entitled to spend under the terms of the fund's limited partnership agreement or what he actually spent.<br><br>No statement or explanation of *how* or *why* the alleged behavior is alleged to violate his duty to the Fund. |
| 25. | Trabulse also allowed his daughter to use a debit card linked to one of Fahey Fund's bank accounts to buy furniture, airline tickets, and to pay for her 2007 honeymoon in Panama. In addition, Trabulse used the fund's bank accounts to purchase for his daughter several pieces of jewelry that she currently keeps in her home. | No identification of what he was entitled to spend under the terms of the fund's limited partnership agreement or what he actually spent.<br><br>No statement or explanation of *how* or *why* the alleged behavior is alleged to violate his duty to the Fund. |
| 26. | Trabulse routinely transferred money between Fahey Fund, L.P., Fahey Financial .Group, Inc., International Trade & Data, and ITD Trading, and authorized the withdrawal of money from all entities for improper purposes. Trabulse failed to segregate his own assets from those of the fund and failed to maintain accurate | No identification of what he was entitled to spend under the terms of the fund's limited partnership agreement or what he actually spent.<br><br>No statement or explanation of *how* or *why* the alleged behavior is alleged to violate his |

| | | |
|---|---|---|
| | accounting records, thus violating his fiduciary duties to the fund. | duty to the Fund. |
| 27. | Trabulse knew, or was reckless in not knowing, that he was misappropriating funds by spending more than he was entitled to. | No identification of what he was entitled to spend under the terms of the fund's limited partnership agreement or what he actually spent. |
| 28. | Trabulse told investors, in both verbal and written communications, that Fahey Fund invested financial instruments like stocks, options, derivatives, futures and foreign currency. In reality, Trabulse used a significant portion of investor money to purchase items that he and his family used, including gems and other jewelry, real property, and rugs. Trabulse even used investor money to fund a start-up golf company and purchase a BMW for the golf company's owner. | The allegations in this paragraph are in direct conflict with the express terms of the Fund's limited partnership agreement and must therefore be rejected.<br><br>This allegation cannot support the fourth cause of action which requires a breach of duty to the Fund and *not* conduct directed at the investors.<br><br>This allegation cannot support the first or second causes of action because it does not identify any specific statement, or provide any allegation that would support materiality. |
| 29. | Trabulse failed to tell investors before they invested money that Fahey Fund invested, or planned to invest in, such illiquid items, some of which were used for personal consumption, including real estate, jewelry, and rugs. He also concealed these purchases from investors by failing to identify them in account statements or elsewhere in materials provided to investors. | The allegations in this paragraph are in direct conflict with the express terms of the Fund's limited partnership agreement and must therefore be rejected.<br><br>This allegation cannot support the fourth cause of action which requires a breach of duty to the Fund and *not* conduct directed at the investors.<br><br>This allegation cannot support the first or second causes of action because it does not identify any specific statement or omission, or provide any allegation that would support materiality.<br><br>In addition, the SEC has identified *nothing* that would require Mr. Trabulse to notify investors of the particularities of the Fund's holdings. |
| 30. | Trabulse also gave several of the items purchased with the fund's money to members of | The Court can take judicial notice of the Fact that Trabulse was entitled to take as |

| | | |
|---|---|---|
| | his family, telling them the items were theirs to keep. Trabulse did not inform investors that he used investor funds to purchase jewelry and rugs for his family. | compensation up to 25% of the Fund's profits. The SEC has not identified *anything* that would prevent him from taking these profits by using Fund capital to buy physical items for his family.<br><br>Noting in this allegation idetifies what he was entited to spend under the terms of the Fund's limited partnership agreement or what he actually spent. |
| 31. | Trabulse knew, or was reckless in not knowing, that he failed to accurately disclose how he used investor money. | This allegation cannot support the fourth cause of action which requires a breach of duty to the Fund and *not* conduct directed at the investors.<br><br>This allegation cannot support the first or second causes of action because it does not identify any specific statement or omission, or provide any allegation that would support materiality. |