1  MARC J. FAGEL (Cal. Bar No. 154425)
   MARK P. FICKES (Cal. Bar No. 178570)
2    (fickesm@sec.gov)
   ERIN E. SCHNEIDER (Cal. Bar No. 216114)
3    (schneidere@sec.gov)

4  Attorneys for Plaintiff
   SECURITIES AND EXCHANGE COMMISSION
5  44 Montgomery Street, Suite 2600
   San Francisco, California  94104
6  Telephone:  (415) 705-2500
   Facsimile:  (415) 705-2501

7

8

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                     SAN FRANCISCO DIVISION
12

13

14  SECURITIES AND EXCHANGE COMMISSION,          Case No. C 07-4975 (WHA)

15              Plaintiff,

16         vs.                                    PLAINTIFF'S OPPOSITION TO
                                                  DEFENDANT'S MOTION TO DISMISS
17  ALEXANDER JAMES TRABULSE,                     THE FIRST, SECOND, AND THIRD
                                                  CAUSES OF ACTION OR, IN THE
18              Defendant,                        ALTERNATIVE, FOR MORE DEFINITE
                                                  STATEMENT
19         and
                                                  DATE:     December 6, 2007
20  FAHEY FUND, L.P., FAHEY FINANCIAL            TIME:     8:00 a.m.
    GROUP, INC., INTERNATIONAL TRADE &           PLACE:   Courtroom 9, 19th Floor
21  DATA, and ITD TRADING,

22              Relief Defendants.

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   ISSUE TO BE DECIDED ......................................................... 2

III.  STATEMENT OF FACTS ......................................................... 2

    A.    Trabulse Misrepresented Fahey Fund's Profitability ........................... 2

    B.    Trabulse Made False And Misleading Representations To
        Solicit Investments ............................................................. 3

    C.    Trabulse Misused Fahey Fund's Assets ...................................... 4

IV.   LEGAL ARGUMENT ............................................................. 5

    A.    The Complaint Sufficiently Alleges Fraud Against Trabulse ................... 5

        1.    The Standard Of Review Under Rules 9(b) And
               12(b)(6) Of The Federal Rules Of Civil Procedure ................... 5

        2.    The Elements Of The Causes Of Action ................................. 8

        3.    The Commission Alleged False Statements With
               Sufficient Particularity ................................................. 9

        4.    The Commission Alleged Specific Fraudulent
               Statements and Omissions ............................................. 11

        5.    The Commission Sufficiently Alleged Facts Showing
               Materiality ............................................................. 13

        6.    The Commission Sufficiently Alleged That
               Defendant's Misstatements And Omissions Are "In
               Connection With" The Purchase Or Sale of Securities ................ 14

        7.    The Commission Sufficiently Alleged Fraudulent
               Breach Of Fiduciary Duty Under The Investment
               Advisers Act ........................................................... 15

V.    CONCLUSION ................................................................. 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Balistreri v. Pacifica Police Dept.,*
901 F.2d 696 (9th Cir. 1988)........................................................................ 6

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).............................................................................. 9, 13

*Bell Atlantic Corp. v. Twombly,*
127 S.Ct. 1955 (2007)................................................................................ 5

*Bly-Magee v. California,*
236 F.3d 1014 (9th Cir. 2001)................................................................. 7, 16

*Brady v. Games,*
128 F.2d 754 (D.C. Cir. 1942)...................................................................... 7

*Branch v. Tunnell,*
14 F.3d 449 (9th Cir. 1994)......................................................................... 6

*Church of Scientology v. Flynn,*
744 F.2d 694 (9th Cir. 1984)....................................................................... 6

*Conley v. Gibson,*
355 U.S. 41 (1957).................................................................................. 5, 6

*Epstein v. Washington Energy Co.,*
83 F.3d 1136 (9th Cir. 1996)............................................................ 5, 11, 14

*Fecht v. The Price Co.,*
70 F.3d 1078 (9th Cir. 1995).......................................................... 7, 9, 16

*Fireman's Fund Ins. Co., v. City of Lodi,*
302 F.3d 928 (9th Cir. 2002)....................................................................... 6

*Galbraith v. County of Santa Clara,*
307 F.3d 1119 (9th Cir. 2002)..................................................................... 6

*Gilligan v. Jamco Dev. Corp.,*
108 F.3d 246 (9th Cir. 1997)....................................................................... 6

*In re Glenfed, Inc. Sec. Litig.,*
42 F.3d 1541 (9th Cir. 1994)................................................................... 7, 9

*Iolab Corp. v. Seaboard Sur. Co.,*
15 F.3d 1500 (9th Cir. 1994)....................................................................... 6

**Page**

*Jacobellis v. State Farm Fire and Casualty Co.*,
   120 F.3d 171 (9th Cir. 1997) ................................................................... 6

*Kaplan v. Rose*,
   49 F.3d 1363 (9th Cir. 1994) .............................................................. 7, 16

*Klein v. Computer Devices, Inc.*,
   591 F. Supp. 270 (S.D.N.Y. 1984) ........................................................ 7

*Koehler v. Pulvers*,
   614 F. Supp. 829 (S.D. Cal. 1985) ..................................................... 9, 13

*Lynx Ventures LP v. Canadian Imperial Bank of Commerce*,
   2000 WL 33223384 (C.D. Cal. April 18, 2000) ...................................... 7

*Moore v. Kayport*,
   885 F.2d 531 (9th Cir. 1989) ................................................................. 7

*Navarro v. Block*,
   250 F.3d, 729 (9th Cir. 2001) ............................................................... 6

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1992) ................................................................. 7, 16

*Ross v. A.H. Robins Co.*,
   607 F.2d 545 (2nd Cir. 1992) ............................................................... 7

*Seattle-First Nat'l Bank v. Carlstedt*,
   800 F.2d 1008 (10th Cir. 1986) ............................................................. 7

*SEC v. Capital Gains Research Bureau, Inc.*,
   375 U.S. 180 (1963) ........................................................................... 8, 9

*SEC v. Colello*,
   139 F.3d 674 (9th Cir. 1998) ............................................................... 10

*SEC v. ICN Pharmaceuticals, Inc.*,
   84 F. Supp. 2d 1097 (C.D. Cal. 2000) .................................................... 8

*SEC v. Rana Research, Inc.*,
   8 F.3d 1358 (9th Cir. 1993) ................................................. 8, 9, 11, 13, 14

*SEC v. Rind*,
   991 F.2d 1496 (9th Cir. 1993) ............................................................... 8

*SEC v. Zandford*,
   535 U.S. 813, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002) .............................. 9

**Page**

*Shuster v. Symmetricom, Inc.*,
  1997 U.S. Dist. LEXIS 14007 (N.D. Cal. Feb. 25, 1997).................................................. 6

*Simpson v. AOL Time Warner, Inc.*,
  452 F.3d 1040 (9th Cir. 2006)................................................................................................. 9

*Storey v. Chase Bankcard Servs., Inc.*,
  970 F. Supp. 722 (D. Ariz. 1997 ............................................................................................ 6

*Swartz v. KPMG LLP*,
  476 F.2d 756 (9th Cir. 2007).................................................................................................... 7

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976)............................................................................................................ 9, 13

*Walling v. Beverly Enters.*,
  476 F.2d 393 (9th Cir. 1973).......................................................................................... 7, 9, 16

*Warshaw v. Xoma Corp.*,
  74 F.3d 955 (9th Cir. 1996)...................................................................................... 7, 8, 9, 15, 16

*Wool v. Tandem Computers, Inc.*,
  818 F.2d 1433  (9th Cir. 1987).................................................................................................. 7

**STATUTES, REGULATIONS, RULES AND TREAISES**

15 U.S.C. § 77q(a) ........................................................................................................................ 8

15 U.S.C. § 78j(b) ......................................................................................................................... 8

15 U.S.C. § 78u-4 et seq. .............................................................................................................. 8

15 U.S.C. § 80b-6(1) ..................................................................................................................... 8

15 U.S.C. § 80b-6(2) ..................................................................................................................... 8

17 C.F.R. § 240.10b-5 ................................................................................................................... 8

Fed. R. Civ. Pro. § 8 ...................................................................................................................... 6

Fed. R. Civ. Pro. § 9(b) ......................................................................................................... 5, 6, 7

Fed. R. Civ. Pro. § 12(b)(6) ...................................................................................................... 5, 6

**Page**

2 A James Wm. Moore et al.,
  *Moore Federal Practice* ¶ 903, at 1930 (2d ed. 1972).................................................... 7

5 Charles A. Wright & Arthur Miller,
  *Federal Practice and Procedure* § 1298 (2d ed. 1990) ............................................ 7

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Securities and Exchange Commission ("Commission") submits this memorandum in opposition to defendant Alexander Trabulse's motion to dismiss the first, second and third causes of action, or in the alternative, for a more definite statement.

## I.    INTRODUCTION

As the Commission alleges in the complaint filed in this matter (the "Complaint") [Docket No. 1], this case is about Trabulse's lies to investors concerning the performance and value of their investments in his fund.  It is about Trabulse's efforts to deliberately conceal from investors purchases for which he used their money.  Finally, this case is about Trabulse's misappropriation of monies both from investors and from the fund itself to pay for Trabulse's lifestyle.

Defendant's motion to dismiss ignores both the law and the facts alleged in the Complaint. Trabulse claims that this litigation exclusively concerns a dispute about how much money investors earned through their investments in his fund.[1]  This argument is little more than a pointless attempt to distract the Court from the real issues.  Likewise, Trabulse advances certain legal arguments that might be relevant if this were a private securities class action case, but they have no bearing on a fraud action brought by the Commission.  For example, Trabulse argues at length that the Commission has not sufficiently alleged harm to investors.  It is well established, however, that the Commission need not plead nor prove injury or damages to prevail on its fraud claims. (Nevertheless, the Commission alleges that Trabulse lied to investors and misappropriated their money, thereby harming them.)     Trabulse also claims the Commission has failed to plead that specific investors would have divested from (or not increased their investment in) the fund had they received the correct information.  Yet, the Commission is not required to plead nor prove reliance, and materiality does not depend on whether an investor would have changed his position. (Nevertheless, the Commission alleges that some investors invested based on Trabulse's lies.)

---

[1] Defendant Trabulse also incorrectly claims the Commission agrees that no investor lost money.  Given Trabulse's abysmal record keeping, his refusal to cooperate meaningfully with the Commission's investigation prior to the filing of the Complaint and his refusal to answer the Commission's questions about the fund due to his Fifth Amendment privilege against self-incrimination, the Commission has no basis to agree with such an assertion.

1   Unable to defend against the allegations in the Complaint, the defendant instead advances the

2   bogus argument that the Commission has not pleaded fraud with adequate particularity.  Defendant's

3   claim of insufficient information is ironic given that the relevant information is in his possession, and

4   during the Commission's investigation, he invoked his right to remain silent under the Fifth

5   Amendment rather than share information.  Moreover, although Trabulse claims he is unable to frame

6   an adequate answer to the Complaint, he devotes almost the entirety of his motion to setting forth his

7   legal and factual defenses to the Commission's claims, essentially taking and attempting to dispute

8   the facts alleged.  Indeed, the motion to dismiss amply demonstrates that the defendant fully

9   understands the allegations against him in the Complaint.

10  It is fitting that the Court considers the defendant's motion to dismiss on the same day it

11  considers the Commission's motion for a preliminary injunction.  As the Court knows, the

12  Commission believes that the defendant should no longer be permitted to use investor funds to which

13  he is not entitled for his personal benefit.  Defendant's motion to dismiss is not only a waste of the

14  Court's time and resources, it is also a further example of defendant's improper use of investor

15  money as if it were his own to spend freely as he sees fit.  In sum, investors should not have to pay

16  for this motion.

17  **II.      ISSUE TO BE DECIDED**

18  Whether the Commission's claims for securities fraud are pleaded with sufficient particularity

19  to provide Trabulse with fair notice of the substance of the Commission's claims such that he may

20  prepare a responsive pleading.

21  **III.     STATEMENT OF FACTS**

22  **A.      Trabulse Misrepresented Fahey Fund's Profitability**

23  The Commission's Complaint alleges that between 1998 and the end of 2006, Trabulse

24  operated Fahey Fund, L.P. and Fahey Financial Group, Inc. as a single hedge fund (collectively,

25  "Fahey Fund" or "the fund").  Complaint ¶ 12.  By the end of 2006, the fund had grown to more than

26  100 investors.  *Id.*  Trabulse described the fund to investors in oral conversations and written

27  materials as a conservative fund that invested in financial instruments like stocks, options,

28  derivatives, futures, indexes, and foreign currency.  *Id.*

At the end of each calendar quarter, Trabulse prepared and sent to fund investors an account statement. Complaint ¶ 13. The statement purported to identify each investor's beginning balance, gains and/or losses earned during the period, and ending balance. *Id.* Typically, the account statements were accompanied by a newsletter prepared and signed by Trabulse that summarized the fund's performance during the quarter and described current market conditions and what he expected markets to do in upcoming quarters. *Id.*

The Complaint alleges that the statements furnished to investors at the end of each calendar quarter were materially false and misleading because they bore absolutely no relationship to the fund's actual performance during the quarter. Complaint ¶ 14. As an example, the Complaint alleges that in the second quarter of 2005, Trabulse reported to investors collective gains of approximately $2.5 million. *Id.* In reality, the fund realized a net loss in its brokerage accounts of more than $200,000 during that period. *Id.* Moreover, Trabulse fraudulently reported to investors during the period from 1998 through 2006 that they collectively earned gains totaling approximately $30 million, based on investments in stocks, derivatives, and foreign currency. However, the fund's brokerage account records show the fund's profits during this time were less than $10 million. *Id.*

Likewise, Trabulse overstated the funds' assets in the quarterly statements he sent to investors. Complaint ¶ 15. For example, the Complaint alleges that as of December 31, 2006, Trabulse reported to investors that their collective assets, which were composed of investor contributions and gains purportedly earned on investments in stocks, derivatives, and foreign currency, totaled more than $45 million. *Id.* In reality, the fund's value was less than $13 million. *Id.*

### B.    Trabulse Made False And Misleading Representations To Solicit Investments

Trabulse used the false and misleading account statements to solicit new investments and convince existing investors to put additional money into the fund. Complaint ¶¶ 1, 16. Specifically, Trabulse gave certain prospective investors a list of existing investors who would act as references. Complaint ¶ 17. The investors identified as references had received materially false and misleading account statements which grossly overstated profits and account balances. *Id.* One investor, who with his wife invested more than $2 million in 2006, called several of the individuals on the list before investing and based his investment, in part, on material misstatements about the fund's

1   performance.  *Id.*  In addition, certain investors made multiple contributions into the fund based on

2   the false and misleading representations about the fund's performance in the account statements they

3   received from Trabulse.  *Id.*

4        The Complaint further alleges that the defendant prepared and sent to some prospective

5   investors documents that purported to show the fund's value as steadily increasing, or holding steady,

6   each quarter beginning in the fourth quarter of 1997 and continuing through the second quarter of

7   2002.  Complaint ¶ 20.  In addition, from approximately April 1999 until 2007, Fahey Fund

8   maintained a website at "www.faheyfund.com" that purported to describe Trabulse's investment

9   strategy and contained various charts which depicted the fund's profits as consistently positive (or

10  flat) each quarter beginning in the fourth quarter of 1997 and continuing through the second quarter

11  of 2004.  *Id.*  These charts sent to prospective investors and on the fund's website were materially

12  false and misleading because, in reality, the fund's brokerage account records show the fund realized

13  losses in 1998, 2000 and 2003.  *Id.*

14       **C.    Trabulse Misused Fahey Fund's Assets**

15       The Complaint also alleges that Trabulse used Fahey Fund bank accounts to pay for a wide

16  variety of personal, and unauthorized, expenses.  Complaint ¶ 22.  As of the years ended December

17  31, 2004, December 31, 2005, December 31, 2006, and the three months ended March 31, 2007,

18  Trabulse misappropriated fund assets by spending more than he was entitled to under the terms of the

19  fund's limited partnership agreement.  *Id.*

20       For example, Trabulse transferred over $650,000 to his now ex-wife's bank accounts that she

21  spent on living expenses, a shopping allowance in Paris, France, and to pay her home mortgage after

22  they separated.  Complaint ¶ 23.  He also used the fund's bank accounts to buy her a home theater

23  system costing in excess of $25,000 and to purchase several rugs that she currently uses in her home.

24  *Id.*  Trabulse also transferred more than $500,000 to an overseas bank account maintained in his

25  personal name (not the fund's name) in Paris, France.  Complaint ¶ 24.  He described certain of these

26  transfers in the fund's books and records as for "Paris Business Expenses."  *Id.*  Yet, after he

27  transferred the money, Trabulse used his Paris bank account to pay for personal expenses here in the

28  United States, including groceries, meals and clothes.  *Id.*  Trabulse also allowed his daughter to use a

debit card linked to one of Fahey Fund's bank accounts to buy furniture, airline tickets, and to pay for her 2007 honeymoon in Panama. Complaint ¶ 25. In addition, Trabulse used the fund's bank accounts to purchase for his daughter several pieces of jewelry that she currently keeps in her home. *Id.* Trabulse also used investor money to fund a start-up golf company and purchase a BMW for the golf company's owner. *Id.* Finally, Trabulse failed to segregate his own assets from those of the fund and failed to maintain accurate accounting records, thus violating his fiduciary duties to the fund. Complaint ¶ 26.

Trabulse failed to tell investors before they invested money that Fahey Fund purchased, or planned to purchase, items such as real estate, jewelry, and rugs, including purchases for his own or other persons' personal consumption. Complaint ¶¶ 28-30. He also concealed these purchases from investors by failing to identify them in account statements or elsewhere in materials provided to investors. *Id.* [2]

During the Commission's investigation, Trabulse asserted his Fifth Amendment right against self-incrimination and refused to answer the Commission staff's questions. Complaint ¶ 7.

## IV.    LEGAL ARGUMENT

### A.    The Complaint Sufficiently Alleges Fraud Against Trabulse

#### 1.    The Standard Of Review Under Rules 9(b) And 12(b)(6) Of The Federal Rules Of Civil Procedure

Motions to dismiss are disfavored and rarely granted. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), *overruled on other grounds by Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 167 L.Ed.2d

---

[2] By focusing on discrete factual disputes, Trabulse treats his motion to dismiss as if it were a motion for summary judgment. In so doing, he ignores well-settled law requiring the Court to presume as true the facts alleged in the Complaint. *E.g., Epstein v. Washington Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996). In any event, Trabulse tries to avoid responsibility for these omissions by citing to the Fahey Fund (Limited) Partnership Agreement. *See* Exhibit 1 to the Declaration of Clement S. Roberts in Support of the Motion to Dismiss. However, there is no evidence that any investor saw this agreement. Indeed, the Partnership Agreement provided to investors omitted reference to illiquid investments. *See* Declaration of Erin E. Schneider in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss, Ex. 1. Moreover, even if some investors received the Partnership Agreement referenced in Trabulse's motion, no investors were told that their money was actually used for such investments, and the account statements omit any reference to investments in tourmaline, pearls or real estate.

1   929 (2007).  As the Court of Appeals for the Ninth Circuit has noted, "[t]he conditions that must be

2   met before a motion may be granted under Federal Rule of Civil Procedure 12(b)(6) are quite strict."

3   *Church of Scientology v. Flynn*, 744 F.2d 694, 695-96 (9th Cir. 1984); *Shuster v. Symmetricom, Inc.*,

4   1997 U.S. Dist. LEXIS 14007, at *7 (N.D. Cal. Feb. 25, 1997).  A motion to dismiss under Federal

5   Rule of Civil Procedure ("FRCP") 12(b)(6) tests the legal sufficiency of the causes of action set forth

6   in the complaint; therefore, a claim may not be dismissed "unless it appears beyond doubt that

7   plaintiff can prove no set of facts in support of his claim which would entitle him to relief,"  (*Conley*,

8   355 U.S. at 45-46; *Church of Scientology*, 744 F.2d at 695-96; *Storey v. Chase Bankcard Servs., Inc.*,

9   970 F. Supp. 722, 724 (D. Ariz. 1997)) or the "lack of a cognizable legal theory."  *Balistreri v.*

10  *Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). [3]

11          Thus, the question for the Court to decide is not whether the Commission will ultimately win

12  this case but whether it is entitled to offer evidence to support the allegations in the Complaint.

13  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  In deciding a motion to dismiss

14  under FRCP § 12(b)(6), a court must construe the complaint in the light most favorable to the

15  plaintiff and presume all factual allegations in the complaint to be true.  *Fireman's Fund Ins. Co., v.*

16  *City of Lodi,* 302 F.3d 928, 939 (9th Cir. 2002)*; Jacobellis v. State Farm Fire and Casualty Co.*, 120

17  F.3d 171, 172 (9th Cir. 1997).  All reasonable inferences from the facts alleged in the complaint are

18  drawn in the plaintiff's favor.  *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994).

19  Thus, dismissal is proper only where there is no cognizable legal theory or an absence of sufficient

20  facts alleged to support a cognizable legal theory.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

21  2001).

22          When a claim is based on fraud, FRCP § 9(b) requires that the circumstances of the fraud be

23  alleged with particularity.  Fed. R. Civ. Pro. § 9(b).  However, FRCP § 9(b) must be read in

24  conjunction with the mandate of FRCP § 8 that a complaint consist of a short and plain statement

25

26          [3]  In the motion to dismiss, defendant improperly relies on several pieces of extrinsic
    evidence.  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by*
27  *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (In ruling on a motion to dismiss,
    a district court generally "may not consider any material beyond the pleadings.")
28

1  showing why a party is entitled to relief.  *Lynx Ventures LP v. Canadian Imperial Bank of*

2  *Commerce,* 2000 WL 33223384, at *1 (C.D. Cal. April 18, 2000) (*citing* 5 Charles A. Wright &

3  Arthur R. Miller, *Federal Practice and Procedure* § 1298 (2d ed. 1990)).  Thus, a complaint is

4  sufficient under FRCP § 9(b) if it provides a defendant fair notice of the substance of a plaintiff's

5  claim in order that the defendant may prepare a responsive pleading.  *Bly-Magee v. California*, 236

6  F.3d 1014, 1019 (9th Cir. 2001); *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir. 1996); *Fecht v.*

7  *The Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995); *Kaplan v. Rose*, 49 F.3d 1363, 1375 (9th Cir.

8  1994); *Neubronner v. Milken,* 6 F.3d 666, 671-72 (9th Cir. 1992).

9  The Commission's Complaint fully satisfies the requirement of FRCP § 9(b) that the

10  circumstances constituting fraud be alleged with particularity.  This requirement is satisfied by

11  allegations of the "time, place and nature of the alleged fraudulent activities." *Walling v. Beverly*

12  *Enters.*, 476 F.2d 393, 397 (9th Cir. 1973); *Warshaw,* 74 F.3d at 960; *Fecht,* 70 F.3d at 1082.  When

13  a false or misleading statement is alleged, the "plaintiff must set forth what is false or misleading

14  about [the] statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.

15  1994).  Where, as here, certain matters are within the opposing party's knowledge, the pleading

16  requirements of FRCP § 9(b) may be relaxed.  *Moore v. Kayport*, 885 F.2d 531, 540 (9th Cir. 1989);

17  *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987).

18  Contrary to Trabulse's assertion, FRCP § 9(b) does not require the pleading of detailed

19  evidence.  *Walling v. Beverly,* 476 F.2d at 397 (*quoting* 2 A James Wm. Moore et al., *Moore Federal*

20  *Practice* ¶ 903, at 1930 (2d ed. 1972)); s*ee also, Seattle-First Nat'l Bank v. Carlstedt,* 800 F.2d 1008,

21  1011 (10th Cir. 1986); *Brady v. Games,* 128 F.2d 754, 755 (D.C. Cir. 1942); *Ross v. A.H. Robins Co.*,

22  607 F.2d 545, 557 n.20 (2nd Cir. 1979); *Klein v. Computer Devices, Inc.*, 591 F. Supp. 270, 279 n.25

23  (S.D.N.Y. 1984) ("Rule 9(b) does not require the pleading of detailed evidence"); 5 Charles A.

24  Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1298 (1990).  A complaint meets the

25  standard of FRCP 9(b) so long as it identifies with specificity the time, place and contents of the

26  alleged misrepresentations.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

27  ///

28  ///

## 2.    The Elements Of The Causes Of Action

The Complaint's first three causes of action each allege fraud under three different securities acts. Specifically, the Complaint alleges violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(1) and (2)]. Section 10(b) of the Exchange Act and Rule 10b-5 prohibit misrepresentations, material omissions of fact, and the use of fraudulent devices in connection with the purchase or sale of securities. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Section 17(a) of the Securities Act prohibits the same conduct in the offer or sale of securities. 15 U.S.C. § 77q(a). Non-speakers can be liable for fraudulent misstatements when they make misleading statements to third parties with the intent that the third party communicate that statement to the market. *See Warshaw*, 74 F.3d at 959. The Commission is *not* required to plead nor prove injury or damages. *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1363, fn. 4 (9th Cir. 1993); *SEC v. Rind*, 991 F.2d 1496, 1490 (9th Cir. 1993) (injury is not an element of an SEC claim for disgorgement of profits under rule 10b-5).[4]

Section 206 of the Advisers Act makes it unlawful for any investment adviser: (1) to employ any device, scheme, or artifice to defraud any client or prospective client, or (2) to engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client. 15 U.S.C. §§ 80b-6(1), (2). Conduct that violates the antifraud provisions of the Exchange Act and Securities Act also may constitute a breach of an investment adviser's fiduciary duties to his clients, under Section 206 of the Advisers Act. *See SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92, 194, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963) (advisers owe

---

[4] Relying on cases addressing the pleading requirements for a private plaintiff under the Private Securities Litigation Reform Act ("PSLRA") [15 U.S.C. § 78u-4 et seq.], Trabulse devotes a significant portion of his motion to the claim that investors were not harmed by his fraud. However, the pleading requirements of the PSLRA do not apply to actions brought by the Commission. *SEC v. ICN Pharmaceuticals, Inc.*, 84 F. Supp. 2d 1097, 1099 (C.D. Cal. 2000) ("[T]he 'more rigorous' pleading requirements under the PSLRA, which go beyond the Rule 9(b) requirements only apply to private securities fraud actions; they do not apply to a case, such as this, brought by the SEC.")

1   fiduciary duty to deal with their clients in utmost good faith and complete candor).  As with an action

2   under Section 10(b), the Commission need not plead nor prove injury or damages.  *See Capital Gains*

3   *Research Bureau, Inc.*, 375 U.S. at 195 (the SEC need not prove injury in an action to enjoin

4   violation of Section 206 of the Advisers Act).

5       To constitute a violation of the antifraud provisions, the deception, misstatement or omission

6   must be "material."  *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (*quoting TSC Indus.,*

7   *Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).  A fact is material if there is a substantial

8   likelihood that a reasonable investor would consider it important in making an investment decision.

9   *See TSC Indus.*, 426 U.S. at 449.  Although materiality is a mixed question of fact and law, courts

10  have recognized that certain basic information, such as how investor funds are used, may be material

11  as a matter of law.  *Koehler v. Pulvers*, 614 F. Supp. 829, 842 (S.D. Cal. 1985) (material information

12  includes, at a minimum, "accurate information on the use of investor funds").

13      To support a claim under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, the

14  Commission must also allege the fraud be "in connection with" the purchase or sale of a security.

15  *SEC v. Zandford,* 535 U.S. 813, 820, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002); *Simpson v. AOL Time*

16  *Warner, Inc.*, 452 F.3d 1040, 1050-51 (9th Cir. 2006).  The "in connection with" requirement is

17  satisfied if the fraud "somehow touches upon" or has "some nexus with" a transaction involving

18  securities.  *Rana Research, Inc.*, 8 F.3d at 1362.  Thus, where the fraud involves public dissemination

19  in a document provided to an investor, the "in connection with" requirement will be satisfied.  *Id.*

20          **3.      The Commission Alleged False Statements With Sufficient Particularity**

21      The Commission has more than adequately fulfilled its pleading obligations under FRCP

22  § 9(b).  As noted above, the FRCP § 9(b) pleading requirements are satisfied by allegations of the

23  "time, place and nature of the alleged fraudulent activities."  *Walling*, 476 F.2d at 397; *Warshaw*, 74

24  F.3d at 960; *Fecht*, 70 F.3d at 1082.  When a false or misleading statement is alleged, the SEC merely

25  need "set forth what is false or misleading about a statement, and why it is false."  *In re Glenfed, Inc.*

26  *Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994).

27  ///

28  ///

Concerning the "time, place and nature" of the alleged fraudulent activities, and which statements are false and why, the Commission alleges, among numerous other examples, the following:

- Trabulse fraudulently reported to investors during the period from 1998 through 2006 that they collectively earned gains totaling approximately $30 million, based on investments in stocks, derivatives, and foreign currency. However, the fund's brokerage account records show the fund's profits during this time were less than $10 million. Complaint ¶ 14; and

- Trabulse overstated the funds' assets in the quarterly statements he sent to investors. As of December 31, 2006, Trabulse reported to investors that their collective assets, which were composed of investor contributions and gains purportedly earned on investments in stocks, derivatives, and foreign currency, totaled more than $45 million. In reality, the fund's brokerage account records and bank statements show the fund's value was less than $13 million. Complaint ¶ 15.[5]

Clearly, the Complaint provides Trabulse with sufficient information to prepare a responsive pleading.

It is noteworthy that when Trabulse was asked to explain all of the misstatements and omissions set forth above, the defendant refused to answer based on his Fifth Amendment privilege against self-incrimination. Complaint ¶ 7. Indeed, Trabulse's fraudulent intent may be inferred from his refusal to answer questions on the grounds that he might incriminate himself. *See SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) ("Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof"). Specifically, Trabulse refused to answer the Commission's questions about the location of the fund's bank accounts and brokerage accounts; how the fund calculated its profits, gains and losses; how Trabulse calculated his compensation; and how the fund valued its assets. *See* Declaration of Erin E. Schneider in Support of Plaintiff's Motion for Preliminary Injunction and Other Ancillary Relief,

---

[5] *Also see*, Complaint ¶¶ 12, 13, 20, 22, and 28-30 for several other instances in which the Commission more than adequately alleged the "time, place and nature" of the alleged fraudulent activities and which statements are false and why.

1   ¶ 25 and Exhibit 18 [Docket No. 23].

2   **4.     The Commission Alleged Specific Fraudulent Statements and Omissions**

3       Defendant contends that that the allegation that "[i]n the second quarter of 2005, Trabulse

4   reported to investors collective gains of approximately $2.5 million.  In reality, the fund realized a net

5   loss in its brokerage accounts of more than $200,000" is not sufficiently particular because no

6   investor saw a discussion of the fund's collective gains.[6]  Trabulse then concludes that the

7   Commission has failed to identify what the particular misleading statements were.  Def's Mot. to

8   Dismiss, p. 7.  The Commission has alleged that Trabulse each quarter sent to investors account

9   statements that purported to detail each investor's beginning balance, gains and/or losses during the

10  period, and ending balance.  Complaint ¶ 13.  If, as alleged by the Commission, investors received

11  statements detailing gains of $2.5 million, every statement that shows a gain is false because, in

12  reality, the fund lost $200,000.  The issue is not whether anyone saw a statement reporting collective

13  gain; rather, the issue is that the gains reported to investors were false because, in reality, there were

14  losses.  Similarly, Trabulse's argument against the Commission's allegation that "Trabulse

15  fraudulently reported to investors during the period from 1998 through 2006 that they collectively

16  earned gains totaling approximately $30 million," (Def's Mot. to Dismiss, p. 7) also fails.  If

17  investors received statements showing gains totaling $30 million, but the gains in reality were less

18  than $10 million, then the investor statements are false and misleading.[7]

19      Trabulse next argues that the Commission has not adequately pleaded fraud because the

20  $200,000 loss does not reflect all the fund's purported assets such as the golf company, rugs, and real

21  estate.[8]  The fallacy in this logic is that the account statements omit any reference to such

22  _____

23      [6]  As noted above, the Commission is not required to plead reliance on Trabulse's false
    statements.  *Rana Research, Inc.*, 8 F.3d at 1363-64.

24      [7] The Commission is not required to plead every detail of every account statement sent to 100
25  separate investors at the end of each calendar quarter over a span of several years, and Trabulse cites
    no authority to suggest otherwise.

26      [8]  Again, Trabulse treats his motion to dismiss as if it were a motion for summary judgment
27  and ignores the well-settled legal principle that the facts alleged in the Complaint are presumed true
    for the purposes of a motion to dismiss.  *Epstein,* 83 F.3d at 1140.  Nevertheless, contrary to
28  Trabulse's claim, the Commission, at this point in time, does not "know" that Trabulse "invested" the
    Footnote continued on next page

1    "investments."  Complaint ¶ 14 (investor account statements reflect gains in stocks, derivatives, and

2    foreign currency); ¶ 15 (investor account statements reflect assets composed of investor contributions

3    and gains earned on investments in stocks, derivatives, and foreign currency); ¶ 29 (investor account

4    statements do not describe investments in real estate, jewelry, or rugs).  In essence, Trabulse faults the

5    Commission for failing to take into account the "value" of his material omissions.  In support of this

6    argument, Trabulse's attorney, who is not a percipient witness, submits a copy of what purports to be

7    a partnership agreement permitting investments in illiquid assets.  Neither the document nor the

8    argument on which it is based is reliable.  As an initial matter, there are multiple versions of the

9    partnership agreement, some of which do not permit such investments.  Schneider Decl. ¶ 2.  In

10   addition, there is no evidence that any investor saw the version submitted by Trabulse.  Finally, the

11   argument is a red herring.  Trabulse is liable for fraud for concealing these investments by failing to

12   disclose them in the quarterly account statements. [9]  It is (to use Trabulse's words) "nonsensical" and

13   "illogical" to factor in the "value" of assets not mentioned in the account statements.  Moreover, by

14   arguing that the Commission should consider the "value" of these undisclosed assets in assessing

15   whether the account statements are accurate, Trabulse essentially concedes the account statements are

16   false and acknowledges that "value" reported in the statements is inflated.  Otherwise, there would be

17   no need to factor in the "value" of assets that do not appear in the statements themselves.

18          At its core, the Complaint alleges that, from 1998 through 2006, the account statements and

19   newsletters sent to investors at the end of each calendar quarter were false.  The Complaint further

20   alleges that the statements were false because they bore no relation to reality, grossly overstated the

21   fund's assets and profitability, and hid Trabulse's misappropriation of investor money.

22

23

24   fund's capital in a wide variety of assets that are not held in brokerage accounts, such as real estate or
     antique rugs.  Def's Mot. to Dismiss, p. 8.  Rather, the Commission alleges that Trabulse used
25   investor money to purchase items that were not disclosed to investors, at least some of which were
     used for his personal benefit.  Complaint ¶ 28.
26

27          [9]  The Commission has submitted with this opposition objections to the admissibility of this
     document.  The Commission also opposes defendant's request that the Court take judicial notice of
28   this purported agreement.

**5.     The Commission Sufficiently Alleged Facts Showing Materiality**

As noted above, to constitute a violation of the antifraud provisions, the deception, misstatement or omission must be "material." *See Basic*, 485 U.S at 231-32. A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. *TSC Indus.*, 426 U.S. at 449. Accordingly, Trabulse's claim that "in order to adequately allege materiality, the SEC would have to allege with particularity that specific investors would have divested from (or not increased their investment in) the Fund had they received the specially identified information," (Def's Mot. to Dismiss, p. 10) is incorrect. Trabulse mistakenly equates materiality with reliance while overlooking that the Commission need not need plead nor prove reliance. *Rana Research, Inc.*, 8 F.3d at 1363. Courts have found that information, such as how investor funds are used, may be material as a matter of law. *Koehler*, 614 F. Supp. at 842 (material information includes, at a minimum, "accurate information on the use of investor funds").

The Complaint alleges that:

- Trabulse told investors that the fund was a conservative fund that invested in financial instruments like stocks, options, derivatives, futures, indexes, and foreign currency; yet failed to tell investors that Fahey Fund invested, or planned to "invest" in, illiquid items, including gems, real property, rugs, and a BMW for the owner of a golf company. Moreover, he concealed these investments from investors by failing to identify them, in the quarterly account statements. Complaint ¶¶ 12, 28-29;

- Trabulse did not inform investors that he used their funds to purchase personal items for his family. Complaint ¶ 30;

- Trabulse fraudulently reported to investors during the period from 1998 through 2006 that they collectively earned gains totaling approximately $30 million, based on investments in stocks, derivatives, and foreign currency. However, the fund's brokerage account records show the fund's profits during this time were less than $10 million. Complaint ¶ 14; and

- Trabulse overstated the fund's assets in the quarterly statements he sent to investors. As of December 31, 2006, Trabulse reported to investors that their collective assets, which were composed of investor contributions and gains purportedly earned on investments in

1    stocks, derivatives, and foreign currency, totaled more than $45 million. In reality, the

2    fund's brokerage account records and bank statements show the fund's value was less than

3    $13 million. Complaint ¶ 15.

4    Once again, defendant attempts to transform his motion to dismiss into a motion for summary

5    judgment. As noted above, the facts alleged in the Complaint are presumed to be true for the

6    purposes of a motion to dismiss. *Epstein* 83 F.3d at 1140. Thus the Commission is required only to

7    allege, not prove, materiality at this early stage of the litigation. Nevertheless, defendant's claim that

8    these false statements and omissions are not material flies in the face of common sense. Clearly any

9    reasonable investor would like to know: (1) that Trabulse overstated the fund's gains by 300%; (2)

10   that Trabulse overstated the fund's assets by almost 350%; and (3) that Trabulse misappropriated

11   money from the fund and tried to conceal his misappropriation.

12
13   **6.    The Commission Sufficiently Alleged That Defendant's Misstatements And Omissions Are "In Connection With" The Purchase Or Sale Of Securities**

14       Defendant's contention that the Commission has not met the "in connection with"

15   requirement is similarly divorced from reality. The "in connection with" requirement is satisfied if

16   the fraud "somehow touches upon" or has "some nexus with" a transaction involving securities.

17   *Rana Research, Inc.*, 8 F.3d at 1362. Thus, where the fraud involves public dissemination in a

18   document, the "in connection with" requirement will be satisfied. *Id.*

19       The Complaint identifies the public dissemination of false account statements and other

20   written misinformation. *E.g.*, Complaint ¶¶ 12-15, 20, 28. Importantly, and contrary to defendant's

21   assertion, the Complaint further alleges that he used the false and misleading account statements to

22   solicit new investments and convince existing investors to put additional money into the fund.

23   Complaint ¶¶ 1, 16, 17. Specifically, certain investors made additional contributions into the fund

24   based on the false and misleading representations about the fund's performance in the account

25   statements they received from Trabulse. Complaint ¶ 17. In addition, Trabulse encouraged potential

26   investors to contact investors who had been misled by Trabulse concerning the fund's profitability, its

27   value, and its assets. *Id.* The Complaint alleges that Trabulse's ploy was successful in recruiting a $2

28   million dollar investment. *Id.*

1    Trabulse asserts that these allegations are insufficient because certain statements "were not

2    made by Mr. Trabulse." Def's Mot. to Dimiss, p. 12. The Commission specifically alleges that

3    Trabulse provided to prospective investors lists of existing investors who would act as references.

4    Complaint ¶ 17. The Commission also alleges that the investors identified as references had

5    received from Trabulse materially false and misleading account statements with grossly overstated

6    profits and account balances. *Id.* The Complaint further alleges that at least one investor spoke with

7    these references and invested, in part, based on misrepresentations about the fund. *Id.* Yet, even

8    non-speakers can be liable for fraudulent misstatements when they make misleading statements to

9    third parties with the intent that the third party communicates that statement to the market. *Warshaw*,

10   74 F.3d at 959 (holding that company could be liable for optimistic statements made to analysts who

11   later wrote favorable reports about the company). Thus, Trabulse cannot escape liability simply

12   because he used investors to parrot the fraudulent information contained in their quarterly account

13   statements to prospective investors. These allegations clearly support a claim that Trabulse's fraud is

14   "in connection with" the purchase or sale of securities.

15       **7.    The Commission Sufficiently Alleged Fraudulent Breach Of Fiduciary Duty
            Under The Investment Advisers Act**

16

17    Finally, Trabulse contends that the Complaint fails to allege a breach of fiduciary duties.

18   Def's Mot. to Dismiss, p. 13. To the contrary, the Commission alleges that Trabulse fraudulently

19   breached his fiduciary duties in several respects. For example, the Commission alleges that "as of the

20   years ended December 31, 2004, December 31, 2005, December 31, 2006, and the three months

21   ended March 31, 2007, Trabulse misappropriated fund assets by spending more than he was entitled

22   to under the terms of the fund's limited partnership agreement." Complaint ¶ 22. The Complaint

23   also alleges that Trabulse gave several of the items purchased with the fund's money to members of

24   his family, telling them the items were theirs to keep. Complaint ¶ 30. In addition, the Complaint

25   alleges that Trabulse authorized the withdrawal of money from entities he controlled for improper

26   purposes, he failed to segregate his own assets from those of the fund, and he failed to maintain

27   accurate accounting records, thus violating his fiduciary duties to the fund. Complaint ¶ 26.

28

Trabulse characterizes as "grandstanding" the Commission's allegation that Trabulse used the fund bank accounts to pay for unauthorized expenses because "[t]here is no clause in the Partnership Agreement regarding what expenses are authorized or unauthorized." Def's Mot. to Dismiss, p. 16. This simply is untrue. Section 6.06 of the Partnership Agreement Trabulse attached to his motion states: "No partner shall be entitled to any salary, but the General Partner shall receive the right to draw expenses *consistent with prudent and sound management of the trading activities*, such expenses being charged against his share." *See* Exhibit 1 to the Declaration of Clement S. Roberts in Support of the Motion to Dismiss (emphasis added).[10] The issue, whoever, is not whether or not Trabulse was authorized to draw money for expenses. Rather, the Commission alleges that Trabulse breached his fiduciary duties by taking more than money than was permissible (Complaint ¶ 22), by failing to maintain accurate accounting records (Complaint ¶ 26), and by commingling his assets with those of the fund (*Id.*). The Complaint thus adequately specifies the time, place, and nature of the allegations such that Trabulse can prepare an adequate answer. *Walling*, 476 F.2d at 397; *Warshaw*, 74 F.3d at 960; *Fecht*, 70 F.3d at 1082; *Bly-Magee*, 236 F.3d at 1019; *Kaplan*, 49 F.3d at 1375; *Neubronner*, 6 F.3d at 671-72.

Trabulse's devotion of three pages of his motion to explaining how and why he believes that he did not spend more than that to which he was entitled under the partnership agreement makes his claim that he cannot prepare an adequate answer seem disingenuous.[11] Indeed, rather than addressing the sufficiency of the Complaint, Trabulse argues about the meaning of the partnership agreement and how to properly calculate his compensation. *See*, *e.g.* Def's Mot. to Dismiss, at 14-16. Such factual disputes cannot be resolved on a motion to dismiss. Nevertheless, as his moving papers show, Trabulse has more than enough information from the Complaint to answer and defend against the Commission's allegations.

---

[10] Notwithstanding the foregoing, the Commission renews its objection to this document.

[11] Once again, Trabulse forgets that in a motion to dismiss, as opposed to a motion for summary judgment, the Court must presume that the facts alleged in the Complaint are true.

1    **V.    CONCLUSION**

2        For the foregoing reasons, the Commission requests that the Court deny defendant's motion to

3    dismiss the first, second and third causes of action or, in the alternative, for more definite statement.

4

5    Dated:  November 15, 2007                Respectfully submitted,

6

7                                            /s/ Mark P. Fickes
                                            Mark P. Fickes
8                                            Erin E. Schneider
                                            Attorneys for Plaintiff
9                                            SECURITIES AND EXCHANGE COMMISSION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28