KEKER & VAN NEST, LLP
MICHAEL D. CELIO - #197998
CLEMENT S. ROBERTS - #209203
JO F. WEINGARTEN - #246224
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188
Email: mcelio@kvn.com
          croberts@kvn.com
          jweingarten@kvn.com

Attorneys for Defendants
ALEXANDER JAMES TRABULSE,
FAHEY FUND, L.P., FAHEY FINANCIAL
GROUP, INC., INTERNATIONAL TRADE
& DATA, and ITD TRADING

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> ALEXANDER JAMES TRABULSE, <br><br> Defendant, <br><br> and <br><br> FAHEY FUND, L.P., FAHEY FINANCIAL GROUP, INC., INTERNATIONAL TRADE & DATA, and ITD TRADING, <br><br> Relief Defendants. | Case No. C-07-4975 WHA <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date:        December 6, 2007 <br> Time:        8:00 a.m. <br> Dept.        Courtroom 9, 19th  Floor <br><br> Action Filed:   September 26, 2007 |

# TABLE OF CONTENTS

**Page**

I.    Introduction ...................................................................................................................1

II.   Statement of Facts ..........................................................................................................2

III.  Argument .......................................................................................................................3

A.    The SEC must make a substantial showing of *both* past violations and
a likelihood of future violations of the securities laws. ...........................................3

B.    The SEC cannot establish that the defendants have violated the
securities laws. .........................................................................................................4

1.    The SEC cannot establish past violations of the Exchange Act .................4

2.    The SEC cannot establish past violations of the Investment
Advisers Act......................................................................................6

C.    The SEC cannot establish the likelihood of future violations of the
securities laws. .........................................................................................................9

D.    The Court should not prevent the Fund from defending itself..............................10

E.    The SEC's demand for expedited discovery is untethered to any claim
of past or future harm.............................................................................................12

F.    The Defendants' Alternative Proposal Should Be Adopted Instead of
the SEC's Requested Injunctions...........................................................................16

IV.   Conclusion ...................................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Fed. Sav. & Loan Ins. Corp. v. Dixon,*
  835 F.2d 554 (5th Cir. 1987) ................................................................ 11

*FTC v. Amy Travel Serv., Inc.,*
  875 F.2d 564 (7th Cir. 1989) ................................................................ 11

*Goldstein v. SEC,*
  451 F.3d 873 (D.C. Cir. 2006) ....................................................... 6, 7, 9

*Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.,*
  940 F. Supp. 1101 (W.D. Mich. 1996) ................................................ 11

*SEC v. Bowler,*
  427 F.2d 190 (4th Cir. 1970) ................................................................ 13

*SEC v. Cavanaugh,*
  155 F.3d 129 (2d Cir. 1998) ................................................................... 3

*SEC v. Colello,*
  139 F.3d 674 (9th Cir. 1998) ................................................................ 11

*SEC v. Dain Rauscher, Inc.,*
  254 F.3d 852 (9th Cir. 2001) .................................................................. 9

*SEC v. Dowdell,*
  175 F. Supp. 2d 850 (W.D. Va. 2001) ................................................ 11

*SEC v. Edwards,*
  540 U.S. 389 (2004) ............................................................................... 9

*SEC v. Phan,*
  500 F.3d 895, 907-08, 2007 WL 2429365, at *8 .................................. 9

*SEC v. Ross*
  --- F.3d ----, 2007 WL 2983707, at *8 (9th Cir. Oct. 15, 2007) ........ 11

*SEC v. Unifund SAL,*
  910 F.2d 1028 (2d Cir. 1990) ..................................................... 3, 4, 10

*SEC v.Merrill Scott & Assoc., Ltd.,*
  505 F. Supp. 2d 1993 (D. Utah 2007) ................................................... 6

*U.S. v. Payment Processing Ctr., LLC.,*
  439 F. Supp. 2d 435 (E.D. Pa. 2006) .................................................. 11

## Other Authorities

15 U.S.C. § 80b-6(1) .................................................................................. 6

15 U.S.C.80b-6(2) ..................................................................................... 6

Exchange Act §17(a) .................................................................................. 4

Exchange Act10(b) .................................................................................... 4

Investment Advisers Act§ 206 ........................................................... 4, 6, 9

Rule 10b-5 .................................................................................................. 4

Securities Act § 5 ...................................................................................... 4

406543.01

# I.    Introduction

The SEC's motion for a preliminary injunction seeks relief that is not needed to preserve the status quo and is not needed to prevent future harm.  Although one would hardly know it from the SEC's motion, ***before*** the SEC filed that motion Mr. Trabulse stipulated to a broad set of measures preserving the status quo during this litigation.  Specifically, Mr. Trabulse agreed (and the Court ordered) that he will: not take on any new investors; not cash any investors out of the Fund; immediately produce a list of both his and the Fund's bank and brokerage accounts, and provide *monthly* reports to the SEC on various aspects of the Fund's activity.[1]  In light of these agreements, the vast bulk of the SEC's motion is moot.

Indeed, only two disputed issues remain: (1)  whether the Court should prevent the Fund from spending money to defend itself and/or its general partner; and (2) whether the Court should grant the SEC's request for expedited and early expert discovery.  The Court should deny both requests for at least four reasons.

*First*, the SEC has not established—as it must to prevail on *any* request—the existence of past violations of the securities laws.  As explained below (and in the pending motion to dismiss) the SEC's alleged violations of the securities laws are not even *coherent* and rely on logical inferences that are demonstrably wrong.

*Second*, the SEC cannot show—again, as it must to prevail—that *future* violations of the securities laws are highly likely unless the Court grants the SEC's additionally requested relief.  Again, as explained below, the parties' existing stipulation and the Court's order thereon *already* make most securities law violations *impossible*.

*Third*, the SEC's request to prevent the Fund from defending itself or Mr. Trabulse is exceedingly disfavored under the law.  Thus, the SEC cannot prevail on this request unless it can show that it is absolutely *necessary* to prevent a future violation of the securities laws.  But, as discussed below, the SEC is simply *guessing* that the relief it seeks will prevent such a

---

[1] As used herein, "the Fund" refers to the Fahey Fund, L.P., Fahey Financial Group, Inc, International Trade & Data and to ITD Trading.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C-07-4975 WHA

406543.01

1   violation—it does not actually know that to be true and has introduced literally no evidence

2   supporting that proposition.

3          *Fourth*, the SEC's request for expedited discovery has no logical connection to

4   preventing future violations of the securities laws.  Moreover, as discussed below, the SEC

5   already has taken nine months-worth of discovery, including taking more than 30 depositions,

6   subpoenaing both Mr. Trabulse and third parties, and reviewing thousands of pages of

7   documents.  Under these circumstances, its claim that discovery must be *expedited* is

8   unsupportable.

## II.    Statement of Facts

10         The SEC's complaint is brought against defendant Alexander James Trabulse and the so-

11  called "relief defendants:" Fahey Fund, L.P., Fahey Financial Group, Inc., International Trade &

12  Data and ITD Trading (together the "Fund").  *See* SEC Complaint ("Compl.") ¶¶ 8-11.  Mr.

13  Trabulse is the General Partner of Fahey Fund, L.P.  *See* Declaration of Clement S. Roberts

14  ("Roberts Decl."), Ex. A. (Fahey Fund Partnership Agreement or "Partnership Agreement") §

15  4.01.  As acknowledged by the SEC, the Fund was operated as a single hedge fund.  Compl. ¶

16  12.

17         Under the Partnership Agreement, the Fund's "primary purpose" is to invest in a large

18  range of investment opportunities, broadly defined as "publicly listed opportunities, natural

19  resources and any other investment of a unique long-term character."  Partnership Agreement §

20  2.01, Roberts Decl., Ex. A.  In addition, under the Partnership Agreement, the Fund's general

21  partner is authorized to withdraw up to 25% of the Fund's profits – which monies he must use to

22  pay *both* the Fund's expenses *and* the his own compensation.  *Id*. at §§ 5.12, 6.06.  But nothing

23  in the Partnership Agreement limits how this money can be spent or designates how it should be

24  split between expenses and compensation.  *Id*.

25         Prior to the filing of the SEC's motion, the parties entered into a stipulation aimed at

26  preserving the status quo by *limiting* the actions Mr. Trabulse can take with respect to the Fund

27  and by *requiring* him to report on certain aspects of the Fund's activities.  *See* Stipulation and

28  Order Concerning Injunctive Relief Dated October 18, 2007 ("Trabulse Stip."); Roberts Decl. ¶

3.  Specifically, Mr. Trabulse agreed, and the Court subsequently ordered him:

- not to make any payments, transfers or distributions to any Fund investors other than those needed to "pay legitimate and reasonable expenses incurred in the ordinary operation of the" Fund (§§ II and VIII);

- not to accept any investments from any investors (§ III);

- not to transfer any funds or assets located in the US to jurisdictions outside the US (§ VII);

- not to transfer or convey any of the Fund's physical assets other than to sell them to a bona fide third party (§ V);

- to limit future investments to "securities, derivatives, commodities contracts, foreign currency or other exchange-traded investments" (§ IV);

- to provide the SEC with a list of all financial accounts in which Mr. Trabulse or the Fund have an interest (§ I);

- to provide the SEC with monthly accountings of all funds or assets transferred out of any of the Fund's accounts (§ VI); and

- to provide the SEC with a monthly accounting of all funds and assets used to pay the Fund's operating expenses (§ IX).

During the negotiations leading up to this stipulation, the SEC made it clear that it was not seeking and would not seek to remove Mr. Trabulse from continuing to manage the Fund during this litigation.  Roberts Decl. ¶ 6.   The SEC also made it clear that, despite the stipulation, it intended to seek preliminary relief in order to prevent the Fund from spending any money to defend itself or Mr. Trabulse in this litigation.  *Id.* ¶ 7.

### III.    Argument

**A.    The SEC must make a substantial showing of *both* past violations and a likelihood of future violations of the securities laws.**

A preliminary injunction is only "appropriate if the SEC makes a substantial showing of likelihood of success as to both a current violation and the risk of repetition."  *SEC v. Cavanaugh*, 155 F.3d 129, 132 (2d Cir. 1998) (emphasis added).  Where the SEC seeks "more than preservation of the status quo" courts "require a more substantial showing of likelihood of success, both as to violation and risk of recurrence."  *SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990).

1   In the present case the SEC must meet this heightened evidentiary standard because it is

2   seeking relief designed not merely to preserve the status quo, but to prevent the Fund from

3   litigating the case, to enhance the SEC's discovery position, and to generally enjoin the

4   defendants from "violating the securities laws."   Because such "prohibition[s] against future

5   securities law violations…[are] among the sanctions that we have characterized as having grave

6   consequences…" the SEC must demonstrate "a more substantial showing of likelihood of

7   success, both as to violation and risk of recurrence…." *Id.* at 1039,1040 (citations omitted).

8   As discussed below, however, the SEC has not even come close to meeting this standard.

9   **B.    The SEC cannot establish that the defendants have violated the securities laws.**

10   The SEC has not established—as it must to prevail on *any* request for injunctive relief—

11   that it is likely to show successfully that the defendants have violated the securities laws.  Indeed,

12   the violations that the SEC alleges are in many places not even *coherent* and rely on logical

13   inferences that are demonstrably wrong.  The securities laws that the SEC claims (in its motion)

14   the defendants have violated are § 206 of the Investment Advisers Act, as well as Sections

15   §§17(a) and 10(b) of the Exchange Act and Rule 10b-5 enacted thereunder.[2]  *See* Compl. ¶¶ 38-

16   46.  We will address each of them in turn below:

17   **1.    The SEC cannot establish past violations of the Exchange Act**

18   As set forth in the defendants' motion to dismiss, the SEC has not even alleged a

19   cognizable claim under the Exchange Act.  Generally speaking, the SEC contends that Mr.

20   Trabulse misled investors by telling them that the Fund was worth a given amount (call it "X"

21   dollars) while, at the same time, the Fund's bank and brokerage accounts contained less than "X"

22   dollars.  *See e.g.* Compl. ¶ 14 ("in the second quarter of 2005 [he] reported to investors collective

23   gains of approximately $2.5 million. . . . In reality the Fund realized a net loss *in its brokerage*

24   *accounts* of more than $200,000.") (emphases added); Plaintiff SEC's Motion for Preliminary

25   Injunction (the "Motion") at 5:12-16 ("Trabulse reported to investors that the fund's net assets . .

26   . totaled approximately $50 million. . . . In reality the fund's *brokerage account records and*

27

28   [2] The SEC complaint also alleges a violation of § 5 of the Securities Act.  *See* Compl. ¶¶ 47-49. The SEC apparently is not seeking injunctive relief related to that cause of action.

4

1    ***bank statements*** show the fund's value was only approximately $10 million) (emphasis added).

2    Yet, as the SEC alleges elsewhere in both its Complaint and in the current motion, Mr.

3    Trabulse invested a "significant portion" of the Fund's capital in a wide variety of assets that are

4    not held in brokerage accounts. *See, e.g.,* Compl. ¶¶ 28-30; Motion at 9. Because the Fund's

5    bank and brokerage accounts represent only a ***portion*** of the Fund's assets, the value of the

6    whole Fund cannot be determined by looking *only* at those accounts. It is as if Mr. Trabulse told

7    investors that his car had four people in it, and the SEC were trying to claim a likelihood of

8    success based on evidence that only two people were in the front seat. The argument simply

9    does not hang together. The Court should not accept such nonsensical logical inferences either

10   in deciding this motion or the defendants' motion to dismiss.

11   Perhaps recognizing the weakness of its presentation on this issue, the SEC has—in the

12   current motion—alleged that Mr. Trabulse failed to disclose how he used investor money. Thus,

13   for example, the SEC claims that Mr. Trabulse "failed to tell investors that Fahey Fund invested

14   or planned to invest in jewelry, real property or rugs." Motion at 9.

15   The SEC is not likely to succeed on this claim because the Fund's partnership agreement

16   clearly states that "capital may be invested in other businesses" and that the Fund's mission will

17   be to invest in "publicly listed opportunities, natural resources, ***and any other investment of a***

18   ***unique long-term character***[.]" Roberts Ex. A § 6.09 and § 2.01 (emphasis added). Thus, the

19   idea that Mr. Trabulse *concealed* this information from investors is simply insupportable.

20   Moreover, even in the carefully chosen evidence submitted by the SEC, it is clear Mr.

21   Trabulse ***did*** discuss his investments with the investors. For example, the SEC asked Urbano

22   Maffei whether Mr. Trabulse had ever told him that he was investing in things like pearl

23   necklaces. Mr. Maffei indicated that Mr. Trabulse had, and then explained that it had been

24   discussed in the phone call "that we had five or six seeks ago. He brought up that he was

25   investing in investment quality pearls. And I said, oh, that's fine as long as they're making

26   money for us. That's okay." Schneider Decl, Ex. 26 at 112. Similarly, investor Suzanne Gregg

27   told the SEC that she "knew that [Mr. Trabulse] was interested in Panama. And property in

28   Panama" and that he had "[a] general interest for a real estate deal there. The potential growth."

1    Schneider Decl., Ex. 34 at 81-82.

2        Similarly, the SEC's own evidence shows that investors did not consider the information

3    material.  Again, for example, the SEC pushed Mr. Maffei to say that Mr. Trabulse's intent to

4    invest in "other assets" was material—and he simply wouldn't.  As he put it, "And so, yea, I

5    think I'd like to know.  But, again, its not going to change my mind or wouldn't have changed

6    my mind at the time of the initial investment."  Schneider Decl., Ex. 26 at 113.  Similarly, Mr.

7    James Banister was asked if "the type of investment that the Fahey Fund was invested in, was

8    that important to you", and he responded with a simple "no."  Schneider Decl., Ex. 35 at 63.

9        Importantly, the defendants were **not** present in these interviews, have **not** been given

10   copies of the transcripts and have not had a chance to depose the witnesses.  Thus, these

11   statements come from the portions of the evidence that the SEC chose as most favorable to its

12   case.  It is highly likely therefore that, unless the SEC succeeds in preventing the Fund from

13   mounting a defense, the SEC's case will only get worse—not better.

14       **2.    The SEC cannot establish past violations of the Investment Advisers Act**

15       In order to obtain relief on its claim brought under the Investment Advisers Act, the SEC

16   must show (among other things) that Mr. Trabulse breached an obligation **to the Fund itself** as

17   opposed to an obligation he owed to the Fund's clients.[3]  *SEC v.Merrill Scott & Assoc., Ltd.*, 505

18   F. Supp. 2d 1993, 2005 (D. Utah 2007) (elements of the claim include a breach of fiduciary

19   duty); *Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006) (under the Advisers Act, advisers

20   owe "fiduciary duties **only** to the fund, **not** to the fund's investors.") (emphasis added); 15 U.S.C.

21   §§ 80b-6(1) and (2) (Section 206).  Thus, to obtain an injunction based on this claim, the SEC

22   must establish a "substantial showing of likelihood" that Mr. Trabulse previously breached his

23

24   [3] The SEC claims that a § 206 claim can be based upon a breach of the investment adviser's
     "fiduciary duties to his clients" and implies that these claims can thus be based upon
25   misrepresentations made to investors and potential investors.  *See* Motion at 13:22-14:7.
     However, as detailed in defendants' motion to dismiss the SEC's complaint, a recent case
26   involving § 206 claims against a hedge fund general advisor makes clear that claims brought
     under the Advisers Act must allege a breach of fiduciary duty to the Fund itself, not to the
27   investment clients.  *See Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006).  This is because
     hedge fund general partners, under the Advisers Act, owe "fiduciary duties **only** to the fund, **not**
28   to the fund's investors."  *Id*. (emphasis added).

duties *to the Fund itself*[4] by withdrawing more than he was allowed to withdraw from the Fund (*i.e.*, more than 25% of the Fund's profits).  *Cavanagh*, 155 F.3d at 132 (emphasis added); *Goldstein*, 451 F.3d at 881.

The SEC has not and cannot make such a showing because it has neither alleged nor submitted evidence about how much money the Fund made nor how much Mr. Trabulse withdrew.  In particular, the SEC has submitted ***no*** evidence whatsoever regarding what the Fund's profits have been over any period of time, ***no*** evidence about what the Fund is likely to earn during the litigation, ***no*** evidence about how much Mr. Trabulse has withdrawn and ***no*** evidence suggesting that the costs of defending this litigation are (together with those withdrawals) likely to exceed 25% of the Fund's lifetime profits.  Motion at 2-12.  The SEC does not mention these things because it did not bother to gather the necessary evidence prior to filing suit even though it was conducting an investigation.

The SEC seeks to paper over its inability to say ***how much*** Mr. Trabulse withdrew by attacking ***what*** Mr. Trabulse spent money on.  The SEC alleges that Mr. Trabulse "used the…Fund bank accounts to pay for a wide variety of personal, and unauthorized, expenses".[5] Motion at 7:21-22; *see also* Compl. ¶¶ 22-27.  The SEC then lists some examples of withdrawals and transfers that Mr. Trabulse made from the accounts.  *Id.* at 7:21-9:12; 16:11-20 ("Defendant…misappropriated investor funds, using the…Fund as a virtual piggy bank…")  But these allegations—scandalous as they may sound at first blush—are *totally irrelevant* because of

---

[4] Although the SEC's complaint contains numerous other allegations, virtually *all* of them involve an alleged breach of duty to the Fund's *investors*, not an alleged breach of duty to the Fund itself.  *See* Compl. ¶¶ 13-21 (alleged misrepresentations made in statements and documents given to investors); 28-31 (alleged misrepresentations made about items invested in); 32-36 (alleged failure to file registration statement for fund).  These allegations are completely irrelevant as  § 206 requires a breach of duties to the Fund, not the investors.

[5] In a few places, the SEC appears to want to argue that Mr. Trabulse violated a duty to the Fund by failing to take reasonable steps to determine *whether or not* he was entitled to withdraw additional money from the Fund.  *See* Motion at 8:2-5.  But this argument suffers from several fatal flaws.  First, the SEC has submitted ***no*** evidence to support its contention that Mr. Trabulse's expenditures were above 25% of the Fund's profits.  Second, even if Mr. Trabulse had withdrawn money without knowing how much he was entitled to withdraw, those withdrawals would not violate his duty to the Fund unless he *actually* withdrew too much.  But, as explained below, the SEC has submitted ***zero*** evidence that Mr. Trabulse ever withdrew more than that to which he was entitled.

---

7

the way the Fund is structured. Under the terms of the Fund's Partnership Agreement, Mr.

Trabulse is entitled to withdraw up to 25% of the Fund's profits—from which he must pay the

Fund's expenses *and* take his compensation. *See* Partnership Agreement, Roberts Decl., Ex. A.

In particular, the Partnership Agreement says:

> All Fund profits and losses will be determined at the completion of each trading
> campaign. These profits will be allocated as to the ratio of each partner's capital
> account to the Fund's total capital. Thereafter, 25% of the net profit of each
> limited partner shall be payable and distributable to the General Partner. ….
>
> No partner shall be entitled to any salary, but the General Partner shall receive the
> right to draw expenses consistent with prudent and sound management of the
> trading activities, such expenses being charged against his share.

*See id.* at §§ 5.14, 6.06. The Partnership Agreement does not otherwise limit how Mr. Trabulse

can spend the 25% amount or designate how that amount must be split between expenses and

compensation. *See id.* In other words, under the Partnership Agreement, Mr. Trabulse's duty to

the Fund is *not* defined in terms of **what** he spends the money on, but is defined in terms of **how**

**much** he spends. Thus, Mr. Trabulse's only obligation to the Fund with respect to withdrawing

money is not to withdraw more than 25% of the Fund's profits for the combination of business

expenses and personal compensation. Moreover, under the Partnership Agreement, Mr. Trabulse

had no obligation to keep Fund expenses separate and distinct from his personal compensation.

*See id.* Indeed because the Partnership Agreement **requires** Mr. Trabulse to pay Fund expenses

out of his personal compensation, such a separation is impossible.[6] *Id.* § 6.06. Thus, all of the

SEC's evidence about the *way* Mr. Trabulse allegedly spent money is irrelevant; the question is

whether Mr. Trabulse has ever withdrawn more than 25% of the Fund's profits. On that critical

question, however, *the SEC has introduced no evidence whatsoever*.

Because the SEC has introduced **no** evidence to establish that Mr. Trabulse breached his

obligation to the Fund by withdrawing more than 25% of the Fund's profits, the SEC literally has

---

[6] For this reason, the opinion of the SEC's "expert" – Mr. Fong – that it is customary in the
hedge fund industry to separate business and personal expenses is simply irrelevant. Fong Decl.
¶ 8. Although the Fahey Fund's organizational structure is unusual, there is nothing improper
about it. Indeed, the structure perfectly aligns the interests of the manager with the interests of
the investors in so far as both have an interest in running the Fund as efficiently as possible. It
also simplifies life for the investors, who do not have to keep track of the true costs of various

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C-07-4975 WHA

1  no factual basis for its claim that Mr. Trabulse previously violated the securities laws by

2  misappropriating amounts from the Fund. As such, it has no basis to seek an injunction based on

3  its claim that Mr. Trabulse previously violated § 206 of the Advisers Act.

4  **C.    The SEC cannot establish the likelihood of future violations of the securities laws.**

5      Even if the SEC could show a past violation of the securities laws—which it cannot—its

6  request for relief would still be meritless. The SEC cannot show that *future* violations of the

7  securities laws are highly likely unless the Court grants the SEC's additionally requested relief;

8  this failure is fatal to the SEC's claims. The parties' existing stipulation and the Court's existing

9  order thereon *already* makes future securities law violations virtually impossible.

10     The SEC is only entitled to relief on its Exchange Act claims if it can show that there is a

11  risk that Mr. Trabulse will make future misrepresentations in connection with the offer or sale of

12  securities. *See SEC v. Phan*, 500 F.3d 895, 907-08, 2007 WL 2429365, at *8 (*quoting SEC v.

13  Dain Rauscher, Inc*., 254 F.3d 852, 856 (9th Cir. 2001)) (emphasis added).[7]  Similarly, in order

14  to obtain an injunction based on its Investment Advisers Act claim, the SEC must establish that

15  there is a likelihood that Mr. Trabulse will breach his duty to the Fund itself (*i.e*., withdraw

16  excess amounts in the future). *See Cavanagh*, 155 F.3d at 132, 135; *Goldstein*, 451 F.3d at 881.

17     Here, the Parties existing stipulation leaves virtually no risk that Mr. Trabulse will violate

18  any of these statutes. Specifically, there is no risk that he will make future misrepresentations in

19  connection with the offer or sale of securities because **he has already agreed not to offer or  sell**

20  **securities at all.**  *See* Trabulse Stip. §§ II, III. This includes Mr. Trabulse's agreement that he

21  will not "mak[e] a payment, transfer or distribution, to any people who have invested in and/or

22  purchased securities from" the Fund" and will not "accept[] any investments from any current or

23  prospective Investors" *Id.,* at §§ 2, 3. The SEC's request for an injunction on these claims is

24  moot because any such violations are *already* prohibited; there is, by definition, no risk of future

25  violations.

26  ─────────────────────────────

fees and commissions.

27  [7] In the context of a hedge fund, the requirement that the challenged conduct involve the
purchase or sale of a security is met when the conduct involves the purchase or redemption of an

28  interest in the fund itself. *See SEC v. Edwards*, 540 U.S. 389, 393 (2004).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C-07-4975 WHA

1    Similarly, because the stipulation and order *requires* Mr. Trabulse to give the SEC a

2    *monthly* report on all money that is transferred out of the Fund, there is virtually no risk that

3    money will "disappear."  Indeed, if the SEC were concerned about outright theft, it would not

4    agree (as it has) that Mr. Trabulse should remain in charge of managing the investor's money

5    during the pending litigation.

6    Nor can the SEC claim that it has shown that if the Fund's money is spent on a legal

7    defense the result is likely to be a violation of the Investment Advisers Act.  The SEC's motion

8    claims that it is "necessary to prevent [Mr.] Trabulse from making any distributions to himself"

9    because "any distribution by [Mr.] Trabulse at this point is inherently suspect, as there can be no

10   assurance that Trabulse is entitled any amount he may describe as 'his' share."  Motion at 17:16-

11   19.  But as the Court can see—even from the SEC's language—this is *pure* speculation.  As

12   discussed above, the SEC has made *no* effort to prove what Mr. Trabulse has withdrawn, *no*

13   effort to quantify the Fund's profits, *no* effort to determine what the Fund is likely to earn during

14   the litigation and *no* effort to evaluate the impact of the Fund paying its legal bills.  *See* Motion

15   at 13.  In light of the onerous burdens these broad injunctions would impose on defendants

16   (including denying them the right to defend this action), the SEC's failure to produce this

17   evidence is fatal to its request for preliminary relief.  *See Unifund SAL,* 910 F.2d at 1039 (noting

18   that the SEC's obligation "to make a more persuasive showing of its entitlement to a preliminary

19   injunction the more onerous are the burdens of the injunction it seeks.").

20   **D.    The Court should not prevent the Fund from defending itself**

21   The SEC's request to prevent the Fund from defending itself or Mr. Trabulse is

22   disfavored under the law – and for good reason.  The SEC cannot prevail on this request unless it

23   can show that it is absolutely necessary to prevent a future violation of the securities laws – a

24   *higher* standard than is required to obtain a more pedestrian preliminary injunction.  But the SEC

25   cannot establish that the Fund's legal defense is in any way improper, and it is simply guessing

26   that the relief it seeks will prevent such a violation. The SEC has introduced literally no evidence

27   supporting its claim.

28   The Fund has an interest in defending its employees and agents, including its general

10

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C-07-4975 WHA

1    partner, without the Court assuming the alleged wrongdoing prior to reaching judgment.[8]  *See*

2    *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987) ("[T]his suit was

3    brought to establish the defendants' wrongdoing; the court cannot assume the wrongdoing before

4    judgment in order to remove the defendants' ability to defend themselves. The basis of our

5    adversary system is threatened when one party gains control of the other party's defense . . . ").

6    As Mr. Trabulse and the Fund's alleged liability has not yet been proven, they should not be

7    prevented from defending themselves.  *See U.S. v. Payment Processing Ctr., LLC.*, 439 F. Supp.

8    2d 435, 440 (E.D. Pa. 2006) ("Releasing restrained funds to pay attorney's fees is premised on

9    the fact that wrongdoing is not yet proven when the fee application is made.").

10        Moreover, this Court's central concern should be the fairness of the proceedings, and a

11    fair result cannot be reached if Mr. Trabulse and the Fund cannot retain counsel in this complex

12    legal matter.  *See SEC v. Dowdell*, 175 F. Supp. 2d 850, 856 (W.D. Va. 2001) ("This court's

13    central concern is the fairness of the proceedings. The court does not believe that it could achieve

14    a fair result at the preliminary injunction hearing were it to deny defendants the ability to retain

15    counsel. This is a complex legal matter, and lawyers are essential to the presentation of issues

16    related to it.").  Indeed, the right to counsel is so important that courts have allowed even frozen

17    funds to be used to fund a defense. *See FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 575-76 (7th

18    Cir. 1989) (allowing defendant to fund attorneys fees from frozen assets).  Where, as here, the

---

[8] The SEC apparently believes that it can prevent the Fund from funding its defense because the Fund is only a "relief defendant" which is not a real party to this action.  *See* SEC's Memorandum in Support of its Motion for Preliminary Injunction ("Motion") at 3-4.  The law is clear, however, that the entities that make up the Fund are *actual* defendants in this action because they have a claim to the property in dispute. *SEC v. Colello*, 139 F.3d 674, 676, 677 (9th Cir. 1998) (holding that nominal defendants can be named in SEC actions but limiting the definition of such defendants to those who simply "hold[] the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute" and who "lack…a legitimate claim to the funds").  *Id.* at 676 (*citing Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1137 (W.D. Mich. 1996) (Plaintiffs cannot name parties as nominal defendants "without a showing that they possess illegally obtained profits without a legitimate claim to them.")).  Here, it is undeniable that the Fund has an interest in the property at issue because the SEC is trying to recover funds that make up the Fund's working capital.  *See SEC v. Ross*, --- F.3d ----, 2007 WL 2983707, at *8 (9th Cir. Oct. 15, 2007) (defining relief defendants as those who "are in possession of funds to which they have no rightful claim.").  Thus, given that the Fund has an interest in the property at issue, and a rightful claim to it, and given that the SEC has never attempted to show otherwise, the Fund defendants must be treated as real parties in interest.  These parties cannot be denied a right to defend themselves.

---

11

1    Fund continues to operate, the ability to fund a defense is even more appropriate.

2    Additionally, to the extent the SEC seeks to use any of these injunctions to deny the Fund

3    from defending itself, or its General Partner, in this litigation, it is worth noting that the SEC has

4    already stipulated that Mr. Trabulse and the Fund should be permitted to pay the Fund's

5    "reasonable business expenses" during the litigation.  *See* Trabulse Stip. § VIII.  Through this

6    stipulation, the SEC has effectively admitted that Mr. Trabulse **can** spend money from the Fund

7    without running afoul of his duty to the Fund or violating securities laws.  Thus, given the

8    privileged status of the right to counsel in our legal system, the SEC should not now be allowed

9    to impose any broader, and unjust, limitations on how the Fund spends its money.[9]

10    For these reasons, the SEC's request that the Court deny the Fund, and Mr. Trabulse, the

11    right to fund their defense must be rejected.

12    However, as discussed in more detail in below, Mr. Trabulse wants the Court to be

13    assured that the Fund is being run completely above-board during the litigation.  Thus, he is

14    prepared to submit to (and hereby proposes) very strict limitations on how he spends the Fund's

15    capital during the litigation.  These restrictions should help assuage any such concerns while also

16    allowing the Fund, and Mr. Trabulse, to defend themselves in this litigation and allowing Mr.

17    Trabulse to receive minimal compensation for the Fund-related work he will do during the

18    course of this litigation.  All he asks in return is that he be permitted to defend himself.

19    **E.    The SEC's demand for expedited discovery is untethered to any claim of past or future harm.**

20    Finally, the SEC's request for expedited discovery has no logical connection to

21    preventing future violations of the securities laws.  The SEC, with its broad investigative powers,

22    has already taken months worth of discovery, including dozens of depositions and collecting

23    thousands of pages of documents from both defendants and third parties.  Under these

24    circumstances, its claim that discovery must be *expedited* is unsupportable.

25

26    [9] Given that the SEC agrees that Mr. Trabulse will continue to manage the Fund during the course of this litigation, it is also unfair and unjust to deprive him of the right to all compensation

27    for any Fund work that he will do in the future.  *See* Roberts Decl. ¶ 6.  Thus, as detailed further below, Mr. Trabulse proposes that the Court allow him to withdraw $25,000 per month from the

28    Fund to cover Fund expenses and his living expenses.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C-07-4975 WHA

1    The SEC has requested four kinds of so-called "ancillary" relief: (1) a requirement that

2    Mr. Trabulse conduct an expert "accounting" and submit a report on that accounting to the SEC

3    immediately; (2) expedited discovery "including depositions and documents from the defendant,

4    the relief defendants and other working with them"; (3) an order preserving documents and (4)

5    the appointment of a monitor, paid for by defendants, who will, effectively, conduct expert

6    discovery for the SEC, including internal interviews of defendants' associates.  *See* Proposed

7    Order §§ IV, V, VI, VII.  Before granting such relief, the Court must consider "the disadvantages

8    and possible deleterious effect[s]" of granting it, and weigh those effects "against the

9    considerations indicating the need for such relief."   *SEC v. Bowler*, 427 F.2d 190, 198 (4th Cir.

10   1970).  Here, the deleterious effects of granting such relief far outweigh any of the SEC's

11   claimed needs for such relief.  These requests should all be denied.

12       ***First***, the SEC's request that Mr. Trabulse prepare an expert report for the SEC (covering

13   broad 8 categories of information) would do nothing to prevent any future violation of the

14   securities laws, but would impose large burdens upon defendants.  *See* Proposed Order § VII.

15       The SEC cannot even bring itself to argue that it "needs" this relief in order to make any

16   potential violation of the Securities Laws less likely because, of course, it would not.  *See*

17   Motion at 18.  Instead, the only "need" claimed by the SEC is that the report "will assist the

18   Court to determine the scope of the defendant's fraudulent scheme …. [and] to know the value is

19   of their respective share[s]."  *Id.* at 18.  But the value of the investors' shares is, of course, the

20   key contested issue in this case.  The fact that an issue is contested cannot be a basis for ordering

21   special relief.  This is especially true given that it is clear from the face of the SEC's proposed

22   injunctive order that requiring defendants to provide, and pay for, an early expert report on

23   numerous topics would further disrupt the Fund's operations and impose a significant financial

24   burden on the defendants.  *See* Proposed Order § VII.

25       The report that the SEC seeks sounds like nothing more than a litigation-related expert

26   report.  The SEC has cited no law, and made no rational argument as to why the defendants

27   should be required to prepare an expert report for the plaintiff's use at the outset of the discovery

28   process.  Every plaintiff suing over whether a defendant's accounting was correct would, no

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C-07-4975 WHA

1    doubt, like to require that defendant to prepare an expert accounting report for its use at the

2    outset of the litigation.  But the mere fact that the SEC (or any other litigant) wants such a report

3    is not a ground for requiring the defense to create it.

4      *Second*, the SEC's "ancillary" request for numerous types of expedited discovery,

5    including expedited depositions, interrogatories, document production and requests for

6    admission, is equally flawed.  *See* Proposed Order § IV.  The SEC's only purported "need" for

7    seeking such material is that "to date, the Commission has not obtained from Trabulse or the

8    relief defendants documentation or testimony that substantiates the fund's purported value."

9    Motion at 18.  But this is just slight of hand – it means nothing more than that the SEC disputes

10   what Trabulse has said about the Fund's value and thinks that he has not proven it to the SEC's

11   satisfaction.  Of course he hasn't – if he had the parties would not be in litigation.  But the mere

12   fact that there is a dispute about the value of the Fund does not mean that the normal discovery

13   process (which is, after all, designed for the express purposes of resolving factual disputes) is

14   inadequate.  Moreover, the Fund **has** produced documents to the SEC—thousands upon

15   thousands of pages—in response to its subpoenas.  *See*  Roberts Decl. ¶ 9.  Indeed, as the Court

16   can see from the correspondence submitted in connection with the defendants' motion to dismiss,

17   the SEC's attorneys have not even read much of the important material they were given.  *See*

18   Roberts Decl., Ex. B.

19     This request is particularly inappropriate given the SEC's extensive powers that it can—

20   and has—used in connection with this matter.  Indeed, one look at the massive stack of paper

21   filed in support of the SEC's motion refutes the SEC's claim that it is lacking for information.

22   The SEC spent more than nine months taking discovery, including obtaining documents from the

23   defendants and from numerous third parties, and taking testimony from more than 30 witnesses.

24   *See* Roberts Decl. ¶ 8. Under those circumstances, for the SEC to argue that it needs expedited

25   discovery is a purely tactical move designed to further extend its head start.

26     *Third*, the SEC's request for an order preserving documents is unnecessary.  *See*

27   Proposed Order § V.  The Court has already issued such an order as part of its standing orders.

28   *See* Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C-07-4975 WHA

1   before Judge William Alsup [Docket No. 9], at ¶ 4 (ordering that "[a]s soon as a party has notice

2   of this order, . . . the party shall take such affirmative steps as are necessary to preserve evidence

3   related to the issues presented by the action . . . ."). The defendants are already bound by that

4   order, and no other order is necessary. This is especially true given that there is no allegation of

5   missing or destroyed documents nor any other discovery misconduct.

6        **Fourth**, the SEC's request for the appointment of a monitor, to be paid for by the Fund, is

7   also without justification. *See* Proposed Order § VI. This is especially true given the broad

8   powers the SEC wants the monitor to have, including the power to have full access to all

9   documents, the power to interview, and obtain information from, defendants and anyone

10  "associated" with defendants, the power to contact and interview all investors and the power to

11  hire whoever the monitor wants to help in such tasks. *Id.* The SEC's only alleged need for this

12  request is that it wants "to assure that all efforts are made to preserve and protect the remaining

13  investor assets." Motion at 19. But the SEC has not shown that Mr. Trabulse has done *anything*

14  that is not in keeping with preserving the investors assets—certainly the SEC has not shown that

15  Mr. Trabulse has made unwise investments nor would such a showing provide a basis for the

16  SEC's request. Moreover, the burdens imposed on the Fund here are enormous – on its face, the

17  SEC's proposed order requires the Fund to pay for the monitor, pay for any, virtually unlimited

18  work the monitor decides to conduct and pay for any employees the monitor wants to hire, in

19  addition to facing the disruption of having the monitor act upon its broad powers in however it

20  desires. *See* Proposed Order § VI and § VI (F), (G), (H). Again, although every plaintiff in

21  every case would love to have the Court appoint an expert inquisitor to circumvent the discovery

22  process and to ease the amount of work required to build a case, the SEC has offered no

23  justification that merits imposing such burdens on the defendants.

24       The only *possible* reasons to appoint a monitor is to prevent Mr. Trabulse from violating

25  his prior agreement and the Court's existing order that the Fund will not take in additional

26  money, cash out investors and the like. *See* Trabulse Stip. But the Court is very well able to

27  enforce its own orders without giving the SEC a resident expert inside the defendants'

28  operation—especially given the fact that Mr. Trabulse has stipulated (and been ordered) to

15

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C-07-4975 WHA

1  provide **monthly** reports on all money taken from any Fund account.  Thus, as a practical matter,

2  Mr. Trabulse has already agreed to and been ordered to undertake measures that will allow the

3  SEC and the Court to "monitor" his compliance with the Court's orders.  The SEC's request for

4  additional "monitoring" relief should be denied.

5  **F.    The Defendants' Alternative Proposal Should Be Adopted Instead of the SEC's
        Requested Injunctions.**

6

7        Since the subject of preliminary relief has come up, the defense has attempted to ensure

8  that it meets any possible concerns the Court might have about preserving the status quo during

9  the pending litigation.  But the one thing that neither the Fund nor Mr. Trabulse can agree to is to

10  give up the ability to mount a legal defense to the SEC's suit.

11        As a compromise, however, the defendants proposed the following to the SEC's counsel

12  during their meet and confer sessions about Mr. Trabulse's existing stipulation, which proposal

13  they make again to the Court.  Specifically, the defense proposes that the Court order that, until

14  further order of the Court, the **only** money that can be withdrawn from the fund is: (a) an amount

15  equal to the fees and costs incurred by undersigned counsel in the defense of the litigation and

16  (b) $25,000 per month, from which Mr. Trabulse will pay for all other Fund-related expenses and

17  some living expenses.  This proposal has several advantages.

18        First, this proposal will ensure that a minimal amount of money is withdrawn from the

19  Fund each month while the parties litigate the issues of how much the Fund has appreciated and

20  how much of that appreciation Mr. Trabulse has spent on the combination of business and

21  personal expenses.  Indeed, this proposal is far more restrictive than the one to which the SEC

22  *stipulated* in that it caps what can be spent from the Fund *for any purpose*.  In the parties'

23  stipulation, in contrast, *any* amount can be spent from the Fund, so long as it goes to reasonable

24  business expenses.

25        Second, this proposal has the substantial advantage of most closely tracking the Fund's

26  Partnership Agreement.  As discussed above, under that agreement, it makes no difference *how*

27  Mr. Trabulse spends the Fund's money and instead focuses on *how much* is spent.  The defense's

28  proposal tracks that structure in terms of focusing on the amount and is therefore closer to what

406543.01

1    the Fund's investors signed on for.

2         Third, and perhaps most importantly, as the SEC has recognized, it is in the investors'

3    best interest to have Mr. Trabulse making investment decisions and managing the Fund's money

4    during the litigation.  This is true, at least in part, because – like many hedge funds – the Fund

5    has numerous investment positions that can only be protected and cost-effectively unwound by

6    someone who fully understands the investment strategy behind them.  The only person who fully

7    understands that strategy is the man who created it—*i.e.* Mr. Trabulse.  But Mr. Trabulse can

8    only remain at the helm of the Fund if he is permitted to use the Fund's capital to defend the

9    Fund and himself, and if he is permitted to withdraw the small amount of money he needs to pay

10   some living expenses.  If the Court does *not* allow Mr. Trabulse to do this, it makes no sense for

11   him to remain at the Fund.  Instead, he will be forced to simply walk away—taking a job

12   somewhere else, so that he can keep the heat on and make money to put towards his legal

13   defense.  This will, of course, more than likely result in enormous harm to the investors'

14   capital—because the Fund will have to be unwound by an outsider who will be both exceedingly

15   expensive, and inefficient.  Thus, the *best* way to protect the investor's interests is to keep Mr.

16   Trabulse on to manage their money while making sure that he takes only what is truly necessary

17   while the valuation disputes are resolved.

18        Finally, this is also the fairest proposition.  The SEC wants Mr. Trabulse to keep

19   managing the Fund and to keep working on behalf of the investors.  Roberts Decl. ¶ 6.  But, in

20   the same breath, the SEC wants him to do it without *any* compensation, and without defending

21   himself in the litigation.  Thus, effectively, the SEC is trying to have its cake and eat it too – to

22   have the benefit of Mr. Trabulse's expertise and management services on behalf of the investors,

23   while relieving the investors of any obligation to pay for those services.  The defendants'

24   proposal, in contrast, seeks to ensure that the greatest possible value is preserved for the

25   investors and that Mr. Trabulse and the Fund received basic procedural fairness as well.

### IV.    Conclusion

26

27        Despite the deficiencies in its theories and the defendants' willingness to preserve the

28   status quo during the litigation, the SEC has asked the Court to (essentially) declare it the victor

406543.01

1   in this litigation before the process even starts.  Where, as here, the SEC has provided no

2   justification whatsoever for taking such a radical approach, the Court should deny its request.

3

4   Dated:  November 15, 2007                          KEKER & VAN NEST, LLP

5

6

7                                          By:   /s/ Clement S. Roberts
                                                CLEMENT S. ROBERTS
8                                               Attorneys for Defendants ALEXANDER
                                                JAMES TRABULSE, FAHEY FUND,
9                                               L.P., FAHEY FINANCIAL GROUP, INC.,
                                                INTERNATIONAL TRADE & DATA,
10                                              and ITD TRADING

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C-07-4975 WHA