# EXHIBIT A



# Fahey Fund

Profiting from Fundamental and Technical Imbalances in World Markets

*268 Bush Street, Suite 4232 · San Francisco, CA 94104 · 800- 880-6003*

## Fahey Fund (*Limited*)
## Partnership Agreement
*Rev Jan 2002*

**FOIA CONFIDENTIAL
TREATMENT REQUESTED**

**FAHEY-SEC- 000949**

*Dedication and Acknowledgment*

The **Fahey Fund** is so named as an outward sign of respect and affection for the memory of Fr. Denis Fahey, C. S. Sp., (1883-1954). Father Fahey, was born in Kilmore, Golden in County Tipperary, Ireland. He was perhaps the first person in the early 20th century to investigate and comprehend both the effects of modern central banking and the gold standard, and to elucidate their flaws and dangers. His humble sounding book, The Church and Farming, is a classic document on how both inorganic fertilizers undermine productivity and health, and how speculative farming and forestry has led to the wholesale and rapid destruction of the soil and the world's forests. A full professor of Philosophy and Church History, he was fluent in German, French, Italian, as well as Celtic and of course, Latin and Greek. The Fund hopes to be guided by such an order of wisdom and insight as Fr. Fahey.

-1-



FOIA CONFIDENTIAL
TREATMENT REQUEST

FAHEY-SEC- 000950

FAHEY FUND
PARTNERSHIP AGREEMENT
A California Limited Partnership

This Partnership Agreement made on April 1, 1997, and revised Apr 1, 2002 by Alexander James Trabulse, replacing prior agreements under this name and made with any future signatory that is hereafter admitted to the partnership pursuant to the terms of this Agreement, hereinafter referred to as "partners."

## RECITALS

*In consideration of the mutual covenants contained in this instrument, the partners agree to form a limited partnership (hereinafter referred to as "partnership") pursuant to the California Limited Partnership Act, for the purposes and under the terms, provisions and conditions set forth below.*

IT IS *THEREFORE AGREED:*

## ARTICLE I. *NAME AND PLACE OF BUSINESS*

Section 1.01 Name of Business. The partnership and activities shall be conducted under the name of "The Fahey Fund" in the State of California and under variations of this name which may be necessary to comply with the laws of other states in which the partnership transacts business and makes investments. PLEASE NOTE THAT IN THE REMAINDER OF THIS AGREEMENT, the phrase(s) "limited partnership," or "partnership" will be referred to as "the Fund," except where technical legal language is required.

Section 1.02. Place of Business. The Fund's principal place of business shall be located at 268 Bush Street, Suite 4232, San Francisco, CA 94104 or at such other place as may be determined from time to time by the General Partner or by the giving of written notice to each limited partner at least ten (10) days before such a change.

## ARTICLE II. FUND PURPOSES

Section 2.01. Primary Purpose. The Fund's primary purpose shall be to use publicly listed opportunities, natural resources, and any other investment of a unique long-term character, to gain consistent compound rates of return. The Fund will utilize both its proprietary technical trading system (the "RED/GREEN System") along with classical Fundamental economic analysis to identify and time these opportunities.

Section 2.02. Secondary Purpose. The Fund's secondary purpose shall be to provide a vehicle whereby qualified trustees may invest into the Fund utilizing their Self Directed IRA or Keogh, 401(k), Family and other Trusts, etc., intending to defer capital gains and consequent tax exposure in profitable years. As of January 01, 2000, all partners must be tax deferred, Trusts, non- or not for- profit entities, or charitable organizations which incur no annual tax liability, except in certain cases. The General Partner in unusual cases may temporarily waive this requirement.

## ARTICLE III. *FUND TERM*

Section 3.01 Fund Continuation. The Fund shall be in operation until Dec. 31, 2010. When this term expires, final results may be distributed to the partners, along with the option to renew their respective investments, at, above, or below original levels. If the Fund is in fact renewed, it will be for the purposes as stated in Article II, with relevant modifications as needed. Such renewals shall then be year-to-year.



FOIA CONFIDENTIAL
TREATMENT REQUESTE

FAHEY-SEC- 000951

**ARTICLE IV. *MEMBERS OF THE FUND***

Section 4.01. General Partner. The General Partner shall be Alexander James Trabulse, 268 Bush Street, Suite 4232, San Francisco, CA 94104.

Section 4.02. Limited General Partner. The limited General Partner shall be: Easter Trabulse, 268 Bush Street, Suite 4232, San Francisco, CA 94104.

Section 4.03. Limited Partners.

Section 4.04 Admission of Additional Partners. Subject to any other provision of this Agreement, after the initial formation of this Fund, other persons, partnerships, or business entities may be admitted as limited partners only with the consent of the General Partner, not to exceed ninety-nine (99) total members.

**ARTICLE V. CONTRIBUTIONS TO THE PARTNERSHIP**

Section 5.01. Initial Contributions. The General Partner agrees to provide all resources for trading of this type: 1) the RED/GREEN technical system; 2) his expertise and experience with listed markets; and, 3) all record keeping, brokerage, computation and notification of partners. The General Partner will 1) use his best efforts to both make profits; 2) cease trading if capital declines to under 70% of the original capital or the January 1 capital account and notify partners of this condition, giving partners the option to continue in the Fund; and, 3) promote the Fund, to derive both income and new capital.

Section 5.02. Initial Contribution of Limited General Partner. The limited General Partner will provide services to the Fund in management of the business, and especially in case of wind-down or closing the Fund.

Section 5.03. Initial Contribution of Limited Partners. The minimum initial contribution of Limited Partners shall be $100,000. Increments will be calculated on units of $10,000. New Limited Partners may, upon the judgment of the General Partner contribute less than the initial amount. This will be evaluated on a case-by-case basis, subject to limitations.

The Fund reserves the right to waive minimum requirements for friends and family and charitable organizations. The Fund must be closed, by law, non-exempt partners (including partnerships as partners) reaches 99.

Section 5.04. Additional Permitted Capital Contributions. In addition to his initial contributions each limited partner or the General Partner may voluntarily make additional contributions to the capital of the Fund subject to approval by the General Partner. Such additional contributions, whether the result of direct cash payments or from accumulations of profits at the time of normal distributions, shall result in the profit-loss share of the limited partners being recomputed on a *pro rata* basis for each limited partner's new total capital contribution. In no event shall the profit-loss share of the General Partner be affected by the contribution of additional capital by a limited partner.

Section 5.05. Limitations and Additional Capital Contributions. No limited partner will be required to contribute to the capital of the Fund or to its creditors any additional money or property. The liabilities of the limited partners are limited to the amount of their initial capital contribution as set forth in this agreement and any additional voluntary contributions which may be made.

Section 5.06. Interest on Capital Contributions. No partner shall receive any interest on his contributions to the Fund capital, unless such interest is earned in the nature of the various business activities. However, all non-utilized capital will normally draw interest, which shall be used to defray Fund expenses. This may be waived by the General Partner.

Section 5.07. Contributions Secured. All partners grant to the General Partner liens on their interests in the Fund to secure the payment of contributions and the performance of obligations required under this agreement.

-3-



FOIA CONFIDENTIAL
TREATMENT REQUESTEI

**FAHEY-SEC- 000952**

Section 5.08. **Withdrawal and The Return of Capital**. No partner may withdraw any portion of the capital of the Fund and no partner, general or limited, shall be entitled to the return of his contribution except as specified hereinafter. Such a withdrawal will be made only after written notice to the General Partner. Ninety days (90) after receipt of such notice by the General Partner, the Fund shall pay such withdrawing limited partner an amount equal to said partner's capital account plus or minus all accrued profits or losses attributable to said partner as of the date of distribution. In emergencies, the funds may be returned as soon as possible to a partner. If, in the General Partner's absolute discretion the withdrawal of any limited partner or partners would cause the Fund to be left with inadequate capital, the General Partner may elect to return the capital contributions plus or minus all accrued profits or losses to all the limited partners and declare the partnership terminated. In the event of the withdrawal of any limited partner, the portion of the future Fund profits and losses in open positions, if any, shall become the property of the General Partner.

Section 5.09. **Profits and Losses**. The limited partners shall not be liable or subject to any obligations, losses, debts, or liabilities of the Fund in excess of the amount in each of their capital accounts. Any losses of the Fund in excess of such amount shall be borne by the General Partner only, and not by the limited General Partner. However, any capital losses that are suffered by the Fund shall be deemed to be *pro rata* capital losses to each limited partner and charged toe their accounts respectively.

Section 5.10 **Method of Tax Accounting for Tax Purposes**. The partnership shall be kept on a cash basis with the fiscal year concurrent with the calendar year.

Section 5.11. **Loans to Fund**. No partner may loan or advance money to the Fund without the unanimous written consent of the partners. Any loan by a partner to the Fund shall be separately entered in the Fund books as a loan to the Fund, shall bear interest at a rate agreed upon by the General Partner, and shall be evidenced by a promissory note delivered to the lending partner and executed in the name of the Fund by the remaining partners.

Section 5.12. **Books of Account**. The partnership shall comply with all Federal, State and local regulatory and reporting requirements. All filings are confidential.

Section 5.13 **Capital Accounts**. Each partner shall have a separate capital account maintained. Initially, the capital account of each limited partner shall have a balance equal to the amount of his capital contribution to the partnership. If profits are generated by the partnership, or net losses suffered, allocation will be as set forth below.

Section 5.14. **Division and Distribution of Profits and Losses**. All Fund profits and losses will be determined at the completion of each trading campaign. These profits will be allocated as to the ratio of each partner's capital account to the Fund's total capital. Thereafter, 25% of the net profit of each limited partner shall be payable and distributable to the General Partner. Partners with under $50,000 shall pay a 20% distribution. Losses shall be charged against the General Partner up to his share of the profits from the beginning of the three fiscal years before the partners losses are calculated. Thereafter, losses shall be charged to each partner on a *pro rata* basis to their capital accounts. *See Art V, Sect. 5:01*

Section 5.15. **Tax statements**. The books of the Fund shall be closed and balanced at the end of each calendar year. Statements will be delivered to each partner within forty-five (45) days after the expiration of said fiscal year. Each partner's share of profits and/or losses, if reportable, will be issued a Federal IRS 1065 K-1. Quarterly statements will be issued to each partner, within 30 (thirty) days following the end of the Quarter, showing changes in each account. Even though accounts are normally tax deferred, no K-1 is necessary, unless the account has a mandatory distribution requirement, *e.g.*, an IRA at age 59 ¾.

Section 5.16 **Definition Of Profits and Losses**. The terms "net profits" and "net losses" used in these Articles mean the net profits and net losses of the Fund as determined by generally accepted accounting principles for each accounting period provided for in these articles.

-4-



**FOIA CONFIDENTIAL**
**TREATMENT REQUESTE**

**FAHEY-SEC- 000953**

Section 5.17. **Bank Accounts.** All Fund funds not otherwise invested shall be deposited in accounts in the name of the Fund at such a bank(s) as selected by the General Partner. All withdrawals from any such accounts(s) may be made only by check or other written instrument, wire, or electronic transfer and signed by the General Partner. In the absence, incapacity or death of the General Partner, the limited General Partner shall have the duty to issue withdrawals, or on the written extension of authority by the General Partner to the limited General Partner, beyond the proscribed duties of Article VI.

## ARTICLE VI. *RIGHTS, POWERS, DUTIES AND RESTRICTIONS OF PARTNERS*

Section 6.01. **General Partner's Exclusive Right to Manage.** The General Partner shall have full and exclusive charge and control of management, conduct, and operation of the Fund in all respects and in all matters. Duties delegated to the limited General Partner shall be subject to alteration, elimination or redefinition by the General Partner and be appended to these articles in writing at such time as necessary.

Section 6.02. **Devotion of Time to Fund.** The General Partner shall devote such time to the Fund as shall be necessary in his absolute discretion to conduct the business of the Fund in an efficient manner.

Section 6.03. **Restriction on the General Partner.** Except as otherwise expressly provided in this Agreement, the General Partner shall have all the rights and powers of a partner in a Fund without limited partners and shall be subject to the restriction imposed on the General Partners by the California Revised Limited Fund Act, or imposed on a partner in a Fund without limited partners.

Section 6.04. **Limited General Partner Duties and Limits.** The limited General Partner shall in no way manage, decide, or have control in the decision-making of the Fund, except in an executive capacity directed by the General Partner. The limited General Partner shall be able to issue checks in payment for Fund expenses against a valid bill, invoice, or for other legitimate Fund expenses; he shall be responsible for maintaining the accounting documents of the Fund. In the case of the incapacity, injury, insanity, debilitation or death of the General Partner, the limited General Partner shall assume the duties of the General Partner to dissolve or to suspend operation of the Fund, to distribute assets and/or liabilities to the limited partners; and take a management position of the General Partner's account until the General Partner resumes his duties. Notification of the limited partners will be done by the limited General Partner that a suspension or dissolution and distribution will be effected by a given date by which time all financial documents, assets, records, etc., will be available to all partners for final review. No notice of suspension or dissolution, however, will allow the limited General Partner the right to manage the Fund's business, except to facilitate liquidation.

Section 6.05. **Non-Participation in the Management by Limited Partner.** The limited partners shall contribute no services and shall take no part in, or interfere with, the management or control of Fund business. They shall have no right or authority to act or bind the Fund. In the event that a limited partner has the ability to provide services, such services shall be accepted only in the context of employment. The limited partner shall have no access to records of the Fund unless by special permission of the General Partner.

Section 6.06. **Salaries.** No partner shall be entitled to any salary, but the General Partner shall receive the right to draw expenses consistent with prudent and sound management of the trading activities, such expenses being charged against his share.

Section 6.07. **Voting Rights of Limited Partners.** Notwithstanding any other provision in this agreement, the limited partners are hereby given the right to vote on, or call a meeting of the partners. Each partner general and limited, shall have one (1) vote for every $100,000 of capital attributed to their account, based on an accounting taken for the previous quarter in which the vote is called. A majority of the partners representing a majority of the Fund interest must affirmatively agree on any proposal on the table, excepting the replacement of the General Partner, which shall require a two-thirds (2/3) vote.

-5-



FOIA CONFIDENTIAL
TREATMENT REQUEST

FAHEY-SEC- 000954

**Section 6.08. Fund Activities Not Exclusive**. Except as otherwise provided in this agreement, any of the partners, general or limited, may engage in or possess interests in other business ventures of every nature and description, independently or with others. Neither this Fund, nor the partners, shall have any rights by virtue of this agreement in and to such independent ventures or to the income or profits derived therefrom. Without limiting the generality of the foregoing, the General Partner is entitled to make independent investments with his own funds.

**Section 6.09. Risk**. It is understood by all limited partners that the business purpose of this Fund is to undertake the utilization of a trading system in a speculative environment, which could create a risk of capital loss. It is further understood that risk implies potential loss of capital. It is further understood that the General Partner is under no obligation to meet the standard of reasonable and prudent investment as if he were a trustee or other fiduciary. The General Partner is empowered to make any investment in derivative instruments, such as, but not constrained to, futures, precious metals, financial instruments, indexes, options, as well as listed stocks and their options and indexes, or any such like. Furthermore, if in the opinion of the General Partner, capital may be invested in other businesses or other trading systems. It is expressly understood that all the limited partners waive any claims against the General Partner for adopting any particularly high-risk investment strategy so long as the General Partner is not guilty of fraud or intentional misconduct.

## ARTICLE VII. *RESTRICTIONS ON TRANSFER*

**Section 7.01 Transfer of Interest**. Except as other wise noted in this agreement, no partner may sell, assign, hypothecate, encumber or otherwise transfer their Fund interest without the prior written consent the General Partner, and shall not pass title to any Fund interest in the absence of such consent. Any transfer prohibited under this section shall be void, and any attempt by a partner to dispose of a partnership interest in violation of this section shall constitute a material default under this agreement.

**Section 7.02. Assumption of Interest**. Any transferee who is a recipient of a partnership interest in accordance with the terms of this agreement agrees to be bound by all the terms and conditions of this agreement. No assignee or other transferee shall take title to a partnership interest without a written agreement to accept and assume the terms and conditions of this agreement. No assignee will be accepted if to do so would create more than 99 limited partners.

## ARTICLE VII. *TERMINATION OF THE FUND*

**Section 8.01. Termination by General Partner**. The General Partner may withdraw from the partnership at any time he deems such a decision appropriate.

**Section 8.02. Termination by a Limited General Partner**. The limited General Partner will be free to withdraw from the partnership upon the giving of ninety (90) days written notice to the General Partner.

**Section 8.03. Termination by a Limited Partner**. Each limited partner shall be free to withdraw from the partnership upon the giving of ninety (90) days written notice to the General Partner. If such termination is a legitimate emergency, withdrawals may be granted, provided such haste will not seriously injure the Fund capital position. The General Partner may terminate any limited partner at any time and liquidate the account as of the most recent reporting period. All funds will be sent immediately, unless the provisions of S.5:08 are invoked by the General Partner. This notification may be verbal or electronic, followed by a written notice.

**Section 8.04. Termination by Mutual Consent**. At any time during the term of this agreement, the Fund may be terminated by the mutual written consent of all parties subject to such conditions as may be imposed by such written consent.



FOIA CONFIDENTIAL
TREATMENT REQUESTED

FAHEY-SEC- 000955

**Section 8.05. Death or Bankruptcy of Limited Partner.** Should a limited partner die or be adjudged bankrupt by any court of competent jurisdiction, the remaining partners shall have an option to purchase the partnership interest of the limited partner by paying to the person legally entitled thereto within ninety (90) days after the date of such death or adjudication, the then-present book value of such interest as it appears on the partnership books on the date of such death or adjudication. If more than one (1) partner remains, each partner shall have the right to purchase such proportionate share of deceased or bankrupt limited partner's interest in the partnership as such remaining partner's interest in the profits of the partnership bears to the total interest in such profits of all other remaining general and limited partners, provided, however if any such remaining profits or losses are suffered by the partnership shall be deemed to be *pro rata* capital loss to each general and limited partner.

**Section 8.06. Death, Insanity or Insolvency of General Partner.** Upon the death, insanity or insolvency of the General Partner, the partnership shall be immediately be dissolved. Partnership assets shall be distributed as specified below. In this event, , the limited General Partner shall act as the Agent of the Partnership for the purpose of winding up the partnership affairs. Such agency shall under no circumstances increase the liability of any limited partners or of the limited General Partner beyond the amount previously invested by said limited, or limited General Partners in the partnership. Furthermore, the assets and the capital account of the General Partner shall revert to the Partnership until such time as the General Partner shall revert to competency.

**Section 8.07. Winding up of the Fund Business.** Upon termination of the Fund, for any reason, the General Partner shall wind up the affairs of the Fund, liquidate the Fund assets, and pay the debts of the Fund in the following order: (a) to creditors, including partners who are creditors, to the extent permitted, in satisfaction of the liabilities of the Fund other than liabilities for distribution to partners; (b) except as provided in this agreement, the partners and former partners in satisfaction of liabilities for distribution; and (c) the partners in accordance with any other rights which they have under this agreement. Thereafter, the General Partner shall file a Certificate of Dissolution of Limited Fund with the California Secretary of State's office.

## ARTICLE IX. *COMPLIANCE WITH THE LAW*

**Section 9.01. Certificate of Limited Partnership.** The General Partner shall execute acknowledge and file a Certificate of Limited Partnership with the California Secretary of State's office.

**Section 9.02 Power of Attorney.** The limited partners hereby appoint the General Partner as their attorney in fact, in their place, name and stead, to make, execute, acknowledge and file any documents necessary as advantageous by the partnership to complete.

**Section 9.03. Terms and Conditions.** The standard terms and conditions, if any, are attached hereto and incorporated herein by reference apply to the partnership agreement.



FOIA CONFIDENTIAL
TREATMENT REQUEST]

FAHEY-SEC- 000956