KEKER & VAN NEST, LLP
MICHAEL D. CELIO - #197998
CLEMENT S. ROBERTS - #209203
JO F. WEINGARTEN - #246224
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:     (415) 391-5400
Facsimile:      (415) 397-7188
Email: mcelio@kvn.com
       croberts@kvn.com
       jweingarten@kvn.com

Attorneys for Defendants
ALEXANDER JAMES TRABULSE,
FAHEY FUND, L.P., FAHEY FINANCIAL
GROUP, INC., INTERNATIONAL TRADE
& DATA, and ITD TRADING

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> ALEXANDER JAMES TRABULSE, <br><br> Defendant, <br><br> and <br><br> FAHEY FUND, L.P., FAHEY FINANCIAL GROUP, INC., INTERNATIONAL TRADE & DATA, and ITD TRADING, <br><br> Relief Defendants. | Case No. C-07-4975 WHA <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** <br><br> Date:        December 6, 2007 <br> Time:        8:00 a.m. <br> Courtroom: 9 <br> Judge:       Hon. William H. Alsup <br><br> Date Action Filed:    September 26, 2007 |

# I. Introduction

The SEC's opposition to the defendants' motion to dismiss cannot save the complaint. Much of the opposition is devoted to repeating (and occasionally supplementing) the complaint's allegations with greater emphasis and added invective. But fervent protestations cannot substitute for compliance with the demands of Rule 9(b). There are two basic flaws in the SEC's complaint that its opposition does not address and cannot cure.

First, the opposition neither addresses nor ameliorates the complaint's lack of specificity. For example, while the complaint generally accuses Mr. Trabulse of affirmatively misleading investors about the kind of assets in which the Fund would invest, the complaint never identifies a specific statement or names any individual to whom such a statement was supposedly made. If the complaint contained such a statement, the SEC would simply have pointed to the paragraph in which it was set forth. But because the SEC cannot do that—because no such paragraph exists—it instead attempts to morph its allegations that Mr. Trabulse made affirmative misstatements about the scope of the Fund's investments into allegations that Mr. Trabulse omitted information about that scope. But even for an "omission" claim the law requires that the SEC identify a specific affirmative statement that is rendered misleading as a result of the omission. To put it another way, an omission claim is actually *harder* to plead because it requires particularized allegations of two facts rather than just one: the identification of a particular statement *and* the omitted information that makes the statement misleading. As a matter of logic, the SEC's failure to identify a particular misleading statement necessarily implies that it has also failed to plead a cognizable omission.

Second, and perhaps more importantly, the complaint's legal theories are often illogical and internally inconsistent. For example, the SEC alleges that the Fund's quarterly reports were misleading because, when aggregated, they show a balance in excess of the contemporaneous balances in the Fund's bank and brokerage accounts. But as the defense has pointed out repeatedly, the SEC simply ignores the Fund's other assets—the very assets that the SEC claims the Fund failed to adequately disclose in those same reports. The SEC cannot have it both ways: either those assets are material—in which case the SEC may not simply ignore them—or the

assets are not material, in which case the SEC cannot claim that the Fund's alleged failure to disclose its investment in those assets is a material omission. Nor, as discussed in the opening motion and below, is this the only place where the SEC's pleadings simply fail as a matter of logic. Because the defense cannot be expected to answer a complaint with contradictory and nonsensical factual allegations, the complaint does not meet the requirements of Rule 9(b), and the SEC should be required to replead.

## II.     Argument

### A.     The SEC's first and second causes of action must be dismissed.

The SEC's first and second claims for relief each require the SEC to plead the same elements: "(1) a material misstatement or omission (2) in connection with the offer or sale of a security (3) by means of interstate commerce." *SEC v. Phan*, 500 F.3d 895, 907-08 (9th Cir. 2007) (internal quotations omitted).[1] As discussed below in more detail, nothing in the SEC's opposition can change the fact that the SEC has failed to satisfy its obligations under Federal Rule of Civil Procedure 9(b) with respect to *both* of the first two elements.

#### 1.     The SEC has not alleged specific misstatements or omissions, nor has it offered a factual basis to allege falsity.

The SEC's attempts to satisfy the requirements of pleading "a material misstatement or omission" by pointing to allegations in the complaint: (a) that the Fund's quarterly reports overstated the value of the fund; (b) that Trabulse made false statements to investors about the kind of assets in which the Fund would invest; and (c) that the quarterly reports omitted information about the kind of assets in which the Fund invested.[2] *See* Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opp.") at 11-12. As discussed below, the SEC has not met the requirements of Rule 9(b) with respect to *any* of these allegations.

---

[1] For reference, the first and second causes of action allege violations of Section 17(a) of the Securities Act [15 U.S.C. §77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)]; and Rule 10b-5 [17 C.F.R. § 240.10b-5]. *See* Complaint ("Complt.") ¶¶ 38-43.

[2] The SEC also claims that "[t]he Complaint further alleges that the statements were false because they … hid Trabulse's misappropriation of investor money," but the SEC offers *no* supporting citation and, in fact, the complaint contains no such allegation. Opp. at 12. In any event, even if it did contain such an allegation, as discussed in section II B, the SEC has no factual basis to assert, and therefore has not specifically alleged, that Trabulse misappropriated investor assets.

### a. The SEC has not identified specific statements in the quarterly reports.

The complaint fails to identify a specific statement in the quarterly reports or the accompanying newsletters that is alleged to be false. The SEC argues, instead, that it has done enough in alleging that the quarterly reports "bore no relationship to reality" and complains that it is not required to plead "every detail of every account statement sent to 100 separate investors at the end of each calendar quarter over a span of several years." Opp. at 11, n.7. Both of these arguments are misplaced.

The defense agrees that the SEC need not plead every detail of the account statements. But nothing about this proposition changes the fact that the SEC is required to identify the specific statements alleged to be false. *See Kaplan v. Rose,* 49 F.3d 1363, 1370 (9th Cir. 1994) ("The pleadings must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud."); *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (dismissing under Rule 9(b) where plaintiff "failed to identify any specific statements.") *cert. denied*, 516 U.S. 810 (1995). So, while the SEC need not plead *every* detail of the allegedly false statements, it has to plead enough to identify the specific statement alleged to be misleading. The SEC cannot simply point to the entirety of the quarterly reports and the accompanying newsletters—over a period of more than eight years[3]—and assert that (unidentified) statements in those documents are false when aggregated in some (unspecified) manner. *See SEC v. Baxter*, 2007 WL 2013958, at *3 (N.D. Cal. Jul. 11, 2007) ("'[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction.'") (quoting *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Moreover, the SEC's argument relies on a false dichotomy. There is a huge gap between pointing generally at eight years of quarterly reports and reciting "every detail" therein. While the SEC need not do the latter, it *cannot* simply do the former because it makes it *impossible* for the defense to intelligently respond to the complaint. To illustrate the point, consider that—on

---

[3] The SEC is *explicitly* attempting to rely on unidentified statements in the newsletters. *See* Opp. at 12 ("At its core, the Complaint alleges that, from 1998 through 2006, the account statements ***and newsletters*** sent to investors at the end of each quarter were false.") (emphasis added).

1   the current record—the defense has no idea: (1) whether the SEC believes the quarterly reports
2   are wrong with respect to every investor or just with respect to some investors; (2) which of the
3   dozens of numbers are contended to be inaccurate and in which quarterly reports; and (3) which
4   statements in the newsletters are alleged to be false. Neither the complaint nor the SEC's
5   opposition even purports to answer these questions and, therefore, thwarts the purpose of
6   Rule 9(b). *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) ("Rule 9(b) ensures that
7   allegations of fraud are specific enough … so that [defendants] can defend against the charge and
8   not just deny that they have done anything wrong.").

### b. The SEC has not alleged (and does not have) a basis for asserting that the quarterly reports overstated the Fund's value.

11   Insofar as the Court finds that the SEC has made allegations regarding specific numbers
12   and/or statements in the quarterly reports, the SEC has nonetheless failed to say *why* and *how* it
13   contends those numbers and/or statements are inaccurate. The law is clear that the SEC cannot
14   simply allege that a particular statement is wrong (or, more colorfully, that it "bears no relation
15   to reality"), but must instead "set forth what is false or misleading about a statement, and why it
16   is false. In other words, the plaintiff must set forth an explanation as to why the statement or
17   omission complained of was false or misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541,
18   1548 (9th Cir. 1994).[4]

19   But the SEC's proffered explanation of why and how the quarterly reports overstated the
20   Fund's value is wrong is both illogical and internally inconsistent. The SEC keeps trying to
21   compare statements in the quarterly reports that supposedly show the overall value of the Fund
22   with the value of the bank and brokerage accounts that make up ***one part*** of the Fund. *See* Opp.
23   at 11:3-6. This is precisely the kind of non-sensical explanation that the Court should not accept,

---

[4] Contrary to the SEC's assertion that Mr. Trabulse relied upon "cases addressing the requirements for a private plaintiff under the Private Securities Litigation Reform Act ("PSLRA") [15 U.S.C. § 78u-4 et seq.]," in support of the motion's Rule 9(b) arguments, *In re GlenFed* and the other cases relied upon in the defendants' motion do not consider or apply the PSLRA. *See* Opp. at 8 n.4. In fact, *In re GlenFed* was decided prior to the 1995 passage of the PSLRA, as were other cases upon which the defendants relied. *See* Motion at 5 (*citing Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)). The motion also relied upon SEC cases which applied the pleading requirements of Rule 9(b) to the SEC. *See id.* (citing, for example,

1   even on a motion to dismiss.  *See SEC v. Yuen,* 221 F.R.D. 631, 634 (C.D. Cal. 2004).

2   Perhaps because it is unable to explain away this problem, the SEC argues, instead, that it
3   need not take the value of the Fund's non-securities investments into account because "the
4   account statements omit any reference to such 'investments.'"  Opp. at 11-12.  But this is mixing
5   apples and oranges.  Nothing about the defendants' alleged failure to *identify* the Fund's non-
6   securities assets has any bearing on whether the quarterly statements affirmatively
7   misrepresented the *value* of the Fund.  The two questions—first, was the value of the Fund as
8   advertised; and, second, were the defendants obligated to provide more information about the
9   identity of the assets that made up the Fund—are logically distinct.  Nothing about the answer to
10  the former question turns on the answer to the latter.  And absolutely nothing (in the latter
11  question or otherwise) relieves the SEC of its obligation to plead a factual basis for asserting that
12  quarterly reports misrepresented the *value* of the Fund.

13  The SEC's failure to allege (or even develop) a factual basis for saying that the quarterly
14  reports overstated the value of the Fund is fatal under Rule 9(b) because, again, Ninth Circuit
15  "cases have consistently required that circumstances indicating falseness be set forth" in the
16  complaint.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548.

### c. The SEC has not identified any allegedly false statements to investors about the kind of assets in which the Fund would invest.

19  The SEC's complaint also fails to identify any specific statements that Mr. Trabulse
20  allegedly made regarding the kinds of assets in which the Fund would invest.  In particular, the
21  complaint identifies *no* specific statements, *no* persons to whom such a statements was
22  purportedly made, and *no* time, place, or circumstances surrounding any such statement.  Indeed,
23  the complaint is so devoid of specifics on this point that the SEC's opposition does not even try
24  to defend this theory.  Instead, the SEC's opposition hangs its hat on the "omission" version of
25  this argument—namely that the defendants misled the Fund's investors by failing to list each of
26  the Fund's non-securitized assets in the quarterly reports. As discussed below, however, the SEC
27  has not adequately alleged such an omission.

28  
---
*SEC v. Yuen*, 221 F.R.D. 631 (C.D. Cal. 2004)).

Case 3:07-cv-04975-WHA     Document 45     Filed 11/21/2007     Page 7 of 20

### d. The SEC has not adequately alleged the quarterly reports omitted information about the kind of assets in which the Fund invested.

In response to the arguments set forth above, the SEC contends that even if it has failed to make out a misrepresentation claim, it has still adequately claimed that the Fund omitted material information from its investors. The problem with the SEC's attempt to make out an omissions case is that the standard for pleading an omission is more stringent. To state a 10b-5 claim, plaintiffs must allege defendants made an untrue statement of a material fact, or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading. *See, In re Read-Rite Corp.*, 335 F.3d 843, 846 (9th Cir. 2003); *see also* Rule 10b-5(b) (making it unlawful "to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"); 15 U.S.C. § 77q(a) (Section 17(a)(2) of the Securities Act) (same). Thus, even where the SEC intends to rely on an alleged "omission," it must nonetheless identify a specific "statement made" that was allegedly rendered misleading by the specifically alleged omission.

But the SEC has utterly failed to identify any statements that were purportedly rendered misleading by what it now contends are Trabulse's "omissions." Indeed, there are only three paragraphs in the complaint that might be said to deal with the issue—Paragraphs 28, 29 and 30—which are gathered under the title "Trabulse Failed to Disclose How He Used Investor Money." *See* Compl. ¶¶ 28, 29, 30. But, none of those paragraphs are sufficient to satisfy the dictates of Rule 9(b).

Paragraph 28 is entirely about (unspecified) *affirmative* misrepresentations—not about any purported omission. *See id.* ¶ 28. And, as affirmative statements, the allegations in this paragraph are patently insufficient—indeed they do not identify any specific statement, any person to whom such a statement was made, and/or the date time and circumstances of any such statements. For this reason, the allegations in this paragraph do not form a basis for either a *affirmative* misrepresentation case or provide a specific "statement made" that could form the basis of an allegation of misrepresentation by omission.

6
DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. C-07-4975 WHA

406672.05

1    Paragraph 29 *is* about purported omissions—but all it says is that the defendants "failed
2  to tell investors before they invested money that the Fahey Fund invested or planned to invest in,
3  such illiquid items . . . [and] fail[ed] to identify them in account statements or elsewhere." *Id*.
4  ¶ 29.  Once again, this paragraph is insufficient because ***nothing*** therein identifies a specific
5  "statement made" that could have been rendered misleading by an alleged omission.
6    Paragraph 30 does no better—alleging only that "Trabulse did not inform investors that
7  he used investor funds to purchase jewelry and rugs for his family." *Id*. ¶ 30.  Again, this
8  allegation does not identify an *affirmative statement* that was supposedly rendered false or
9  misleading by virtue of the alleged omission.  Nor could it, because Mr. Trabulse had no
10 obligation to tell investors how he spent the portion of the Fund's profits that comprised his
11 compensation.  *See SEC v. Rauscher Pierce Refsnes, Inc.*, 17 F. Supp. 2d 985, 991-92 (D. Ariz.
12 1998) ("For [the SEC] to succeed in proving an omissions claim . . . [the SEC] must also
13 establish that Defendants had an affirmative duty to disclose the disputed information.  . . . Even
14 if the information that was not disclosed is deemed to be material, 'there is no liability under
15 Rule 10b-5 unless there is a duty to disclose it.'") (quoting *Glazer v. Formica Corp.*, 964 F.2d
16 149, 156 (2d Cir. 1992)).  Indeed, it is precisely to *prevent* plaintiffs from making this kind of ill-
17 founded allegations about generalized omissions that the law requires them to tie the alleged
18 omission to an affirmative statement that was allegedly rendered misleading.  The fact that the
19 SEC has not even attempted to do so, is fatal to its claim under Rule 9(b).
20    The Court also should note that, in advancing its "omission" argument, the SEC is
21 advancing two mutually inconsistent *factual* positions.  Either the amount of money the Fund
22 invested in "other" assets is material or it is not.  If it is, the SEC cannot reasonably compare
23 statements about the *total* value of the Fund with the bank and brokerage records, which only
24 represent a portion of the Fund's value.  If, on the other hand, the amount invested in non-
25 securities assets is not material, than the SEC *cannot* allege that failing to identify these
26 investments constitutes a material omission.  The fact that the SEC cannot make up its mind
27 about which of these mutually exclusive positions it wants to advance after many months of
28

7
DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. C-07-4975 WHA

406672.05

investigation lays bare the intellectual poverty of its position.[5]

        **e.    The SEC cannot cure the deficiencies in its complaint by pointing at Mr. Trabulse's assertion of his Fifth Amendment rights.**

Although the SEC does not say it directly, it has repeatedly implied that it should not be required to plead with particularity because Mr. Trabulse asserted his Fifth Amendment rights during the SEC's investigation. *See* Opp. at 10. This argument is both illogical and contrary to the weight of authority.

Under Ninth Circuit law, an adverse inference is only permitted if the Court finds that there is: (1) independent corroborative evidence to support the negative inference; (2) a substantial need for the information; and (3) no less burdensome way to obtain it. *See In re Tableware Antitrust Litig.*, 2007 WL 781960, at *4 (N.D. Cal. Mar. 13, 2007) (*citing Doe v. Glanzer*, 232 F.3d 1258, 1264-66 (9th Cir. 2000)). Under this framework, no adverse inference can or should be drawn here.

In the first place, on a motion to dismiss, there can be no "independent corroborative evidence" because the only question at issue is whether the pleadings are ***legally*** sufficient. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (a motion to dismiss "tests the legal sufficiency of a claim"). Therefore, no adverse inference should enter into the Court's analysis of whether the allegations in the complaint are sufficient. *Doe v. Glanzer*, 232 F.3d at 1264 (an adverse "inference cannot be drawn when, for example, silence is the answer to an allegation contained in a complaint"). To put it another way—the purpose of an adverse inference is to establish that the alleged events *actually took place* or that an alleged state of mind *actually existed*. Thus**,** the whole concept of an adverse inference *presupposes* that there is a legally sufficient set of asserted facts against which the inference can act.

Perhaps the easiest way to see this is to ask what would happen were the Court to attempt to impose an adverse inference in this case. What fact would the Court then *infer* from the

---

[5] Moreover the SEC is not free, on this record, to argue that the non-securitized assets are immaterial because it repeatedly has advanced the contrary position. *See, e.g.,* Complt. at ¶ 28 ("Trabulse used a significant portion of investor money …"); Plaintiff's Motion for Preliminary Injunction at 9 ("Trabulse used a significant portion of investor money to purchase items such as

defendants' silence? It is one thing for the Court to infer that the defendant has committed acts alleged in a complaint, it is another thing entirely for the Court—at the SEC's urging—to write into the complaint unalleged facts to save it from dismissal. No court has, as far as defendants are aware, ever done such a thing. Indeed, while no Court has yet addressed the issue, these reasons (and others) have led the *vast* majority of academics to conclude that asserting the Fifth Amendment during an SEC *investigation* should not give rise to an adverse inference in any subsequently filed litigation.[6]

It is also important that the Court note that the SEC's Fifth Amendment argument is highly misleading. In particular, the SEC implies that it should be excused from having a factual basis to allege what the entire Fund was worth because "Trabulse refused to answer the Commission's questions about the location of the fund's bank accounts and brokerage account; how the fund calculated its profits gains and losses; how Trabulse calculated his compensation; and how the fund valued its assets." Opp. at 10. While it is literally true that Mr. Trabulse refused to answer the SEC's questions, this statement is misleading insofar as it implies the SEC did not have access to the underlying information. In particular, Mr. Trabulse produced thousands of pages of documents, including, for example, the very records from the bank and brokerage accounts he supposedly refused to identify. Further, all of the Fund's employees (including the Fund's limited general partner) did testify in the SEC's investigation. Thus, the fact that the SEC has no factual basis to allege, and therefore has not alleged, what the Fund was worth is due entirely to the SEC's strategic decision not to appraise the Fund's diverse assets. Mr. Trabulse's assertion of his rights has nothing to do with it.

---

pearl necklaces and other jewelry, real property, and rugs.").

[6] *See, e.* Carl Loewenson, *D&O Liability & Insurance 2004: Directors & Officers Under Fire, Parallel Proceedings*, 865 PLI/Comm 641, 650-52 (2004) ("it is constitutionally impermissible to draw an adverse inference based on a witness's assertion of the privilege against self-incrimination during an SEC investigation (as opposed to a pending S.E.C. case)."); Daniel W. Levy & Carl Loewenson, *Taking the Fifth During SEC Probe, Client's Assertion of Rights Should be Irrelevant in Later Civil Enforcement*, 7/16/2001 N.Y.L.J. 9 (col. 5) (2001) ("the assertion of Fifth Amendment rights during an SEC investigation is legally irrelevant during a subsequent civil enforcement action"); Wallace L. Timmeny, *S.E.C. Proceedings - An Overview*, C873 ALI-ABA 93, 106-07 (1993) ("The SEC should not succeed in its efforts to have an adverse inference drawn from an individual's assertion of the Fifth Amendment during an investigation because the investigative proceeding is non-adversarial in nature.").

**2.    The SEC has failed to allege facts giving rise to an inference of materiality.**

Under Ninth Circuit law, the question of materiality turns on whether "there is a substantial likelihood that a reasonable investor *would have acted differently* if the misrepresentation had not been made or the truth had been disclosed." *Livid Holdings LTD. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005) (emphasis added) (citation omitted); *see also In re Intrabiotics Pharms. Sec. Litig.*, 2006 U.S. Dist. LEXIS 56427 (N.D. Cal. Aug. 1, 2006) (J. White) (holding that plaintiffs did not meet materiality obligation where they had not "alleged sufficient facts that, if true, would demonstrate … 'a substantial likelihood that a reasonable investor would have acted different if the misrepresentation had not been made or the truth had been disclosed.'") (quoting *Livid Holdings LTD. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005)).[7]  Thus, although the SEC does not need to establish or allege actual reliance, it must allege facts giving rise to a reasonable inference than an investor would have changed how it invested. *See Livid Holdings LTD.*, 416 F.3d at 946 (holding that a misrepresentation "is material if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed.") (citation omitted).  Yet, as noted in the defendants' opening brief, many of the (vague) statements and omissions gestured to by the SEC took place *after* the investment decisions to which they purportedly relate, and deal with aspects of Fund management that have no impact on the investors.

Instead of addressing this point, the SEC argues that its allegations should just be deemed material because "[c]ourts have found that information, such as how investor funds are used, may be material as a matter of law." Opp. at 13.  Yet the *only* case the SEC cites to support this proposition, *Koehler v. Pulvers*, 614 F. Supp 829, 842 (S.D. Cal. 1985), says no such thing.  The *Koehler* case dealt with the question of whether a challenged security offering was or was not exempt from registration.  In that context the Court found that purchasers of unregistered securities "must be shown to have been in a position to acquire" information similar to what is

---

[7] *See also SEC v. Sandifur,* 2006 U.S. Dist. LEXIS 12243 (D. Wash. Mar. 2, 2006) (applying same standard where SEC was plaintiff); *S. Ferry LP # 2 v. Killinger,* 399 F. Supp. 2d 1121,

1   available under the 1933 Act, including "accurate information on the use of investor funds"
2   before "an offering can be regarded as nonpublic and exempt." *Id*. at 842.  Thus, the *Koehler*
3   case had *nothing* to do with whether any alleged statement or omission was or was not material.
4       Indeed, the law is clear that the question of materiality is *not* a question of law, but is
5   instead a mixed question of fact and law that should be resolved by a jury whenever the alleged
6   facts (taken as true) *could* support an inference of materiality.  *See French v. Merrill Lynch,*
7   *Pierce, Fenner & Smith, Inc*., 784 F.2d 902, 906 (9th Cir. 1986) ("In the federal context, the
8   question of materiality is a mixed question of law and fact").  Thus, under Rule 9(b), the SEC
9   must allege specific facts that, if accepted, could lead a reasonable fact finder to conclude that a
10  statement was material and, where it has not, it has not adequately alleged materiality.
11      But many of the SEC's allegations fail under this standard.  Thus, for example,
12  Trabulse's alleged failure to "inform investors that he used their funds to purchase personal items
13  for his family" or his alleged failure to clearly identify what was personal compensation and
14  what was an expense of the fund *cannot* be material because (given the Fund's structure) they
15  relate to aspects of Fund management that have ***no bearing*** on the risk or return of the Fund.
16  Because no reasonable juror could conclude that information that has no possible bearing on his
17  investment is material to the investment decision, the SEC has failed to adequately allege
18  materiality.

    **3.**    **The SEC has not identified allegedly false statements that occurred *in connection with* the purchase or sale of a security.**

21      In its opposition, the SEC argues that the requirement that an allegedly misleading
22  statement be made "in connection with the purchase or sale of a security" does not require it to
23  identify a relationship between the alleged misstatement and the purchase or sale of a security.
24  Instead, according to the SEC, the mere fact that the alleged misstatement was put into a
25  document is sufficient to satisfy the "in connection with" requirement.  Opp. at 9, 14.
26      But this argument is both legally and logically incorrect.  In the first place, the case on
27  which the SEC relies , *SEC v. Rana Research, Inc.*, 8 F.3d 1358 (9th Cir. 1993), explicitly deals
28

1137 (D. Wash. 2005) (applying same standard).

with situations in which the alleged fraud "involves *public* dissemination in a document such as a press release, annual report, investment prospectus or other such document." *Id*. at 1362 (emphasis added). But, of course, as alleged in the complaint, the Fahey Fund is a hedge fund—*i.e.* a *private* investment vehicle that does not and cannot issue public quarterly reports. And there is *no* allegation in the complaint that the personalized quarterly reports issued by the Fund were, in fact, public.

Such non-public communications cannot be deemed to be "in connection with the purchase and sale of a security" simply because they are written down. As the Supreme Court has put it, the securities laws "must not be construed so broadly as to convert every common-law fraud that happens to involve securities into a violation of § 10(b)." *SEC v. Zandford*, 535 U.S. 813, 820 (2002). In other words, if the "in connection with" requirement means *anything* it means that a private communication between a hedge fund manager and an investor, which is *not* made in connection with any transaction, falls outside the scope of the statute.

Perhaps recognizing that it cannot rest on this strained reading of the case law, the SEC argues, in the alternative, that it has pled the necessary connection between the alleged misstatements and the purchase or sale of a security. In particular, the SEC argues that "contrary to defendants' assertion, the Complaint further alleges that [Mr. Trabulse] used the false and misleading account statements to solicit new investments and convince existing investors to put additional money into the fund." Opp. at 14-15.

But the SEC's response *completely* ignores its obligation to plead with particularity. Which investors? What misrepresentations did they rely on? When did they supposedly invest? The complaint gives *no information whatsoever* about the circumstances that make up the alleged connection between the (unidentified) misstatement and the (vaguely) alleged purchase of an interest in the Fund. For this reason the SEC has utterly failed to set forth with particularity "the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." *Kaplan,* 49 F.3d at 1370; *see also Moore*, 96 F.3d at 1245.

**B.    The SEC has not alleged facts to support the third cause of action.**

The SEC's third cause of action, for a violation of § 206 Investment Advisors Act,

1 requires a specific allegation of a breach of duty *to the Fund itself*, rather than to the Fund's
2 investors.  *See Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006) (holding that, under the
3 Advisers Act, hedge fund managers owe "fiduciary duties *only* to the fund, *not* to the fund's
4 investors.") (emphasis added); *Merrill Scott & Associates, Ltd.*, 505 F. Supp. 2d 1193, 1212 (D.
5 Utah 2007) (listing elements of the claim); *Rauscher*, 17 F. Supp. 2d at 988-90 (applying Rule
6 9(b) to claims under § 206).

7 Despite this requirement, the SEC attempts to bootstrap itself into an Investment
8 Advisors Act claim by relying on its (deficient) allegations under the Securities and Exchange
9 Acts.  In particular, the SEC claims that "[c]onduct that violates the antifraud provisions of the
10 Exchange Act and Securities Act also may constitute a breach of an investment adviser's
11 fiduciary duties to his clients, under Section 206 of the Advisors Act." Opp. at 8.  But this is just
12 wrong.  The only case the SEC cites to support this proposition, *SEC v. Capital Gains Research*
13 *Bureau, Inc.*, 375 U.S. 180 (1963), held *only* that investment advisors owe fiduciary duties *to*
14 *their clients*.

15 But the only *client* a hedge fund general partner has is the Fund itself—not the Fund's
16 investors.  *See Goldstein*, 451 F.3d at 880 ("As applied to limited partnerships and other entities,
17 the Commission had interpreted this provision to refer to the partnership or entity itself as the
18 adviser's 'client.' ... This type of direct relationship exists between the adviser and the fund, but
19 not between the adviser and the investors in the fund.  The adviser is concerned with the fund's
20 performance, not with each investor's financial condition.").  Thus, the Exchange and Securities
21 Acts apply to misrepresentations made *to investors* while the Advisors Act applies to breaches of
22 duty *to the Fund*.  Because the Acts apply to *different* groups, the SEC cannot bootstrap its
23 allegations under the former into a claim under the latter.

24 More fundamentally, nothing about the SEC's arguments changes the fact that it has
25 failed to allege, even in rough terms, how much money Mr. Trabulse allegedly spent from the
26 Fund, or what he was entitled to spend.  The reason for this failure is that the SEC did not bother
27 to do the leg work during their pre-filing investigation.  The SEC *has* all of the Fund's records.
28 It could have—as part of its prefiling investigation—obtained an independent valuation of the

13
DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. C-07-4975 WHA

406672.05

1  Fund's diverse holdings, but it chose not to.  Similarly, it could have calculated the amount of
2  money spent on the combination of expenses and compensation, but did not.  So, instead, the
3  SEC has taken actions against the Fund *without* a factual basis to contend that Mr. Trabulse spent
4  more than he was entitled to spend and *without* being able to plead the specific allegations
5  necessary to make out a claim under Rule 9(b).  *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th
6  Cir. 1985) (Rule 9(b) "prevents the filing of a complaint as a pretext for the discovery of
7  unknown wrongs and protects potential defendants—especially professionals whose reputations
8  in their fields of expertise are most sensitive to slander—from the harm that comes from being
9  charged with the commission of fraudulent acts.").

10  In addition, the SEC makes the surprising argument that Trabulse was not authorized to
11  spend money from the Fund on personal compensation because the Partnership Agreement says
12  that "[n]o partner shall be entitled to any salary, but the General Partner shall receive the right to
13  draw expenses consistent with prudent and sound management of the trading activities, such
14  expenses being charged against his share."  Opp. at 16 (citing § 6.06).  This argument is
15  surprising because the SEC's citation to the Partnership Agreement *disproves* the very point the
16  SEC was trying to establish.  Specifically, the Partnership Agreement says in black and white
17  that Mr. Trabulse *was* entitled to "draw expenses" from the fund and "charg[e] them against his
18  share."  *See id.*  Thus, if anything, this provision shows that the SEC's allegation that Trabulse
19  violated his fiduciary duty by charging expenses to the Fund is just hot air.

20  Moreover, insofar as the SEC is attempting to rely on the idea that Mr. Trabulse must
21  withdraw expenses in a way that is "consistent with prudent and sound management of the
22  trading activities," the SEC has made *zero* supporting allegations.  Thus, for example, the SEC
23  has made *no* allegation that any of Mr. Trabulse's withdrawals occurred at a time that interfered
24  with a pending trade or anything of the kind.  Again, under Rule 9(b), the SEC must be explicit
25  about how and why an activity is alleged to violate a fiduciary duty to the Fund.  *See Baxter*,
26  2007 WL 2013958, at *3.  If the SEC now wishes to contend that Trabulse somehow violated his
27  obligations under this provision of the Partnership Agreement *it must plead that allegation in the*
28  *complaint*.  That is, after all, the entire point of Rule 9(b).

1   Finally, nothing in the SEC's opposition addresses the point (in the defendants' opening
2 brief) that the structure of the Fund *required* Mr. Trabulse to pay business expenses out of his
3 personal compensation thereby making it impossible to separate the two categories of expenses.
4 *See* Defendants' Motion to Dismiss ("Motion") at 14.  The SEC *totally* ignores this point and,
5 instead, just repeats its allegation that Mr. Trabulse breached a fiduciary duty to the Fund by
6 "commingling his assets with those of the Fund." Opp. at 16.  But this allegation is *irrelevant*
7 because the Partnership agreement *required* that Fund expenses and personal compensation be
8 paid from the *same* funds.  And the SEC's claim that Mr. Trabulse failed to maintain accurate
9 accounting records by improperly recording business and personal expenses fails for the same
10 reason—*i.e. nothing* turns on whether a particular expense was characterized as a business
11 expense or a personal expense because, from the Fund's perspective, both sets of expenses are
12 treated *identically*.  For this reason, and as discussed above, the Complaint fails under Rule 9(b).

### III.    Conclusion

14   The SEC has tremendous power.  It has investigatory powers that other plaintiffs can
15 only dream of, and the law permits it to bring actions that other plaintiffs cannot.  But with great
16 power comes great responsibility.  In return for this grant of extraordinary authority comes the
17 obligation for the SEC to diligently use its powers to understand the facts before bringing suit,
18 with all its attendant publicity and the resulting damage to a defendant's business.  In this case,
19 the SEC has failed to live up to its part of the bargain.  It did not attempt either to ascertain the
20 value of the funds "other" assets or to determine whether Mr. Trabulse spent more than the 25%
21 to which he was contractually entitled.  Given the SEC's resources and authority, it is only
22 appropriate it be held to the standards of Rule 9(b).  Because the SEC has not met that standard,
23 the defendants ask the Court to require the SEC to replead with the legally required specificity.

24 Dated:  November 21, 2007                      KEKER & VAN NEST, LLP

By:    /s/ Clement S. Roberts
CLEMENT S. ROBERTS
Attorneys for Defendants ALEXANDER JAMES
TRABULSE, FAHEY FUND, L.P., FAHEY
FINANCIAL GROUP, INC., INTERNATIONAL
TRADE & DATA, and ITD TRADING

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.   Introduction ........................................................................................................................ 1

II.  Argument ........................................................................................................................... 2

    A.   The SEC's first and second causes of action must be dismissed. .......................... 2

        1.   The SEC has not alleged specific misstatements or omissions, nor has it offered a factual basis to allege falsity. ...................................... 2

            a.   The SEC has not identified specific statements in the quarterly reports. ............................................................................ 3

            b.   The SEC has not alleged (and does not have) a basis for asserting that the quarterly reports overstated the Fund's value ................................................................................................ 4

            c.   The SEC has not identified any allegedly false statements to investors about the kind of assets in which the Fund would invest. ............................................................................ 5

            d.   The SEC has not adequately alleged the quarterly reports omitted information about the kind of assets in which the Fund invested. ................................................................................ 6

            e.   The SEC cannot cure the deficiencies in its complaint by pointing at Mr. Trabulse assertion of his Fifth Amendment rights. ....................................................................... 8

        2.   The SEC has failed to allege facts giving rise to an inference of materiality. ................................................................................................ 10

        3.   The SEC has not identified allegedly false statements that occurred *in connection with* the purchase or sale of a security ................. 11

    B.   The SEC has not alleged facts to support the third cause of action ....................... 12

III. Conclusion ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Doe v. Glanzer*,
   232 F.3d 1258 (9th Cir. 2000) ........................................................................................... 8

*French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   784 F.2d 902 (9th Cir. 1986) ........................................................................................... 11

*In re GlenFed, Inc. Sec. Litigation*,
   42 F.3d 1541 (9th Cir. 1994) ......................................................................................... 4, 5

*Goldstein v. SEC*,
   451 F.3d 873 (D.C. Cir. 2006) ..................................................................................... 12, 13

*In re Intrabiotics Pharms. Sec. Litigation*,
   2006 U.S. Dist. LEXIS 56427 (N.D. Cal. Aug. 1, 2006) ............................................... 10

*Kaplan v. Rose*,
   49 F.3d 1363 (9th Cir. 1994) *cert. denied*, 516 U.S. 810 (1995) .................................. 3, 12

*Koehler v. Pulvers*,
   614 F. Supp. 829 (S.D. Cal. 1985) ............................................................................. 10, 11

*Livid Holdings LTD. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ........................................................................................... 10

*Merrill Scott & Associates, Ltd.*,
   505 F. Supp. 2d 1193 (D. Utah 2007) ............................................................................ 13

*Moore v. Brewster*,
   96 F.3d 1240 (9th Cir. 1996) ........................................................................................ 3, 12

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ............................................................................................ 8

*In re Read-Rite Corp.*,
   335 F.3d 843 (9th Cir. 2003) ............................................................................................ 6

*SEC v. Baxter*,
   2007 WL. 2013958 (N.D. Cal. Jul. 11, 2007)M ............................................................ 3, 14

*SEC v. Capital Gains Research Bureau, Inc.*,
   375 U.S. 180 (1963) ......................................................................................................... 13

*SEC v. Phan*,
   500 F.3d 895 (9th Cir. 2007) ............................................................................................ 2

*SEC v. Rana Research, Inc.*,
   8 F.3d 1358 (9th Cir. 1993) ......................................................................................... 11, 12

*SEC v. Rauscher Pierce Refsnes, Inc.*,
   17 F. Supp. 2d 985 (D. Ariz. 1998) ............................................................................. 7, 13

*SEC v. Sandifur*,
   2006 U.S. Dist. LEXIS 12243 (D. Wash. Mar. 2, 2006) ................................................ 10

*SEC v. Yuen*,
   221 F.R.D. 631 (C.D. Cal. 2004) ...................................................................................... 5

*SEC v. Zandford*,
   535 U.S. 813 (2002) .......................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

*S. Ferry LP # 2 v. Killinger*,
   399 F. Supp. 2d 1121 (D. Wash. 2005) .................................................................................10

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ............................................................................................4, 14

*In re Tableware Antitrust Litigation*,
   2007 WL. 781960 (N.D. Cal. Mar. 13, 2007).........................................................................8

## FEDERAL STATUTES

15 U.S.C. § 77q(a) .......................................................................................................................2, 6

15 U.S.C. § 78u-4 ..............................................................................................................................4

15 U.S.C. 78j(b) ............................................................................................................................2, 6

17 C.F.R. § 240.10b-5................................................................................................................2, 6, 7

Fed. R. Civ. Pro. 9(b) ............................................................................................................. *passim*

## OTHER AUTHORITIES

Daniel W. Levy & Carl Loewenson,
   *Taking the Fifth During SEC Probe, Client's Assertion of Rights Should be Irrelevant in
   Later Civil Enforcement*, 7/16/2001 N.Y.L.J. 9 (2001) ..........................................................9

Carl Loewenson, *D&O Liability & Insurance 2004: Directors & Officers Under Fire,
   Parallel Proceedings*, 865 PLI/Comm 641, 650-52 (2004) ....................................................9

Wallace L. Timmeny,
   *S.E.C. Proceedings - An Overview*, C873..............................................................................9

DEFENDANTS' REPLY ISO MOTION TO DISMISS

406672.05