IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

  v.

ALEXANDER J. TRABULSE,

    Defendant,

and

FAHEY FUND, L.P., FAHEY FINANCIAL GROUP, INC., INTERNATIONAL TRADE & DATA, and ITD TRADING,

    Relief Defendants.

                    No. C 07-04975 WHA

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

Plaintiff Securities and Exchange Commission charged defendant Alexander James Trabulse, a San Francisco hedge fund manager, with defrauding investors by overstating the fund's profitability and misusing fund assets. In its complaint, the SEC alleged four claims against Trabulse: (i) violations of Section 17(a) of the 1933 Securities Act; (ii) violations of Section 10(b) of the 1934 Exchange Act and Rule 10b-5; (iii) violations of Sections 206(1) and 206(2) of the 1940 Investment Advisers Act; and (iv) violations of Sections 5(a) and 5(c) of the 1933 Securities Act. Trabulse moves to dismiss the first three claims, or, in the

alternative, to request a more definite statement of the charges. For the reasons stated below, defendant's motion is **DENIED**.

**STATEMENT**

Trabulse, a resident of Daly City, California, founded and controlled Fahey Fund, Fahey Financial Group, Inc., International Trade & Data, and ITD Trading (Compl. ¶¶ 7–11). He operated Fahey Fund, L.P. and Fahey Financial Group, Inc. as a single hedge fund (collectively, "Fahey Fund"). From 1998 to the end of 2006, the fund has grown from about eleven investors to over a hundred investors. He described the fund to investors in oral conversations and written materials as a fund that invested in financial instruments. Since its inception, Fahey Fund has collected at least ten million dollars from investors (*id.* at ¶ 12).

At the end of each calendar quarter, Trabulse provided investors with an account statement that was supposed to describe the changes in the investors' account balance from one quarter to the next — *i.e.*, it included information regarding the investor's beginning balance, gains and/or losses during the period, and ending balance. Account statements were generally accompanied by a newsletter (also prepared and signed by Trabulse) that summarized the fund's performance during the quarter, the current market conditions, and his market forecasts for upcoming quarters (*id.* at ¶ 13).

These account statements, however, did not accurately reflect the fund's actual performance during the quarter. For example, in the second quarter of 2005, although Trabulse reported to investors collective gains of approximately $2.5 million, the fund had actually realized a net loss in its brokerage accounts of over $200,000. From 1998 through 2006, he erroneously reported to investors that there were collective gains of about $30 million, based on investments in stocks, derivatives, and foreign currency. The fund's brokerage accounts for that period, however, showed profits of less than $10 million. He also overstated the fund's assets in the quarterly statements sent to investors. As of December 31, 2006, he reported that investors' collective assets totaled more than $45 million. Again, the fund's brokerage account records and bank statements showed that the value was less than $13 million (*id.* at ¶¶ 14–15).

2

Trabulse allegedly knew that the account statements provided to investors were false. He used these false and misleading account statements to solicit new investors and to encourage existing investors to recruit new investors and increase their own investments in the Fahey Fund. He would give some prospective investors a list of existing investors who acted as references. The investors acting as references had received these inaccurate account statements. Numerous investors contributed to the fund based on these representations. Trabulse also prepared and distributed other inaccurate materials. For example, he sent prospective investors documents that had charts depicting the fund's value as steadily increasing or holding steady each quarter starting from the fourth quarter of 1997 and continuing through the second quarter of 2002. From about April 1999 through 2007, Fahey Fund's website described Trabulse's investment strategy and contained more charts showing the fund's profits as positive or flat each quarter beginning in the fourth quarter of 1997 and continuing through the second quarter of 2004. In reality, the fund's brokerage account records showed losses in 1998, 2000, and 2003 (*id.* at ¶¶ 16–20).

The complaint alleges that Trabulse misused assets of the Fahey Fund when he used its bank accounts to pay for various personal and unauthorized expenses. For the years ending on December 31, 2004, December 31, 2005, December 31, 2006, and the three months ending on March 31, 2007, he allegedly misappropriated fund assets, as set forth in the following examples (*id.* at ¶ 22). Trabulse transferred over $650,000 to his ex-wife's bank accounts, which she spent on living expenses, a shopping allowance in France, and a home mortgage after she and Trabulse separated. He also used bank accounts to buy his ex-wife a home-theater system that cost over $25,000, and several rugs that are currently used in her home. More than $500,000 was transferred to an overseas bank account maintained in his (not the fund's) name in France. Although he described some of these transfers in the fund's records as "Paris Business Expenses," he used the bank account to pay for personal expenses in the United States, such as groceries, meals, and clothes. Trabulse allowed his daughter to use a debit card linked to one of the Fahey Fund bank accounts to buy furniture, airline tickets, and

3

her 2007 honeymoon in Panama. Some of his daughter's jewelry was purchased with fund assets (*id.* at ¶¶ 23–26).

Trabulse did not disclose to investors how he used their money. In verbal and written communications, he told investors that the Fahey Fund invested in financial instruments (*e.g.*, stocks, options, derivatives, futures, and foreign currency). Instead, he used a substantial amount of the funds to purchase items that he and his family used, like jewelry, real property, and rugs. He even used some investor money to fund a start-up golf company and to purchase a BMW for the golf company's owner. He did not identify these purchases nor did he disclose that he gave them to family members in account statements or other materials provided to investors (*id.* at ¶¶ 28–30).

The SEC alleges various violations of the federal securities laws against Trabulse. Trabulse moves to dismiss the first three claims pursuant to Rule 12(b)(6) (failure to state a claim upon which relief may be granted) and Rule 9(b) (failure to plead its allegations with sufficient particularity). In the alternative, he moves under Rule 12(b)(e) for a more definite statement of the charges. This order addresses each of the arguments in turn.

**ANALYSIS**

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). All material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1255, 1264–65 (2007).[1]

---

[1] Unless indicated otherwise, all decisions cited in this order omit internal citations.

4

1    Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances
2 constituting fraud or mistake shall be stated with particularity." What this means is that
3 allegations of fraud must be "specific enough to give defendants notice of the particular
4 misconduct which is alleged to constitute the fraud charged so that they can defend against the
5 charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d
6 666, 671 (9th Cir. 1993). "A pleading is sufficient under Rule 9(b) if it identifies the
7 circumstances constituting fraud so that the defendant can prepare an adequate answer from the
8 allegations. The complaint must specify such facts as the times, dates, places, benefits received,
9 and other details of the alleged fraudulent activity." *Id.* at 671–72. But "mere conclusory
10 allegations of fraud are insufficient." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540
11 (9th Cir. 1989).

12    **1.    SHOULD THE FIRST AND SECOND CLAIMS BE DISMISSED?**

13    The first and second claims require that the SEC plead much of the same elements.
14 Section 17(a) of the 1933 Securities Act, Section 10(b) of the 1934 Exchange Act, and
15 Rule 10b-5 require the SEC to specify facts showing that the defendant made "(1) a material
16 misstatement or omission (2) in connection with the offer or sale of a security (3) by means of
17 interstate commerce . . . . Violations of Section 17(a)(1), Section 10(b) and Rule 10b-5 require
18 *scienter* . . . . Violations of Sections 17(a)(2) and (3) require a showing of negligence." *SEC v.*
19 *Phan*, 500 F.3d 895, 907–08 (9th Cir. 2007). Defendant requests that the first two claims be
20 dismissed because the SEC failed to allege each of these elements with sufficient particularity.

21    Defendant first argues that the SEC failed to state with particularity each of the
22 statements that it believed to be materially misleading. The SEC, defendant says, did not
23 include the misrepresentations themselves with particularity. "In particular, the SEC has:
24 (1) failed to identify allegedly false or misleading statements with particularity; (2) failed to
25 specify *how* and *why* it contends those statements were wrong; and (c) [sic] failed to allege any
26 specific facts showing that any such misinformation was material" (Br. 6). As stated, Rule 9(b)
27 requires that the pleading provides "times, dates, places, benefits received, and other details of
28 the alleged fraudulent activity." *Neubronner*, 6 F.3d at 671–72. "[T]he allegations [in cases of

5

1  corporate fraud] should include the misrepresentations themselves with particularity."
2  *Moore*, 885 F.2d at 540. It is true that the SEC cannot rely on conclusory allegations such as
3  "defendant made false and misleading statements to investors." Rather, the SEC must rely upon
4  its specific examples to plead fraud.

5      This order finds, however, that the examples provided by the SEC do provide times,
6  dates, places, benefits received, and other details of the alleged fraud. The SEC alleges that, in
7  the second quarter of 2005, Trabulse reported to investors collective gains of about $2.5 million
8  even though the fund had actually realized a net loss in its brokerage accounts of more than
9  $200,000. From 1998 through 2006, he once again reported gains totaling $30 million
10 even though brokerage-account records showed profits of less than $10 million. As of
11 December 31, 2006, he reported to investors in the quarterly statements that their collective
12 assets totaled over $45 million. Brokerage account records and bank statements, on the other
13 hand, showed the value of the fund to be less than $13 million. Trabulse used inaccurate
14 account statements and newsletters, which were sent to investors at the end of each calendar
15 quarter, to encourage existing investors to contribute more to the fund and to recruit other
16 investors. Trabulse communicated with investors through account statements and newsletters,
17 which were sent to investors at the end of each calendar quarter (Compl. ¶¶ 13–17).

18     Defendant says that: "The SEC is pointing to an entire *set* of quarterly reports —
19 with each report being different for each shareholder — while generally alleging that various
20 unidentified statements in those reports were *cumulatively* misleading" (Br. 7). Yet, defendant
21 has not provided any authority that says the SEC must plead every detail from account
22 statements sent to over a hundred separate investors. Although recognizing that there is "a huge
23 gap between pointing generally at eight years of quarterly reports and reciting 'every detail'
24 therein" (Reply 3), this order finds that the SEC has pleaded sufficient detail to put defendant
25 on notice of the claims against him. Of course, the SEC cannot make vague, conclusory
26 allegations of fraud. But here, it provides the circumstances of the alleged fraud — the period
27 in which it occurred, who Trabulse communicated to, how he communicated to them, the
28 content of the communications, and the benefits reaped from his actions.

6

1  According to defendant, the SEC has also failed to identify how and why the
2  aforementioned statements were false and misleading. Not so. The complaint specifically
3  states that Trabulse issued account statements and newsletters to investors that reflected *gains*
4  (or no change), whereas there were actually losses or less gains than reported (Compl. ¶¶ 12–15,
5  19–20). Defendant then argues that these statements are not evidence of falsity; Trabulse said
6  there were *collective* gains of a certain amount while the SEC focused on net losses only in
7  *brokerage accounts* (which only constituted a portion of the entire fund). Defendant then points
8  to its partnership agreement, which states that the fund's primary purpose shall to use
9  "publicly listed opportunities, natural resources, and *any other investment of a unique*
10 *long-term character*, to gain consistent compound rates of return" (Roberts Decl. Exh. 1 at
11 § 2.01). The SEC, says defendant, neglected to refer to other assets not held in the brokerage
12 accounts — such as real estate, rugs, and a start-up golf company — when describing losses.
13 But Trabulse did not disclose these "assets" in the quarterly account statements.
14 How defendant expected the SEC to include the value of unreported assets in its calculations
15 is a mystery. Moreover, the "investment" nature of the purchases are in dispute; construing the
16 material allegations — in the complaint *and not in additional exhibits offered by defendant* —
17 in the light most favorable to the SEC, this order finds it difficult to see how a home-theater
18 system, rugs, and jewelry to family members constitute hedge-fund assets.

19  Another supposed defect in the pleadings was that there were no facts that gave rise to
20 an inference of materiality. "[A] misrepresentation or omission is material if there is a
21 substantial likelihood that a reasonable investor would have acted differently if the
22 misrepresentation had not been made or the truth had been disclosed." *Livid Holdings Ltd. v.*
23 *Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). Specifically, defendant argues
24 that the complaint failed to identify any investor who would have divested or invested
25 additional amounts if the misrepresentation or omission had not been made.

26  Defendant has mistakenly mixed up materiality and reliance. The SEC does not have to
27 plead reliance in an action seeking injunctive relief for alleged violations of Section 10(b) and
28 Rule 10b-5. *See SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1363 (9th Cir. 1993). Therefore, the

7

1  SEC does not have to identify individual investors who relied upon the alleged
2  misrepresentations or omissions; it just has to allege that a *reasonable investor* would consider
3  the fact important in making an investment decision. Here, the complaint alleges what Trabulse
4  did and did not tell investors. Trabulse told investors that the fund was a "conservative" fund
5  that invested in financial instruments. He did *not* inform investors that he would spent fund
6  assets on jewelry, real property, and rugs. Nor did he tell the investors that the jewelry,
7  real property, and rugs would go to family members. He overstated the value of fund assets in
8  his quarterly statements to investors. Viewing the complaint in the light most favorable to the
9  SEC, a reasonable investor seeking a "conservative" fund might have made a different
10 investment decision if these facts had been disclosed.

11 Defendant also argues that the SEC failed to identify allegedly false statements that
12 occurred *in connection with* the purchase or sale of a security — "namely the SEC has totally
13 failed to identify even a single person who made an investment decision in connection with the
14 receipt of any of the (unspecified) statements about which the government complains" (Br. 12).
15 This reading of the "in connection with" requirement is far too narrow. The Ninth Circuit has
16 said that the "'in connection with' requirement is met if the fraud alleged 'somehow touched
17 upon' or has 'some nexus' with 'any securities transaction.'" *Rana Research*, 8 F.3d at 1362.
18 "Where the fraud alleged involves public dissemination in a document such as a press release,
19 annual report, investment prospectus or *other such document on which an investor would*
20 *presumably rely*, the 'in connection with' requirement is generally met by proof of the means of
21 dissemination and the materiality of the misrepresentation or omission." *Ibid.* (emphasis
22 added).[2] The complaint alleges that Trabulse prepared and sent to investors account statements

---

24  [2] Defendant argues that the SEC misguidedly relies on *Rana Research*, which dealt with situations in
25 which the alleged fraud involved "*public* dissemination." Fahey Fund was a private investment vehicle that
did not issue *public* quarterly reports. The complaint is therefore flawed because there was no allegation that
the personalized quarterly reports were in fact public. Defendant, however, conveniently leaves out the
26 language that the alleged fraud can involve the public dissemination of any other such document "on which an
investor would presumably rely." The Ninth Circuit cited numerous decisions in *Rana Research* that supported
27 this reading. *See SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1958) (en banc) (establishing that the
connection requirement is satisfied "whenever asserts are made, as here, in a manner reasonably calculated to
28 influence the investing public"); and *SEC v. Hasho*, 784 F. Supp. 1059, 1106 (S.D.N.Y. 1992) (misstatements
in annual and quarterly reports satisfy connection requirement because an investor would rely on such

8

1  and newsletters that summarized changes in account balances, the fund's performance, current
2  market conditions, and what he expected markets will do in upcoming quarters. As stated,
3  this material inaccurately reported what Trabulse invested in and the value of the fund.
4  Certain investors relied on the account statements to recruit other investors or to make further
5  contributions to the fund (Compl. ¶¶ 13–17). This satisfied the "in connection with"
6  requirement.

7  Defendant tries to argue that the SEC's theory is too expansive because it holds Trabulse
8  liable for making material misstatements in connection with the purchase or sale of a security
9  even if he personally did not make the statement or exercise control over what was said. It was
10 the third parties (and not Trabulse) who convinced other investors to contribute to the fund.
11 Again, this order disagrees. "[A defendant] cannot escape liability simply because it carried out
12 its alleged fraud through the public statements of third parties." *Warshaw v. Xoma Corp.*,
13 74 F.3d 955, 959–60 (9th Cir. 1996). The complaint alleged that Trabulse provided the account
14 statements and newsletters. He also provided prospective investors with lists of existing
15 investors who would act as references, and these existing investors made their recommendations
16 based on information provided by Trabulse. The "in connection with" requirement has been
17 properly alleged. This order finds that the first two claims have met the pleading requirements
18 and therefore do not need to be dismissed.

19     **2.    SHOULD THE THIRD CLAIM BE DISMISSED?**

20 The third claim alleges that defendant violated Section 206 of the 1940 Investment
21 Advisers Act. Defendant claims that the SEC has not alleged facts sufficient to support this
22 claim. The Investment Advisers Act "prohibits advisers from, directly or indirectly,
23 employing a scheme to defraud clients or engaging in practices which operate as a fraud upon
24 clients." *Vernazza v. SEC*, 327 F.3d 851, 858 (9th Cir. 2003).

---

27 documents in deciding whether to purchase securities). Furthermore, the Ninth Circuit explicitly stated,
28 "While interpretations of 'in connection with' continue to change as applied to private plaintiffs, its meaning in SEC actions remains as broad and flexible as is necessary to accomplish the statute's purpose of protecting investors." *Rana Research*, 8 F.3d at 1362.

9

He cites a district court decision from Utah for what the SEC has to prove: (i) defendant was an investment adviser; (ii) defendant utilized the mails or instrumentalities of interstate commerce to employ a device, scheme or artifice; (iii) the device, scheme or artifice violated defendant's fiduciary duty to his clients in that he made false and misleading statements to his clients; and (iv) he acted with scienter.[3] *SEC v. Merrill Scott & Associates, Ltd.*, 505 F. Supp. 2d 1193, 1215 (D. Utah 2007). In our case, defendant Trabulse argues, the "client" is the fund itself and not the investors. *See Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006) ("The adviser owes fiduciary duties only to the fund, not the fund's investors"). This order finds that Trabulse breached his duty, whether his "client" was the fund or the investors.

Defendant argues that under the partnership agreement, Trabulse was entitled to withdraw up to 25% of the fund's profits (some of which constituted his personal compensation) and that he was under no obligation to separate and report on personal and business expenses. Defendant euphemistically refers to the governance structure as an "innovative arrangement" (Br. 15). And because the SEC has failed to allege the fund's profits and whether Trabulse withdrew more than 25% of the fund's profits, the complaint does not pass Rule 9(b) scrutiny, it is argued.

Again, defendant cannot rely on materials outside of the complaint. The complaint alleges that Trabulse used fund assets to pay for various personal and unauthorized expenses, spending more than he was entitled to under the terms of the partnership agreement. Here, the analysis hits a sticky part. Although claiming that Trabulse spent more than he was entitled to, the SEC does not allege the actual amount that Trabulse was entitled to, if any. But due to Trabulse's poor record keeping and refusal to answer the SEC's questions (in keeping with his Fifth Amendment privilege against self-incrimination), the SEC has been flummoxed in

---

[3] There is no scienter requirement for Section 206(2).

10

determining this amount.[4] (The SEC is currently seeking verified accounting in its motion for preliminary injunction and other ancillary relief.) What is clearer is that the partnership agreement only allowed Trabulse to draw expenses "consistent with prudent and sound management of the trading activities." Instead, Trabulse commingled funds and failed to maintain accurate accounting records, thereby violating his fiduciary duties to the fund (Compl. ¶¶ 22–26). For now, these allegations are enough to sustain the third claim.

### 3. SHOULD THE COURT GRANT DEFENDANT'S MOTION FOR A MORE DEFINITE STATEMENT?

Defendant also moves for a more definite statement. Under Rule 12(e), "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Because this order does not find the complaint to be too vague or ambiguous, there is no need for a more definite statement.

### CONCLUSION

For the foregoing reasons, defendant Trabulse's motion to dismiss and for a more definite statement is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 7, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[4] The SEC has ably demonstrated that Trabulse mishandled investors and assets. Perhaps it would have done an even more convincing job had Trabulse answered the specific questions propounded by the SEC pursuant to an investigative subpoena. "Trabulse refused to answer the staff's questions about where the fund maintained bank and brokerage accounts. Trabulse also refused to answer the Commission staff's questions about how the fund calculated its profits, gains, and losses. Trabulse also refused to answer the Comission staff's questions about how he calculated his compensation. Trabulse also refused to answer the staff's questions about how the fund's [sic] valued its assets" (Schneider Decl. ¶ 25, and Exh. 18). The Court is entitled to make an adverse inference, this being a civil action. *See SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000). This order infers from the specific refusals that the answers would have been damaging to Trabulse.