1  DAVID R. ZARO (BAR NO. 124334)
   YALE K. KIM (BAR NO. 188895)
2  ALLEN MATKINS LECK GAMBLE
      MALLORY & NATSIS LLP
3  515 South Figueroa Street, Ninth Floor
   Los Angeles, California 90071-3309
4  Phone: (213) 622-5555
   Fax: (213) 620-8816
5  E-Mail: dzaro@allenmatkins.com
              ykim@allenmatkins.com
6
   Attorneys for Monitor
7  MICHAEL A. GRASSMUECK

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11  SECURITIES AND EXCHANGE          Case No. C 07-4975 (WHA)
    COMMISSION,
12                                   REPORT OF MICHAEL A. GRASSMUECK
                    Plaintiff,       AS MONITOR FOR THE PERIOD
13                                   DECEMBER 17, 2007 THROUGH
              vs.                    JANUARY 31, 2008
14
    ALEXANDER JAMES TRABULSE,
15
                    Defendant,
16
    FAHEY FUND, L.P., FAHEY FINANCIAL
17  GROUP, INC., INTERNATIONAL TRADE &
    DATA, and ITD TRADING,
18
                    Relief Defendants.
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     SUMMARY OF MONITOR'S REPORT ................................................................. 2

III.    REPORT ON MONITORING OF OPERATIONS ................................................. 4

IV.     REVIEW OF THE ASSETS ..................................................................................... 5

    A.    Oriental Rugs .................................................................................................. 6

    B.    Jewelry, Stones and Crystals ...................................................................... 7

        1.    The Pearl Necklace ........................................................................ 7

        2.    Crystals and Gems (Semi-Precious and Precious) .................... 7

    C.    Paintings .......................................................................................................... 8

    D.    Mobile Homes ................................................................................................ 8

    E.    Real Property .................................................................................................. 8

    F.    Mining Limited Partnership Investment .................................................. 9

V.      THE TRABULSE ACCOUNTING .......................................................................... 9

    A.    Description of Trabulse's Accounting ...................................................... 10

    B.    Monitor's General Observations Regarding the Accounting ............... 11

    C.    Monitor's Specific Observations of the Accounting Provided ............. 12

        1.    Ueltzen Compilation .................................................................... 12

            a.    Completeness .................................................................. 12

            b.    Lack of Supporting Data ............................................... 13

            c.    Title ................................................................................... 13

            d.    Valuations ........................................................................ 13

            e.    Marginal Supporting Documents ................................ 14

            f.    Prior Assets of the Fund ............................................... 14

        2.    List of Withdrawals ...................................................................... 14

        3.    Easter Trabulse Assets ................................................................. 14

    D.    Conclusions Related to Accounting .......................................................... 15

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

785150.01/LA

(i)

1

**Page**

VI.    RECOMMENDATIONS ................................................................................15

VII.    CONCLUSION ........................................................................................17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

785150.01/LA

1 I. **INTRODUCTION**

2       Michael A. Grassmueck ("Monitor"), in his capacity as corporate monitor pursuant to the

3 Stipulation and Order Appointing Monitor filed December 17, 2007 ("Monitor Order"), hereby

4 submits this report summarizing his review of the operations of the Fahey Fund, L.P.; Fahey

5 Financial Group, Inc.; International Trade & Data; and ITD Trading (collectively, the "Fahey

6 Funds" or "Relief Defendants") and the vetting of the accounting provided to the Monitor by

7 defendant Alexander James Trabulse ("Trabulse").

8       Pursuant to the Monitor Order, the Monitor was to oversee the activities of Trabulse and

9 Relief Defendants as set forth in the December 7, 2007 Preliminary Injunction Order and Other

10 Ancillary Relief (the "Preliminary Injunction Order").  Overall, the Monitor's purpose was to

11 preserve the known assets of the Relief Defendants for the benefit of the investors by reviewing

12 the reported assets, monitoring bank and brokerage activity and overseeing the payment of

13 expenses.  In addition to the foregoing tasks, the Monitor was to review and approve "expense

14 items in excess of $1,000 payable by defendant"; review all expense items regardless of amount

15 by defendant and provide his vetting of the accounting to be provided by Trabulse.  To facilitate

16 this goal, the Monitor Order required that the Monitor be provided with access to the documents

17 and information necessary for the Monitor to review the overall operation of the Fahey Funds.

18       The scope of the accounting that was to be provided by Trabulse was set forth on pages 14

19 and 15 of the Preliminary Injunction Order as well as the Supplemental Order re Accounting dated

20 December 10, 2007, which Supplemental Order re Accounting stated that the accounting should

21 "account for $50,000,000 number provided to investors as of December 31, 2006, for the value as

22 of December 31, 2007, and for any difference between the values."

23       Finally, the Monitor Order provided that the Monitor was to prepare this report by

24 January 31, 2008 summarizing his findings.  As detailed below, the Monitor has carried out all of

25 the duties set forth in the foregoing-described orders, however, the lack of documents and the

26 paucity of information contained in the accounting provided to the Monitor by Trabulse has

27 limited the conclusions that can be made as to certain issues.

28

## II.    **SUMMARY OF MONITOR'S REPORT**

The Monitor engaged Financial Forensics to work as accountants and financial consultants to the Monitor. In this instance, Financial Forensics was primarily employed to review accounting information provided by the Commission, to vet the Trabulse Accounting and to provide recommendations as to additional accounting work which may be required to comply with the Court's orders. The Monitor also engaged Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins") as his legal counsel to provide advice and consultation in connection with the Court's orders, to investigate and pursue discovery as to the assets, and to provide advice on legal issues related to the work of the Monitor and his accountant (e.g., title reviews). In addition, Allen Matkins and Financial Forensics assisted the Monitor in preparation of this Report.

Based upon the work of the Monitor and his professionals, the Monitor's overall findings are as follows:

- The Monitor has noted no unapproved expenditures by the Relief Defendants during the relevant period. Trabulse complied with the Monitor Order to the extent that no transfers were made from the Relief Defendants' brokerage or bank accounts that were not approved by the Monitor (aside from a small expenditure to a tennis club).

- The Monitor has no information as to Trabulse's personal expenditures because he did not produce financial information as to his personal expenditures beyond what was provided to the Commission. Trabulse's counsel asserts that the Court's orders were only meant to provide for the monitoring of the Relief Defendants' expenses. In the past few days, the Commission and Trabulse have discussed a compromise as to the production of personal financial and bank records, in part, based on the Monitor's findings and recommendations. In either event, as of the date of this Report, the Monitor cannot report as to Trabulse's personal assets or expenditures.

- The Monitor has confirmed the existence of the brokerage accounts and has monitored the daily performance of each account after being provided access to the accounts on January 6, 2008. The Monitor has tracked daily activity as illustrated on <u>Exhibit A</u>, attached to the Report. As of January 25, 2008, the brokerage accounts had a total reported value of $4,949,530. It should be noted that the Monitor did not receive access to the accounts at Canaccord Capital and

1  has not received these accounts.  The investments that are reflected in the account statements are

2  risky and volatile and, as such, there may be substantial swings in value on a daily basis.

3        •        The Monitor has confirmed the existence of certain personal property assets,

4  including oriental and Persian rugs, a pearl necklace and certain crystals and precious and non-

5  precious gems.  The valuations of the personal property, except for the pearls, could not be

6  verified because the valuations provided by Trabulse were unreliable (e.g. rugs were merely rough

7  estimates from the seller of the rugs) or non-existent.

8        •        The Monitor has concerns that some of the personal property assets are not

9  adequately secured or insured.  The Monitor believes that certain assets should be moved to more

10  secure locations and that insurance should be obtained, if the assets are not going to be promptly

11  sold.  This matter has been discussed with Trabulse's counsel who has not objected to the

12  Monitor's recommendations as to this matter.

13        •        The Monitor has verified the existence and title to the real property located in

14  California which are identified by Trabulse.  The values of the properties located in California

15  provided by Trabulse are within a range of reasonableness, however, the validity of the various

16  encumbrances has yet to be investigated.  In several instances, it appears that the properties were

17  purchased from investors or relatives, calling into question the validity of the purchase money

18  encumbrances and the amounts paid for the properties.

19        •        The Monitor could not independently verify the title or value to the two foreign real

20  properties.  The documents for the real property in Panama do not reflect ownership by the Relief

21  Defendants.  Instead, the Panama property is held in the name of AMI CA, Inc., a corporation

22  owned by Trabulse.  The Monitor cannot validate the stated value of the property in France.

23        •        The Monitor has vetted the accounting provided by Trabulse on January 15, 2008

24  in the Trabulse Accounting (the "Trabulse Accounting") and found it to be deficient.  The

25  accounting primarily consists of a list of real and personal property belonging the Fahey Funds, an

26  alleged market value for certain of the assets and some information concerning the original cost of

27  items to the Fahey Funds.  The Trabulse Accounting also included a list of so-called prior assets of

28  the Relief Defendants and a list of distribution of cash to friends and relatives from 2001 to 2006

1  (no list is provided for 2007).  No source or other information is provided to explain how Trabulse

2  came up with these lists or what was <u>not</u> considered as a distribution.

3      The Trabulse Accounting provides no insight into the operations of the Relief Defendants,

4  nor does it account for the $50,000,000 number provided to investors as of December 31, 2006,

5  the value as of December 31, 2007 or any difference between the two values.  (See <u>Supplemental</u>

6  <u>Order re Accounting dated December 10, 2008</u>, ¶ 1.)  Missing from the accounting is any

7  indication of an independent effort by the accountant to determine the amount of money

8  distributed to Trabulse or his relatives and friends from the Relief Defendant during any period of

9  time.  The accountant simply accepted Trabulse's list of assets, transfers and valuations.

10      The Trabulse Accounting did not reflect personal financial records that would reflect what

11  earnings Trabulse had during the past several years or the source of such earnings.  The Trabulse

12  Accounting did not provide true valuations for several items, such as the approximately 150 rugs

13  or the gems and crystals in Trabulse's safe.

14      Based on the Trabulse Accounting and related documents, it is simply not possible to

15  validate Trabulse's statements as to the amounts transferred from the Relief Defendants to

16  Trabulse, insiders and relatives.  Nor is it possible to assess the amounts raised from or distributed

17  to investors in the Fahey Funds.  In addition, since Trabulse did not provide any information

18  regarding his personal expenses, it has not been possible for the Monitor to monitor Trabulse's

19  expenses during the course of this matter.

20  **III.    REPORT ON MONITORING OF OPERATIONS**

21      As the Court and the parties are aware, the Relief Defendants' operations consist of

22  Trabulse's trading commodities and other financial instruments.  There is no evidence that the

23  Relief Defendants have any employees aside from an independent contractor who does some

24  clerical tasks.

25      There are three brokerage accounts in which trades appear to be made on a regular basis by

26  Trabulse.  The most active of these accounts are at A.G. Edwards.  The Monitor requested and

27  obtained Trabulse's account password so that the Monitor could review the daily fund transactions

28  in each of the accounts.  Trabulse provided this information on January 6, 2008.  As of January 25,

1  2008, the accounts had a reported value of $4,949,530.  Attached hereto as <u>Exhibit A</u> is a chart

2  reflecting the total value of each of the accounts on a daily basis.

3       The Monitor did not note any significant performance issues to report during the

4  monitoring of these accounts.  However, as noted in the Order, the Monitor took no steps to

5  evaluate trades made in connection with these accounts.  In accordance with the Monitor Order

6  and Preliminary Injunction Order, Trabulse did not make any transfers from the Relief Defendants'

7  brokerage or bank accounts that were not approved by the Monitor.  In fact, only three transfers

8  took place:  two mortgage payments in connection with real property owned by the Fahey Funds,

9  and an unidentified $500 payment.  Overall, Trabulse complied with the Court's Orders as to the

10 preservation of the brokerage account and bank assets, which make up the vast majority of the

11 known assets of the Defendants.

12 **IV.**     **REVIEW OF THE ASSETS**

13      As part of the Monitor's work, he sought to confirm both the existence and value of the

14 Relief Defendants' and Trabulse's assets and to assess how best to preserve the same.  On

15 December 20, 2007, the Commission provided the Monitor with a list of assets and documents

16 reflecting the title to and valuations of the Relief Defendants' personal property assets.  These

17 documents had been provided to the Commission by Trabulse.  Initially, Trabulse's counsel

18 indicated that these were the only assets and valuations; however, later, the Monitor was advised

19 that the Trabulse Accounting would reflect some additional documentation of assets and

20 valuations.

21      The Monitor has established the existence of the assets, however, in some cases, stated

22 values could not be substantiated.  The information provided was of varying accuracy and

23 completeness.  Moreover, the Monitor was unable to confirm whether additional personal property

24 assets were purchased with money invested in the Fahey Funds because Trabulse did not provide

25 financial information to allow the Monitor to make such a determination.  The Monitor's findings

26 as to particular assets are set forth below.

27

28

**A.    Oriental Rugs**

Both Trabulse and his accountant described the rugs as 181 rugs which were purchased for $753,285 and having a current market value of $1,129,170. These statements were based on a handwritten statement from Mr. Jorgensen, who is storing the rugs. None of this information could be substantiated. The Monitor went to view the rugs which were purportedly stored at The Magic Carpet, an oriental rug store in Nevada City, California (approximately two hours northeast of Sacramento). The Magic Carpet is owned by Paul Jorgensen. Mr. Jorgensen confirmed that he had sold rugs to Trabulse for about $700,000, however, he indicated that both the number and value of the rugs in his handwritten statement were mere estimates. Mr. Jorgensen told the Monitor that the value of the rugs could be less than what was paid for them if immediately liquidated. Mr. Jorgensen indicated the rugs needed to be held for additional time in order to realize appreciation. He could not verify either the number of rugs nor the market value. Nor could Mr. Jorgensen provided documentation with regard to the purchase or sale of these rugs. Mr. Jorgensen showed the Monitor the rugs which were stored in an out-building at Mr. Jorgensen's home. The rugs were not entirely segregated from rugs that Mr. Jorgensen claimed were his rugs. This out-building did not appear to be an appropriate location to store valuable oriental carpets in that there was not appropriate security or temperature control. Mr. Jorgensen also further indicated that he did not have specific insurance for the rugs but he thought his personal homeowner's insurance might provide coverage (which from the Monitor's experience is very unlikely). Mr. Jorgensen indicated that he was leaving the country for an annual trip to India for a period of approximately two months, during which time neither he nor his wife would be present at the store or at the home where the rugs are stored. All of this leads to the Monitor's recommendation that the assets be placed at a more appropriate storage facility controlled by an independent person.

It appears from the Trabulse Accounting that there are 11 more rugs that exist which were not made available for the Monitor's review. These rugs are valued at $14,000.

1   In addition, the Trabulse Accounting reflects expenditures for Eesa Mokri rugs, which

2   have values ranging from $4,000 to $23,000.  Again, the Monitor could not verify the existence or

3   market value.

4       B.    **Jewelry, Stones and Crystals**

5             1.    The Pearl Necklace

6   The Monitor has confirmed the existence and appraisal for the pearl necklace with a value

7   of $1,400,000.  A member of the Monitor's team visited the location where the pearl necklace was

8   stored to view the necklace and to discuss the value with the appraiser.  The Monitor has

9   confirmed the existence and value of the necklace.  The pearls are maintained in a safe held by a

10  third party, which appears secure.  The Monitor is currently looking into issues related to

11  insurance coverage for the pearls since the appraiser could not verify the existence of insurance.

12            2.    Crystals and Gems (Semi-Precious and Precious)

13  The Monitor has verified the existence of certain of the gems, crystals and stones reflected

14  on the Trabulse Accounting and the hand-written appraisals provided by Freedom Valley Gems.

15  As of the date of this report, the Monitor has still not received information which would allow him

16  to validate the appraised value of these items, however, in the Monitor's experience, it would be

17  extraordinarily unusual for such items to appreciate the 70 to 80% reflected in the Trabulse

18  Accounting in the two years since they were purchased.  It should be noted that these items are

19  located in a safe in the control of Trabulse.  The Monitor has concerns whether this is the

20  appropriate level of security since it is not clear as to who has access to the safe.

21  Two of the crystals are indicated on the Trabulse Accounting are located in Pacific

22  Palisades, California, County of Los Angeles.  The Monitor is in the process of contacting the

23  person identified on the accounting who is holding these crystals to confirm their existence and

24  location.

25  The Trabulse Accounting also reflects numerous purchases of jewelry from Gemday

26  Jewelers, Jim Saylor Jewelers and Hawaiian Trading.  This jewelry is apparently in the possession

27  of Catherine O'Riely, who the Monitor understands to be Trabulse's wife.  As such, there is no

28  way for the Monitor to ascertain the existence or value of such jewelry.

**C.    Paintings**

A number of paintings are listed as assets of the Relief Defendants in the Trabulse Accounting. All of these paintings are apparently in France and in the possession of Trabulse, his wife or the artist, Kathy Burke. Trabulse alleges that the value of these paintings (which include portraits of investors) is $146,000. The only support for this assertion are written statements from Ms. Burke in which she says she has earmarked paintings for the Fahey Funds of €100,000 Euros. She also alludes to a collection of existing and ongoing works of art. None of this provides a basis for the $147,000 value presented by Trabulse.

**D.    Mobile Homes**

The Monitor was provided with substantial documentation and information regarding four mobile homes located in San Leandro, California. Valuations were provided in connection with each of the mobile homes reflecting nominal value. It is the Monitor's experience that even such valuations are likely overstated. Absent a rental income generated by such mobile homes, the mobile homes likely reflect a liability rather than an asset of the Relief Defendants.

**E.    Real Property**

The Monitor has been provided with information reflecting five properties located in California and two properties located overseas; one property in France and the second property located in Panama. The Monitor has visited the properties located in Nevada City, California. These properties are undeveloped lots. The Monitor has consulted with a broker and obtained the broker's opinions of value which reflect values in the range set forth in the Trabulse Accounting. At least two of the three Nevada City properties appear to be encumbered by mortgages. Further information is necessary to ascertain whether the sales prices paid for the properties reflected market values for the properties and the loans reflected arms-length transactions. Assuming the mortgages encumbering the Nevada City properties are valid, there still appears to be some equity in each of the Nevada City properties.

Two properties are located in Somis, Ventura County, California. The properties are adjacent to a golf course and are undeveloped lots. The Monitor has verified the existence and title to these properties and is in the process of obtaining a broker's opinion of value. The Monitor

1  believes that some investigation should be conducted to ascertain whether purchase and sale were

2  arms length and whether the values of the properties are accurately reflected.  The Monitor hopes

3  to have a broker's opinion of value for each of the Somis properties within the week.

4      Documents were provided to the Monitor with regard to real property and improvements

5  owned by the Fahey Funds in France.  The Monitor has reviewed these documents which do

6  reflect an ownership interest in the property in France.  These documents reflect a purchase price

7  of €360,000 Euros.  The Monitor has not been able to independently verify the current value of the

8  property in France nor did he independently commission a title report to ascertain what, if any,

9  encumbrances are on the property.

10     The Monitor has been provided with information concerning real property located in

11  Panama, which appears to be a parcel of raw land.  In this case, all documents provided to the

12  Monitor were in Spanish.  To date, the Monitor has not had the documents translated and has not

13  been able to validate whether the Fahey Funds owns this property free and clear of all liens.  The

14  documents provided to the Monitor provide that the property is owned by AMI CA Inc., which

15  Trabulse owns as the sole shareholder.  It is anticipated that the Monitor will have such title

16  information within the week.

17     Finally, it should be noted that the Monitor has not been permitted to interview Trabulse,

18  nor has he visited Trabulse's home in France.  As such, the Monitor has not been able to evaluate

19  whether valuable personal property exists at that location.

20     **F.    <u>Mining Limited Partnership Investment</u>**

21     The Monitor was provided with information concerning a partnership interest in Suntree

22  Mining LP.  The Monitor has contacted Suntree Mining LP and it appears that Trabulse's nominal

23  estimated value as stated in the Trabulse Accounting is accurate.  Before abandoning this asset, the

24  Monitor recommends that further analysis and investigation be undertaken to verify the value of

25  this asset.

26  **V.    <u>THE TRABULSE ACCOUNTING</u>**

27     Trabulse was charged with preparing a verified accounting that accounts for the $50

28  million number provided to investors as of December 31, 2006, for the values as of December 31,

1  2007, and for any difference between the two values.[1]  Additionally, the accounting was to meet

2  the following purposes:  (i) to identify the location and disposition of all funds received from

3  investors; and (ii) the location and value of all personal or fund assets presently held by Trabulse

4  under his control or over which he exercises actual or apparent investment authority.  The Court

5  has ordered that, at a minimum, the accounting provide the following:

6         (i)     List all diamonds, pearls, rugs and other property (other than the brokerage

7  accounts) that belong to the fund, stating the exact description and location for each.

8         (ii)    Identify and produce all title records for such items;

9         (iii)   State the true market value for each of the items, stating the basis for the value and

10  identifying and producing all records bearing on the value; and

11         (iv)   State the original cost of the items to the fund, identifying and producing the bill of

12  sale or other records needed to prove the cost.

13       Similarly, the accounting must do likewise for all similar items allegedly owned by

14  Trabulse and/or his family (including his wife/ex-wife) that were acquired directly or indirectly

15  from the fund's money or distribution thereon.[2]  The Monitor was charged with vetting the

16  accounting provided by the Defendant.

17      **A.**    **Description of Trabulse's Accounting**

18       The Monitor received the Trabulse Accounting on January 15, 2008.  Trabulse engaged

19  Ueltzen & Company, LLP (or "Ueltzen") of Sacramento, California to complete the required

20  accounting.  The accounting prepared by Ueltzen consists of a summary report, three exhibits and

21  two binders of supporting documentation.  A copy of the summary report and attachments to the

22  Trabulse Accounting are attached hereto as <u>Exhibit B</u> and incorporated herein by this reference.

23  The three exhibits to the Trabulse Accounting are as follows:

24        •  Exhibit A – Summary of Current Value of Known Assets of the Fund

25        •  Exhibit B – Accounting of Known Assets of the Fund

26        •  Exhibit C – Accounting for Prior Assets of Fund

27

28    [1]  Supplemental Order Re Accounting, dated December 10, 2007.
    [2]  Preliminary Injunction Order and Other Ancillary Relief, dated December 7, 2007.

1    The two binders provided with the summary report contain various documents indicating

2    ownership and purported values for the assets listed on Exhibit B.  These documents were not

3    complete for many of the assets listed.

4    In addition to the materials prepared by Ueltzen, Defendant also submitted two documents

5    as follows:

6    • List of monies distributed to, or paid for the benefit of, family and friends of

7    Trabulse from the Fahey Funds or Fahey Financial Group.  The list spans 2001

8    through 2006.  Trabulse states that these transactions should be regarded as

9    personal compensation to Trabulse.

10    • List of assets that are or have been in the possession of Easter Trabulse which were

11    purchased with monies held in Fahey bank accounts.  It is unclear whether the

12    Trabulse is claiming that these assets are also his personal compensation or assets

13    of the funds.

14    This is the entirety of the Trabulse Accounting.

15    **B.    Monitor's General Observations Regarding the Accounting**

16    It is the Monitor's opinion that the Trabulse Accounting is inadequate and fails to fully

17    achieve the purposes set forth in the Court's orders.  In essence, the data provided by Trabulse is

18    merely a list of purported fund assets along with a list of withdrawals indicated to be personal

19    compensation of Trabulse.

20    Aside from the incomplete nature of the data provided, there are two global issues with this

21    accounting:  1) the failure to account for the location and disposition of all investor funds; and

22    2) the failure to account for the location and value of all personal or fund assets presently held by

23    Trabulse under his control or over which he exercises actual or apparent investment authority.

24    Trabulse has provided a list of Fahey Funds' assets and failed to produce an analysis of all

25    cash inflows and outflows for the Fahey Funds.  An analysis of all cash inflows and outflows for

26    the Fahey Funds is imperative for the following reasons:

27    • To verify that the list of Fahey Funds' assets provided is complete;

28

- To validate information previously provided regarding the number of Fund investors and to establish the amounts invested by and distributed to the investors; and

- To account for the disposition of investor funds including those funds used for the personal benefit of Mr. Trabulse, his friends and his relatives.

The aforementioned analysis is essential prior to the liquidation of the Fahey Funds' assets and the making of distributions to Fahey Funds' investors.

Additionally, Trabulse's accounting does not provide any details regarding his personal assets and expenses during the period that the Monitor has been overseeing the operations. The Monitor believes that Trabulse should be required to provide a list of all personal and real property in his possession or control as well as evidence that these assets were <u>not</u> acquired with Fahey Funds' assets.

Finally, as noted previously, Trabulse did not account for the variance between the $50 million as reported to investors on December 31, 2006 and the value of the assets as stated within the Trabulse Accounting, $10,231,289.64.

**C.    <u>Monitor's Specific Observations of the Accounting Provided</u>**

As stated above, the Trabulse Accounting provided consisted of three sections; 1) the asset compilation completed by Ueltzen, 2) the list of personal withdrawals, and 3) assets that are or have been in Easter Trabulse's possession.

**1.    <u>Ueltzen Compilation</u>**

The Monitor agrees that Ueltzen has compiled information as to the assets of the Fahey Funds, yet disagrees with Ueltzen's assertion that this compilation is fully consistent with the Court's orders. The following observations apply specifically to the information compiled by Ueltzen. These are only selected illustrations and should not be considered all inclusive of the Monitor's findings.

**a.    <u>Completeness</u>**

The Monitor believes that additional personal and fund level financial information must be reviewed and an accounting prepared in order to provide a complete picture as to amounts

1   invested in and distributed by the Fahey Funds.  Upon the completion of this accounting work, the

2   Monitor would be in a position to report not only the pro-rata interests of investors but also to

3   verify amounts received by Trabulse from the Fahey Funds or investors.

                              b.     Lack of Supporting Data

4

5          The list of known assets includes approximately 30 assets which are not bank accounts or

6   investment accounts.  These assets comprise parcels of real property as well as a potpourri of

7   personal property (e.g. pearls, rugs, gems, paintings).

8          Many of these assets did not contain evidence of purchase, title and/or value.  For example,

9   the accounting does not reflect that the accountant reviewed any back-up document to substantiate

10  the alleged purchase price and values for the rugs, which are purportedly worth $1,129,170.00.

11  All that was provided was a handwritten note from Mr. Jorgensen, (the seller of the rugs), stating

12  the purchase price, number of rugs and a current market value.  Mr. Jorgensen has since indicated

13  he did not intend for this handwritten note to be a current appraisal.  Overall, additional back-up

14  documentation would be required to validate the title and values of some of the assets.

                              c.     Title

15

16         The supporting documents provided fail to illustrate title or ownership of many of the

17  assets in question.  Furthermore, the titles of some assets, including real properties, have only been

18  re-titled to the Fahey Funds within the past few months.  For example, although certain property

19  was purchased on June 22, 2007, it was recently conveyed to Fahey Financial Group on November

20  13, 2007.

21         There are also two parcels of property that were purchased under the name of Easter

22  Trabulse in August 2007.  One of the parcels was conveyed to Fahey Financial Group, Inc. on

23  November 2, 2007.  No evidence was provided that the other parcel was ever conveyed to the

24  Fund.

                              d.     Valuations

25

26         Valuations were not provided for all purported Fahey Funds' assets.  Additionally, some of

27  the valuations do not appear to be from independent third parties and others could not be

28

1 substantiated. For example, the appraisal of the rugs was not an actual appraisal but a rough

2 estimate by the seller of the rugs as to the value of the rugs at some point in the future.

        e.    <u>Marginal Supporting Documents</u>

4     In some instances, Trabulse provided supporting documentation that was marginal, at best.

5 The documentation for the two foreign real properties is largely un-translated and appears to be

6 incomplete. Documentation for many of the gems consist of nothing more than a handwritten

7 appraisal with no proof of purchase or ownership. In many instances Ueltzen relied on nothing

8 more than representations made by Trabulse during an interview.

        f.    <u>Prior Assets of the Fund</u>

10     The accounting mentions so-called "Prior Assets of Fund" but fails to provide any

11 supporting documentation to this regard. These assets include items that may have been

12 subsequently liquidated or failed investments. Essentially, the evidence provided regarding these

13 assets must be viewed as merely anecdotal.

14         2.    <u>List of Withdrawals</u>

15     Trabulse has also provided a list of monies distributed from the Fahey Funds for the

16 benefit of family and friends. The Monitor is unable to verify any aspect of this list as no

17 supporting documentation was provided. As such, the Monitor questions the completeness of this

18 list and whether it accounts for all Fahey Funds' dollars used for personal benefit of Defendant,

19 family or friends.

20         3.    <u>Easter Trabulse Assets</u>

21     Trabulse has provided a list of assets purchased with the Fahey Funds' money that are or

22 have been in possession of Easter Trabulse, Trabulse's daughter. The Monitor cannot assess the

23 completeness or the accuracy of this list without reviewing the personal financial information from

24 Trabulse. Since no such information was provided, the Monitor cannot attest to the completeness

25 of the list or the alleged value of the assets. Furthermore, the Monitor is unclear as to whether

26 these are assets of the Fahey Funds or assets of Easter Trabulse that should be treated as personal

27 compensation from the Fahey Funds.

28

**D.    Conclusions Related to Accounting**

As part of the Monitor's work in vetting the Trabulse Accounting, the Monitor must assess both completeness and integrity of accounting information.  It is the Monitor's opinion that the Trabulse Accounting is deficient and does not fully comply with the Court's orders.  Based upon a cursory review of the discovery provided by the Commission, it appears that sufficient documentation may already be available or could be obtained from financial institutions to allow one to prepare a materially complete accounting as required by the Court's orders.

There are no financial systems in place or reporting mechanisms that would allow for the Monitor to readily prepare a complete accounting.  Instead, an accounting would involve gathering the existing bank and brokerage records and taking steps to obtain missing records from financial institutions.  The time to prepare such an accounting greatly depends on the level of cooperation from both Trabulse and financial institutions.

Full disclosure from the Relief Defendants and Trabulse of all company and personal financial records would, of course, facilitate a more prompt and less expensive accounting.  Such cooperation necessarily requires access to all supporting data including bank statements, checks and check registers for Trabulse and the Fahey Funds.  Anything less than full disclosure could significantly increase the time and expense required to complete the accounting.

**VI.    RECOMMENDATIONS**

The Monitor recommends the following additional work be performed in connection with this matter:

1.    A full accounting should be performed to ascertain the amount of money invested in the Fahey Funds and the amounts distributed to investors, Trabulse and other third parties.  This is needed in order to reconcile or account for the $50 million number provided to investors as of December 31, 2006 with the $4,949,630 amount contained in the brokerage accounts as of January 25, 2008 and the alleged $10,231,289.64 value of the Fahey Funds assets eflected in the Trabulse Accounting.  (See Supplemental Order re Accounting, December 10, 2007, p. 1.)  This accounting is also needed to ascertain the full amount of money paid to Trabulse, his friends and family from their operation of the Relief Defendants and to validate the Fahey Funds' assets.

1    Ultimately, this complete accounting of investments and distributions will be required to the

2    extent that a distribution will eventually be made on a pro rata basis to the investors in the Fahey

3    Funds.

4         2.    The Monitor recommends that Trabulse provide the Monitor with complete

5    personal financial information and make himself available to be interviewed by the Monitor so

6    that the Monitor can account for Trabulse's and his family's personal finances for the past several

7    years.  In order to account for the benefits obtained by Trabulse, his relatives and friends, personal

8    banking and financial information must be produced.  To date, Trabulse has presented

9    spreadsheets in which he provides his own assessment of the benefits that he and his family

10   received from the Fahey Funds.  At a minimum, backup for Trabulse's alleged distributions, plus

11   the information related to distributions for the period 2001-2007 must be provided so a complete

12   accounting can be prepared.

13        Viewed another way, Trabulse should reveal what other sources of income he had from

14   2001 through 2007, which could explain any gaps between the amounts received from investors,

15   distributions from the Fahey Funds and his personal income during this period.  It is the Monitor's

16   understanding that there are provisions in the partnership agreements for each of the Fahey Funds

17   that provided for fees to be paid to Trabulse in payment for his services.  Unfortunately, without

18   the foregoing accounting, there is also no way to assess whether or not Trabulse received

19   payments in excess of the amounts called for in the partnership agreements.

20        3.    The Monitor recommends that certain of the Fahey Funds' assets be insured and

21   moved to more secure locations.  For example, there are relatively low-cost means to store the

22   rugs and the gem stones so that their values are preserved pending liquidation.

23        4.    The Monitor recommends some investigation should be conducted as to the

24   underlying transactions in connection with the above-described real estate.  To date, complete

25   mortgage documents have not been reviewed.  It is of some concern to the Monitor that some

26   parties to the purchase and sale transactions and purchase money mortgages were insiders.  As

27   such, a question arises as to the motivation for the purchases.

28

1        5.      The Monitor recommends that the Monitor Order or Preliminary Injunction Order

2  be modified to prevent further encumbrances or transfers of assets.  This may be accomplished by

3  providing that the Monitor may file the Court's Order in the District Courts and record it in

4  counties where real and personal property assets of the Defendnats may be located pursuant to 11

5  U.S.C. § 754.  To the extent that properties are located overseas, steps should be taken to secure

6  those properties from further encumbrance or loss as well.

7        6.      The Monitor recommends that a claims review process be established whereby

8  investors are notified and requested to provide verifiable information as to the amounts invested

9  and distributions that they received.  This will provide both an expedient way to assess the

10  amounts received by the Fahey Funds and, in part, where the Fahey Funds' money went.

11  **VII.**   **CONCLUSION**

12        The Monitor believes that additional accounting and investigation will be required to

13  ascertain the full amounts received by Trabulse, his friends and relatives from the Fahey Funds.

14  Such accounting and investigation will in turn allow for the Commission or the Monitor to make a

15  distribution to investors to the extent the Court determines that such distribution is appropriate or

16  called for in this case.

17

18  Dated:  January 31, 2008

                                    MICHAEL A. GRASSMUECK

19

20  Dated:  January 31, 2008                ALLEN MATKINS LECK GAMBLE

21                                       MALLORY & NATSIS LLP
                                    DAVID R. ZARO
                                    YALE K. KIM

22

23                          By:        /s/

24                                DAVID R. ZARO
                                Attorneys for Monitor
                                MICHAEL A. GRASSMUECK

25

26

27

28